UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:12-cv-1117-WTL-MJD ) |
| MICHAEL HARRIS, et al., | ) ) |
| Defendants. | ) |

### ENTRY ON DEFENDANT MICHAEL HARRISON'S MOTION TO DISMISS AND MOTION FOR ATTORNEY FEES

This cause is before the Court on the motion to dismiss (dkt. no. 85) and the corresponding motion for attorney fees (dkt. no. 87) filed by Defendant Michael Harrison.[1] The motions are fully briefed, and the Court, being duly advised, **DENIES** both motions for the reasons set forth below.

### I.   STANDARD

Harrison moves to dismiss Malibu Media, LLC's third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint fails to state a claim upon which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n,* 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334

---

[1] Not to be confused with Defendant Michael Harris.

(citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## II. BACKGROUND

On February 25, 2013, Malibu Media filed its third amended complaint alleging direct copyright infringement and contributory copyright infringement against several individuals, including Harrison. Dkt. No. 59. The complaint alleges that Harrison and others downloaded and disseminated all or a portion of a movie owned by Malibu Media entitled "Pretty Back Door Baby" (the "Work") using BitTorrent, a peer-to-peer file sharing protocol. According to Malibu Media,

> BitTorrent's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

Third Am. Compl. at ¶ 20, Dkt. No. 59. Malibu Media alleges that each of the Defendants "installed a BitTorrent Client onto his or her computer," and "went to a torrent site to upload and download Plaintiff's copyrighted Work." *Id.* at ¶¶ 16, 33. Using the Defendants' actions as an example, Malibu Media explains in its complaint how "uploading" and "downloading" through BitTorrent is performed:

> 34. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

2

35. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

36. Once a peer receives a piece of the computer file, here a piece of the Copyrighted Work, it starts transmitting that piece to the other peers.

37. In this way, all of the peers and seeders work together in what is called a "swarm."

38. Here, each Defendant participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

39. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

40. Once a peer, here a Defendant, has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed" because it continues to distribute the torrent file, here the copyrighted Work.

*Id.* at ¶¶ 34-40.

Malibu Media hired IPP, Limited ("IPP") to identify the IP addresses of those using the BitTorrent protocol to copy the Work. According to Malibu Media, "each of the Defendant[s'] computers used their identified IP addresses to connect to [IPP's] investigative server in order to transmit a full copy, or a portion" of the Work. *Id.* at ¶ 45. In performing the actions noted above, the Defendants "copied the constituent elements of the registered Work" without the authority, permission or consent of Malibu Media. *Id.* at ¶¶ 52, 53.

## III. DISCUSSION

Harrison argues that Malibu Media's complaint should be dismissed for two reasons:

(A) Plaintiff does not sufficiently allege that Harrison copied any constituent elements . . . of the copyrighted Work that are original; and

(B) Plaintiff does not sufficiently allege that Harrison engaged in personal conduct that encouraged or assisted infringement of Plaintiff's copyrighted Work.

Harrison's Br. at 2, Dkt. No. 86. Malibu Media argues, on the other hand, that its complaint adequately states claims of copyright infringement and contributory copyright infringement.

### A. Copyright Infringement

In order to state a claim of copyright infringement, a plaintiff must allege "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)). "An individual 'copies' another's work for purposes of copyright law if he plays it publicly or distributes copies without the copyright owner's authorization." *Janky*, 576 F.3d at 361 (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975)).

According to Harrison, the second element of copyright infringement has not be properly pled "because Plaintiff has alleged nothing more than [the fact] that Harrison's I.P. address was

4

used to click on a magnet link or a link to a torrent file." Harrison's Br. at 3. Specifically, Harrison maintains that

> Plaintiff does not, and cannot, allege facts to even permit a plausible inference, that when favorably construed as true, is sufficient to show that Harrison:
>
> 1. Has a BitTorrent Client installed on his computer; or
>
> 2. Has downloaded, copied, or reproduced a single piece, or "constituent element," of its copyrighted Work.

*Id.* at 4.

The Court does not agree. Malibu Media's complaint sufficiently alleges that each of the Defendants, including Harrison, copied essential elements of the original Work. In this regard, the complaint states that each of the Defendants downloaded and distributed the Work using the BitTorrent protocol without Malibu Media's consent. The complaint describes in detail the manner in which the Defendants performed these actions through the BitTorrent protocol.

Harrison seems to argue that Malibu Media must, at this stage, put forth actual proof that Harrison has a BitTorrent Client on his computer or he copied the Work. Harrison demands too much too soon; proof is not required to properly plead a claim for copyright infringement.

Because the allegations in Malibu Media's third amended complaint satisfy the relevant pleading requirements and state a plausible claim for relief, Harrison's motion to dismiss the copyright infringement claim must be denied.[2]

---

[2] The file transmitted by the Defendants "was identified by the SHA-1 hash value of B17E6CBB71FF9E931ED034CFC5EC7A3B8F29BB1E" (i.e., the Unique Has Number). Third Am. Compl. at ¶ 43. Harrison argues that the "Plaintiff never identifies a single computer file 'hash identifier' *piece* that corresponds with or that is 'associated therewith for the file identified by [this] . . . Unique Hash Number," and Malibu Media should have alleged "that Harrison downloaded a specific 'random and unique alphanumeric' hash identifier that corresponds with the file identified by the Unique Hash Number." Harrison's Br. at 4 (emphasis in original). Even under the circumstances of this case, however, such facts are beyond the relevant pleading requirements.

### B. Contributory Copyright Infringement

"Although the Copyright Act does not expressly render anyone liable for infringement committed by another, . . . doctrines of secondary liability emerged from common law principles and are well established in the law." *Metro-Godwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (internal citations and quotation marks omitted). "One infringes contributorily by intentionally inducing or encouraging direct infringement." *Id.* According to the Seventh Circuit, contributory infringement is "personal conduct that encourages or assists the infringement." *Flava Works, Inc. v. Gunter*, 689 F.3d 754 (7th Cir. 2012) (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)). Harrison argues that Malibu Media has not alleged that Harrison encouraged or assisted infringement of the Work because it "fails to allege that Harrison uploaded pieces of the copyrighted Work to . . . IPP, to any other defendant, or to *any other individual who is not a party to this action*." Harrison's Br. at 6 (emphasis in original).

Malibu Media's complaint does, however, allege that each of the Defendants was part of a "swarm" responsible for transmitting the Work to other peers through the BitTorrent protocol. Specifically, "each Defendant peer member participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions." Third Am. Compl. at ¶ 38. According to Malibu Media, "[b]y participating in the BitTorrent swarm with the other Defendants, each Defendant induced, caused or materially contributed to the infringing conduct of each other Defendant." *Id.* at ¶ 60. Malibu Media also alleges that the Defendants transmitted a full copy or a portion of the Work to IPP's investigative

server. *Id.* at ¶ 45. These allegations sufficiently and plausibly allege that Harrison engaged in personal conduct that encouraged or assisted the infringement of the Work.

Again, Harrison seems to argue that Malibu Media must, at this stage, put forth actual proof that Harrison encouraged or assisted in the infringement of the Work. As noted above, however, proof is not required at this early stage in the proceedings. Accordingly, Harrison's motion to dismiss Malibu Media's contributory copyright infringement claim must be denied.

## IV. CONCLUSION

For the reasons set forth above, Harrison's motion to dismiss is **DENIED** in its entirety. Accordingly, Harrison's corresponding motion for attorney fees is also **DENIED**.

SO ORDERED: 07/18/2013

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by US Mail to:**

**Michael Harris
1434 South 13th Street
Elwood, IN 46036**

Copies to all counsel of record via electronic communication.