IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| | : | |
| Plaintiff, | : | Judge Mark J. Dinsmore |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL HARRIS** | : | |
| and **MICHAEL HARRISON**, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT MICHAEL HARRISON'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

Pursuant to Federal Rule of Civil Procedure 37, S.D. Ind. L.R. 37-1, and S.D. Ind. L.R. 7-1(b)(2), Defendant Michael Harrison ("Harrison"), by and through undersigned counsel, respectfully moves this Court to enter an order granting Harrison's Motion to Compel Discovery and the relief requested therein, and submits this Brief in Support of his Motion. This Court should grant Harrison's Motion and the relief requested therein for the reasons set forth and explained more fully below.

**I.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND.**

On December 3, 2013, a Local Rule 37-1 Conference was held before Magistrate Judge Mark J. Dinsmore to discuss discovery disputes at Harrison's request.  Pursuant to the Court's December 5, 2013 Minute Order: (1) Plaintiff was ordered to provide any information it agreed to produce in its response to Harrison's Request for Production of Documents on or before December 13, 2013; (2) Plaintiff was ordered to file either an agreed protective or disputed motion for protective order regarding Harrison's Request Nos. 1 and 2; and (3) Harrison was

1

authorized to file a motion to compel with regard to all remaining disputed issues as those issues became ripe [Dkt. 142].

On December 6, 2013, Plaintiff moved for a protective order, the scope of which included items requested by Harrison's Request No. 7, which Plaintiff was ordered to provide by December 13, 2013 pursuant to the Court's December 5, 2013 Order [Dkts. 143 & 144].

Plaintiff agreed to produce discovery in response to Harrison's Request for Production ("Request") Nos. 7, 10, 13, 19, 21, and 23. Plaintiff provided discovery for Harrison's Request Nos. 10, 13, and 19, which was mainly in the form of electronically stored information. Plaintiff has not provided discovery for Harrison's Request Nos. 7, 21, and 23, and Plaintiff refuses to provide discovery for Request Nos. 6 and 9.

## II.     LEGAL STANDARD

Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure states that if a party fails to obey an order to provide or permit discovery, the court may issue further just orders under Rule 37(b)(2)(A)(i)-(vii). Rule 37(b)(2)(C) provides that "instead of or in addition to the orders above, the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A party may move for an order to compel discovery after the movant has conferred in good faith or attempted to confer with the party failing to make discovery in an effort to obtain it without court action. *See* Fed. R. Civ. P. 37(a); S.D. Ind. L.R. 37-1(a). The motion may be made if a party fails to provide discovery or respond that inspection will be permitted – or fails to

permit inspection – as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iv). An incomplete response must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4).

Barring substantial justification, a court **must** order the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees, caused by the party's failure to obey the order. See Fed. R. Civ. P. 37(b)(2)(C).

### III. ANALYSIS

**A. THIS COURT SHOULD ENTER AN ORDER COMPELLING PLAINTIFF TO PRODUCE DISCOVERY FOR HARRISON'S REQUEST NOS. 7, 21, AND 23, AND REQUIRING PLAINTIFF TO PAY HARRISON'S REASONABLE EXPENSES, INCLUDING ATTORNEY FEE'S, CAUSED BY PLAINTIFF'S FAILURES; AND ISSUE FURTHER JUST ORDERS PURSUANT TO FED. R. CIV. P. 37(b)(2)(A)(i)-(vii) FOR PLAINTIFF'S FAILURE TO OBEY THE DISCOVERY ORDER.**

This Court should enter an order compelling Plaintiff to produce discovery for Harrison's Request Nos. 7, 21, and 23, and requiring Plaintiff to pay the reasonable expenses, including attorney's fees, incurred by Harrison as a result of Plaintiff's failure to provide discovery and failure to obey the Court's December 5, 2013 Discovery Order; and, issue any further just orders pursuant to Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii) for Plaintiff's failure to obey the Court's Discovery Order.

