UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT INDIANA

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. <u>1:12-cv-01117-WTL-MJD</u> |
| | ) | |
| v. | ) | |
| | ) | |
| R. STEPHEN HINDS, TROY LAMB, | ) | |
| MICHAEL HARRIS, ROBERT JOHNSON, | ) | |
| MICHAEL HARRISON, JAMES DUNCAN, | ) | |
| HOWARD MCDONALD, and JOHN DOE 10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

Plaintiff, Malibu Media, LLC, by and through undersigned counsel, responds to Defendant's Motion to Compel and states:

**I.      INTRODUCTION**

On October 10, 2013 Defendant propounded his Requests for Production.  On November 11, 2013, Plaintiff served its responses to Defendant's Requests for Production which are attached hereto as Exhibit "A".  On January 9, 2014, Defendant moved to compel responses to Request for Production No. 6, 7, 9, 21, and 23.   Defendant's discovery requests seek documents that (a) are not in Plaintiff's possession, custody, or control; (b) do not exist; and to which (c) Plaintiff timely agreed to provide subject to a protective order, a motion for which is still pending with this Court.  For these reasons, as explained more fully below, Defendant's Motion to Compel should be denied in its entirety.

## II.    LEGAL STANDARDS

### a.    Documents Not In Plaintiff's Possession, Custody, Or Control

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b).   A party is only required to produce documents in its "possession, custody, or control…"  *See* Fed. R. Civ. P. 34(a).  "[A] party seeking production of documents bears the burden of establishing the opposing party's control over those documents." *See Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992). "Federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand."  *United States v. Approximately $7,400 in U.S. Currency*, 274 F.R.D. 646, 647 (E.D. Wis. 2011).  The Northern District of Illinois held that a responding party does not have legal entitlement to documents merely because the requesting party asserts that the responding party has an extensive professional relationship with a non-party.  *See Evan Law Grp. LLC v. Taylor*, 2011 WL 72715 at *10 (N.D. Ill. Jan. 6, 2011).  Such a request "completely circumvent[s] the protections afforded by Federal Rule of Civil Procedure 45."  *Id*.   In addition, "[t]he fact that a party could obtain a document if it tried hard enough…does not mean that the document is in its possession, custody, or control; in fact it means the opposite."  *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (Court held that control did not exist where a party could not order a non-party to surrender documents).

### b.    Documents That Do Not Exist

Discovery is limited to "nonprivileged matter[s] that [are] relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b). "District courts routinely deny motions to compel the

production of documents when the non-moving party represents that such documents do not exist." *See Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2010 WL 3119487 at * 5 (N.D. Ind., 2010); *see also Antoine v. Ramos*, 2010 WL 2000024 at * 1 (S.D. Ill., 2010) ("[t]he Court cannot compel defendants to produce documents that do not exist."); *see also Jinrun Gao v. Snyder Companies*, 2011 WL 3610365 at * 5 (C.D. Ill., 2011) (Court denied motion to compel because Defendant asserted that documents requested did not exist). A response that a document does not exist is "acceptable…unless [the moving party] establishes the existence of such documents." *See Fine Line Distributors, Inc. v. Rymer Meats, Inc.*, 1994 WL 376283 at * 4 (N.D. Ill., 1994)

     c.  <u>Waiver of Objection</u>

     While "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown," *See* Fed.R.Civ.P. 33(b)(4), "[e]ven where there is no showing of good cause, the objections are not waived if the delay is not substantial." *See Wilson v. Kautex*, 2008 WL 162645 at * 3 (N.D. Ind., 2008). "The imposition of waiver of objections as [a] sanction for untimely discovery responses is a harsh sanction[.]" *See Romary Associates, Inc. v. Kibbi LLC*, 2011 WL 4005346 at * 2 (N.D. Ind., 2011). In deciding whether to issue sanctions for discovery violations, the Seventh Circuit Court of Appeals instructed district courts to consider the prejudice to the party against whom the evidence is being offered, the ability of the party to cure the prejudice, the likelihood of disruption to the trial, and the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *See Romary Associates, Inc. v. Kibbi LLC*, 2011 WL 4005346 at *3 (N.D. Ind. Sept. 8, 2011) citing *Judson Atkinson Candies, Inc. v. LatiniHohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir.2008). "[I]f fact discovery is still open when the delay occurs, there is likely

