IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| Plaintiff, | : | |
| v. | : | |
| **MICHAEL HARRISON,** | : | |
| Defendants. | : | |

---

**DEFENDANT MICHAEL HARRISON'S RESPONSE TO PLAINTIFF'S PETITION FOR FEES AND EXPENSES [CM/ECF 181]**

---

Pursuant to the Court's Order On Motion To Compel [Dkt. 179], Defendant Michael Harrison ("Harrison"), by and through undersigned counsel, respectfully submits his Response to Plaintiff Malibu Media's ("Plaintiff") Petition for Fees and Expenses Pursuant to the Court's Order of May 1, 2014 ("Petition for Fees and Expenses"). Defendant's Motion to Compel was substantially justified and this Court should not award Plaintiff any fees and expenses for the reasons set forth and explained in more detail below.

I.  **PLAINTIFF IS PETITIONING THE COURT FOR FEES AND EXPENSES CAUSED BY PLAINTIFF'S OWN DISCOVERY FAILURES.**

| TIME | DESCRIPTION | BY | AMOUNT |
|---|---|---|---|
| 1.3 | Teleconference with attorney Gabe Quearry regarding Defendant's requests to produce and Plaintiff's responses. | Partner | $390.00 |
| 1.7 | Draft positional statement prior to telephonic hearing. | Associate | $382.50 |
| 1.1 | Telephonic hearing before the Honorable Judge Dinsmore with opposing counsel regarding Defendant's requests to produce. | Partner | $330.00 |

1

A.     Plaintiff seeks fees and expenses in the amount of $390.00 for a teleconference that Counsel for Harrison and Counsel for Plaintiff conducted in good faith in order to discuss and resolve discovery disputes.

The teleconference was held on November 19, 2013 and later that same day Counsel for Harrison sent Counsel for Plaintiff an email detailing the results of the teleconference and requesting that Counsel for Plaintiff confirm by reply email the agreements of the parties pertaining to Plaintiff's discovery responses. *See* Gabriel J. Quearry's November 19, 2013 email to Paul Nicoletti (Exhibit A). Counsel for both parties worked well to resolve a number of disagreements, narrowed the remaining discovery disputes to a select few, and agreed that they would further cooperate to resolve remaining disputes. *See* Ex. A (E.g., "I appreciate your cooperation in resolving a number of the discovery issues we addressed."); ("You will clarify with Plaintiff what information contained in the requested documents qualifies as trade secrets and confidential commercial information and how production would subject Plaintiff to the risk of misappropriation. After clarifying this issue with Plaintiff, you will inform me regarding Plaintiff's position in order to reach a resolution."); ("Any issue not agreed to during our 11/19/13 10:00 a.m. telephone conference or to be raised before Magistrate Judge Dinsmore during the 11/19/13 telephonic status conference, which was reserved for clarification or decision, will be addressed and an outcome determined by November 26, 2013.").

Plaintiff's Responses to Harrison's First Request for Production opens with an introductory Statement of Willingness to Cooperate: "Counsel for Plaintiff is prepared to discuss with counsel for Defendant the objections set forth below for the purpose of resolving any disputes that may arise over the response to the requests for production without the need for intervention by the Court." It is astounding that Plaintiff seeks fees and expenses for a

teleconference that was conducted in good faith and in a spirit of cooperation, *yielded positive results*, and ended with counsel for both parties agreeing to take further action to resolve their remaining disputes. *See* Dkt. 141 ("MINUTE ORDER for proceedings held before Magistrate Judge Mark J. Dinsmore: Status Conference held on 11/19/2013. The parties discussed the status of and future plans for discovery. The parties are attempting to resolve issues they have with each others' discovery responses.")

