IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **R. STEPHEN HINDS, TROY LAMB,** | : | |
| **MICHAEL HARRIS, ROBERT** | : | |
| **JOHNSON, MICHAEL HARRISON,** | : | |
| **JAMES DUNCAN, HOWARD** | : | |
| **MCDONALD, AND JOHN DOE 10,** | : | |
| | : | |
| Defendants. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING COMCAST TO COMPLY WITH A THIRD PARTY SUBPOENA**

Defendant Michael Harrison ("Harrison") respectfully requests that this Court deny Plaintiff's Motion for Entry of an Order Authorizing Comcast to Comply with a Third Party Subpoena as follows:

**I.    "SIX STRIKES NOTICES"**

Malibu is NOT a member of the Center for Copyright Information ("CCI").  Malibu does NOT participate in the Copyright Alert System ("CAS"), also known as the six strikes program.  Malibu does not notify Internet Service Providers ("ISPs") that an Internet subscriber's account may have been used to share Malibu's content illegally so that ISPs can then send account holders six strikes notices.  Malibu subpoenas ISPs for the personal information of account holders so that Malibu can serve individual account holders with Malibu's "one strike notice."  Why send a copyright alert when you can name an Internet account holder in a federal complaint and obtain a final judgment against him after he was unable to refinance his house in time to pay

1

your $7,000.00 settlement demand? *See Malibu Media, LLC v. Stewart Levine*, No. 4:13-cv-12161, Dkt. 21 (E.D. Mich. July 21, 2014).

The CCI and its participating members and ISP partners, comparatively speaking, are concerned with principles of education, fairness, and leniency when dealing with the problem of copyright infringement. Fairness includes respecting the privacy and free speech rights of Internet account holders. According to CCI (and Comcast):

- "[T]he design and implementation of the CAS and the nature of educational program CCI will construct [to] help subscribers enjoy copyrighted content online in a legal, safe and secure manner while respecting their important free speech and privacy rights." Center for Copyright Information, *About CCI*, http://www.copyrightinformation.org/about-cci/.

- "No personal information about consumers is shared between the content owners and ISPs, and ISPs are not involved in the process of identifying copyrighted content." Center for Copyright Information, *What is a Copyright Alert?*, http://www.copyrightinformation.org/the-copyright-alert-system/what-is-a-copyright-alert/.

- "We've worked with the Center for Copyright Information and outside experts in privacy, education and consumer rights to design the Copyright Alert System in a way that will safeguard our customers' privacy and ensure we don't share any personal customer information under this system with anyone (unless we receive legal process such as a court order or your express permission to do so)." Comcast Corporation, *Copyright Alerts*, http://customer.comcast.com/help-and-support/internet/copyrightalerts.

The parenthetical "unless we receive legal process such as a court order or your express permission to do so" is an obvious reference to the CAS' Independent Review Program run by the American Arbitration Association. The CCI expressly states that the Independent Review Program "is a non-exclusive procedure, and you still have the right to challenge any action in a court of law." Center for Copyright Information, *What Do I Do If I Think The Alert Was Wrongly Sent*, http://www.copyrightinformation.org/the-copyright-alert-system/what-do-i-do-if-i-think-the-alert-was-wrongly-sent/. A court order requiring an ISP to share an account holder's

personal customer information must be the result of a customer's challenge to an action in a court of law, and must be requested by a **participating member** of the CCI / CAS or by an account holder.

Harrison does not give Comcast permission to share his personal customer information under the Copyright Alert System with Malibu for the following reasons:

(i) Malibu is not a member of the CCI and does not participate in the CAS.

(ii) Six strikes notices would evidence third party infringements rather than just Harrison's alleged direct infringements with IPP International U.G., and Malibu previously argued in its Response to Defendant's Motion to Compel that "any evidence of third party infringements is irrelevant." *See* Plaintiff's Response to Defendant's Motion to Compel [Dkt. 157 at 7]. Malibu additionally stated that "third-party infringements have no bearing on any issue or relevant fact in this case."[1] *See* 47 U.S.C. § 551(c)(1) ("Except as provided in paragraph (2), a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator.")

