**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| **MICHAEL HARRISON,** | : | |
| | : | |
| **Defendant.** | : | |

_____

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY
OF PLAINTIFF'S EXPERT WITNESSES**

_____

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, Federal Rule of

Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and S.D.

Ind. L.R. 7-1(b)(2), Defendant Michael Harrison ("Harrison"), by undersigned counsel,

respectfully submits his Brief in Support of Motion to Exclude the Testimony of Plaintiff's

Expert Witnesses. This Court should grant Harrison's Motion and the relief requested therein for

the reasons set forth below.

## I.     INTRODUCTION

Plaintiff Malibu Media, LLC ("Malibu") served its "Plaintiff's Expert Witness List and

Partial Report" on June 17, 2014.  The Expert Witness List and Partial Report (attached as

Exhibit "A") identifies Patrick Paige ("Paige") as Malibu's expert witness "for the purpose of:

(a) opining about IPP, International U.G's software, and (b) reviewing the defendant's computers

and hard drives and opining about anything they may discover." *See* Exhibit A.

Paige's partial report.  Paige's partial report consists of his proposed testimony about IPP

International U.G.'s ("IPP") software.  The partial report contains Paige's Curriculum Vitae

(attached as Exhibit "B") and Paige's November 11, 2013 Declaration (attached as Exhibit "C").

*See* Exhibits B-C. The November 11, 2013 declaration details Paige's qualifications and describes the test of IPP's software that Paige coordinated with IPP. *See* Ex. C.

Paige's March report. Malibu provided Paige's proposed testimony about his findings from his August 2013 computer forensic examination of Harrison's computer hard drives on March 14, 2014 (the "March report"). Paige's March report consists of Paige's March 14, 2014 Declaration (attached as Exhibit "D"), Paige's August 13, 2013 Forensic Examination Report Summary (attached as Exhibit "E"), ACER Recon Report – RecentDocs (attached as Exhibit "F"), ACER Recon Report – USB Storage Devices (attached as Exhibit "G"), and SAMMY Recon Report – USB Storage Devices (attached as Exhibit "H").

Paige's reports. Paige's partial report and March report (sometimes collectively referred to herein as "Paige's reports" or "the reports") fail to comply with the written report requirements of Rule 26(a)(2)(B)(i), (ii), (iii), and (v) of the Federal Rules of Civil Procedure, and the failure is not substantially justified or harmless to Harrison.

1.    Paige's reports fail to provide a complete statement of all opinions Paige will express relating to Harrison's computer hard drives and the basis and reasons for them in accordance with Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure. Paige's March report contains a limited number of vague statements about Harrison's computer hard drives and Malibu's "Expert Witness List" identifies Paige as its expert "for the purpose of … reviewing the Defendant's computers and hard drives and opining about ***anything they may discover***." *See* Exs. D-E.

2.    Paige's partial report fails to disclose the facts, data, or exhibits considered by Paige in forming his opinions about IPP's software in accordance with Rule 26(a)(2)(B)(ii) and (iii) of the Federal Rules of Civil Procedure. Paige failed to disclose the following facts, data, and exhibits which are the product of his "test" of IPP's software and explicitly referred to in his partial report: the torrent files encoded by Paige, the name of the torrent websites where Paige uploaded his encoded torrent files, screen shot captures created by IPP and sent by IPP to Paige, PCAP files created by IPP and sent by IPP to Paige, the "additional information" created by IPP and sent by IPP to Paige, Paige's communications with IPP exchanged during the test, and PCAP files created by Paige; and, other relevant facts such as the dates of Paige's test and locations where Paige's test of IPP's software occurred. *See* Ex. C.

3.    Paige's written reports do not disclose a list of all cases in which Paige has testified at trial or by deposition during the previous four years in accordance with Rule 26(a)(2)(B)(v) of the Federal Rules of Civil Procedure. Paige does not disclose that he testified as an expert in *United States v. Faxon*, and other cases unknown to Harrison, and Paige's written report states: "The following is a list of ***some*** of the cases I have testified." *See* Ex. B.

Paige's failure to disclose the critical facts and data underlying the test of IPP's software that he coordinated with IPP also affects the admissibility of his proposed testimony under Federal Rule of Evidence 702 ("F.R.E. 702") and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ("*Daubert*"). This Court must conclude that Paige's proposed testimony about IPP's software is not based on sufficient facts or data and lacks appropriate

validation because Paige has never disclosed the critical facts and data from the test of IPP's software that he coordinated with IPP to Harrison, or any other person for scrutiny or review. *See Daubert* at 593 ("[S]ubmission to the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected"); *See* F.R.E. 702(b). It cannot be said that Paige's proposed testimony is supported by pertinent evidence based on scientifically valid principles because Paige has not provided the empirical data to anyone else to test its refutability. *See Daubert* at 593. Paige's proposed testimony is not relevant and will not assist the trier of fact, and should be excluded under F.R.E. 702 and *Daubert* in addition to Fed. R. Civ. P. 37(c)(1). *See Daubert* at 597; *See* F.R.E. 702(b).

Rebuttal witnesses and reports. Pursuant to the Court's Case Management Order (the "Order"), Malibu was required to "identify any witness it may use at trial to rebut the testimony of any witness Defendant may have identified to present evidence at trial under Federal Rule of Evidence 702, 703, or 705, and shall serve the report required by Fed. R. Civ. P. 26(a)(2)(B) or (C) on or before August 13, 2014." *See* Dkt. 175 at 1, ¶ B. That day came and went, and as of the date of the filing of this Motion and Brief in Support, Malibu has not identified any witness to rebut the testimony of Harrison's expert witnesses. As such this Court should exclude Malibu from offering any expert testimony to rebut the testimony of Harrison's expert witnesses on motion, at a hearing, or at trial, and deem Malibu to have fully disclosed its expert testimony by the Order's August 13, 2014 expert disclosure deadline consistent with the relief requested by Harrison's motion as explained herein.

## II.  FACTS

### A.  PAIGE'S "MARCH REPORT"

Paige's March Report consists solely of the data underlying Paige's examination of Harrison's computer hard drives and an extremely limited number of statements capable of being construed as opinions which Paige will express on direct examination at trial. To the extent that the March Report contains a complete statement of all opinions Paige will express and the basis and reasons for them, they are found in Paige's March 2014 declaration ("2014 declaration") and Paige's **August 13, 2013** Forensic Examination Report Summary ("2013 Summary"). *See* Exs. D, E. Paige's March report only contains a combined total of eighteen (18) statements about his forensic report and examination of Harrison's computers. *See* Exs. D-H.

