IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| Plaintiff, | : | |
| v. | : | |
| **MICHAEL HARRISON,** | : | |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S FIRST MOTION FOR ENLARGEMENT OF TIME TO COMPLETE DISCOVERY**

Pursuant to this Court's August 29, 2014 Scheduling Order [Dkt. 218], Defendant Michael Harrison ("Harrison"), by counsel, respectfully submits his Response to Plaintiff's First Motion for Enlargement of Time to Complete Discovery.

This Court should enter an order: (i) denying Plaintiff Malibu Media, LLC's ("Malibu") motion in its entirety; and, (ii) maintaining all deadlines established by the Case Management Order [Dkt. 175] approved and ordered by the Court on April 15, 2014.

**I.     LEGAL STANDARD**

    **A.     FEDERAL RULE OF CIVIL PROCEDURE 16(b)(4)**

Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed.R.Civ.P. 16(b)(4); *See United Consumers Club, Inc. v. Prime Time Marketing*, 2009 WL 3200540, *7 (N.D Ind. Sep. 25, 2009). S.D. Ind. L.R. 16-1(e) states that "[a]bsent court order, deadlines established in any order or pretrial entry under this rule may not be altered unless the parties and the court agree, or for good cause shown." S.D. Ind. 16-1(e).  Rule 16(b)(4) "requires a court to modify a CMP upon a showing of

'good cause.'" *See Hollis v. Defender Security Company*, No. 1:09-cv-01178-WTL-JMS (S.D. Ind. March 19, 2010). The Southern District of Indiana considers the diligence of the party seeking the modification *and* whether the nonmoving party will be prejudiced by the modification." *See Id.* (citing *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005); *Kortum v. Raffles Holdings, Ltd.*, 2002 Dist. LEXIS 21252, at *17 (N.D. Ill. 2002) ("Rule 16 can and does consider prejudice as part of its good cause analysis.")); *See Community Bank v. Progressive Casualty Insurance Company*, No. 1:08-cv-01443-WTL-JMS (S.D. Ind. Jan. 28, 2010) ("When considering possible good cause to amend a case management plan, courts look to both the diligence of the party seeking to amend the plan and to the potential prejudice to the opposing party."). "Courts have a legitimate interest in ensuring that the parties follow scheduling orders in order to ensure prompt and orderly litigation." *United States v. 1948 South Martin Luther King, Dr.*, 270 F.3d 1102, 1110 (7th Cir. 2001).

### B.  DISCOVERY DEPOSITIONS AND DEPOSITIONS *DE BENE ESSE*

"Because discovery is conducted for the purpose of gathering new information, some courts have drawn a distinction between depositions taken during the course of discovery, with the goal of ascertaining new information, and trial depositions taken to preserve information that the party already has knowledge of, but would otherwise be unavailable." *Stuhlmacher v. The Home Depot U.S.A., Inc. and Tricam Industries, Inc.*, No. 2:10-cv-00467-APR (N.D. Ind. March 4, 2014) (citing *Spangler v. Sears, Roebuck and Co.*, 138 F.R.D. 122, 124-25 (S.D.Ind. 1991)). A deposition *de bene esse* "is a fancy way of saying that the deposition will be 'taken from a witness who will likely be unable to attend a scheduled trial.'" *See The Estate of Terry Gee Jr. v. Bloomington Hospital and Health Care System, Inc.*, No. 1:06-cv-00094-TWP-TAB (S.D. Ind. March 6, 2012) ("[The Southern District of Indiana has previously recognized the practical

distinction between trial depositions and discovery depositions. As then District Judge Tinder recognized, '[a]lthough the Federal rules of Civil Procedure do not clearly differentiate, this distinction is generally recognized by the courts in this judicial district.") (citing *Spangler* at 124).

"Accordingly, '[w]hile discovery is closed under the terms of [the] court's scheduling order, that order does not prevent a party from memorializing a witness' testimony in order to offer it at trial.'" *Id.* "[T]he Court's task is to determine whether this deposition is actually being taken to preserve trial testimony, or if that is merely an after-the-fact excuse to take a belated discovery deposition." *Id.* "[T]he Court should consider a variety of factors in making this determination, including the unavailability of the witness for trial, the potential for prejudice to the opposing parting, and whether the deposing party knew the information the potential witness would testify to prior to the deposition." *Id.* (citing *Bamcor LLC v. Jupiter Aluminum Corp.*, 2010 WL 4955545, at *1 (N.D. Ind. Nov. 29, 2010)).