**HARRISON'S REQUEST NO. 7.**

Harrison's Request No. 7 seeks:

> Copies of any and all contracts, modifications of and amendments to contracts, bills of sale, purchase orders, receipts, invoices, billing statements, and the like memorializing or reflecting any agreement or other arrangement, and the like between you, any and all parent, sister, subsidiary, affiliated, or otherwise related entities of you, X-Art, X-Art affiliates and X-Art affiliated programs (collectively, "you") and any and all individuals or entities related to your inquiring, negotiating, hiring, rewarding, retaining, employing, or otherwise arranging to compensate those individuals or entities regarding the online security of your websites, the unauthorized reproduction of hard copies and/or digital copies your copyrighted works, and/or to otherwise create, develop, implement, or

maintain any sort of technological securities, safeguards, protective measures, mechanisms, and the like to cease, prevent, or curtail the online infringement of your copyrighted works. Def.'s Req. Prod. Docs. No. 7 (October 10, 2013); *See* Exhibit A.

Plaintiff's Response to Harrison's Request No. 7 provides: "Plaintiff will produce any documents in its possession, custody, or control deemed responsive to this request." Pl.'s Resp. Prod. No. 7 (Nov. 11, 2013); *See* Ex. A.  This Court's December 5, 2013 discovery order required Plaintiff to produce all documents responsive to Harrison's Request No. 7. Nevertheless, Plaintiff moved for a protective order with respect to the discovery it agreed to produce in its Response to Harrison's Request No. 7.

Plaintiff waived any objection to producing discovery for Harrison's Request No. 7. While the Seventh Circuit has held that the district court must consider relevant objections regardless of the timeliness of the objection, *Cont'l Ins. Co. v. Chase Manhattan Mortgage Corp.*, 59 F.Appx. 830, 839 (7th Cir. 2003), such objections are limited to the delinquent party's objection based on an inability or incapacity to produce the requested documents. *See Slabaugh v. State Farm Fire & Casualty Co., et al.*, No. 1:12-cv-01020-RLY-MJD at 1-2 (S.D. Ind. Sept. 5, 2013).  "[U]nless the delinquent party is incapable of producing the requested responses or documents, an unreasonable delay in a response to interrogatories or requests for production constitutes a waiver of any objection." *Id.* at 2.

Here, Plaintiff's Motion for Protective Order regarding production of discovery for Request No. 7 is clearly not indicative of an inability or incapacity to produce the requested documents. Plaintiff waived any objection, failed to produce the documents it agreed to produce, and disobeyed the Court's December 5, 2013 Discovery Order.

This Court should enter an order compelling Plaintiff to provide the discovery for Harrison's Request No. 7, denying Plaintiff's Motion for Protective Order as to Harrison's

Request No. 7, and order Plaintiff to pay Harrison's reasonable expenses, including attorney's fees, incurred by Harrison as a result of Plaintiff's failure pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**HARRISON'S REQUEST NO. 21.**

Harrison's Request No. 21 seeks:

Copies of any and all documents, electronically stored information, or tangible things evidencing statistics and the like for the number of times paying subscribers or other authorized paid users of online website services provided by you, any and all parent, sister, subsidiary, affiliated, or otherwise related entities of you, X-Art, X-Art affiliates and X-Art affiliated programs (collectively, "you") have viewed the copyrighted work, "Pretty Back Door Baby," through your online website services. Def.'s Req. Prod. No. 7. *See* Ex. A.

Plaintiff's Response to Harrison's Request No. 21 states: "Plaintiff will produce a document, if it exists, which contains the number of views of 'Pretty Back Door Baby' from subscribers on its website." Pl.'s Resp. Prod. No. 21; *See* Ex. A.

On December 12, 2013, Counsel for Plaintiff informed Counsel for Harrison by email that, in response to Harrison's Request No. 21, no documents exist evidencing the number of times subscribers viewed the movie "Pretty Back Door Baby" on the X-Art website. *See* Exhibit B.