no disruption to the litigation." *See Romary Associates, Inc. v. Kibbi LLC*, 2011 WL 4005346 (N.D. Ind., 2011).  In addition, the Northern District of Illinois has held that a party did to waive its objections when they objected after the discovery deadline but well before a motion to compel was filed.  *See Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook Cnty., Ill. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 28 (N.D. Ill. 1984).

III.   **ARGUMENTS**

A.   **Defendant's Request for Production No. 6 Seeks Documents That Are Irrelevant, Overbroad, And Not In Plaintiff's Possession, Custody, Or Control**

1.   The Nature of IPP's Evidence

IPP establishes a direct TCP/IP connection with a computer that is distributing a "piece" of Plaintiff's copyrighted work.  The "piece" is a packet of data.  The packet of data correlates to Plaintiff's copyrighted work because it has a unique cryptographic hash value.  Cryptographic hash values act as digital fingerprints.  They are long alpha-numeric codes.  Via the algorithms governing the hash system, hash values are capable of being calculated with the type of mathematical certainty and precision as 2 plus 2 equals 4.

IPP servers are synchronized to both an atomic clock and GPS clock.  IPP logs transactions between its servers and a person distributing a piece of a copyrighted work on a log file.  Each transaction is saved in what is called a PCAP.  A PCAP is an electronic recording of the transaction.  It is analogous to a video recording.  The software that IPP uses to create PCAPs is called TCPDump.  TCPDump is one of a handful of widely recognized forensically sound Packet Analyzers.   It is an open source free software program.  Each PCAP covering each transaction is stored on a WORM tape drive.  So too is the MySQL database log file to which the PCAP correlates.  WORM stands for "write once, read many."  IPP uses a WORM drive because

it is impossible to modify data after it is written onto a WORM drive.   In addition, it is impossible to delete any data, outside of destroying the tape drive itself.   Additionally, within twenty-four hours of a PCAP file's creation, a German government-issued time stamp is placed on the WORM drive.

Each month for Malibu Media, IPP logs millions of transactions globally.   Over 80,000 unique individuals infringe Malibu Media's works in the U.S. each month alone.   Each of these infringers connects to IPP's servers numerous if not hundreds or thousands of times.   The WORM tape drives used by IPP contain three terabytes of storage.   Three terabytes of storage can hold three million one megabyte photographs.    IPP goes through several of these tape drives each week.   IPP saves these WORM tape drives in a digital locker.   Its security systems pass the certification used by credit card companies.

PCAP files can be read by anyone with the equipment to read them.   The information contained in them can also be converted to word documents.   The PCAPs speak for themselves and conclusively establish that the infringing transaction occurred.   IPP charges Plaintiff to produce PCAP files.   At trial, Plaintiff intends to introduce one PCAP file for each copyrighted work as well as the log files associated with the Defendant.    Put another way, Plaintiff does not intend to introduce the thousands of PCAP files that evidence each infringing transaction committed by Defendant.   That evidence is contained in the log file which, as previously stated, is also simultaneously created and saved in the same way that the PCAPs are created.   To be clear, Plaintiff will produce to Defendant everything that it intends to introduce at trial.   And, Defendant can subpoena IPP to produce any other evidence that Defendant wants from IPP.

Plaintiff does not control IPP.   They do not have overlapping owners.   They are not in the same business.   IPP is nothing more than a regularly used third party vendor to Malibu Media.