B.  Plaintiff seeks fees and expenses in the amount of $712.50 for drafting the positional statement and participating in the December 3, 2013 S.D. Ind. L-R. 37-1 Conference, which Counsel for Harrison requested **primarily because of Plaintiff's unjustified delays in providing discovery:**

> *(i)  Plaintiff's production of discovery was twenty-one (21) days past due;*
>
> *(ii)  Despite requests made by Counsel for Harrison following the November 19, 2013 teleconference, Plaintiff would not provide or stipulate to a deadline for producing the discovery materials Plaintiff either agreed to produce in its responses or subsequently agreed to produce during the November 19, 2013 teleconference.*

During the parties' December 3, 2013 S.D. Ind. L.R. 37-1 Conference, the Magistrate Judge ordered Plaintiff to produce all documents it agreed to produce, including all documents responsive to Harrison's Request No. 7, on or before December 13, 2013. *See* Dkt. 142[1] ("On or before December 13, 2013, Plaintiff is to produce any documents it has agreed to produce in response to Defendant's Request for Production of Documents. On or before December 6, 2013,

---

[1] According to Counsel for Harrison's calendar, Paul J. Nicoletti's December 3, 2013 email to Gabriel J. Quearry, and Courtroom Deputy Nancy Rassbach's December 2, 2013 email, Docket Entry 142 for Civil Docket For Case #: 1:12-cv-01117-WTL-MJD incorrectly states that the Telephone Conference for proceedings held before Magistrate Judge Mark J. Dinsmore took place on December 4, 2013 rather than December 3, 2013. *See* Paul J. Nicoletti's December 3, 2013 email to Gabriel J. Quearry providing: "Gabe, in accordance with Judge Dinsmore's verbal ruling this morning…" (Exhibit B); *See* Ex. C.

Plaintiff is to produce any responses to its subpoenas to any Internet Service Providers in this case in response to Defendant's Request for Production No. 8[.]"); *See* Courtroom Deputy Nancy Rassbach's December 2, 2013 Email Scheduling S.D. Ind. L.R. 37-1 Conference for December 3, 2013 at 10:00 a.m. (Exhibit C).

Plaintiff is not entitled to an award of fees and expenses incurred by Plaintiff resulting from its own unexcused delays and failures in providing Harrison with his requested discovery.

## II. EACH REQUEST FOR PRODUCTION HARRISON MOVED TO COMPEL WAS SUBSTANTIALLY JUSTIFIED.

1. Harrison's Motion to Compel as to Request No. 6 was substantially justified because at all times relevant to the motion to compel, the contributory infringement claim served as basis of relevance for Harrison's Request No. 6. Harrison's motion to compel Request No. 6 was substantially justified for each of the reasons explained in his Objections to Magistrate's Order Denying Motion to Compel Discovery ("Objections to Magistrate's Order"), which Harrison incorporates by reference and makes a part of this response as if fully restated herein. Dkt. 180.

At all times Plaintiff and Harrison were briefing Harrison's Motion to Compel, the issue of whether or not the Court would permit Plaintiff to withdraw its contributory copyright infringement claim by granting Plaintiff's Motion for Leave to Amend the Third Amended Complaint ("Motion for Leave to Amend") remained up in the air. The Court took the issue under advisement on October 31, 2013 and did not decide the issue until March 7, 2014 – six days *after* Harrison filed his Reply in Support of Motion to Compel. *See* Dkt. 163; *See* Dkt. 164.

Plaintiff acts as if the Court rubber-stamped Plaintiff's "withdraw" of the contributory infringement claim immediately upon Plaintiff's stated intention to do so. *See* Dkt. 181 at 3 ("Moving to compel production of evidence pertaining to withdrawn claims and asserting

4

arguments that lack substance in support thereof is indicative of a lack of substantial justification for Defendant's Motion to Compel."). However, Harrison contested Plaintiff's attempt to withdraw its contributory infringement claim through its Third Amended Complaint because:

(a) Plaintiff's Fourth Amended Complaint added five additional counts of direct copyright infringement against Harrison;

(b) Plaintiff's Fourth Amended Complaint subjected Harrison to potential liability for statutory damages in the amount of $900,000 for six movies instead of $150,000 in potential liability for one movie;

(c) Under binding Seventh Circuit case law directly on point – namely, *Trustmark Insurance Company v. General & Cologne Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005) – Plaintiff should have been prohibited from amending its Third Amended Complaint after expiration of the trial court's scheduling order deadline and did not meet the "good cause" standard because the dates contained in the six Technical Reports attached to Harrison's Response in Opposition demonstrate that Plaintiff actually knew about the alleged five additional infringements prior to the filing of its original complaint on August 14, 2012. Plaintiff held additional claims of direct infringement in its back pocket for future use against one if not all of the eleven joined Doe Defendants in the event any of them turned out to be a "holdout" defendant. *See* Dkt. 134.