Malibu's hypocrisy is simply bad form, and this Court should not let Malibu have its cake and eat it too.

---

[1] Malibu never sent Comcast DMCA notices relating to the IP address assigned to Harrison's Comcast subscriber account. Thus, any DMCA notices Malibu seeks from Comcast would evidence third party infringements, which, according to Malibu, "have no bearing on any issue or relevant fact in this case." *See* Dkt. 157 at 7.

3

## II. BANDWIDTH USAGE

47 U.S.C. § 551(a)(2)(A) provides: "For purposes of this section, other than subsection (h) of this section – the term 'personally identifiable information' does not include any record of aggregate data which does not identify particular persons[.]" *Cf.* 47 U.S.C. 551(c)(2)(C) (using the phrase "names and addresses of subscribers" to indicate what information identifies particular persons). Part IV's miscellaneous provisions also show Congress' intent to protect against a cable operator's disclosure of information revealing, "directly or indirectly, the extent of any viewing or other use by the subscriber … or the nature of any transaction made by the subscriber over the cable system of the cable operator." *See* 47 U.S.C. 551(c)(2)(C)(ii)(I) and (II).

Information relating to bandwidth usage is "aggregate data." In the context of the statute, is bandwidth usage aggregate data which does not identify particular persons?

According to an EarthLink® support website, all of the following consume high amounts of bandwidth: (i) latency; (ii) incorrect PC configuration; (iii) packet loss; (iv) audio streaming; (v) large applications or programs; (vi) large downloads; (vii) peer-to-peer file sharing; (ix) unauthorized usage; and (x) viruses or malware. EarthLink, *Causes for High Bandwidth*, https://support.earthlink.net/articles/dsl/causes-for-high-bandwidth.php (modified February 7, 2012). Presumably, streaming movies and television shows using Netflix, HBO GO, Comedy Central, and other applications such as YouTube, fall under the category of large applications or programs. The use of these programs and applications and related causes of higher bandwidth consumption, such as using email accounts, are so prevalent in today's Internet consuming society, and used by so many individuals in connection with a single subscriber's Internet account, that identifying a particular person in connection with the account is impossible.

But before answering the question of whether or not bandwidth usage is aggregate data which does not identify particular persons, it must first be asked if bandwidth usage is relevant. Does bandwidth usage have any bearing on any issue or relevant fact in this case? The answer to that question is obvious: absolutely not. Bandwidth usage data does not reveal anything whatsoever about a subscriber's BitTorrent use. Any attempt to connect bandwidth data with a particular subscriber's BitTorrent use would be wildly speculative to the point of being absurd. Malibu attempting to connect those two dots would be like trying to win a case against an alleged infringer without having evidence of files relating to X-Art on the Defendant's computer hard drives and without having evidence that the Defendant's computers were actually used to connect to IPP International UG's servers on a server located in the United States of America to deliver a piece of a computer file that contains a copy of each of the copyrighted works at issue in this case.[2]

Bandwidth usage is completely irrelevant, and, to the extent that bandwidth data *could* contain any indicia of BitTorrent use (which it does not), such data *only* has the potential to, in the words of Malibu, evidence third party infringements as opposed to just Harrison's alleged direct infringements with IPP.

---

[2] *See* Dkt. 157 at 6. Paul Nicoletti's email dated June 12, 2014 stated: "Regarding the MAC addresses in the PCAP: These are the MAC addresses for Excipio's local device." *Cf.* Declaration of Tobais Fieser in Support of Plaintiff's Motion for Leave to Take Early Discovery Prior to a Rule 26(f) Conference, No. 1:12-cv-01117-WTL-DML, Dkt. 12-2 at 2, ¶¶ 13-14, 21; Exhibit A "Functional Description IPP international IPTRACKER V1.2.1 (S.D. Ind. Aug. 21, 2012) ("IPP tasked me with implementing, monitoring, analyzing, reviewing, and attesting to the results of the investigation … INTERNATIONAL IPTRACKER v1.2.1 was correctly installed and initiated on a server located in the United States of America … I personally extracted the resulting data emanating from the investigation.") Fieser never mentions Excipio and says that he personally implemented **IPP's** software on a server located in the United States of America. *Cf.* Dkt. 197 at 1, ¶ 1 ("Plaintiff established a direct TCP/IP connection with a computer using Defendant's IP Address," which is just fancy talk for saying that *Plaintiff* established a common network connection with a computer that was not Harrison's computer, but a computer that was using Harrison's network.)