### I. PAIGE'S MARCH 2014 DECLARATION ONLY CONTAINS 14 STATEMENTS OR OPINIONS.

To the extent that Paige's 2014 declaration contains any complete *statements*, they are in paragraphs 16 through 29 of the 2014 declaration:

16. On or around July 31, 2013, I received a UPS package from attorney Nicoletti's office.

17. The package was labeled "SIN7-6 Michael Harrison."

18. The package contained one external hard drive.

19. This hard drive was divided into two (2) partitions – "C" volume and "D" volume. Each volume contained an image of a hard drive and a version of Windows.

20. I do not know who created these images of Defendant's computer devices, nor do I know which software was used to create these images.

21. The "C" volume's Registered Owner was listed as "Acer."

22. The "D" volume's Registered Owner was listed as "Sammy."

23. Using Recover Keys software, I scanned for software keys on each volume. The license key "FJGCP-4DFJD-GJY49-VJBQ7-HYRR2" for Windows 7 Ultimate on the "Acer" is

listed numerous times on third party websites which may indicate that the software is pirated. *See* Report, attached as Exhibit A.

24.    Using EnCase forensic software, I began examining the contents of the images on the hard drives for evidence of BitTorrent use.

25.    My examination of the "Sammy" hard drive revealed no evidence of BitTorrent use.

26.    My examination of the "Acer" hard drive revealed evidence of BitTorrent use. Specifically, the BitTorrent client "uTorrent" was installed on the hard drive.

27.    Additionally, I found numerous torrent files on the "Acer" hard drive. *See* Report, attached as Exhibit B.

28.    Lastly, using EnCase forensic software, I ran a search of all external devices ever connected to each of the hard drives. This search revealed that a number of external devices have been connected to both hard drives. *See* Reports, attached as Exhibit C and D.

29.    None of the external devices listed were disclosed in Defendant's discovery responses nor have they been provided to me for examination.

*See* Ex. D.

## II.    PAIGE'S 2013 SUMMARY ONLY CONTAINS 4 STATEMENTS OR OPINIONS.

To the extent that Paige's 2013 Summary contains *any statements*, they are the following:

1.

The hard drive has 2 partitions on the hard drive and both contain a version of windows. A search of the hard drive for files relating to x-art was negative however there is evidence of Torrent client in use.

2.

The "C" volume was scanned for software keys and they are listed below. NOTE: the key listed FJGCP-4DFJD-GJY49-VJBQ7-HYRR2 appears to be pirated software and is listed numerous times in hacker websites on the Internet.

3.

The "D" volume was scanned for software keys and they are listed below.

4.

## Evidence of Torrent Use

I located the torrent program "uTorrent" installed on the hard drive in the following location:

| | |
|---|---|
| Name | uTorrent.exe |
| File Type | Windows Executable |
| File Category | Windows |
| Description | File, Archive |
| Is Deleted | No |
| Last Accessed | 12/13/10 04:41:36PM |
| File Created | 12/13/10 04:41:36PM |
| Last Written | 12/13/10 04:41:36PM |
| Entry Modified | 12/13/10 04:41:36PM |

C:\Program Files\uTorrent\uTorrent.exe

A search was conducted of the Registry and I located several torrent files, please see Registry Recon Report for listing.

*See* Ex. E.

### III. PAIGE'S RECON REPORTS DO NOT CONTAIN ANY STATEMENTS; THEY ONLY CONTAIN THE FACTS AND DATA UNDERLYING HIS FORENSIC EXAMINATION OF HARRISON'S COMPUTER HARD DRIVES.

Paige's ACER Recon Report – RecentDocs, ACER Recon Report – USB Storage Devices, and SAMMY Recon Report – USB Storage Devices contain zero statements or opinions. They only contain the data underlying or resulting from Paige's forensic examination of Harrison's computer hard drives. *See* Exs. F-H.

### B. MALIBU'S EXPERT WITNESS LIST AND PARTIAL REPORT

Plaintiff's Expert Witness List and Partial Report served on June 17, 2014 provides, verbatim:

Pursuant to the Court's Case Management Order entered on April 15, 2014 [CM/ECF 175] (the "Order"), Plaintiff, Malibu Media, LLC ("Plaintiff"), hereby identifies its expert as Mr. Patrick Paige for the purpose of: (a) opining about IPP, International U.G's software, and (b) reviewing the Defendant's computers and hard drives and opining about anything they may discover. Mr. Paige's declaration regarding his examination of IPP's software is attached as Exhibit A. Mr. Paige's curriculum vitae is attached as Exhibit B outlining his qualifications as an expert witness and listing all the other cases in which, during the previous four years, Mr. Paige has testified as an expert at trial or by

deposition. Mr. Paige was compensated $325.00 per hour to provide his expert opinion on the above matters. *See* Ex. A.

The partial report, or 2013 declaration, explicitly references the following facts, data, or exhibits created during Paige's test of IPP's software that he coordinated with IPP:

(i)     .torrent files made and uploaded by Paige onto torrent websites;

(ii)    Paige's communications with IPP during the "test";

(iii)   Screen captures created by IPP of the movies seeded by Paige sent by IPP to Paige;

(iv)    "Additional data" created by IPP identifying the IP Address used by each of Paige's virtual servers sent by IPP to Paige;

(v)     PCAPs created by IPP sent by IPP to Paige; and

(vi)    PCAP log files created by each of Paige's test servers.

The *partial* report also contains Paige's qualifications and a list of "some of the cases I have testified." *See* Ex. B.

## III.    LEGAL STANDARDS

### A.    DISCLOSURE OF EXPERT WITNESSES AND WRITTEN REPORTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(A)(2)(B).

"[A] party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B).

The written report of the expert witness "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data

considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

Rule 26 mandates that a party must disclose the identity of any witness testifying on subject matters requiring scientific, technical or other specialized knowledge and that the disclosure be accompanied by either a complete and detailed written report, or a summary report. *See Coleman v. American Family Mutual Insurance Company*, 274 F.R.D. 641, 645 (N.D. Ind. 2011).

"The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response." *Meyers v. National R.R. Passenger Corp.*, 619 F.3d 729, 734 (7th Cir. 2010) (citing *Walsh v. Chez*, 583 F.3d 990, 993 (7th Cir. 2009); *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007)); *See Coleman v. American Family Mutual Insurance Company*, 274 F.R.D. 641 (N.D. Ind. 2011) ("The expert report serves the purpose of putting the opposing party on notice of the expert's proposed testimony so the opposing party may form an appropriate response"); *See Joseph v. Linehaul Logistics, Inc.*, No. CV 11-114-M-JCL (D. Mont. Aug. 31, 2012) (A disclosure must set forth what the substance of the expert witness's Rule 702 testimony will be). A party has a right to know the particular conclusions of an expert witness with respect to a particular incident, and "the court has a right, independent of the parties, to conduct trial preparation in a manner that husbands appropriately the scarce judicial resources of that busy district." *See Salgado v. General Motors Corporation*, 150 F.3d 735, 742 (7th Cir. 1998).