In *McDermott v. Liberty Maritime Corp.*, the court denied *de bene esse* depositions, because the necessity to take the depositions did not result from the need to preserve testimony the witnesses would otherwise have given at trial "based on unforeseen events arising after the close of discovery," and the deposing party had sufficient notice the witnesses were unavailable for trial purposes. 2011 WL 2650200, at *3 (E.D.N.Y. July 6, 2011).

II.  FACTS AND ARGUMENT

   A.  HARRISON'S DEPOSITION TESTIMONY

On July 25, 2013, Harrison made his Rule 26(a) initial disclosures. Harrison's disclosures included:

   (i)   Harrison's two (2) computer hard drives on one (1) external hard drive;

    (ii)      Harrison's employee time sheet for the week of the alleged hit date on Exhibit A of Plaintiff's Third Amended Complaint [Dkt. 59-1]; and,

    **(iii)**      **Harrison's January 26, 2013 Amazon.com receipt showing the billing and shipping addresses for a new 128GB Solid State Drive ("SSD"), and the name and contact information for the individual who purchased the SSD.**

Harrison supplemented his initial disclosures on December 23, 2013 and provided Malibu with a copy of his X-Box gaming console files.

On August 7, 2014, 22 days before the deadline to complete discovery, Malibu finally deposed Harrison and learned that the 128GB SSD shipped to Harrison on January 26, 2013 is the hard drive for Harrison's SAMMY computer ("Sammy").  During Harrison's deposition, he provided the names and telephone numbers of several individuals Malibu claims in its instant motion, "may also have relevant information regarding Defendant's destruction of evidence." Twenty-eight (28) days have elapsed since Harrison provided the contact information for these individuals.  Malibu has not attempted to communicate with any of them.  Moreover, Malibu has known the name, address, and telephone number of the individual who actually purchased the 128GB SSD since July 25, 2013.  Malibu has attempted to contact this individual zero (0) times since July 25, 2013.

It is worth noting that a year earlier, on **August 13, 2013**, Malibu's computer forensic examiner, Patrick Paige ("Paige"), completed his examination and forensic report regarding Harrison's computer hard drives. Despite the fact that Paige's August 13, 2013 Forensic Summary Report clearly indicates that Windows 7 Home Premium was installed on Sammy on February 6, 2013, and that Malibu has had Harrison's January 26, 2013 Amazon receipt for the 128GB SSD since July 25, 2013, neither Paige's Forensic Summary Report nor his March 14, 2014 declaration state any opinions whatsoever regarding Sammy.

Malibu has not been diligent in conducting discovery in a timely manner in order to meet the August 29, 2014 deadline for completing discovery.

### B. PLAINTIFF'S FOURTH AMENDED COMPLAINT

On March 7, 2014, the Court granted Malibu's Motion for Leave to Amend the Third Amended Complaint, and the Clerk filed Plaintiff's Fourth Amended Complaint and attached exhibits on March 7, 2014. *See* Dkts. 164, 165.

In every case, Malibu files a Motion for Leave to Serve Third Party Subpoenas Prior to Rule 26(f) Conference after filing its complaint. Malibu then *conducts discovery* prior to the time permitted by the Federal Rules of Civil Procedure and subpoenas Internet Service Providers ("ISPs") to learn the identities of Internet account holders associated with alleged infringing IP addresses. The ISPs respond to Malibu's *discovery requests* and provide Malibu with the names, addresses, and telephone numbers of Internet account holders associated with the IP addresses and specific hit dates and times identified by Malibu in its subpoenas to the ISPs. Malibu *conducts discovery* prior to the time permitted by the Federal Rules in order to obtain the identities of Internet account holders and proceed with its copyright infringement claims against named or anonymous defendants.