Harrison's request is not limited to the production of **documents**. Harrison's request expressly includes production of any and all **electronically stored information**, as well. Plaintiff alleges that it is the operating entity for the X-Art website business owned by a trademark holding company named Click Here, LLC, which is owned entirely by Brigham and Colette Field.  Pl.'s Resp. Interrog. No. 2 (Dec. 3, 2013); *See* Exhibit C.  Plaintiff alleges that it employs security professionals to maintain and protect the security of the X-Art website business.  Pl.'s Resp. Interrog. No. 7; *See* Ex. C.  Based on these facts, it is reasonable to assume that Plaintiff's operation of the X-Art website business is as sophisticated as Plaintiff's erotica, and that

electronically stored information exists evidencing the number of views of "Pretty Back Door Baby" by virtue of Plaintiff's ordinary business operations as the operating entity for the X-Art website; and, that Plaintiff is capable of producing said electronically stored information.

Plaintiff is well aware that the Federal Discovery Rules require more than just the simple production of documents. Indeed, that fact was directly communicated to Counsel for Plaintiff by Magistrate Judge Mark J. Dinsmore when Plaintiff's Response to Request No. 21 was discussed during the Local Rule 37-1 Conference on December 3, 2013. Plaintiff has never stated that electronically stored information for Request No. 21 does not exist or that Plaintiff does not possess electronically stored information responsive to Request No. 21. Plaintiff has only stated that no *documents* responsive to Request No. 21 exist.

This Court should enter an order compelling Plaintiff to produce electronically stored information evidencing the number of times "Pretty Back Door Baby" has been viewed by subscribers of the X-Art website, and order Plaintiff to pay Harrison's reasonable expenses, including attorney's fees, incurred by Harrison as a result of Plaintiff's failure pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**HARRISON'S REQUEST NO. 23.**

Harrison's Request No. 23 seeks:

> Copies of any and all documents, electronically stored information, or tangible things evidencing or containing information relating in any way to the media access control ("MAC") addresses for each and every IP Address designated on Exhibit A of Plaintiff's Third Amended Complaint. Def.'s Req. Prod. No. 23; *See* Ex. A.

Plaintiff's Response to Request No. 23 states: "Notwithstanding the foregoing objections and without waiving same, Plaintiff will produce all documents in its possession, custody or control deemed relevant to this request as it pertains to Defendant Michael Harrison, if any such

documents exist." Pl.'s Resp. Prod. No. 23; *See* Ex. A.  Plaintiff did not provide the documents it agreed to produce in Response to Request No. 23 by December 13, 2013.

On January 7, 2014, Counsel for Harrison emailed Counsel for Plaintiff informing Plaintiff that Harrison had still not received the discovery Plaintiff agreed to produce in its Response to Request No. 23.  On January 7, 2014, Counsel for Plaintiff replied that no such documents exist containing the MAC address as to Harrison. *See* Exhibit D. However, as discussed above, the Federal Discovery Rules and the express language of Harrison's requests seek information contained in more than just documents.

This Court should enter an order compelling Plaintiff to produce all electronically stored information for Request No. 23, and ordering Plaintiff to pay Harrison's reasonable expenses, including attorney's fees, incurred by Harrison as a result of Plaintiff's failure, pursuant to Fed. R. Civ. P. 37(b)(2)(C).

**B.   THIS COURT SHOULD ENTER AN ORDER PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(a) COMPELLING PLAINTIFF TO PRODUCE DISCOVERY FOR HARRISON'S REQUEST FOR PRODUCTION NOS. 6 AND 9, AND ORDERING PLAINTIFF TO PAY HARRISON'S REASONABLE EXPENSES, INCLUDING ATTORNEY'S FEES, INCURRED IN MAKING THIS MOTION.**

This Court should enter an order compelling Plaintiff to produce discovery for Harrison's Request Nos. 6 and 9, and requiring Plaintiff to pay Harrison the reasonable expenses, including attorney's fees, incurred in making this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A).