2.      The Objectionable Discovery Related to IPP's Information

Defendant's Request for Production No. 6, seek documents that are not in Plaintiff's

possession, custody, or control but rather in IPP's possession, custody, or control.  Specifically,

Defendant seeks the technical and data reports for each IP address on Exhibit A of Plaintiff's

Third Amended Complaint.   As such, this request requires Plaintiff to not only produce

documents not in its possession, custody, or control, but to produce *thousands* of PCAP files that

evidence each infringing transaction committed by every IP address on Exhibit A of Plaintiff's

Third Amended Complaint.

> **Defendant's Request For Production No. 6:**  Copies of any and all documents, electronically stored information, and tangible things, including but not limited to technical and data reports, for each IP Address listed on Exhibit A of Plaintiff's Third Amended Complaint relating to the identification of those IP Addresses as infringing IP Addresses of your copyrighted work, "Pretty Back Door Baby," and the alleged "BitTorrent swarm" that those IP Addresses participated in and which formed the basis of your contributory copyright infringement claims against any and all individuals in this case.
>
> **Plaintiff's Response**: Plaintiff has elected to not pursue its claim for contributory infringement.  In light of the foregoing, Plaintiff objects on the basis that the request seeks documents that are neither relevant nor likely to lead to admissible evidence.  Plaintiff objects on the basis that this request is overbroad insofar as it seeks information which would evidence third party infringements as opposed to just Defendant's infringements.   Plaintiff avers that the information requested herein is not in its possession, custody or control, but rather in IPP International UG's possession, custody or control.  Further, IPP International UG charges a fee to third parties for extracting data from its servers.  Notwithstanding the foregoing objections and without waiving same, Plaintiff will produce the PCAP files which demonstrate that a computer using Defendant's IP Address connected to IPP International UG's servers and delivered a piece of a computer file that contains a copy of each of the copyrighted works at issue in this case as evidenced by its unique cryptographic hash value.

Defendant's Request for Production No. 6 seeks all documents and electronically stored

information including but not limited to technical and data reports, for each IP Address listed on

Exhibit A of Plaintiff's Third Amended Complaint relating to the identification of those IP Addresses as infringing IP Addresses of Plaintiff's copyrighted work, "Pretty Back Door Baby."

Plaintiff first objects on the basis that this request seeks information that is irrelevant and overbroad.   Indeed, Plaintiff has already decided that it will not be seeking a claim of contributory infringement.   Therefore, any evidence of third party infringements is irrelevant. Additionally, because Plaintiff is only pursuing a claim of direct infringement against Defendant, third-party infringements have no bearing on any issue or relevant fact in this case.   Even if the Court decided that third party infringements were relevant in this case, the Federal Rules demand that discovery not be permitted when "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  *See* Fed. R. Civ. P. 26(b)(C).

"In ruling on a discovery motion, courts consider the totality of the circumstances, weighing the value of material sought against the burden of providing it."   *Kimberly-Clark Worldwide, Inc v. First Quality Baby Products, LLC*, 2011 WL 1343166 at * 1 (E.D. Wis., 2011), quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir.2002).   Defense counsel's request is not only overbroad, but also a highly unrealistic and unduly burdensome request.   As previously explained, for Malibu Media, IPP logs millions of transactions globally each month.   For each hash value, each infringer within the swarm connects to IPP's servers numerous if not hundreds or thousands of times.   For each time an infringer connects and transacts with IPP's servers, a PCAP and technical report can be produced.   However, a PCAP for every transaction involving one hash value could total into the thousands for the defendant *alone*.   This is why Plaintiff will only introduce at trial one PCAP for each work infringed upon.

Further, IPP charges Plaintiff a fee to extract information from its servers.  Therefore, in this one request alone, Plaintiff would have to spend several if not tens of thousands of dollars to produce this information.