Indeed, the specific language of the Magistrate Judge provides that the contributory infringement claim "can *no longer* serve as the basis for Defendant's claim with regard to the relevance of these documents." Dkt. 179 at 1. This means that the contributory infringement claim necessarily served as a basis for Harrison's claim with regard to the relevance of the documents until the Court granted Plaintiff leave to amend and directed the Clerk to file Plaintiff's Fourth Amended Complaint and attached exhibits. *See* Dkt. 164, 165.

Plaintiff's statement that Harrison asserted arguments lacking substance in support of a withdrawn claim is obviously ridiculous. The Magistrate Judge never states that Harrison's relevance argument based on the contributory infringement claim lacks substance. Plaintiff's conflating the Magistrate's assessment of one argument with his assessment of another is a disingenuous sleight of hand. Plaintiff knows full well that Harrison posited a genuine dispute

5

for the reasons stated in his Objections to Magistrate's Order, and because the contributory infringement claim remained in existence at all times relevant to Harrison's Motion to Compel and at all times served as an unquestionable basis for the relevance of Harrison's request.

Perhaps Plaintiff would have legs to stand on had the Court granted Plaintiff's Motion for Leave to Amend at any time before Harrison filed his motion and/or reply in support of Request No. 6.

2.      On December 3, 2013, the Court ordered Plaintiff to produce all documents it agreed to produce by on or before December 13, 2013.  Plaintiff agreed to produce all documents responsive to Request No. 7 ***prior to the Court's order***.  Plaintiff did not "amend" its response to Request No. 7 ***until after the Court ordered Plaintiff's production for Harrison's Request***.  On December 4, 2013 – one day after the Court ordered production of Request No. 7 – Counsel for Plaintiff "amended" its response to Request No. 7. by email to Counsel for Harrison:

> My client would like to add the documents requested under No. 7 to the list of documents that we will provide subject to a protective order. Attached is a Stipulated Protective Order that Plaintiff would like to use for Document Requests No. 1, 2, and 7. Please let me know if you find this Order acceptable by 5:00 p.m. tomorrow. *See* Paul J. Nicoletti's December 4, 2013 email to Gabriel J. Quearry (Exhibit D).

Harrison's position, as briefly articulated in his Motion to Compel, was that Plaintiff was required to act on the Court's order. Counsel for Plaintiff rightly viewed the Magistrate Judge's December 3, 2013 verbal ruling as a court order: "Gabe, in accordance with Judge Dinsmore's verbal ruling this morning…" *See* FN1; *See* Ex. B.  Harrison simply made the argument that Plaintiff waived its ability to amend its response to Request No. 7 following the Court's order.

If counsel for both parties viewed the Magistrate Judge's verbal ruling as an enforceable order and December 3, 2013 as the effective date of the Order, how was Harrison not substantially justified in moving to enforce the Order as to Request No. 7; or, at least did not

6

posit a genuine dispute in taking the position that Plaintiff waived the ability to request a protective order after the Court ordered Plaintiff to submit the documents?

3. Following the November 19, 2013 teleconference, Counsel for Harrison emailed Counsel for Plaintiff regarding, among other things, the issue of DMCA takedown notices:

> You raised the issues of cost and volume and stated that you would check with Plaintiff and the contractor who sends DMCA Notices for Plaintiff regarding the cost and volume issues of producing the DMCA Takedown Notices according to my revised request. After you receive this information from Plaintiff you will contact me in order to finalize a resolution on this issue. *See* Ex. A.

Counsel for Plaintiff emailed Harrison's Counsel on November 26, 2013 stating, "Gabe, your November 19, 2013 email has been presented to my client for discussion and approval. I hope to have a response to you by the close of business on Friday. Thank you." *See* Paul J. Nicoletti's November 26, 2013 email to Gabriel J. Quearry (Exhibit E). On November 29, 2013 Counsel for Plaintiff emailed Counsel for Harrison: "Gabe, attached as promised is Plaintiff's response to the discovery issues addressed in your email." *See* Paul J. Nicoletti's November 29, 2013 email to Gabriel J. Quearry (Exhibit F).