Harrison does not give Comcast his permission to share any bandwidth data it may have retained in connection with his Comcast subscriber account. *See* 47 U.S.C. 551(e) ("A cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (d) of this section or pursuant to a court order.")

III. **CORRELATING EVIDENCE; RELIABILITY OF CORRELATING TECHNIQUE; NUMBER OF INTERNET SUBSCRIBERS IN INDIANA IN JULY 2012; RATIO OF IP ADDRESSES TO INTERNET SUBSCRIBERS AS OF JULY 2012**

According to Comcast:

- Because Comcast's system of allocating IP addresses uses Dynamic Host Configuration Protocol (DHCP), its residential subscribers are not assigned a single, constant or static IP address. Instead, a dynamic IP address is assigned and has the potential to change several times throughout the course of service. As a result, it is necessary in all requests for subscriber information linked to a specific IP address that you supply the specific date and time of the incident when an IP address is involved.

- Comcast currently maintains its dynamic IP address log files for a period of 180 days. If asked to make an identification based upon a dynamic IP address that was used more than 180 days prior to receipt of the request, Comcast will not have information to provide. (Note: Comcast can process preservation requests received within 180 days after the alleged date of usage as outlined in this Handbook.) Comcast Cable, *Law Enforcement Handbook*, https://cdn.comcast.com/~/Media/Files/Legal/Law%20Enforcement%20Handbook/Comcast%20Xfinity%202012%20Law%20Enforcement%20Handbook%20v022112.pdf?vs=1.

The first bullet point is extremely important. It shows that all that Malibu has done is link the use of a dynamic, changing IP address assigned to a subscriber's account to an incident that occurred on a specific date and time. This is because Comcast's system allocates IP addresses using DHCP to its residential subscribers; "residential subscribers are not assigned a single, constant or static IP address." Yet, for some reason, Malibu states that "information about the number of internet subscribers and ratio of IP addresses to subscribers is relevant to

6

any defense which may be asserted by Defendant claiming that the IP address was not assigned to Defendant at all relevant times." *See* Dkt. 197 at 2, ¶ 5. Harrison was not aware that it as necessary for him to assert a "Malibu has no idea what it is talking about" defense. Nevertheless, Harrison asks that Malibu actually meet its burden by further explaining the relevance of this information to the instant case.

Harrison and Counsel for Harrison are not bird watchers, but can spot a red herring: "Indeed, if Plaintiff cannot introduce the correlating evidence into trial then Plaintiff will lose this case. It is quite simply outcome dispositive." Harrison welcomes the opportunity to cross-examine Comcast regarding its correlation of an IP address to one of its subscribers, and Comcast's knowledge regarding the reliability underlying IPP International U.G.'s software, methods, and techniques which enables Malibu to give IP addresses to Comcast.

### IV. CONCLUSION

Harrison respectfully requests that this Court deny Malibu's motion as requested; rule properly and fairly on matters requiring further explanation from Malibu; and, require Malibu to serve any subpoena *duces tecum* authorizing any disclosures under 47 U.S.C. § 551 on Comcast within five (5) days of the date of the Court's order; and for all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)

*Attorney for Defendant*
*Michael Harrison*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Paul J. Nicoletti
NICOLETTI LAW, PLC
Pauljnicoletti@gmail.com

                                             */s/ Gabriel J. Quearry*
                                             Attorney for Defendant