Partial or "preliminary" written reports do not comply with Rule 26(a)(2)(B) and "the district court is not required to "fire a warning shot" regarding a report's failure to contain a complete statement of all opinions the witness will express and the basis and reasons for them. *See Id.* at 742-743. "Preliminary or tentative opinions … are not acceptable." *Hard Surface Solutions, Inc. v. Sherwin-Williams Company*, 271 F.R.D. 612, 615 (N.D. Ill. 2010) (citing *Salgado*, 150 F.3d at 742 n. 6; *Kern River Gas Transmission Co. v. 6.17 Acres of Land*, 156 Fed.Appx. 96, 102 (10th Cir. 2005). A report that is "remarkably sparse, making it impossible to tell" what an expert might be thinking about does not comply with Rule 26(a)(2)(B). *See Meyers v. National R.R. Passenger Corp.*, 619 F.3d 729, 735 (7th Cir. 2010).

"Adherence to deadlines for disclosure of expert witnesses and their reports under Rule 26(a)(2) is not an exception to these principles. Recognizing that courts must have the authority to enforce discovery deadlines, numerous cases have approved exclusion orders by district courts where expert reports were not provided in a timely way." *Hard Surface Solutions, Inc. v. Sherwin-Williams Company*, 271 F.R.D. 612, 615 (N.D. Ill. 2010) (citing *Scaggs v. Consolidated Rail Corp.*, 6 F.3d 1290, 1295-96 (7th Cir. 1993); *Smith v. Union Pacific R. Co.*, 168 F.R.D. 626, 629 (N.D. Ill. 1996); *Finwall v. City of Chicago*, 239 F.R.D. 494 (N.D. Ill. 2006), *objections overruled), Finwall v. City of Chicago*, 239 F.R.D. 504 (N.D. Ill. 2006) (Manning, J.) (sustaining order excluding plaintiff's experts as a sanction for late and noncompliance with Rule 26)).

A disclosure and written report intended solely to contradict or rebut evidence on the *same subject matter* identified by another party under Rule 26(a)(2)(B) must be made by the deadline set by court order. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). "Were the rule otherwise, parties would have no incentive to meet deadlines and deadlines would not be met." *Bull v. Board of*

*Trustees of Ball State University*, No. 1:10-cv-00878-JMS-TAB (S.D. Ind. Jan. 10, 2012) (citing

*Spears v. City of Indianapolis*, 74 F.3d 157 (7th Cir. 1996)); *See Walsh v. McCain Foods Limited*,

81 F.3d 722, 727 (7th Cir. 1996).

> **I.** **THE ADVISORY COMMITTEE NOTES TO RULE 26(A)(2) PROVIDE THAT EXPERT REPORTS MUST BE DETAILED AND COMPLETE SUCH THAT OPPOSING COUNSEL IS NOT FORCED TO DEPOSE AN EXPERT IN ORDER TO AVOID SURPRISE AT TRIAL.**

The Advisory Committee Notes to the 1993 and 2010 amendments of Federal Rule of

Civil Procedure 26(a)(2) provide a great deal of guidance regarding the requirements associated

with disclosure of expert witnesses and written reports under Rule 26(a)(2)(B):

- Discovery is limited to trial witnesses, and may be obtained only at a time when the parties know who their expert witnesses will be. A party must as a practical matter prepare his own case in advance of that time, for he can hardly hope to build his case out of his opponent's experts. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1970 Amendment.

- [T]he party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- [A]n additional 30 days is allowed…for disclosure of expert testimony to be used solely to contradict or rebut the testimony that may be presented by another party's expert. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- Experts retained or specially employed to provide expert testimony, or whose duties as an employee of the party regularly involve the giving of expert testimony, must prepare a *detailed* and *complete* written report. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment; *See Happel* at 741, FN. 6; *See Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir.).

- The report must state the testimony the witness is expected to present during direct examination, together with the reasons therefor. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- Revised Fed. R. Civ. P. 37(c)(1) provides an incentive for full disclosure; namely, that a party will not ordinarily be permitted to use on direct examination any

expert testimony not so disclosed. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- The report is intended to set forth the substance of the direct examination and should be written in a manner that reflects the testimony to be given by the witness. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced and in many cases the report may eliminate the need for deposition. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- Rule 26(a)(2)(B) uses the term "expert" to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, or other specialized matters. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- Revised subdivision (e)(1) requires disclosure of any material changes made in the opinions of an expert from whom a report is required, whether the changes are in the written report or in testimony given at a deposition. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions. Hence, the reason why the deposition of an expert required to provide a written report can only be deposed after the written report is served. Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment.

- In 1993, Rule 26(b)(b)(4) was revised to authorize expert depositions and Rule 26(a)(2) was added to provide disclosure, including – for many experts – an **extensive** report. Committee Notes on Rules – 2010 Amendment (emphasis mine).

- "A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefore." *Salgado* at 741, FN. 6 (citing Fed.R.Civ.P. 26 Advisory Committee's note; *Smith v. State Farm Fire & Cas. Co.*, 164 F.R.D. 49, 53 (S.D. W. Va. 1995); *Walsh v. McCain Foods, Ltd.*, 81 F.3d 722, 727 (7th Cir. 1996)).

- "The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be

sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado* at 741, FN. 6 (citing Fed.R.Civ.P. 26 Advisory Committee's note; *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), cert. denied, 516 U.S. 822 (1995)).

- "Expert reports must not be sketchy, vague or preliminary in nature." *Salgado* at 741, FN. 6 (citing Fed.R.Civ.P. 26 Advisory Committee's note; *Sierra Club* at 571).

- "Expert reports must include the 'how' and 'why' the expert reached a particular result, not merely the expert's conclusory opinions." *Salgado* at 741, FN. 6 (citing Robert Matthew Lovein, *A Practitioner's Guide: Federal Rule of Civil Procedure 26(a) – Automatic Disclosure*, 47 Syracuse L.Rev. 225, 255 (1996); *Sierra Club* at 571; *Reed v. Binder*, 165 F.R.D. 424, 429 (D. N.J. 1996)).