Malibu's early discovery requests and the ISP discovery responses serve a second purpose. ISP responses provide the following critical pieces of evidence:

(i) That an IP address given to Malibu by IPP International U.G. ("IPP Int. UG") actually exists, or existed, in the records of an ISP;

(ii) That the ISP assigned the IP address to an Internet account holder during the period of the alleged infringement; and,

  (iii) That the IP address the ISP assigned to the Internet account holder matches the specific hit date and time, movie file hash, and IP address connected with the alleged infringement(s) pled by Malibu in its complaint.

Without the above-mentioned subpoena responses from an ISP, Malibu has a case that is "dead in the water."

  Malibu's Fourth Amended Complaint added five additional counts of direct copyright infringement against Michael Harrison. *See* Dkt. 165-1. Malibu's Fourth Amended Complaint contains a hit date and time for the movie, "Pretty Back Door Baby," that is different from the hit date and time for "Pretty Back Door Baby" contained in Exhibit A of Malibu's Third Amended Complaint. *Cf.* Dkts. 59-1 and 165-1 (The Third Amended Complaint's hit date is July 30, 2012 at 20:14 (UTC) and the Fourth Amended Complaint's hit date is September 9, 2012 at 20:33:43 (UTC)).

  Comcast's Subpoena Response to Malibu's August 27, 2012 Subpoena to Comcast is for an inoperative (third amended) complaint. Since March 7, 2014, the date the Clerk filed Malibu's Fourth Amended Complaint, Malibu has failed to issue a discovery request to Comcast seeking the identity of the subscriber assigned IP address 98.220.43.119 based on any one of the six (6) specific hit dates contained in Exhibit A of its Fourth Amended Complaint. In other words, Malibu failed to obtain any evidence whatsoever supporting the allegations of its operative complaint and cannot show, via Comcast, that Harrison was ever assigned IP address 98.220.43.119 at any time from September 1, 2012 to September 30, 2012. *See* Dkt. 165-1.

  Based on Malibu's Motion for the Entry of An Order Authorizing Comcast to Comply With a Third Party Subpoena ("Comcast Motion"), it still is not clear if Malibu is aware of its mistake. Even if Malibu is aware of its mistake, it is still undisputed that Malibu sat on its hands

for six months and failed to meet the August 29, 2014 deadline for completing discovery when Malibu could have easily met the deadline.

      C.      **MALIBU'S COMCAST MOTION**

Malibu's Comcast Motion states that its subpoena to Comcast:

> [W]ill be limited to documents and Fed.R.Civ.P. 30(b)(6) deposition topics that refer or relate to: (a) Plaintiff's ability to lay the foundation for the introduction of the correlation of IP Address to subscriber for purposes of use at trial (i.e., laying the foundation that the correlating documents produced by the ISPs are business records); (b) Information about the reliability of the ISP's correlating technique; (c) DMCA notices and if applicable six strike notices sent to the Defendant; (d) Defendant's Bandwidth usage; (e) The number of Comcast internet subscribers in Indiana in July 2012; (f) The ratio of IP addresses to internet subscribers as of July 2012. *See* Dkt. 216 at 2, ¶ 5.

Malibu calls Comcast's deposition correlation testimony "outcome dispositive," and states, "if Plaintiff cannot introduce the correlating evidence into trial then Plaintiff will lose this case." *See* Dkt. 197 at 2 ¶ 5. These are very strange statements. If Malibu does not have a subpoena response from Comcast connecting the Fourth Amended Complaint's hit dates and IP address with Harrison's Comcast account, then Comcast cannot provide any testimony about its correlation of the IP address to the subscriber or about the reliability of its correlating technique – because, again, Comcast has not correlated the Fourth Amended Complaint's hit dates and IP address to a Comcast subscriber.

Malibu had six (6) months to issue a third party subpoena to Comcast regarding the six hit dates and times for IP address 98.220.43.119 as contained in Exhibit A of Malibu's Fourth Amended Complaint, but failed to do so. Comcast's subpoena response may have revealed that Harrison was not assigned IP address 98.220.43.119 at any time from September 1, 2012 to September 30, 2012; it may have revealed that he was. Either way, Malibu failed to conduct discovery for six months in this case that it **knew with certainty** since April 23, 2014 would be necessary in its case against Michael Harrison.