**HARRISON'S REQUEST NO. 6.**

Harrison's Request No. 6 seeks:

> Copies of any and all documents, electronically stored information, and tangible things, including but not limited to technical and data reports, for each IP Address listed on Exhibit A of Plaintiff's Third Amended Complaint relating to the identification of those IP Addresses as infringing IP Addresses of your copyrighted work, "Pretty Back Door Baby," and the alleged BitTorrent "swarm" that those IP Addresses participated in and

7

which formed the basis of your contributory copyright infringement claims against any and all individuals in this case. Def.'s Req. Prod. No. 6; *See* Ex. A.

Plaintiff's Response to Request No. 6 provides:

Plaintiff has elected not to pursue its claim for contributory copyright infringement. In light of the foregoing, Plaintiff objects on the basis that the request seeks documents that are neither relevant nor likely to lead to admissible evidence. Plaintiff objects on the basis that this request is overbroad insofar as it seeks information which would evidence third party infringements as opposed to just Defendant's infringements. Plaintiff avers that the information requested herein is not in its possession, custody, or control, but rather in IPP International UG's possession, custody or control. Further, IPP International UG charges a fee to third parties for extracting data from its servers. Notwithstanding the foregoing objections and without waving the same, Plaintiff will produce the PCAP files which demonstrate that a computer using Defendant's IP Address connected to IPP International UG's servers and delivered a piece of a computer file that contains a copy of each of the copyrighted works at issue in this case as evidenced by a unique cryptographic hash value. Pl.'s Resp. Prod. No. 6; *See* Ex. A.

1. **Relevancy.**

Federal Rule of Civil Procedure 26(c) allows for broad discovery and parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claims or defenses. Fed. R. Civ. P. 26(c). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(c).

Harrison's request seeks discovery relevant to Plaintiff's claims and Harrison's defenses, and appears reasonably calculated to lead to the discovery of admissible evidence *even if Plaintiff's Motion for Leave to Amend the Third Amended Complaint is granted*. Plaintiff's Fourth Amended Complaint would maintain a claim of direct copyright infringement against Harrison for the copyrighted work, "Pretty Back Door Baby" [See Dkt. 130-2]. Plaintiff's objection that the request is overbroad contradicts its relevancy objection by indicating that the requested information *actually shows infringing activities specifically committed by Harrison of a copyrighted work that would remain at issue*. The requested discovery contains the dates,

times, and lengths of the alleged infringing BitTorrent transactions between Harrison and the settling defendants. It has the potential to help Harrison identify additional defense witnesses and discredit Plaintiff and Plaintiff's witnesses through impeachment uses at trial. Plaintiff's relevancy objection is completely without merit.

### 2. **Overbroad.**

Plaintiff's objection that the request is overbroad insofar as it seeks information which would evidence third party infringements as opposed to just Harrison's infringements is an equally invalid objection. Each of Plaintiff's complaints allege that IPP Limited monitored, detected, and logged the communications, interactions, digital handshakes, passing along of computer instructions, uploading and downloading, and other forms of transmission that occurred between Harrison and the settling defendants in a BitTorrent Swarm [*See* Dkt. 1 at 6, ¶ 33; Dkt. 38; Dkt. 54; Dkt. 59 at 6, ¶ 38]. Plaintiff's objection indicates that the requested information shows Harrison's specific infringing activities of a copyrighted work that will remain at issue, and the request is specifically limited to information evidencing the uploading and downloading that occurred between Harrison and the settling defendants *of only that work in this action only.*

### 3. **Possession, Custody or Control.**

Plaintiff's argument that the requested information is not in its possession, custody, or control, but rather in the possession, custody or control of IPP International UG is not a valid argument.