Plaintiff also objects on the basis that the documents requested are not in Plaintiff's possession, custody, or control.  A party is only required to produce documents in its "possession, custody, or control…"  *See* Fed. R. Civ. P. 34(a).  "Federal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand."  *United States v. Approximately $7,400 in U.S. Currency*, 274 F.R.D. 646, 647 (E.D. Wis. 2011).   "[A] party seeking production of documents bears the burden of establishing the opposing party's control over those documents."  *See Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 236 (N.D. Ind. 1992).  Defendant claims that the subject documents are in Plaintiff's control but fails to set forth any specific facts or arguments to support this claim.  Specifically, Defendant has provided no evidence to support the claim that Plaintiff is in control, has a legal right to obtain, or could obtain such documents on demand. The mere assertion that Plaintiff has an ongoing business relationship or even a contractual relationship with IPP is not sufficient to establish Plaintiff's control over these documents.  *See Evan Law Grp. LLC v. Taylor*, 2011 WL 72715 at *10 (N.D. Ill. Jan. 6, 2011) (Court held that a responding party does not have legal entitlement to documents merely because the requesting party asserts that the responding party has an extensive professional relationship with a non-party.)  Furthermore, such a request "completely circumvent[s] the protections afforded by Federal Rule of Civil Procedure 45."  *Id.*  "The fact that a party could obtain a document if it tried hard enough…does not mean that the document is in its possession, custody, or control; in

fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) (holding that control did not exist where a party could not order a non-party to surrender documents). "The existence of this legal right of control depends upon the relationship between the parties, usually arising from statute, affiliation or employment." *Technical Concepts, L.P. v. Cont'l Mfg. Co.*, 1994 WL 262119 at * 1 (N.D. Ill., 1994) (Even where it was clear that a business relationship existed between a party and a foreign non-party, control did not exist because there was no employment or superior-subordinate relationship or affiliation between the party and nonparty). Plaintiff cannot demand that IPP surrender the documents requested. In fact, in order to produce such documents Plaintiff would need to compensate IPP to extract and compile this data. Malibu Media and IPP do not have overlapping owners and are not in the same business. They are two separate entities and their only connection to one another is the professional business relationship wherein Malibu Media compensates IPP for its global anti-piracy services. IPP is nothing more than a regularly used third party vendor to Malibu Media. Beyond this business agreement, there is no link that the two separate entities have with one another. To assert that Plaintiff has control over IPP's documents merely because of the existence of a service agreement between Plaintiff and IPP is erroneous.

Accordingly, Plaintiff stands by its objections and reasserts that the documents requested are not in its possession, custody, or control.

### B. Plaintiff's Notified Defendant And This Court Of Its Amended Response to Defendant's Request for Production No. 7

**Request for Production No. 7:** Copies of any and all contracts, modifications of and amendments to contracts, bills of sale, purchase orders, receipts, invoices, billing statements, and the like memorializing or reflecting any agreement or other arrangement, and the like between you, any and all parent, sister, subsidiary, affiliated, or otherwise related entities of you, X-Art, X-Art affiliates and X-Art affiliated programs (collectively, "you") and any and all individuals or entities related to your inquiring, negotiating, hiring, rewarding, retaining, employing, or

otherwise arranging to compensate those individuals or entities regarding the online security of your websites, the unauthorized reproduction of hard copies and/or digital copies your copyrighted works, and/or to otherwise create, develop, implement, or maintain any sort of technological securities, safeguards, protective measures, mechanisms, and the like to cease, prevent, or curtail the online infringement of your copyrighted works

**Plaintiff's Response**: Plaintiff will produce any documents in its possession, custody or control deemed responsive to this request.

Defendant's Request for Production No. 7 seeks production of all documents memorializing or reflecting any agreement between Plaintiff and all individuals relating to the compensation of individuals regarding the online security of Plaintiff's website. Plaintiff agreed to produce any documents in its possession, custody, or control deemed responsive to this request. On December 5, 2013 this Court ordered Plaintiff to produce any documents it agreed to produce in response to Defendant's Request for Production of Documents by December 13, 2013. However, on December 4, 2013 undersigned emailed defense counsel indicating that Plaintiff intended to produce the documents responsive to request No. 7 subject to a protective order, thereby amending its response to include this objection. *See* Exhibit B. Subsequently, Plaintiff included this request in its Motion for a Protective Order filed on December 6, 2013. [CM/ECF 143]. Thus, both the Defendant and this Court were notified of Plaintiff's amended response.