Rather than offering assessments of cost and volume issues concerning production of DMCA takedown notices as Plaintiff promised, which would have gone a long way in resolving the dispute regarding Plaintiff's undue burden objection, Plaintiff merely repeated word-for-word its same objection to the request. *See* Plaintiff's Position With Regard To Discovery Dispute, November 29, 2013 (Exhibit G).

Plaintiff ***never*** provided an estimated figure regarding cost of production or a description of the work required for production. Had Plaintiff done so as promised prior to the motion, Plaintiff's objection could have been properly evaluated and resolved absent court intervention; had Plaintiff done in its Response to Harrison's Motion to Compel, Harrison's moving to compel

7

Request No. 9 may have lacked substantial justification by failing to posit a genuine dispute upon which reasonable persons could disagree. But Plaintiff never went beyond merely providing an unsubstantiated number of notices it claims were sent. *See* Dkt. 157 at 13 (where Plaintiff states that it sent over 290,000 DMCA takedown notices to Google alone since April 2012); *See* Dkt. at 4 FN2 ("Plaintiff did not specify how many notices were sent between April and August 2012"),

*A finding that Plaintiff met its initial burden under Rule 26(b)(2)(C) is never made in the Order on Motion to Compel*. *See* Fed. R. Civ. P. 26(b)(2)(B) ("On motion to compel discovery or for protective order, *the party from whom discovery is sought* must show that the information is not reasonably accessible because of undue burden or cost. *If that showing is made*, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C)").

Apparently, the Court does not make it there because Harrison jumps in the waters of relevancy and only gets a little bit wet.

But a woman cannot be a little bit pregnant. "Either it is or it ain't." Something is either relevant or is not, and a finding that documents have "marginal relevance" cannot mean that Harrison failed to make "even a colorable initial showing as to relevance." *See* Dkt. 179 at 3-4 (where "exceedingly marginal," "marginal at best," and "marginal" exist on the Court's plane of (ir)relevance); *See West v. Miller*, No. 05C4977, 2006 WL 2349988, *2 (N.D. Ill. Aug. 11, 2006) (Making even a "colorable initial showing as to relevance," is enough to shift the burden of showing that the request is improper to the party objecting to the discovery request). In a strange but revealing twist, the Court goes on to acknowledge that the DMCA notices publicly available to Harrison are already enough to accomplish his stated defense of calling into question

8

the amount of care Plaintiff used in securing its website and protecting its copyrighted works. *See* Dkt. 179 at 4 ("Defendant argues that the information calls into question the amount of care Plaintiff used in securing its website and protecting its copyrighted works. However, Defendant fails to demonstrate why he needs more than what is publicly available to accomplish this.").

It is plainly obvious that Harrison was substantially justified in moving to compel production of relevant DMCA notices, and, additionally, that the determination regarding the relevance of the documents to Harrison's stated defense was improperly removed from the province of the finder of fact.

4. Moving to compel production for Request Nos. 21 and 23 was substantially justified because Harrison presented evidence of screen shots from the X-Art website showing that members of the site must affirmatively command downloads of the movies, and that members provided ratings of the individual six movies at issue in this case. *See* Dkt. 163 at 9-10, Ex. A. Even (free) web hosts for blogging software and other website publishing platforms make statistics available and easily accessible for beginner users regarding number of page views, website hits by visitors' specific geographic vicinities, and the number of times items offered for downloaded have been downloaded. The insert below from https://bandcamp.com/artists is just one example of how ***common the existence*** of such comprehensive statistical analysis tools are for website users and owners.



The Magistrate Judge states, "Defendant does not provide the Court with any evidence to suggest that Plaintiff's representation is not true," and only addresses Harrison's argument that Plaintiff may be playing word games. *See* Dkt. at 4. However, the Magistrate Judge does not address and makes no finding as to the evidence and arguments Harrison presented in Exhibit A of his Reply in Support of Motion to Compel. *See* Dkt. 163 at 9-10, Ex. A.