II.     **A PARTY'S ATTORNEY HAS A RESPONSIBILITY TO INSURE THAT THE EXPERT'S REPORT IS COMPLETE AND THOROUGH.**

The Seventh Circuit has outlined the role of a party's attorney with respect to the expert's written report: "[I]t is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise, avoid unnecessary depositions and reduce costs." *Salgado* at 741, FN. 6 ("It is expected that the reports will be far more complete and detailed than the practice in responding to interrogatories under former Rule 26(b)(4)(i)."); (citing *Reed*, 165 F.R.D. at 429 citing *Sylla-Sawdon*, 47 F.3d at 284)).

B.     **EXCLUSION OF EXPERT TESTIMONY AS A SANCTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(c)(1)**

"We agree with the Tenth Circuit that Rule 26 enhances the district court's role as a 'gatekeeper,' for it permits 'an early and full evaluation' of evidentiary problems in a case and allows the court to 'make an early pretrial evaluation of issues of admissibility' carefully and meticulously." *Salgado* at 741, FN. 6 (citing *Robinson v. Missouri Pacific R.R. Co.*, 16 F.3d 1083, 1089 (10th Cir. 1994)). "Without such completeness, counsel and the party he represents risk the imposition of sanctions under Rule 37." *Salgado* at 741, FN. 6.

"The sanction for failure to comply with this rule is the 'automatic and mandatory' exclusion from trial of the omitted evidence, 'unless non-disclosure was justified or harmless.'" *Happel v. Walmart Stores, Inc.*, 602 F.3d 820, 826 (7th Cir. 2010) (citing *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005)). "A party that *without substantial justification* fails to disclose information required by Rule 26(a)… is not, *unless such failure is harmless*, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.  In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions."  *Musser v. Gentiva Health Services*, 356 F.3d 751, 755 (7th Cir. 2004).

"The 'incentive for total disclosure' is the threat that expert testimony not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1).  The availability of this sanction 'put[s] teeth into the rule.'" *Salgado* at 741, FN. 6 (citing Richard M. Heimann & Rhonda L. Woo, *Import of Amended Federal Rule of Civil Procedure 26(a)*, 506 PLI/Lit 279, 293 (July-Aug. 1994)).

"The Seventh Circuit has provided four factors for the district court to consider when determining whether the failure to disclose was either substantially justified or harmless: '(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Wallace v. Hounshel*, No. 1:06-cv-1560-RLY-TAB (S.D. Ind. May 22, 2008) (citing *David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003).

"The rule presents alternatives less severe than exclusion of expert testimony, however. If the expert's report contains only incomplete opinions, the court may choose to restrict the

expert's testimony to those opinions alone." *Salgado* at 741, FN. 6 (citing Robert Matthew Lovein, *A Practitioner's Guide: Federal Rule of Civil Procedure 26(a) – Automatic Disclosure*, 47 Syracuse L.Rev. 225, 255 (1996)); *See Walsh v. McCain Foods Limited*, 81 F.3d 722, 727 (7th Cir. 1996) (The district courts are empowered with discretion to exclude testimony altogether or to limit an expert's testimony to that previously disclosed to the opposing party in the expert's original written report.) A deficient report submitted without meritorious excuse for the deficiencies warrants the imposition of sanctions. *See Salgado* at 743. The exclusion of expert testimony is a justifiable sanction when a party's expert has possessed the relevant discovery materials for a significant period of time, but discloses an incomplete or "partial" written report on or after the deadline set by the court. *See Id.* at 742-743.

"Our rules of civil procedure are designed to facilitate the complete disclosure of all relevant information before trial in order to eliminate unfair surprise and ultimately promote accurate and just decisions." *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1292 (7th Cir. 1988). "Although temptations may exist, a litigant cannot expect to profit from its ill-gotten gains." *Id.*

### C.    FEDERAL RULES OF EVIDENCE 702, 703, AND 705

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b)    the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert has reliably applied the principles and methods to the facts of the case.

Federal Rule of Evidence 703 provides:

An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Federal Rule of Evidence 705 states that "[u]nless the court orders otherwise, an expert may state an opinion — and give the reasons for it — without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination."

### D.    *DAUBERT*

"Proposed testimony must be supported by appropriate validation – i.e., 'good grounds' based on what is known." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 590 (1993). "[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589; *See* F.R.E. 702(c). "[T]he Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." *Id.* at 597.

"Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been tested)." *Daubert* at 593. "'Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed this methodology is what distinguishes science from other fields of human inquiry." *Id.* (citing E. Green & C. Nesson, *Problems, Cases, and Materials on Evidence*, 649 (1983); C. Hempel, *Philosophy of Natural Science*, 49 (1966)

("[T]he statements constituting a scientific explanation must be capable of empirical test"); K. Popper, *Conjectures and Refutations: The Growth of Scientific Knowledge* 37 (5th ed. 1989) ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability").

"Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication." *Daubert* at 593. "[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected." *Id.* "Additionally, in the case of a particular scientific technique, the court ordinarily should consider the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation." *Id.* at 594 (internal citations omitted). "'A known technique which has been able to attract only minimal support within the community may be properly viewed with skepticism." *Id.* (internal citations omitted).

## IV.   APPLICATION

### A.   THIS COURT SHOULD EXCLUDE PAIGE'S TESTIMONY REGARDING HARRISON'S COMPUTER HARD DRIVES AND PAIGE'S "TEST" OF IPP'S SOFTWARE BECAUSE PAIGE'S REPORTS DO NOT COMPLY WITH RULE 26(a)(2)(B)(i), (ii), (iii), or (v).

This Court should exclude Paige's testimony relating to Harrison's computer drives and Paige's "test" of IPP's software because Paige's reports fail to comply with Rule 26(a)(2)(B)(i), (ii), (iii), and (v) of the Federal Rules of Civil Procedure.

#### I.   THE MARCH REPORT DOES NOT COMPLY WITH RULE 26(a)(2)(B)(i) BECAUSE IT DOES NOT CONTAIN A DETAILED AND COMPLETE STATEMENT OF ALL OPINIONS PAIGE WILL EXPRESS ON DIRECT EXAMINATION AT TRIAL REGARDING HARRISON'S COMPUTERS AND HARRISON'S COMPUTER'S RELATIONSHIP TO THE ALLEGED INFRINGEMENTS.

According to the March report (and partial report), the substance of Paige's expected testimony on direct examination at trial related to his findings of Harrison's computers will be as follows:

(i)    Paige found no files relating to Malibu's X-Art movies on Harrison's computers;

(ii)   Paige found that a number of external storage devices were connected to both of Harrison's computers;

(iii)  Paige found that a software key on one of Harrison's computers appears to be pirated software because it is listed numerous times on hacker websites on the internet;[1]

(iv)   Paige found that a BitTorrent client was installed on Harrison's ACER computer; and,

(v)    Paige found numerous torrent files unrelated to Malibu's X-Art movies on Harrison's ACER computer. *See* Exs. A-H.