### D. MALIBU'S COMCAST EMAILS

In an email dated April 23, 2014, Malibu's General Counsel, Keith Lipscomb ("Mr. Lipscomb"), informs John Seiver ("Mr. Seiver"), Counsel for Comcast, that "*Malibu Media v. Harrison*, 1:12-cv-01117-WTL-MJD (S.D. In. [sic])," is a case where "additional documents and Comcast deposition may be necessary."[1] *See* Exhibit A. Mr. Lipscomb writes, "Below is a summary of the three cases where Malibu *may* need to depose Comcast. We *will* need additional paper discovery in these cases re: DMCA notices and bandwidth usage." *See* Ex. A. Mr. Lipscomb continues, "[W]hile these cases are at the stage where I need to protect Malibu by ensuring that Comcast's testimony will come into evidence at trial, I still think there is a very good chance that these cases will settle or get adjudged prior to trial… **I will still need a declaration attesting to the accuracy and reliability of the correlation (as well as the additional facts re: DMCA notice bandwidth, etc. if applicable for purposes of summary judgment. If that is that route we go down, I will prepare a proposed draft quoting from the last deposition when it comes time**." *See* Ex. A (emphasis mine).

The reason that Malibu delayed its additional Comcast discovery is readily apparent. Malibu does not want to burden Comcast unless it is absolutely necessary. Comcast already has to comply with a large number of Malibu's "early discovery" subpoenas, and if Comcast is required to devote further manpower to Malibu's cases by complying with subpoenas *duces tecum* and providing deposition testimony, Malibu's relationship with Comcast may take a turn for the worse. Malibu depends on Comcast to keep giving Malibu the names of alleged

---

[1] Mr. Lipscomb's emails repeatedly use the words "we" and "our." In other emails, after Mr. Seiver tells Mr. Lipscomb, "I thought Nicoletti takes his orders from you," Lipscomb states, "Nicoletti is lead counsel in that case. I just assist with it. Ultimately, he is responsible for that case. Significantly, I am not admitted in his states." *See* Exhibit B. Lipscomb's emails display a distinctly familiar writing style that leads Harrison to question what Mr. Lipscomb means by "I just assist with it."

infringers, and Malibu's need to maintain a smooth relationship with Comcast does not excuse Malibu's lack of diligence in taking steps to obtain additional discovery from Comcast in a timely manner.  Mr. Lipscomb's email is a strong indicator that Malibu has not been diligent in meeting this case's deadline for completing discovery because Malibu actually knew since April 23, 2014 that further discovery from Comcast would be necessary.

Moreover, Malibu already knows what Comcast's deposition testimony will be should Malibu be permitted to depose Comcast.  Malibu's argument that "neither Plaintiff nor Defendant knows what relevant information will be revealed at Comcast's [or Malibu's] deposition" is ridiculous.  *See* Dkt. 216 at 3, ¶ 10.  Malibu is attempting to disguise what resembles a deposition *de bene esse* as a discovery deposition.  Malibu would not be permitted to conduct a deposition *de bene esse* of Comcast because Comcast would be available to testify at trial.  Malibu frames the potential Comcast deposition as a discovery deposition because it is Malibu's only possible out in this situation. Malibu is basically asking the Court to put a Band-Aid on Malibu's self-inflicted boo-boo.  This Court should decline Malibu's request.

### D.  THE PARTIES AGREED AND THE COURT APPROVED AND ORDERED THE CURRENT CASE MANAGEMENT PLAN

On April 14, 2014, "[a]t the conclusion of the settlement conference, the parties discussed a Case Management Order," which was approved by the parties and entered by separate order on April 15, 2014. *See* Dkt. 175, 176 ("Discovery due by 8/29/2014. Dispositive Motions due by 9/19/2014.").