"It is the burden of the requesting party to prove that the producing party has the ability to obtain the documents in question." *Slabaugh v. State Farm Fire & Casualty Co.*, No. 1:12-cv-01020-RLY-MJD at 3-4 (S.D. Ind. Sept. 5, 2013) (citing *Stella v. LVMH Perfumes & Cosmetics*

*USA, Inc.*, No. 07 C 6509, 2009 WL 780890 (Mar. 23, 2009). When a producing party has already produced information it acquired from an entity with whom it has a legally recognized relationship, the producing party's ability to obtain similar documents is not at issue and "it is not necessary to defer to factors to postulate the closeness of the relationship[.]" *See E.g., Slabaugh* at 4. A party that demonstrates its ability to obtain the requested information and documents is in "control" of the materials requested. *Id.*

Plaintiff has produced and displayed sufficient control over other documents and electronically stored information evidencing Harrison's alleged infringing activity; namely: IPP International UG PCAP files allegedly showing Harrison connected to IPP International UG's servers and delivered computer file pieces of five of Plaintiff's copyrighted works; and, IPP International UG generated Technical Reports allegedly documenting the same [*See* Dkt. 134-1 – 134-6].

Additionally, Harrison's Request No. 19 sought: "[a] copy of the fully playable digital motion picture of "Pretty Back Door Baby" that correlates with/to the Unique Hash Number and was reassembled by your investigator." Def.'s Req. Prod. No. 19; *See* Ex. A. Plaintiff's Response to Request No. 19 provided: "Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request." Pl. Resp. Prod. No. 19; *See* Ex. A. Plaintiff complied with the Court's December 5, 2013 Discovery Order and produced the information. This Court should note that Plaintiff stated in its Rule 26(a) Disclosures that IPP Limited possessed "[c]opies [of the copyrighted work] reassembled by infringers" and that said copies "may be obtained from IPP Limited." *See* Exhibit E at 2, ¶ 5.[1]

---

[1] It is also worth noting that Plaintiff's Rule 26(a) Disclosures expressly state: "Other peer infringers that participated in the subject swarm – Possess information that they received as pieces of the subject movies from other peers in the swarm." *See* Ex. E at 2, ¶ 6.

The exact nature of Plaintiff's legal relationship with IPP International UG is unknown at this time because Plaintiff's Answers to Harrison's First Set of Interrogatories temporarily stonewalled Harrison's attempts to ascertain such information. However, Harrison does know the following: (i) Plaintiff's attorney, M. Keith Limpscomb, "negotiated the terms of Plaintiff's agreement with IPP International UG" and that "Plaintiff and IPP International UG have an oral agreement that was formed approximately 2.5 years ago," Pl.'s Resp. Interrog. No. 4, 5; *See* Ex. C; (ii) IPP International UG more than likely has a financial interest in the outcome of this litigation "entitled to a small portion of the proceeds from the resolution of this case in consideration for the services it provided," and may be "a fact witness who will testify that its technology detected that a person using Defendant's IP address was downloading and distributing Plaintiff's copyrighted works." *See Malibu Media, LLC v. John Doe*, No. 1:13-cv-06312, Dkt. 24-5 at 1-2 (N.D. Ill. Jan. 7, 2014); *See* Exhibit F at 1-2.

### 4. Rule 11(b) Question.

If IPP International UG is to receive proceeds in consideration for the services it has already **provid*ed***; and if the requested information is not in the possession, custody or control of Plaintiff or its attorneys; and in order to obtain it Plaintiff must pay a fee to IPP International UG to extract this information from its servers (i.e., provide additional services), on what basis did Plaintiff form the factual contentions of its complaint to institute and conduct the instant litigation? *See* Fed. R. Civ. P. 11(b).

This Court should compel Plaintiff to produce all documents, electronically stored information, and tangible things responsive to Harrison's Request No. 6, and order Plaintiff to pay Harrison the reasonable expenses, including attorney's fees, incurred in making this motion pursuant to Fed. R. Civ. P. 37(a)(5)(A).

**HARRISON'S REQUEST NO. 9.**

This Court should enter an order compelling Plaintiff to produce any and all DMCA notices by Plaintiff from January 1, 2012 to August 1, 2012 because Plaintiff's DMCA notices are not inaccessible because of undue burden or cost.

Harrison's Revised Request No. 9 requests:

Copies of any and all DMCA takedown notices issued by you and/or any and all individuals or entities acting on your behalf from January 1, 2012 to August 1, 2012. Def.'s Rev. Req. Prod. No. 9; *See* Exhibit G at 5.