Defendant argues that by not asserting the objection in Plaintiff's initial response it was waived. While "[a]ny ground not stated in a timely objection is waived unless the party's failure to object is excused by the court for good cause shown," *See* Fed.R.Civ.P. 33(b)(4), "[e]ven where there is no showing of good cause, the objections are not waived if the delay is not substantial." *See Wilson v. Kautex*, 2008 WL 162645 at * 3 (N.D. Ind., 2008). "The imposition of waiver of objections as [a] sanction for untimely discovery responses is a harsh sanction[.]" *See Romary Associates, Inc. v. Kibbi LLC*, 2011 WL 4005346 at * 2 (N.D. Ind., 2011). In

deciding whether to issue sanctions for discovery violations, the Seventh Circuit Court of Appeals instructed district courts to consider the prejudice to the party against whom the evidence is being offered, the ability of the party to cure the prejudice, the likelihood of disruption to the trial, and the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

> In general, the Seventh Circuit Court of Appeals has instructed district courts to consider four factors when deciding whether to sanction discovery violations: (1) the prejudice or surprise to the party against whom the evidence is being offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.

See *Romary Associates, Inc. v. Kibbi LLC*, 2011 WL 4005346 at *3 (N.D. Ind., 2011).  Using the Seventh Circuit's standard, a waiver of Plaintiff's objection is *highly* unwarranted.  Indeed, the Defendant has not been prejudiced by Plaintiff's assertion of the objection; in fact, Defendant was notified of the objection well before the discovery deadline and prior to filing his Motion to Compel.  See *Romary Associates, Inc. v. Kibbi LLC*, 2011 WL 4005346 (N.D. Ind., 2011) ("if fact discovery is still open when the delay occurs, there is likely no disruption to the litigation."); See also *Bd. of Educ. of Evanston Twp. High Sch. Dist. No. 202, Cook Cnty., Ill. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 28 (N.D. Ill. 1984) (holding that defendants did not waive their objections when they objected after discovery deadline passed but before plaintiffs filed a motion to compel).  Further, Plaintiff's delay was not willful or in bad faith.  In fact, it was set forth in good-faith as Plaintiff promptly notified defense counsel and this Court in its Motion for Entry of a Protective Order.  Accordingly, this objection has not been waived.

To briefly summarize Plaintiff's Motion for Entry of a Protective Order, the documents requested contain the private information of Plaintiff's employees.  It is no secret that anti-copyright blogs and websites follow Plaintiff's cases.  Further, bloggers have made a concerted

and habitual effort to defame and harass Plaintiff. Many have used the internet and social media to make threats of physical harm, make death threats, assert false and embarrassing allegations against Plaintiff, create offensive videos, and post pictures of attorneys' children. These individuals have publicized Plaintiff's residential address next to scathing blog posts and have falsely accused Plaintiff of producing child pornography. As such, Plaintiff has good cause for a protective order to shield its employees from similar harassment. And therefore, a protective order is warranted and proper.

      **C.**    <u>Defendant's Request for Production No. 9 Is Unduly Burdensome,</u> <u>Irrelevant, And Intended to Harass Plaintiff</u>

**<u>Original Request for Production No 9.</u>** Copies of any and all DMCA Take-Down Notices issued by you and/or any and all individuals or entities acting on your behalf.
**<u>Plaintiff's Response</u>**: Plaintiff objects on the basis that this request is unduly burdensome. Indeed Plaintiff sends hundreds, if not thousands, of DMCA notices a month. However, Plaintiff will produce a weekly summary evidencing the volume of DMCA notices that it sends.
**<u>Revised Request for Production No 9.</u>** Copies of any and all DMCA Take-Down Notices issued by you and/or any and all individuals or entities acting on your behalf from April 1, 2012 through August 1, 2012.
**<u>Plaintiff's Revised Response</u>**: Plaintiff objects on the basis that this request is unduly burdensome. Indeed Plaintiff sends hundreds, if not thousands, of DMCA notices a month. However, Plaintiff will produce a weekly summary evidencing the volume of DMCA notices that it sent between April 1, 2012 through August 1, 2012.