Had Harrison requested similar information from, say, a teenage rock band posting their songs on a Bandcamp page (e.g., "Please provide copies of all documents evidencing the number of times visitors to your page listened to or downloaded your hit song, *F-art*."), the information **would exist**. But a company that "found a niche in the crowded world of online pornography;" had over fifty thousand subscribers and an annual production budget of two million dollars in 2013; posted new films on its website nearly every day; and ***hoped to lure more subscribers with fresher material***, asserts that the information **does not exist**. *See* Gabe Friedman, *The Biggest*

10

*Filer of Copyright Lawsuits? This Erotica Web Site*, The New Yorker (May 15, 2014) (available at http://www.newyorker.com/online/blogs/currency/2014/05/the-biggest-filer-of-copyright-lawsuits-is-this-erotica-web-site.html).

Reasonable persons have enough common sense to know that if Plaintiff can go digging through the computers of ordinary Indiana citizens hoping to lure a pirated X-art movie from a hard drive, then Plaintiff can go digging through its own servers and computer hard drives in order to find and produce the existing information requested by Harrison.

### III.  COUNSEL FOR HARRISON WORKED WITH COUNSEL FOR PLAINTIFF TO PRODUCE AN AGREED PROTECTIVE ORDER.

Counsel for Harrison and Counsel for Plaintiff agreed that Plaintiff's counsel would supply further facts and legal support for Plaintiff's refusal to produce documents absent a stipulated protective order for Harrison's Request No. 1. *See* Ex. A ("You will clarify with Plaintiff what information contained in the requested documents qualifies as trade secrets and confidential commercial information and how production would subject Plaintiff to the risk of misappropriation. After clarifying this issue with Plaintiff, you will inform me regarding Plaintiff's position in order to reach a resolution."). As discussed above, Counsel for Plaintiff did not hold up his end of the bargain.

Counsel for Harrison and Counsel for Plaintiff agreed to the following regarding Harrison's Request No. 2: "Plaintiff will produce the requested documents if I will agree that the requested documents are 'for my eyes only.' We agree that I will consider Plaintiff's proposal and that I will inform Plaintiff as soon as I make a decision regarding Plaintiff's proposed agreement regarding said production." *See* Ex. A. On December 3, 2013 Counsel for Harrison emailed Counsel for Plaintiff:

11

>Thank you, Paul. My client would like to continue cooperating with Plaintiff in order to resolve any ongoing discovery disputes. That being said, my client *may* be willing to agree to a stipulated protective order regarding production of Plaintiff's state and federal tax returns depending on the stipulated terms and conditions. Please advise if Plaintiff is interested in preparing a stipulated protective order regarding the tax returns for Harrison's review. *See* Gabriel J. Quearry's December 3, 2013 email to Paul J. Nicoletti (Exhibit H).

Counsel for Plaintiff responded:

>Gabe, I appreciate that. The protective order should apply to your Request Nos. 1 & 2, which include more than just tax returns. Are we in agreement as to that? Ex. H, Paul J. Nicoletti's December 3, 2013 email to Gabriel J. Quearry.

Counsel for Harrison replied:

>My client is willing to entertain Plaintiff's position with respect to protection of its tax returns from public disclosure as discovery materials (Request No. 2). That same willingness does not extend to Request No. 1 and Harrison will oppose any motion of Plaintiff seeking a protective order in connection with Request No. 1. Ex. H, Gabriel J. Quearry's December 3, 2013 email to Paul J. Nicoletti.

On December 4, 2013, Counsel for Plaintiff sent the following email to which Counsel for Harrison responded, "After reading the first sentence of paragraph 1 of the stipulated protective order, my client decided it was unacceptable":

>Gabe, My client would like to add the documents requested under No. 7 to the list of documents that we will provide subject to a protective order. Attached is a Stipulated Protective Order that Plaintiff would like to use for Document Requests No. 1, 2, and 7. Please let me know if you find this Order acceptable by 5:00 p.m. tomorrow. Ex. D, Paul J. Nicoletti's December 4, 2013 email to Gabriel J. Quearry.