Paige does not state any opinion about the relationship between the direct copyright infringements alleged by Malibu and Paige's findings that: **ZERO (0)** X-Art related files were found to have existed on Harrison's computers; that external storage devices were connected to Harrison's computers; that a BitTorrent client was installed on Harrison's ACER computer; or, that numerous torrent files unrelated to Malibu's X-Art movies were found on Harrison's ACER computer. Paige does not state whether his findings of Harrison's computer are consistent with the other most important pieces of evidence in this case, besides the evidence on Harrison's computers: IPP's PCAP files, MySQL log files, and technical reports. Paige's statements are so sketchy and vague that it is impossible to tell what Paige's direct examination testimony at trial will be regarding his forensic examination of Harrison's computers. Malibu's Expert Witness List, which states that Paige will testify about <u>anything he may discover</u> on Harrison's

---

[1] This is essentially Paige's only completely stated opinion with a basis and reason for the opinion, but Paige's report does not disclose any facts or exhibits to support this statement.

computers, tends to turn expert discovery into "'a game of evasion,' contrary to the core purpose

of Rule 26. *See Hard Surface Solutions*, 271 F.R.D. at 616 (citing *Tenbarge v. Ames Taping Tool*

*Systems, Inc.*, 190 F.3d 862, 865 (8th Cir. 1999).

Paige has the ability to state complete and definitive opinions and the basis and reasons

for them. The partial report provides that Paige testified as an expert regarding his creation of

forensic reports and the materials he finds on computer hard drives in *United States v. Morton*,

*United States v. Schales*, and *Malibu Media, LLC v. Does*:

> The government next called Patrick Paige, a detective with the Palm Beach County
> Sheriff's Office. Paige testified that he created a forensics report regarding the material
> on Morton's computer hard drive. Included in the report were downloaded movies that
> contained teen sex and a minor female and adult male engaged in sexual conduct. Paige
> also testified that he found approximately 30 images of minors. On re-direct Paige
> testified that Morton had approximately 50-100 images in his AOL account. *See United*
> *States v. Morton*, 346 F.3d 1300, 1303 (11th Cir. 2004), vacated by *Morton v. United*
> *States*, 543 U.S. 1136 (2005); *Cf.* Ex. B.
>
> Detective Paige of the Palm Beach County Sheriff's Office also testified that he
> recognized images on the CD – ROM depicting a child and an adult male that he arrested.
> The minor female depicted was five years old at the time of the photograph. *See* Ex. B;
> *United States v. Schales*, 546 F.3d 965, 975 n. 3 (9th Cir. 2008).
>
> Expert testimony on my findings of the computers used by defendant Doe 16. Matters
> relating to the software used by IPP International, Germany to monitor and identify
> copyright infringers. Ex. B; *See Malibu Media v. Does*, No. 2:12-cv-02078, Dkt. 205 at
> 109-142 (E.D. Pa. June 18, 2013).

Paige's direct examination testimony relating to his "findings of the computers used by

defendant Doe 16" in *Malibu Media v. Does* takes up twenty-five pages of the Bellwether trial

transcript. *See Malibu Media v. Does*, No. 2:12-cv-02078, Dkt. 205 at 117-142 (E.D. Pa. June

18, 2013). If Malibu and Patrick Paige are to be believed, Paige's direct examination testimony

in this case will either be limited to approximately 18 total statements and beneficial to Harrison,

or it will be about "anything" Paige may have discovered.

Malibu's statement that Paige will opine "about anything they may discover" is facially deficient, suspicious, and tingles Harrison's spidey-sense. It does not provide adequate notice of the substance of Paige's testimony and makes it impossible to tell what Paige's testimony will be under Federal Rule of Evidence 702, 703, or 705. It lacks the detail and completeness required by Rule 26(a)(2)(B)(i) and Advisory Committee Notes on the Rule, and serves to make the deposition of Paige a lengthy and resource-exhausting necessity. *See Salgado* at 741, FN. 6 (citing Fed.R.Civ.P. 26 Advisory Committee's note; *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir.), cert. denied, 516 U.S. 822 (1995)); *See* Fed. R. Civ. P. 26, Notes of Advisory Committee – 1993 Amendment ("Since depositions of experts required to prepare a written report may be taken only after the report has been served, the length of the deposition of such experts should be reduced and in many cases the report may eliminate the need for deposition").

Because Paige could testify to ***anything he <u>may</u> have discovered***, Harrison has no knowledge of what Paige ***may have discovered***, and as a result Harrison will be severely prejudiced, subjected to surprise and ambush at trial, and forced to incur increased costs that expert reports are designed to eliminate. *See Salgado* at 741, FN. 6 ("The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources").

The title of the *partial* report is equally telling. It says itself that it does not comply with the Rule. Paige's report is sketchy, vague, and preliminary in nature, and, therefore, insufficient for the purposes of Rule 26(a)(2)(B)(i). *See Salgado* at 741 n. 6.

Paige's reports fall miserably short of compliance with Rule 26(a)(2)(B)(i). Malibu and its attorney have failed to insure that Paige's reports contain a complete statement of all opinions Paige will express and the basis and reasons for them, properly and thoroughly set forth and supported. *See Salgado* at 741 n. 6 ("[I]t is the responsibility of the attorney to ensure that the expert's report contains complete opinions that are properly and thoroughly set forth and supported; it should be the goal of the parties to eliminate surprise, avoid unnecessary depositions and reduce costs").

Malibu has either disclosed the extent of Paige's testimony or it has not. Because the Order required Malibu to identify its expert witnesses and serve its Rule 26(a)(2)(B) reports by the Order's June 16, 2014 deadline, this Court must exclude Paige's testimony on the basis that Paige's reports are deficient regarding the subject of Harrison's computers, or in the alternative, deem Paige's 18 total statements made in the March report which comply with Rule 26(a)(2)(B)(i) Paige's entire expert testimony on the subject of Harrison's computers. *See Salgado* at 741, FN. 6 (citing Robert Matthew Lovein, *A Practitioner's Guide: Federal Rule of Civil Procedure 26(a) – Automatic Disclosure*, 47 Syracuse L.Rev. 225, 255 (1996)); *See Walsh v. McCain Foods Limited*, 81 F.3d 722, 727 (7th Cir. 1996) (The district courts are empowered with discretion to exclude testimony altogether or to limit an expert's testimony to that previously disclosed to the opposing party in the expert's original written report).