On April 14, 2014, Counsel for Harrison and Counsel for Malibu participated with Judge Mark J. Dinsmore in establishing the deadlines in the current Case Management Plan.  Counsel for both parties agreed to the plan and the Court approved and ordered it.  Since that time, Harrison has strived to meet the deadlines set forth in the Case Management Plan with the

expectation that both parties would honor the deadlines in order to resolve this case in a cost and time efficient manner. This Court should deny Malibu's motion to extend the deadline for completing discovery because an extension of the discovery deadline will prejudice Harrison.

> E. **MODIFICATION OF THE DEADLINE FOR COMPLETING DISCOVERY WILL PREJUDICE HARRISON AND WILL LIKELY REQUIRE MODIFICATION OF THE DISPOSITIVE MOTIONS DEADLINE**

On August 18, 2014, Harrison filed his Motion to Exclude the Testimony of Plaintiff's Expert Witnesses. *See* Dkt. 213. As Counsel for Malibu states in his Motion for Extension of Time to Respond to Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Witnesses, Harrison's motion and supporting brief are over thirty-two (32) pages long with over fifty (50) pages of exhibits. *See* Dkt. 219 at 1, ¶ 2. A great amount of time and expense went into Harrison's motion. It required numerous hours researching case law and drafting the motion and supporting brief. Nevertheless, Harrison's motion was filed before the September 19, 2014 deadline for filing such motions according to the Case Management Order. *See* Dkt. 175 at 1, ¶ C. Harrison filed his critical motion with the expectation that his reply brief would present a case theory cohesive with his motion for summary judgment expected by the Court and required to be filed by September 19, 2014. *See* Dkt. 175 at 2, ¶ B.

Now, in addition to its request to enlarge the time for completing discovery by 90 days, Malibu is requesting a two-week extension of time to respond to Harrison's Motion to Exclude the Testimony of Plaintiff's Expert Witnesses because "the issues raised by Defendant have not been raised in any previous Malibu Media lawsuit so Plaintiff will need to conduct extensive research and compose a thoughtful response." *See* Dkt. 219 at 1, ¶ 2.

Malibu's motion to enlarge the time for completing discovery and for an extension of time to respond to Harrison's Motion to Exclude the Testimony of Plaintiff's Expert Witnesses present a total picture that says Malibu is not prepared for summary judgment.

If the Court grants Malibu's instant motion, it will either require Harrison to file amended motions for summary judgment or require the Court to modify the summary judgment deadline. This will prejudice Harrison because he will incur additional costs preparing amended motions for summary judgment, or it will render his Motion to Exclude the Testimony of Plaintiff's Expert Witnesses ineffectual. Harrison argued in his Motion to Exclude the Testimony of Plaintiff's Expert Witnesses that he has and will continue to suffer prejudice as a result of Malibu and Patrick Paige's failure to comply with Federal Rule of Civil Procedure 26(a)(2)(B). Extension of the discovery deadline and the September 19, 2014 dispositive motions deadline will allow Malibu to counter that Harrison is not prejudiced by Malibu and Paige's failure to comply with Rule 26(a)(2)(B) because Paige will have additional time to comply with the Rule and Harrison will have additional time to conduct expert discovery. Harrison's costly and timely filed Motion to Exclude the Testimony of Plaintiff's Expert Witnesses will have the force of a blank slate, and uncertainty will loom over Harrison's motion for summary judgment, which Counsel for Harrison is already in the process of preparing.

### III. CONCLUSION

There comes a point when a Court must tell a party "too bad." Counsel for Harrison is extremely busy just as Counsel for Malibu is extremely busy. We are all extremely busy. Extending deadlines will not change that fact.

This case takes up too much time. It is simple, and ready and ripe for summary judgment. "Not all copying … is copyright infringement. To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Company*, 499 U.S. 340, 361 (1991); *See Incredible Technologies, Inc. v. Virtual Technologies, Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005); *See* Federal Civil Jury Instructions of the Seventh

Circuit (2009 rev.) at 264.

Malibu has had over two years to conduct discovery and gather evidence to prove the two elements necessary to establish copyright infringement, but failed to do so. For all of the foregoing reasons, Malibu has not shown good cause for extending the deadline to complete discovery and Malibu's instant motion should be denied.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)
*Attorney for Defendant*
*Michael Harrison*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Gabriel J. Quearry*
Attorney for Defendant