Plaintiff's Revised Response to Request No. 9 provides:

Defendant revised his request to limit the time period in which Plaintiff sent DMCA takedown notices to April 1, 2012 through August 1, 2012. Plaintiff stands by its original objections and response to Request No. 9. However, Plaintiff will produce a weekly summary evidencing the volume of DMCA notices that it sent for the time period Defendant specified, April 1, 2012 through August 1, 2012. Pl.'s Rev. Resp. Prod. No. 9; *See* Exhibit H at 5.

Plaintiff's Response to Request No. 9 provides:

Plaintiff objects on the basis that this request is unduly burdensome. Indeed Plaintiff sends hundreds, if not thousands, of DMCA notices a month. Plaintiff will produce a weekly summary evidencing the volume of DMCA notices that it sends. Pl.'s Resp. Prod. No. 9; *See* Ex. A.

In order to alleviate any confusion regarding the time period of Harrison's Request No. 9, Harrison provides the following information. On November 19, 2013, Counsel for Harrison emailed Counsel for Plaintiff seeking confirmation in writing of the agreements reached regarding the parties' disputed discovery issues. Counsel for Harrison did not receive a response from Counsel for Plaintiff. On November 21, 2013, Counsel for Harrison emailed Counsel for Plaintiff advising that Harrison sought all DMCA notices sent by Plaintiff from January 1, 2012 to August 1, 2012 instead of April 1, 2012 to August 1, 2012. On November 26, 2013, Counsel for Harrison emailed Counsel for Harrison seeking written confirmation of the agreement

reached on November 19, 2013 and receipt of Counsel for Harrison's November 21, 2013 email. On November 26, 2013, Counsel for Plaintiff emailed Counsel for Harrison stating, "Gabe, your 11-21-13 email has been presented to my client for discussion and approval[.]" *See* Exhibit I. Harrison rightly seeks DMCA notices sent by Plaintiff for the period January 1, 2012 to August 1, 2012.

### 1. Public Accessibility of Plaintiff's DMCA Notices.

Google makes DMCA notices it receives available for viewing by linking to Chilling Effects (chillingeffects.org) at the bottom of its search page results. Neither Bing nor Yahoo allow the viewing of DMCA notices by linking to the actual DMCA notices, but Yahoo may submit DMCA notices it receives to Chilling Effects for public viewing. Twitter submits a large number of DMCA notices to Chilling Effects, as well.

Harrison has used Google and the Chilling Effects website to obtain a number of DMCA notices sent by Plaintiff, but as is apparent from the Chilling Effects archive, Plaintiff either did not send any DMCA notices prior to April 4, 2012, or Google, Twitter, Yahoo, and others did not submit DMCA notices sent by Plaintiff prior to April 4, 2012 to Chilling Effects. *See* Exhibit J.

### 2. Plaintiff's DMCA Notices Contain Extremely Valuable Information.

Plaintiff's DMCA notices contain important detailed information such as specifically named and targeted allegedly infringing URLs identified by Plaintiff. This sort of detailed information – indicative of Plaintiff's motives and efforts to remove infringing content, among other things – cannot be culled from "a weekly summary evidencing the volume of DMCA notices sent by Plaintiff." That in itself is reason enough to compel Plaintiff's production of the requested DMCA notices, but examining a series of DMCA notices sent by Plaintiff's Online

Marketing Manager to Twitter from June 19, 2012 to July 23, 2012 should convince this Court that, in any event, good cause exists to order Plaintiff's production of all DMCA notices for the requested period not available for public viewing by Harrison on chillingeffects.org.