Defendant's original Request for Production No. 9 sought copies of all DMCA Take-Down Notices Plaintiff has ever issued. Plaintiff objected on the basis that the request was unduly burdensome because Plaintiff sends out hundreds, if not thousands of notices a month. However, Plaintiff agreed to produce a weekly summary evidencing the volume of DMCA notices it sends. Thereafter, Defendant revised his request to seek all DMCA Take-Down Notices Plaintiff issued between April 2, 2013 through August 1, 2012. Plaintiff again objected for the same reasons but nevertheless agreed to provide a weekly summary evidencing the

volume of DMCA notices sent between April 1, 2013 through August 1, 2012.   Further, undersigned, in an effort to resolve the discovery dispute, notified defense counsel that these DMCA notices were available for viewing on Google's transparency report.   Yet again, for the third time, Defendant revised his request to instead seek DMCA Take-Down Notices issued by Plaintiff between January 1, 2012 through August 1, 2012.   At this juncture, it became apparent that Defendant set forth this discovery request for the sole purpose of harassing Plaintiff. Defendant is well aware that to Google alone, Plaintiff has sent over 290,000 DMCA notices since April 2012.   Defendant argues that the infringing URLs, is information which cannot be retained from a weekly summary.   However, as Defendant stated in his Motion, Google makes DMCA notices it receives available for viewing in its online transparency report.   Defendant also argues that the infringement of Plaintiff's content "calls into question the mechanism and amount of care Plaintiff used in securing X-Art.com and protecting its copyrighted works, and the credibility of Plaintiff's website security professional." [CM/ECF 151].   However these documents do nothing to advance that argument because DMCA notices have no bearing on the credibility of Plaintiff's website security professionals.   To the extent that Defendant seeks to determine if Plaintiff enforces its copyright protections, this lawsuit along with Plaintiff's 290,000 DMCA notices that it sent to Google sufficiently satisfies that concern.   Production of the DMCA notices do not even relate to any claim or defense in this case, particularly because most of the months for which Defendant seeks DMCA notices fall outside of the Defendant's period of recorded infringement.   Accordingly, Defendant's Motion should be denied as it pertains to this request.

### D.   Request For Production Nos. 21 and 23 Seek Documents That Do No Exist

**Request for Production No. 21:** Copies of any and all documents, electronically stored information, or tangible things evidencing statistics and the like for the

number of times paying subscribers or other authorized paid users of online website services provided by you, any and all parent, sister, subsidiary, affiliated, or otherwise related entities of you, X-Art, X-Art affiliates and X-Art affiliated programs (collectively, "you") have viewed the copyrighted work, "Pretty Back Door Baby," through your online website services.

**Plaintiff's Response**: Plaintiff will produce a document, if it exists, which contains the number of views of "Pretty Back Door Baby" from subscribers on its website.

Defendant's Request for Production No. 21 seeks documents and electronically stored information evidencing statistics for the number of times paying subscribers have viewed the copyrighted work "Pretty Back Door Baby." Plaintiff's response states that it will produce a document, if it exists, which contains the number of views of "Pretty Back Door Baby." However, after a good-faith inquiry, Plaintiff learned that no such documents exist. On December 12, 2013, undersigned notified defense counsel of this development via email. *See* Exhibit C.

Defendant argues that Plaintiff's response merely states "no such documents exist" and fails to address any electronically stored information. This is a meritless argument based purely on semantics. As Defendant stated, Plaintiff is well aware that the Federal Rules require the production of documents and electronically stored information. Plaintiff's response intends to include documents in all forms, electronic or otherwise. Nevertheless, the response is the same – no such documents exist.