Counsel for Harrison did exactly what Counsel for Plaintiff asked. Two days later Plaintiff filed its disputed Motion for Protective Order. It came to that point because Plaintiff refused to address a few simple questions and concerns, as Plaintiff had agreed, such as why Plaintiff's articles of organization and operating agreements contained confidential commercial information and trade secrets. Moreover, there was simply no need for a stipulated blanket protective order in this case given that Plaintiff's production would only be responsive to two of

Harrison's requests, making a document-by-document analysis more suitable for this particular case, if suitable at all.

Plaintiff attempts to completely decontextualize Counsel for Harrison's December 4, 2013 email by asserting that "[i]nstead of cooperating in this endeavor [to produce an agreed protective order], however, defense counsel rejected Plaintiff's proposed protective order out-of-hand after reading one sentence[.]" *See* Dkt. 181 at 3. Plaintiff's attempt to paint Counsel for Harrison as uncooperative in producing an agreed protective order are shameful and offensive. In fact, Plaintiff's attempt to do so takes the form of an outright lie. The emails contained in this section, let alone Counsel for Harrison's phone records for the latter part of November and early December 2013, serve as definitive evidence proving Plaintiff's blatant lie.

## IV.  OTHER CIRCUMSTANCES MAKE ANY AWARD OF FEES AND EXPENSES UNJUST.

As of the date and time of the filing of this response, the Court entered its Order granting Motion for Protective Order *twenty-three (23) days ago*. Dkt. 177 (April 29, 2014). ***The only discovery responses Plaintiff has produced pursuant to the protective order are Brigham and Colette Field's 2011 state and federal income tax returns; Malibu Media, LLC's 2012 Annual Partnership Return and 2012 state income tax return; and a 2013 Malibu Media, LLC Profit & Loss Statement***. Plaintiff's Motion for Fees and Expenses provides that "Plaintiff is currently compiling the documents and will produce them to Defendant as soon as practicable." Dkt. 181 at 4, FN2. Twenty-three days after the Magistrate Judge stated, "Now that the protective order has been entered, the Court expects the production of documents," ***Plaintiff still has not provided Harrison with some fourteen to fifteen discovery responses Plaintiff knew it would have to provide and could have been "compiling" during the five months its Motion for Protective Order was pending***.

The Magistrate Judge previously ordered Plaintiff to produce all documents it agreed to produce that were *twenty-one* days past due. Now, Plaintiff's discovery responses are *twenty-three* days past due and Plaintiff has known for five months that it would have to produce them. ***Certainly, Plaintiff's continuing unjustified delays in providing discovery responses are circumstances making an award of fees and expenses unjust.***

**WHEREFORE,** Defendant Michael Harrison respectfully requests this Court to enter an order denying Plaintiff's Petition for Fees and Expenses, awarding Plaintiff nothing by way of its petition, and for all other relief just and proper in the premises.

> INDEX OF EXHIBITS:
> A. Gabriel J. Quearry's November 19, 2013 email to Paul Nicoletti.
> B. Paul J. Nicoletti's December 3, 2013 email to Gabriel J. Quearry.
> C. Courtroom Deputy Nancy Rassbach's December 2, 2013 Email Scheduling S.D. Ind. L.R. 37-1 Conference for December 3, 2013 at 10:00 a.m.
> D. Paul J. Nicoletti's December 4, 2013 email to Gabriel J. Quearry.
> E. Paul J. Nicoletti's November 26, 2013 email to Gabriel J. Quearry.
> F. Paul J. Nicoletti's November 29, 2013 email to Gabriel J. Quearry.
> G. Plaintiff's November 29, 2013 Position With Regard To Discovery Disputes.
> H. Gabriel J. Quearry's December 3, 2013 email to Paul J. Nicoletti; Paul J. Nicoletti's December 3, 2013 email to Gabriel J. Quearry; Gabriel J. Quearry's December 3, 2013 email to Paul J. Nicoletti.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)
*Attorney for Defendant*
*Michael Harrison*

14

## CERTIFICATE OF SERVICE

  I hereby certify that on May 21, 2014 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

  Paul J. Nicoletti
  NICOLLETI & ASSOCIATES, P.C.
  pauljnicoletti@gmail.com

                */s/ Gabriel J. Quearry*
                Attorney for Defendant