**Malibu's nondisclosure lacks substantial justification.** Under the circumstances, the partial report's lack of any stated opinion regarding Harrison's computers reeks of Malibu's bad faith. Harrison's expert witness, Bosaw and Associates LLC ("Bosaw"), entered the judicial arena on May 15, 2014 and specifically addressed inconsistencies in the March report. *See* Dkt. 180-2. The Bosaw Declaration highlighted that Paige found no evidence of Malibu's movies on

Harrison's computers and that none of the external storage devices identified by Paige were connected during the relevant period of infringement. Bosaw concluded: "There **IS NO** evidence reported by the Plaintiff's expert that demonstrates the Defendant is the likely infringer." *See* Id.

It was immediately clear at that time that Paige's March report had been challenged as vague, and wanting for lack of definitiveness and completeness. Despite having been called to task by Bosaw a month prior to the Order's June 16, 2014 deadline, Paige's partial report does not mention Harrison's computers or counter the specific challenges presented by Bosaw's Declaration. Instead, Malibu gave Harrison the same expert report it already gave him in March 2014, and the next day identified Paige as its expert witness for the purpose of "reviewing the Defendant's computers and hard drives and opining about anything they may discover."

**Malibu's failure prejudices Harrison**. Either Malibu has disclosed the extent of Paige's testimony or it has not. Paige "opining about anything they may discover" gives Paige the ability to express opinions not disclosed in his reports. This increases the likelihood that Harrison will be surprised by Paige's testimony on motion, at a hearing, or at trial, which will disrupt and lengthen the proceedings. This case is already over two (2) years old and Harrison has incurred significant expenses in defending this action.

Expert discovery is not a game of evasion. Paige either discovered it and stated his opinions in a written report by the deadlines set by the Order, or he did not. There is little question that Harrison will be severely disadvantaged if he is confronted for the first time on motion or at trial with Paige's previously undisclosed testimony regarding the relationship between what he found on Harrison's computers and the alleged infringements. Harrison will suffer severe prejudice and surprise because Paige will be able to say whatever Malibu wants him to say on motion or at trial, without adequate notice to Harrison. *See Salgado* at 741, FN. 6

(citing Richard M. Heimann & Rhonda L. Woo, *Import of Amended Federal Rule of Civil Procedure 26(a)*, 506 PLI/Lit 279, 293 (July-Aug. 1994)) ("The 'incentive for total disclosure' is the threat that expert testimony not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1). The availability of this sanction 'put[s] teeth into the rule'").

Unless this Court excludes Paige's testimony, or strictly limits Paige's testimony to the March report's opinions which comply with Rule 26(a)(2)(B)(i) and were timely disclosed by the Order's June 16, 2014 deadline, Rule 37(c)(1) is toothless and in desperate need of dentures. **This Court must put teeth into the rule and totally exclude Paige's testimony relating to Harrison's computers**, or in the alternative, exercise its discretion and strictly limit Paige's testimony to those statements in Paige's March Report the Court deems compliant with Rule 26(a)(2)(B)(i), which Malibu timely disclosed pursuant to the Order. *See Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d at 1292 ("Although temptations may exist, a litigant cannot expect to profit from its ill-gotten gains.").

    **II.** **PAIGE'S PARTIAL REPORT VIOLATES RULE 26(A)(2)(B)(II) AND (III) BECAUSE IT DOES NOT CONTAIN THE FACTS, DATA, AND EXHIBITS FROM PAIGE'S TEST OF IPP'S SOFTWARE WHICH PAIGE CONSIDERED IN FORMING HIS IPP TESTIMONY.**

Paige's partial report fails to disclose:

(i)      Torrent files created by Paige for the test;

(ii)    PCAP files created by IPP and Paige during the test;

(iii)   Screen captures of the four movies created by IPP and sent to Paige during the test;

(iv)   Communications between IPP and Paige that occurred during the test;

(v)    The data identifying all the unique IP addresses of the four virtual servers Paige rented and configured for the test;

(vi)    The four public domain movies Paige downloaded from the National Archive and encoded for the test;

(vii)   The torrent websites to which Paige uploaded the four torrent files for the public domain movies;[2]

(viii)  The dates on which Paige's testing of IPP's software took place; or,

(ix)    The place(s) where Paige conducted his test of IPP's software.

The exclusion of Paige's testimony about IPP's software is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was substantially justified or harmless. *See Musser*, 356 F.3d at 758 (citing *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996); *See* John *Vandivier v. United States of America*, No. 1:12-cv-000260 (S.D. Ind. Nov. 17, 2013).

Malibu's nondisclosure is totally unjustified.   It is "but one of a number of incidents comprising a disturbing pattern" of Malibu's refusals to provide responsive discovery to Harrison's requests for IPP's software and evidence.   *See Hard Surface Solutions, Inc.*, 271 F.R.D. at 616.  Malibu knows that expert testimony on the issue of the integrity and reliability of IPP's software and evidence is crucial to its case and will be contested by Harrison.   Malibu identified Paige as its expert witness in this regard, rather than IPP.  Malibu did this to shield IPP from depositions in the United States and from being questioned in the capacity of an expert witness.   Malibu has systematically resisted and evaded Harrison's discovery requests for

---

[2] Malibu's direct examination of Patrick Paige and Paige's testimony on direct at the Bellwether Trial were careful not to reveal this information, either:

Q:      After you created the dot Torrent files, what did you do?
A:      Those were uploaded to various Torrent websites.
Q:      Different Torrent websites?
A:      That's correct.
Q:      Kind of popular ones?
A:      Yes, the most popular ones. *Malibu Media v. Does,* No. 2:12-cv-02078, Dkt. 205 at 116 (E.D. Pa. June 28, 2013).

information about IPP's software, and for the INTERNATIONAL IPTRACKER v.1.2.1 software, itself.[3] Malibu's nondisclosure is consistent with its established pattern.

<u>Malibu's nondisclosure is prejudicial to Harrison</u>.  It inhibits Harrison's ability to:

(i)     Timely analyze and compare IPP and Paige's PCAP files and "additional information" with the PCAP files and additional information allegedly showing Harrison's infringements;

(ii)    Express an expert opinion based on comparison, analysis, and review of Paige's test facts and data in an expert report, thereby forcing Paige to provide a rebuttal report on the same subject matter by the Order's August 13, 2014 deadline, *See* Fed. R. Civ. P. 26(a)(2)(D)(ii); and

(iii)   Prepare thoughtful and pinpointed deposition questions about specific details contained in Paige's encoded torrent files and Paige and IPP's PCAP files, screen shot captures, and communications, which the partial report explicitly refers to as the basis for Paige's opinions about IPP's software.