### 3. Plaintiff's DMCA Notices to Twitter as Examples.

From June 19, 2012 to July 23, 2012, Plaintiff's Online Marketing Manager sent a series of DMCA notices to Twitter. *See* Ex. J. Plaintiff's Online Marketing Manager sent these DMCA notices because Twitter users were "distributing updates from X-Art without permission by removing them from the members area" and tweeting "links to another website where the infringing material is made available for display or download." *See e.g.* Exhibit K. These removals from the X-Art "members area" included "full length videos and images from X-Art.com." *See* Ex. K. Plaintiff's June 25, 2012 and July 3, 2012 DMCA notices to Twitter show that these removals and tweeted links occurred with respect to at least two of the additional copyrighted works Plaintiff seeks to place at issue in this case. *See* Exhibit L at 1; *See* Exhibit K at 5. And in its July 10, 2012 notice to Twitter, Plaintiff's Online Marketing Manager provides that a tweet was linking to a complete site rip of the X-Art website. *See* Exhibit M at 2. This information calls into question the mechanisms and amount of care Plaintiff used in securing X-Art.com and protecting its copyrighted works, and the credibility of Plaintiff's website security professionals.

### 4. Production of DMCA Notices for the Requested Period Is Not Unduly Burdensome.

The objecting party bears the burden of proving that a discovery request is improper. *See Slabaugh* at 2 (citing *e.g., Janssen v. Howse*, 09-CV-3340, 2011 WL 2533809 (C.D. Ill. June 27, 2011); *Cunningham v. Smithkline Beecham*, 255F.R.D. 474, 478 (N.D. Ind. 2009); *BASF Catalysts LLCv. Aristo, Inc.*, 2:07-CV-222, 2009 WL 187808 (N.D. Ind. Jan. 23, 2009)).

The above discussion shows that Plaintiff's undue burden objection is not valid because Plaintiff would only have to produce DMCA notices not already accessible to Harrison. Since Google is the most popular and widely used search engine, it is likely that the vast majority of DMCA notices Plaintiff sent for the requested period were to Google. Other search engines and social media sites provide links to DMCA complaint forms for online processing, making the submission and retention of DMCA complaint forms more convenient for copyright owners. The above discussion also shows that weekly summaries of the volume of DMCA notices Plaintiff sends would hinder Harrison's ability to obtain extremely valuable information relevant to Harrison's defenses and the subject matter of the action. *See* Fed. R. Civ. P. 26(b)(1). The month-long Security "Tweach" of X-Art.com revealed by the DMCA Notices sent by Plaintiff to Twitter is just one example of the importance to Harrison of the specific content contained the DMCA notices sent by Plaintiff.

This Court should compel Plaintiff to produce all DMCA notices for the requested period that are not available for public viewing by Harrison on chillingeffects.org, and order Plaintiff to pay Harrison the reasonable expenses, including attorney's fees, incurred in making this motion pursuant to Fed. R. Civ. P. 37(a)(5)(A).

## IV. CONCLUSION

"[T]he scope of discovery should be broad in order to aid in the search for truth." *Slabaugh* at 1 (citing *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) in turn citing to *Tice v. American Airlines, Inc.*, 192 F.R.D. 270, 272 (N.D.Ill.2000), and citing *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991) in support of the proposition). This Court should exercise its broad discretionary power over discovery matters, *See Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001) (citing *Kalis v. Colgate-*

*Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000)), and establish the broad scope of discovery by granting Harrison's Motion to Compel Discovery in order to aid him in the search for truth.

**WHEREFORE,** Defendant Michael Harrison respectfully moves this Court to enter an order granting his Motion to Compel Discovery and the relief requested in said Motion for the reasons explained and set forth more fully herein; and for all other relief just and proper in the premises.

        Respectfully Submitted,

        */s/ Gabriel J. Quearry*
        Gabriel J. Quearry, #30412-32
        gq@quearrylaw.com
        QUEARRY LAW, LLC
        386 Meridian Parke Lane, Suite A
        Greenwood, Indiana 46142
        (317) 285-9896 (telephone)
        (317) 534-3069 (facsimile)
        *Attorney for Defendant*
        *Michael Harrison*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Paul J. Nicoletti
NICOLLETI & ASSOCIATES, P.C.
paul@nicoletti-associates.com

        */s/ Gabriel J. Quearry*
        Attorney for Defendant