Next, Defendant argues that it is reasonable to assume that Plaintiff's operation of the X-Art website is sophisticated. And as such, these documents must exist. However, Defendant has cited no law or case law detailing this "reasonable assumption" standard. In fact, "[d]istrict courts routinely deny motions to compel the production of documents when the non-moving party represents that such documents do not exist." *See Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2010 WL 3119487 at * 5 (N.D. Ind., 2010); *see also Antoine v. Ramos*, 2010

14

WL 2000024 at * 1 (S.D. Ill., 2010) ("[t]he Court cannot compel defendants to produce documents that do not exist."); *see also Jinrun Gao v. Snyder Companies*, 2011 WL 3610365 at * 5 (C.D. Ill., 2011) (Court denied a motion to compel because Defendant asserted that documents requested did not exist). To the extent that Defendant believes Plaintiff's response is untruthful, the Court should find Plaintiff's response "acceptable…unless [Defendant] establishes the existence of such documents. *See Fine Line Distributors, Inc. v. Rymer Meats, Inc.*, 1994 WL 376283 at * 4 (N.D. Ill., 1994). Defendant has provided no basis or support for why he believes that these documents exist. Thus he has failed to establish the existence of such documents. For the foregoing reasons, this Court should deny Defendant's Motion as it pertains to this request.

Defendant's Request for Production No. 23 also seeks documents that do not exist. As such, they cannot be produced for the same reasons set forth above.

> **Request for Production No. 23:** Copies of any and all documents, electronically stored information, or tangible things evidencing or containing information relating in any way to the media access control ("MAC") addresses for each and every IP Address designated on Exhibit A of Plaintiffs Third Amended Complaint.
> **Plaintiff's Response**: Plaintiff objects on the basis that the request seeks documents that are neither relevant nor likely to lead to admissible evidence. Further, Plaintiff objects on the basis that this request is overbroad insofar as it seeks information which would evidence third party infringements as opposed to just Defendant's infringements. Notwithstanding the foregoing objections and without waiving same, Plaintiff will produce all documents in its possession, custody or control deemed responsive to this request as it pertains to Defendant Michael Harrison, if any such documents exist.

Defendant's Request for Production No. 23 seeks all documents relating to the media access control ("MAC") addresses for all IP addresses on Exhibit A of Plaintiff's Third Amended Complaint. Plaintiff objects on the basis that this request is irrelevant and overbroad. Nevertheless, Plaintiff agreed to produce all documents in its possession, custody or control

deemed responsive to this request as it pertains to Defendant Michael Harrison, if any such documents exist.

Because MAC address can be easily altered or manipulated, Plaintiff does not request MAC addresses from Internet Service Providers ("ISP").  However, at times, an ISP voluntarily provides this information in its response to Plaintiff's subpoena.  Thus, any document in existence in Plaintiff's possession, custody, or control containing a MAC address would have been in the ISP's subpoena response.  In this case, the ISP did not include any MAC addresses in its response to Plaintiff's subpoena, and as such, no document referencing MAC addresses exist. Defendant can easily see this because, pursuant to this Court's December 5, 2013 Minute Order, Plaintiff provided Defendant with the ISP response.  *See* Exhibit D.  Accordingly, Plaintiff does not have any document or electronically stored information that contains a MAC address for any of the IP addresses in Exhibit A of Plaintiff's Third Amended Complaint.  When defense counsel emailed undersigned regarding this dispute, undersigned further clarified that no such document exists.  *See* Exhibit E.  Because this Court cannot compel Plaintiff to produce documents that do not exist, Defendant's Motion to Compel should be denied as it pertains to this request.

## IV.    CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel in its entirety.

Dated:  February 6, 2014

Respectfully submitted,

NICOLETTI & ASSOCIATES, PLLC

By:     /s/ *Paul J. Nicoletti*
Paul J. Nicoletti, Esq. (P44419)
36880 Woodward Ave, Suite 100
Bloomfield Hills, MI 48304
Tel:  (248) 203-7800
Fax:  (248) 203-7801
E-Fax: (248) 928-7051
Email:  paul@nicoletti-associates.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:     /s/ *Paul J. Nicoletti*