Harrison's expert has been denied the opportunity to serve a report expressing opinions on Paige's IPP test facts and data and Paige's IPP testimony.  By denying Harrison's expert this opportunity, Paige and Malibu further deprived Harrison of rebuttal reports on the same subject matter, and the ***adequate notice of Paige's entire expert testimony intended by the rule.***  Paige's rebuttal report rounding out his entire expert testimony would have given Harrison the complete picture of Paige's expected testimony as intended by the rule.

Malibu's nondisclosures have ruined any possibility for an accurate, fair, and complete record of all expert testimony for the purposes of summary judgment. *See* S.D. Ind. L.R. 56-1 – Summary Judgment Procedure.  The purpose of discovery in general, and expert discovery in particular, is to promote and allow for the fair and orderly presentation of evidence on motion or at trial. Malibu's nondisclosures have defeated the purpose of expert discovery, and imposed

---

[3] According to Tobias Feiser, he has used several different (updated?) versions of IPP's INTERNATIONAL IPTRACKER, such as INTERNATIONAL IPTRACKER v.1.5.  *See Malibu Media, LLC v. John Doe*, D. Md. No. 1:14-cv-0223-MJG at ECF No. 4-5.

additional summary judgment procedure obligations on Harrison. "New" expert evidence, or expert evidence not already in the record, could be forthcoming from Malibu and Paige at any time.[4] *See* S.D. Ind. L.R. 56-1. Harrison is prejudiced because he will be forced to continually defend against expert evidence and testimony not contained in Paige's original reports on summary judgment or at trial. Malibu's nondisclosure is totally unjustified, and the prejudice to Harrison incurable, in light of the imminent deadlines for submitting dispositive motions in this case. *See* Dkt. 175 at 2, ¶ B.

That Harrison could have obtained the data and information through his own efforts or by asking Paige the "right" questions at deposition is immaterial. *See Musser* 356 F.3d at 759; *See Hard Surface Solutions, Inc.*, 271 F.R.D. at 617 (citing *Gregory v. Oliver*, No. 00-5984, 2002 WL 31972165, *1 (N.D. Ill. 2002) (**opportunity to depose expert does not make up for inadequate expert report**). Similarly, that Harrison has subpoenaed Paige for the information shows that Malibu never intended, and is not likely, to cure the prejudice. Malibu received notice of the subpoena and request for production to Paige and made no offer to cooperate in curing the prejudice caused by the nondisclosure. Harrison was harmed because it caused him to incur increased costs in preparing and issuing a Rule 45 subpoena and Rule 34 nonparty request for production to Paige demanding Paige's IPP test facts, data, and exhibits. *See* Exhibit I, "USPS Product and Tracking Confirmation." Harrison respectfully requests that this Court order Malibu or Paige to pay Harrison's expenses and reasonable attorney's fees incurred as a result of Paige's failure, in addition to ordering the automatic exclusion of Paige's testimony pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, and F.R.E. 702 and *Daubert*.

---

[4] Since Paige can opine about *anything he may have discovered* on the hard drives and IPP's software, the scope and content of Paige's expert witness testimony is endless.

Harrison possesses an inadequate report useless for the purpose of ascertaining the legitimacy of Paige's IPP testimony. The legitimacy of Paige's IPP testimony depends on the factual and scientific validity of his test facts and data of IPP's software. Paige has held himself out as an expert qualified to testify in federal court, but Malibu failed to insure Paige disclosed a report containing the empirical data and facts capable of lending legitimacy to Paige's expert testimony. *See Wallace v. Hounshel*, No. 1:06-cv-1560-RLY-TAB, "Order on Discovery Motion" (S.D. Ind. May 22, 208) (citing *Elgas v. Colorado Belle Corp.*, 179 F.R.D. 296, 300 (D. Nev. 1998) ("The disclosure of prior recorded testimony is designed to give the other party access to useful information to meet the proposed experts' opinions")). The mandatory remedy is the exclusion of Paige's IPP testimony on motion, hearing, or at trial pursuant to Fed. R. Civ. P. 37(c)(1).

### III. PAIGE'S PARTIAL REPORT DOES NOT LIST ALL CASES IN WHICH PAIGE TESTIFIED AS AN EXPERT AT TRIAL OR BY DEPOSITION DURING THE PREVIOUS 4 YEARS.

Paige's Curriculum Vitae lists "some" but not all cases in which Paige testified as an expert at trial or by deposition during the previous four years. *See* Ex. B. Paige does not list *United States v. Faxon*, 689 F.Supp.2d 1344, 1348-1349 (S.D. Fla. 2010) as a case in which Paige testified as an expert witness during the previous four years. *See* Ex. B. *Faxon* provides:

> This Court received testimony from Patrick Paige who is a computer forensic examiner with the Palm Beach County Sheriff's Office assigned to child pornography cases. His background, education, and special training were placed in the record. Mr. Paige explained that he conducted forensic examinations of the computer hard drives seized from the Defendant pursuant to a search warrant in this case. He explained how the Defendant's computers was using peer-to-peer file sharing software known as Limewire and Gigatrybe. These file sharing programs permitted other individuals to download files from the Defendant's computer and external hard drive. The forensic computer analysis of the Defendant's computer and external hard drive revealed numerous images of child pornography. Mr. Paige explained how this analysis takes place. The images are then run through various government databases to attempt to identify some of the children depicted in the photos and videos which were on the Defendant's computer and hard

drive. The National Center For Missing And Exploited Children was contacted since they have what could be referred to as a clearing house for such information. An analysis of the pictures and videos from the Defendant's computer and hard drive revealed images from what is referred to as a "Vicky Series" and "Misty Series." The victim referred to herein as Vicky is part of the "Vicky Series" and the victim referred to herein as Amy is part of the "Misty Series." There were exhibits admitted into evidence by this Court reflecting the analysis. *Id.* at 1348-49.

Rule 26(a)(2)(B)(v) requires the written report to contain **all cases** in which the witness testified at trial or by deposition as an expert witness during the previous four years, not just *some* cases. "Such information should be sufficient to allow a party to review the proceedings to determine whether relevant testimony was given." *Wallace*, No. 1:06-cv-1560 (S.D. Ind. May 22, 2008). "With this information, a party should be able to determine the type of claim presented and locate any recorded testimony." *Id.* (citing cases).

Paige's nondisclosure lacks substantial justification and is prejudicial to Harrison. Paige should know what cases in which he has testified as an expert witness at trial or by deposition during the previous four years. Paige's omission was not an oversight. Paige explicitly says that it is a list of *some* but not *all* cases. The partial report does not identify *Faxon*, and Paige does not cite *Faxon* in any of his other declarations or on his website where he identifies other cases. *See* Exs. B-D; http://www.computerforensicexaminer.com. Malibu's nondisclosure is prejudicial because there may be additional *highly relevant* cases in which Paige has testified, such as *Faxon*, but which Paige omitted from the partial report. Harrison does not have the whole of Paige's prior testimony to potentially identify inconsistent positions Paige has taken in previous cases for use on motion or Paige's cross-examination at trial. Harrison is not required to expend his own resources searching for additional cases Paige may have omitted from the partial report, but Harrison will be harmed when he incurs additional expenses to locate cases Paige was required to disclose.

**IV.** **THIS COURT SHOULD DISALLOW MALIBU FROM USING ANY INFORMATION AND WITNESSES TO REBUT THE TESTIMONY OF HARRISON'S EXPERT WITNESSES BECAUSE MALIBU DID NOT TIMELY DISCLOSE ANY REBUTTAL WITNESSES OR REPORTS IN ACCORDANCE WITH THE DEADLINES FOR DOING SO UNDER THE ORDER.**

"Time and time again the Seventh Circuit has emphasized that '[i]gnoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional kind) is ruinous." *Hard Surface Solutions*, 271 F.R.D. at 615 (citing *Golden Elevator*, 27 F.3d at 302). "In some contexts, a district court has the discretion to conclude that even a day's delay ought not to be excused." *Id.* (citing *Reales v. Consolidated Rail Corp.*, 84 F.3d 993, 996 (7th Cir. 1996); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We live in a world of deadlines… The practice of law is no exception. A good judge has a right to assume that deadlines will be honored'); *Harris v. Owens-Cornig Fiberglas Corp.*, 102 F.3d 1429, 1433 (7th Cir. 1996)); *See Scaggs v. consolidated Rail Corp.*, 6 F.3d 1290, 1295-96 (7th Cir. 1993).

Notably, Malibu did not identify any expert witness or serve a written report containing opinions specific to IPP's evidence of the alleged infringements. Malibu was required to disclose its expert witnesses and written reports addressing the specific infringement evidence by June 16, 2014, before Harrison was required serve his expert reports on the issue. *See* Fed.R.Civ.P. 26, Notes of Advisory Committee – 1993 Amendment. Harrison was prejudiced by this failure since Bosaw's report contains detailed and complete opinions and the basis and reasons for them specific to IPP's evidence. Malibu, the party with the burden of proof, was required to show its cards on IPP's evidence first.

Nevertheless, Malibu did not identify an expert rebuttal witnesses or serve any rebuttal reports by the Order's August 13, 2014 deadline for doing so. As of the date of the filing of the instant Motion and Brief in Support, Malibu has not identified any expert rebuttal witnesses or served any rebuttal reports. This Court must limit the testimony of Malibu's expert witnesses to those timely disclosed in compliance with Fed. R. Civ. P. 26(a)(2)(B) and (D)(ii), and exclude any information or witnesses which Malibu may use to supply evidence on motion, at hearing, or trial to rebut Bosaw's expert witness testimony in this matter.

As discussed above, Malibu's failure is prejudicial because Harrison will not have adequate notice of any rebuttal opinions or testimony offered by Paige, or any other witness or information, on summary judgment or at trial offered by Malibu in rebuttal to the opinions contained in Bosaw's expert report. The parties participated in establishing the Order's expert disclosure deadlines with the expectation that the deadlines would be honored. *See Hard Surface Solutions* at 617 (citing cases) ("Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery. If that were the determining factor, no court would preclude expert or other testimony that was unreasonably disclosed contrary to the discovery deadlines set by the Court"). As Harrison has honored said deadlines himself, Harrison respectfully requests that this Court deem Malibu's expert testimony to be fully and completely disclosed as of August 13, 2014 in a manner consistent with the relief requested herein and in Harrison's Motion.

VI. **PAIGE'S TESTIMONY ABOUT IPP'S SOFTWARE IS INADMISSIBLE UNDER F.R.E. 702 AND *DAUBERT* BECAUSE PAIGE HAS NEVER SUBMITTED THE FACTS AND DATA FROM HIS TEST OF IPP'S SOFTWARE TO ANY OTHER PERSONS FOR SCRUTINY OR REVIEW.**

This Court should exclude Paige's IPP testimony for the additional reason that Paige's testimony is inadmissible under F.R.E. 702 and *Daubert*. IPP has only permitted one individual

to ever test its software: Patrick Paige. Paige's IPP test facts and data have never been subjected to peer review and publication, or submitted to any other person for scrutiny or review, or to independently adjudge the falsifiability, refutability, or testability of Paige's principles and methods of which his testimony is product. *See Daubert* at 593. **Paige did not test for errors or even attempt to ascertain the potential rate of error of IPP's software as part of his testing.** *See* Ex. C; *See Id.* at 594. Paige's test of IPP's software has absolutely zero support in any reputable scientific or technical community. *Id.*

A scientist who refuses to disclose the empirical data underlying his tested theory is not a scientist; he is a magician who is hiding a secret. Absent testability, refutability, or falsifiability, Paige's "scientific knowledge" about IPP's software falls well short of all standards of evidentiary reliability and is nothing more than a magic act. Paige's scientific testing and methods are not properly viewed with skepticism, but with outright cynicism. *See Daubert* at 594.

Malibu succumbed to the temptation of a possible ill-gotten gain against Harrison because Malibu's expert witnesses have never been challenged, and Malibu has gotten away with it before. Malibu's conduct described above is little more than an impermissible arrogation of "the right to decide for itself when and what would be produced under Rule 26," and Malibu failed to recognize how its conduct would negatively impact the admissibility of Paige's testimony under *Daubert.* *See Hard Surface Solutions*, 271 F.R.D. at 614-15 (citing *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994) ("Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won")); *See Simplex, Inc.*, 847 F.2d at 1292 ("Although temptations may exist, a litigant cannot expect to profit from its ill-gotten gains").

### III. CONCLUSION

For all of the foregoing reasons, Harrison respectfully requests that this Court enter an order granting his Motion to Exclude the Testimony of Plaintiff's Expert Witnesses and the relief requested therein and in this Brief in Support, and for all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)
*Attorney for Defendant*
*Michael Harrison*

### CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through the Court's filing system.

*/s/ Gabriel J. Quearry*
Attorney for Defendant