UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:12-cv-01117-WTL-MJD |
| | ) | |
| MICHAEL  HARRISON, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO EXCLUDE
AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY**

This matter comes before the Court on Defendant's Motion to Exclude the Testimony of

Plaintiff's Expert Witnesses, [Dkt. 212], and Plaintiff's Motion for Leave to File Sur-Reply.

[Dkt. 255.]  For the reasons set forth below, the Magistrate Judge **DENIES** the motion to file a

sur-reply and recommends that the Court **GRANT IN PART** and **DENY IN PART** the motion

to exclude.

## I.      Background

Malibu Media, LLC, ("Plaintiff") filed suit against Michael Harrison ("Defendant") and

others, alleging direct and contributory copyright infringement. [Dkt. 59 at 1.] Plaintiff alleged

that Defendant downloaded a BitTorrent client on his computer and accessed torrent websites to

upload and download Plaintiff's copyrighted files, including those related to Plaintiff's X-Art

website. [*Id.* at 4-5.] To identify Harrison and other defendants, Plaintiff hired IPP, International

UG ("IPP") to identify the IP addresses being used by those people uploading and downloading

1

Plaintiff's work. [*Id.* at 6.] IPP did so with forensic software named International IPTracker v1.2.1. [*Id.*]

Plaintiff retained Patrick Paige to examine Michael Harrison's computer hard drive. [Dkt. 213-4 at 1-4.] Paige examined the drive in August 2013 and found evidence of BitTorrent use and torrent files. [*Id.* at 4.] He executed a declaration describing his investigation of Harrison's hard drive on March 14, 2014 [*Id.* at 4.] The same day, Plaintiff served a copy of the declaration and four supporting exhibits (the "March Report") on Defendants. [Dkt. 213 at 2.] The exhibits consisted of 1) a summary of the investigation indicating that there was evidence of torrent use but no evidence of X-Art related files [Dkt. 213-5]; a registry report listing the various torrent files discovered [Dkt. 213-6]; a list of external storage devices that had been connected to one of two partitions in Harrison's hard drive [Dkt. 213-7]; and a list of external storage devices that had been connected to the second of the two partitions. [Dkt. 213-8.]

On April 15, 2014, the Court entered a case management plan requiring Plaintiff to identify any expert witness and serve required expert witness reports under Fed. R. Civ. P. 26(a)(2)(B) on or before June 16, 2014. [Dkt. 175 at 1.] On June 17, 2014,[1] Plaintiff served on Defendant its "Expert Witness List and Partial Report" (the "June Report"). [Dkt. 213-1.] The June Report identified Patrick Paige as Plaintiff's expert for the "purpose of: (a) opining about IPP, International U.G. software, and (b) reviewing the Defendant's computers and hard drives and opining about anything they may discover." [*Id.*] With the report were Paige's curriculum vitae, including "a list of some of the cases" in which Paige has testified, [Dkt. 213-2], and a declaration in which Paige described the steps he took to test the accuracy of IPP's software. [Dkt. 213-3.]

---

[1] The Court expects the parties to meet the deadlines in the case management plan, but Defendant does not argue that the one-day delay in disclosure was grounds for excluding Paige's testimony. [*See* Dkt. 213.]

On July 23, 2014, counsel for Defendant served on counsel for Plaintiff a notice that he planned to depose Paige on August 19, 2014. [Dkt. 233. at 4-5.] Paige, however, informed Plaintiff's counsel that he was never served with a subpoena for a deposition. [*Id.* at 5.] Plaintiff's counsel contacted Defendant's counsel to resolve the confusion, but Defendant's counsel never responded and the deposition never occurred. [*Id.* at 5.]

On July 28, 2014, counsel for Defendant served on Paige a subpoena for production of documentary evidence, seeking the materials Paige had used to test the IPP software. [*Id.* 233 at 2-3.] Paige did not comply with the request on the grounds that the subpoena violated the 100-mile provision of Fed. R. Civ. P. 45(c)(2)(A). [*Id.* at 3.] Defendant then requested electronic versions of Paige's materials, but Paige offered to send physical copies, provided Defendant paid for postage. [*Id.* at 3-4.] Defendant declined the offer and notified Paige that he would instead file a motion to compel. [*Id.* at 4.]

On August 18, 2014, Defendant filed the current Motion to Exclude the Testimony of Plaintiff's Expert Witnesses. [Dkt. 212.] The Court referred this motion to the Magistrate Judge for proposed findings and recommendations. [Dkt. 263.] The parties briefed the motion and Plaintiff then filed the current Motion for Leave to File Sur-Reply. [Dkt. 255.]

## II.    Summary of Arguments

Defendant argues that the Court should exclude Paige from testifying or offering evidence because Plaintiff's expert report does not meet the requirements of Fed. R. Civ. P. 26(a)(2). [Dkt. 213 at 17.] He specifically faults the report for failure to comply with 26(a)(2)(B)(i); (ii) and (iii); and (v). [*Id.* at 17, 23, 27.] As an alternative or additional basis for exclusion, Defendant argues Paige's testimony is inadmissible under Fed. R. Evidence 702 and

3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) because Paige has never submitted his data or methodology to others for testing or review. [*Id.* at 30.]

Plaintiff responds that its disclosures fulfilled the requirements of Rule 26(a)(2)(B)(i), (ii) and (iii), [Dkt. 233 at 7], and that any failure to comply with 26(a)(2)(B)(v) did not prejudice Defendant. [*Id.* at 13.] Plaintiff also argues that Defendant's allegations under *Daubert* are conclusory and unsupported. [*Id.* at 17.]

In reply, Defendant argues the expert report was improper because it merely "referenced" the facts upon which Paige's testimony rests, rather than "containing" the facts. [Dkt. 248 at 1-2.] Defendant also attempts to bolster his claim of prejudice by referring to a motion for sanctions that Plaintiff filed while the current motion to exclude was pending. [*Id.* at 5.]

The Court will address the sufficiency of the expert report under Rule 26 and then address Defendant's *Daubert* argument.

### III.    Legal Standard: Rule 26

A party must disclose "the identity of any [expert] witness it may use at trial" and accompany this disclosure with "a written report" that "must contain (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; [and] (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B).

"The purpose of the report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response." *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010). The report should be "complete and detailed," such that the report may "eliminate the need for some [expert]

depositions or at least reduce the length of the depositions." Fed. R. Civ. P. 26, Advisory Committee's Note (1993 Amendments). Similarly, the Seventh Circuit directs that "the report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 n.6 (7th Cir. 1998). The disclosure, however, is limited to "facts or data," and need not contain "theories or mental impressions of counsel." Fed. R. Civ. P. 26, Advisory Committee's Note (2010 Amendments).

If a party fails to disclose information or a witness under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This sanction "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado*, 150 F.3d at 742. Factors to assess in determining whether an error is harmless are "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). The district court has "broad discretion in evaluating whether a Rule 26(a) violation is either substantially justified or harmless," and "[t]otal exclusion of an expert's testimony is an extreme sanction." *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 840 F. Supp. 2d 1072, 1081 (N.D. Ill. 2012).

## IV.    Discussion

### 1.  Rule 26(a)(2)(B)(i)

An expert report must include "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Defendant finds Paige's reports deficient because 1) they do not explain the relationship between Plaintiff's allegation of direct copyright infringement and the finding of zero X-Art related files on Defendant's computer [Dkt. 213 at 18]; and 2) they do not provide a complete account of Paige's opinions. [Dkt. 213 at 20.]

Defendant's first argument is not persuasive. Defendant notes that the March Report furnished to Defendant indicates Paige found no X-Art related files on Defendant's computer—a finding that would be beneficial to Defendant. [Dkt. at 18.] Defendant infers from this that Paige must be prepared to offer other, undisclosed opinions that will presumably be more damaging to Defendant, such that the reports Defendant received were not "complete." [*See* Dkt. 18-19.] As noted above, however, expert disclosures need not include "theories or mental impressions of counsel." Fed. R. Civ. P. 26, Advisory Committee's Note (2010 Amendments). Thus, Plaintiff has no obligation to include in its expert disclosures its exact plans for the use of Paige's testimony, and the failure to explain the connection between Paige's opinion and Plaintiff's case does not violate Rule 26.

Defendant's second argument is stronger. As Defendant observes, [Dkt. 213 at 20], the very title of the June Report—"Plaintiff Expert Witness List and *Partial* Report" [Dkt. 231-1 (emphasis added)]—indicates it does not provide the "complete" description of Paige's testimony required by Rule 26(a)(2)(B)(i). Further, Plaintiff states in the June Report that it offers Paige for the purpose of "reviewing the Defendant's computers and hard drives and

opining about anything [he] may discover." [Dkt. 213-1 at 1.] The Court agrees with Defendant that this vague phrase does "not provide adequate notice of the substance" of Paige's testimony. [Dkt. 213 at 20; *Meyers*, 619 F.3d at 734.] Far from delivering the "complete and detailed" opinions of the expert, Fed. R. Civ. P. 26, Advisory Committee's Note (1993 Amendments), Plaintiff has left the door open for Paige to testify, in Plaintiff's own words, about "anything."

Plaintiff responds that Defendant has misinterpreted this statement in Plaintiff's report. [Dkt. 233 at 8.] Plaintiff explains that the phrase is "intended to address the situation where Paige has not yet received the hard drives from the Defendant and conducted an examination thereof or issued a final report." [*Id.*] In this case, however, Plaintiff states that Paige has already conducted the investigation of Defendant's hard drive. [*Id.*] Also, referring to the March Report, Plaintiff states that Defendant already has Paige's final report, and thus already knows the findings that Paige will present at trial. [*Id.*]

The Court agrees that the March Report provides a much more extensive discussion of the subject of Paige's testimony. That report includes both a declaration describing the procedures Paige followed to examine the hard drive and, as noted above, four exhibits detailing the results of the examination. [Dkts. 213-4 through 213-8.] These exhibits contain the exact name of the torrent program Paige found on Defendant's hard drive [Dkt. 213-5 at 2]; twenty-three pages describing the specific torrent files found on Defendant's hard drive [Dkt. 213-6]; and two lists describing the sorts of external devices that were attached to Defendant's hard drive. [Dkts. 213-7 & 213-8.] The report thus contains the sorts of details necessary to provide "adequate notice," *Meyers*, 619 F.3d at 734, of Paige's testimony about his examination of Defendant's computer.

This level of detail, however, does not limit Paige's testimony. The June Report states Paige will review Defendant's computers and hard drives and testify about "anything" he discovers, [Dkt. 213-1], leaving open the possibility that Paige might re-examine Defendant's computer or examine Defendant's other computers and discover evidence that goes beyond that contained in the March Report. The discovery of this additional evidence, without prior disclosure, would be prejudicial. As Defendant notes, presentation of this undisclosed evidence would impair Defendant's ability to appropriately respond to Plaintiff's arguments. [Dkt. 213 at 22; *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (noting that expert disclosures should "prevent tactic of surprise from affecting the outcome of the case").] Further, to avoid being "ambushed" with new evidence on motion or at trial, Defendant would need to depose Paige and explore at length his investigation of Defendants' computers and devices, above and beyond the investigation described in the March Report and the declaration accompanying the June Report. [Dkt. 213 at 20.] This contravenes the purpose of Rule 26(a)(2)(B) disclosures, *see Salgado* 150 F.3d at 742 n.6, and again, would be prejudicial to Defendant's case. *See Ciomber*, 527 F.3d at 643 (noting harm associated with deposing an expert with "little or no understanding as to what he would testify").

Plaintiff has also failed to explain any justification for the deficiencies of the June Report. If, as Plaintiff states, Paige's testimony about Defendant's hard drive will be based only on the examination described in the March Report, [Dkt. 233 at 8], Plaintiff should have omitted from the June Report the language indicating Paige would testify about "anything" he discovered. Plaintiff claims the language is intended to cover situations where Paige has not yet examined a hard drive, but because Plaintiff itself recognizes that this situation is not present in this case, [Dkt. 233 at 8], there was no justification for including it.

8

Based on the above, the Court finds that Plaintiff's expert reports are insufficient to the extent that they seek to allow Paige to opine on "anything [he] may discover" after reviewing Defendant's computers. Further, because the deficiency was not "substantially justified" or "harmless," an order granting in part the motion is appropriate. Fed. R. Civ. P. 37(c)(1). The Magistrate Judge therefore recommends that the Court **GRANT IN PART AND DENY IN PART** Defendant's motion insofar as Plaintiff's expert Paige should not be allowed to present evidence regarding "anything [he] may discover" after reviewing Defendant's computers. Paige should instead be limited to presenting evidence as described in Plaintiff's March Report and as described in the exhibits accompanying Plaintiff's June Report.

## 2. Rule 26(a)(2)(B)(ii) and (iii)

Rule 26 requires an expert report to include "(ii) the facts or data considered by the witness in forming" his opinions and "(iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii). Defendant argues that the June Report violates these requirements because it does not contain the "facts, data, and exhibits from Paige's test of IPP's software."[2] [Dkt. 213 at 23.]

As noted above, the June Report included a declaration in which Paige explained the steps he employed to test the accuracy of IPP's software. [Dkt. 213-3.] Paige describes that he tested IPP's IP detection process by downloading four public domain movies, renting virtual servers, and placing BitTorrent clients on each server. [*Id.* at ¶¶ 25-29.] He then installed a program called Wireshark on each server. [*Id.* ¶ 31.] This program creates records of the incoming and outgoing transactions on a computer in the same way as IPP's program. [*Id.*] Paige

---

[2] Plaintiff states in its response that "neither Plaintiff nor Patrick Paige will use any 'exhibits . . . to summarize or support' Paige's report regarding his test of IPP's software." [Dkt. 233 at 13.] Plaintiff therefore did not violate Rule 26(a)(2)(B)(iii), and the remainder of this section focuses on Rule 26(a)(2)(B)(ii).

then transferred the previously downloaded movies from the local computers to the servers, used the BitTorrent clients to make torrent files, uploaded the torrent files, and informed IPP of the movie names. [*Id.* ¶¶ 32-34.]

IPP then located the movies that Paige had uploaded and identified the IP address used by each of Paige's four servers. [*Id.* ¶¶ 34-36.] IPP also used its software to capture records of the incoming and outgoing transactions on Paige's servers. [*Id.* ¶ 37.] The IPP records matched the records Paige had prepared, indicating that IPP has successfully identified the IP addresses used for uploading the movies. [*Id.* ¶ 38.] Paige therefore concluded that the IPP software accurately identified the IP addresses of BitTorret users. [*Id.*]

Defendant faults the June Report for not disclosing or providing the torrent files that Paige created; the specific records Paige and IPP created; the communications and screen captures sent between IPP and Paige during the test; the data identifying the unique IP addresses for the four virtual servers; the four public domain movies Paige downloaded; the torrent websites to which Paige uploaded the torrent files; the dates on which Paige's testing took place; and the place where Paige conducted his test of IPP's software. [Dkt. 213 at 24.]

Defendant further argues that this lack of data is prejudicial because it will inhibit his ability to depose Paige and prevent him from analyzing the records that IPP and Paige generated during the test. [*Id.* at 25.] He also claims that because the underlying test results have not been disclosed, he cannot obtain a contrary expert's opinion on the results. [*Id.*] This, in turn, will preclude the disclosure of Paige's rebuttal opinion on Defendant's rebuttal expert and deprive Defendant of the full scope of Paige's testimony. [*Id.*]

The Court agrees that some of the facts and data Defendant seeks should have been disclosed. Under 26(a)(2)(B)(ii), the disclosure of "facts or data" is to be "interpreted broadly to

require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26 Advisory Committee's Note (2010 Amendments). Plaintiff argues that some of the facts Defendant seeks, such as the names of the movies used in the test, are irrelevant in evaluating the validity of Paige's methods. [Dkt. 233 at 12.] This may be so, but other facts and data—such as the records that IPP and Paige generated during the test—are directly relevant to whether IPP's program was as accurate as Paige concluded. These records certainly contained some of the "factual ingredients" on which Paige based his conclusion, and thus should have been disclosed.

Under Rule 37, the failure to disclose this information results in exclusion of the witness's testimony unless the failure was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). The Court has broad discretion to determine whether a failure to disclose is substantially justified or harmless, *Allstate*, 840 F. Supp. 2d at 1081, and here, the Court concludes that the failure was harmless.

First, even if Plaintiff did not disclose some of the data subject to disclosure, Plaintiff did disclose the exact methodology Paige used to conduct the test, including the specific software Paige used. [Dkt. 233 at 10; Dkt. 2133 at 5-5.] This reduces the prejudice to Defendant by providing at least some of the information necessary to analyze Paige's opinion. *See Salgado*, 150 F.3d at 742 n.6 (approving expert reports that disclose "how" expert came to conclusion). Also, this knowledge would have allowed Defendant to more easily conduct discovery on Paige had Defendant chosen to do so. *See, e.g.*, *Ciomber*, 527 F.3d at 643.

Defendant attempts to refute this conclusion by citing authority that ostensibly establishes that the opportunity to conduct discovery on an expert does not compensate for an inadequate expert disclosure. [Dkt. 213 at 26.] He first cites *Musser v. Gentiva Health Services*, in which the

party that violated Rule 26(a)(2) failed to even identify the witness as an expert. 356 F.3d 751,

757 (7th Cir. 2004). There, the court found that the ability to depose the witness as a fact witness

rather than as an expert witness did not cure the inadequate disclosure because it precluded the

opposing party from employing "countermeasures" such as retaining rebuttal experts or

attempting to disqualify the expert under *Daubert*. *Id.* at 758-59. This case presents no such

situation: Defendant in this case knows Paige will testify as an expert, received a report on the

method Paige employed, [*see* Dkt. 213-3], and has had multiple opportunities to learn more

about that method. [*See* Dkt. 233 at 4-5.] Moreover, Defendant has already employed

"countermeasures" such as retaining a rebuttal expert, [Dkt. 248 at 3-4], and trying to disqualify

Paige under *Daubert*. [Dkt. 213 at 30.] Defendant in this case has therefore not been prejudiced

in the same way as the party in *Musser*, making the case inapplicable to Defendant's situation.

Defendant then cites *Gregory v. Oliver*, No. 00 C 5984, 2002 WL 31972165, at *1 (N.D.

Ill. Dec. 27, 2002). There, however, "all of [Rule 26(a)(2)(B)'s] critical requirements [were]

totally missing" from the expert report. *Id.* In this case, on the other hand, Plaintiff has provided

an extensive discussion of Paige's background, qualifications, and methodology, [Dkts. 213-2 &

Dkts. 213-3], making it much easier for Plaintiff to conduct discovery and thereby overcome any

minor deficiency in the expert's report.

Defendant finally cites the Federal Rules Advisory Committee's notes and suggests they

indicate that expert disclosures should obviate the need for expert discovery. [Dkt. 213 at 12.]

The notes, however, plainly contemplate discovery of expert witnesses even after Rule 26

disclosures: they observe, for instance, that the disclosures "may" eliminate the need for expert

depositions, but acknowledge that such depositions will nonetheless occur. *See* Fed. R. Civ. P.

26, Advisory Committee's Note (1993 Amendments). Thus, Defendant cannot necessarily rely

on the expert report alone to prepare his case, and the fact that the report in this case does include

most (if not all) of Rule 26's required information reduces the prejudice to Defendant by making

it easier to conduct discovery on Paige.

      The Court also finds that the interactions between Defendant and Paige reduce any harm

to Defendant. As described above, Defendant served on Paige a request for production of

documents. [Dkt. 233 at 3.] Paige did not comply with the request because of a procedural error,

but nonetheless offered to ship the requested documents to Defendant if Defendant would pay for

any postage. [*Id.* at 3-4.] Defendant responded with a notice that it would file a motion to

compel. [*Id.* at 4.] This response makes little sense: if Defendant were concerned about the cost

of discovery, he would have opted to pay the postage rather than pay to file and brief a motion to

compel; and if Defendant were concerned about assessing the accuracy of Paige's test, he again

would have paid for the postage to obtain the files documenting the test.

      That Defendant did not pay for the postage suggests a different motivation is at work.

Here, the Court notes that Defendant has argued against extending the discovery deadlines in this

case because doing so "will allow Malibu" to argue "that Harrison is not prejudiced by Malibu

and Paige's failure to comply with Rule 26(a)(2)(B)," thereby reducing the "force" of

Defendant's current motion to exclude. [Dkt. 220 at 11.] Defendant, it seems, is concerned not

with minimizing any prejudice he may have suffered, but leveraging that alleged prejudice into

exclusion of Plaintiff's expert. The Court is accordingly unmoved by Defendant's largely self-

imposed harm.

      Moreover, Plaintiff explained that it offered to help Defendant set up its own test with its

own expert to assess the methodology that Paige used. [Dkt. 233 at 10; Dkt. 233-11.] Defendant

did not respond to this offer, [Dkt. 233 at 11], suggesting again that any harm Defendant has suffered is largely of his own making.

These interactions are also relevant in light of the Seventh Circuit's direction to consider the good faith of the non-disclosing party and the ability to cure any non-disclosure. *David*, 324 F.3d 851 at 857. Defendant in this case had the chance to cure the non-disclosure of the underlying test results by paying for Paige's postage or accepting Plaintiff's offer to help Defendant conduct its own test of IPP's software, and Plaintiff acted in good faith by making such an offer. Thus, both these factors suggest that any Rule 26(a) violation was harmless.

Finally, Defendant's contention that he has been deprived of a chance to see Plaintiff's rebuttal expert testimony is meritless. Plaintiff explained that it has no rebuttal witness to designate, [Dkt. 233 at 15], undercutting Defendant's claim of prejudice. Further, Defendant's claim that he was deprived of the chance to develop his own expert's opinion on the test results is inaccurate in light of Plaintiff's express offer to help "Defendant set up such a test with [his] own expert." [Dkt. 233-11.] As such, the Court concludes that any failure to submit the data required under Rule 26(a)(2)(b)(ii) was harmless and does not warrant exclusion of Plaintiff's expert's testimony.

### 3. Rule 26(a)(2)(B)(v)

An expert report must include "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition." Fed. R. Civ. P. 26(a)(2)(B)(v). Plaintiff in this case included with Paige's resume a list of "some" cases in which Paige had testified, [Dkt. 213 at 3], and Defendant notes that the resume omitted *United States v. Faxon*, 689 F. Supp. 2d 1344 (S.D. Fla. 2010). In that case, Paige testified for the government and explained his examination of hard drives seized from a defendant accused of possessing child

pornography. *Id.* at 1348. Because Rule 26 requires disclosure of "all" cases, Plaintiff's failure to disclose *Faxon* violates the rule.

This failure, however, was harmless. Defendant claims that because of the *Faxon* omission, he does not know whether there are "additional *highly relevant* cases," [Dkt. 213 at 28 (emphasis original)], in which Paige has taken potentially inconsistent positions. [*Id.*] Defendant, however, does not explain how *Faxon* itself is at all relevant to this case, let alone "highly relevant," given that *Faxon* 1) had no connection whatsoever to Harrison or the contents of Harrison's computer; and 2) did not involve testimony about IPP. *See Faxon*, 689 F. Supp. 2d at 1349. Also, Plaintiff explains that the only other case in which Paige has testified about IPP was the Bellwether trial, *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 787 (E.D. Pa. 2013), a case with which Defendant is already familiar. [*See* Dkt. 213 at 19 (describing Paige's expert testimony in Bellwether trial).] The Court thus sees little risk that Paige has previously taken inconsistent positions that might somehow assist Defendant's preparation of his case. Any prejudice to Defendant is therefore unlikely, and the Court concludes that the violation of Rule 26(a)(2)(B)(v) was a harmless omission that does not warrant the extreme sanction of exclusion.

Nevertheless, the Court directs Plaintiff to provide a complete list of all cases in which, during the previous four years, Paige has testified as an expert at trial or by deposition within fourteen days of the date of this order.

### 4. Defendant's Reply Brief

Defendant argues in his reply brief that the June Report is deficient because it merely describes the test that Paige performed without "containing" the underlying test results. [Dkt. 248 at 1-2.] As described above, any deficiency in the June Report was harmless, but to try to

bolster his showing of prejudice, Defendant notes that since he filed the current motion to exclude, Plaintiff has filed a motion for sanctions. [Dkt. 237.] Plaintiff in that motion accuses Defendant of destroying material evidence and of failing to disclose various "drives" that had been attached to Defendant's computer. [*Id.* at 5.] As support, Plaintiff attached a portion of the March Report in which Paige declared "a number of external devices had been connected" to Defendant's hard drive. [Dkt. 237-5 ¶ 28.]

Defendant views this as the smoking gun proving that Defendant will face surprising expert testimony for which Defendant will not be able to adequately prepare. [Dkt. 248 at 5.] Defendant is particularly concerned because the declaration from Paige states that various "devices" were attached to Defendant's computer, whereas the motion for sanctions represents that various "drives" were attached. [*Id.*] Defendant thus sees Plaintiff as using its expert to levy surprising new claims against him in a way that confirms the prejudicial impact of the allegedly incomplete expert report. [*Id.*]

This is nonsense: First, Plaintiff's motion for sanctions relies on the same March Report that Plaintiff served on Defendant over seven months ago. [*See* Dkt. 237 & 237-5.] If Defendant is surprised by the report's contents, he has only himself to blame. Second, even if the Paige declaration in the March Report refers to "devices" (rather than "drives") attached to Defendant's computer, the exhibits in the report repeatedly refer to "drives" attached to Defendant's computer. [*See* Dkts. 213-8 & 213-9.] Defendant thus has no reason to be surprised that Plaintiff alleges that "drives" were attached to the computer. Third, the difference between the "devices" mentioned in Paige's declaration and the "drives" mentioned in the motion for sanctions is purely semantic, [Dkt. 255 at 3], and is no evidence that Plaintiff has "ambushed," [Dkt. 248 at 6], Defendant with new allegations. Thus, Defendant has not shown any prejudice

resulting from the alleged failure to comply with Rule 26, and the Court concludes that Plaintiff's motion for sanctions is no basis on which to exclude Plaintiff's expert testimony.

The remainder of Defendant's reply faults Paige's analysis of Rule 45, [Dkt. 248 at 2-3], and reiterates that the alleged failure of disclosure prejudices Defendant. [*Id.*] These contentions are unmoving.

Harrison appears to argue that Paige's invocation of the 100-mile limit in Rule 45 is improper. [Dkt. 248 at 2-3.] Such an argument is ridiculous, as Rule 45(c)(1) clearly places limits upon the distance a nonparty can be compelled to travel in order to respond to a subpoena. Fed. R. Civ. P. 45(c)(1). Additionally, Rule 45(d)(2)(A) contemplates transmittal, not personal delivery, of documents sought in a nonparty request not tied to a deposition. Fed. R. Civ. P. 45(d)(2)(A).

If Harrison's dispute is with regard to Paige's offer to send paper copies of the requested documents versus the electronic copies requested, such argument is equally unavailing. Rule 34(b)(2)(D) contemplates that a responding party may provide documents in a different format when appropriate, and Defendant has presented no evidence of any effort on his part to meet and confer with Paige to resolve that dispute—if a dispute even exists. Finally, overarching this entire issue is Defendant's obligation to "take reasonable steps to avoid imposing undue burden or expense" on Paige. Fed. R. Civ. P. 45(d)(1). It appears to the Court that Defendant's purpose was to precipitate a non-existent dispute in order to fabricate a basis to seek to exclude Paige's testimony. Such purpose is improper and borders on sanctionable conduct itself.

Furthermore, even assuming arguendo that Paige did incorrectly construe Rule 45 to conclude that he did not need to produce the documents in the manner Defendant had requested, Paige still offered to supply the documents at only the cost of postage to Defendant, [Dkt. 233 at

3], and Plaintiff offered to assist Defendant in conducting a test of Paige's methods. [Dkt. 233-11.] Thus, Defendant's allegations that Paige and Plaintiff "denied Harrison the opportunity to ascertain the legitimacy of Paige as an expert" and "deprived Harrison of the ability to independently confirm any aspect of Paige's purported test" border on frivolous. [Dkt. 248 at 3-4.] Defendant had the chance to obtain the desired documents or assess the disputed test, but he did not do so. Any prejudice results from Defendant's own decisions, rendering any defect in Plaintiff's Rule 26 disclosures the sort of "harmless" error that does not justify the extreme sanction of exclusion.

Finally, because the Court finds that Defendant's reply brief does not affect the outcome of his motion to exclude, the Court need not consider any counterarguments Plaintiff wishes to present. The Court therefore **DENIES** Plaintiff's Motion for Leave to File Sur-Reply. [Dkt. 255.]

## V.   Legal Standard: *Daubert*

Under the Federal Rules of Evidence, "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Relevant factors are "(1) whether the expert's conclusions are falsifiable; (2) whether the expert's method has been subject to peer review; (3) whether there is a known error rate associated with the technique; and (4) whether the method is generally accepted in the relevant scientific community." *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) (citing *Daubert*, 509 U.S. at 593-94). These factors, however, are non-exhaustive; the inquiry must be a "flexible" one focusing "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "The proponent of the expert bears the burden of demonstrating that the expert's testimony would

18

satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir.

2009).

## VI.    Discussion

Defendant argues that the Court should exclude Paige's testimony because the "test facts

and data have never been subjected to peer review and publication, or submitted to any other

person for scrutiny or review, or to independently adjudge the falsifiability, refutability, or

testability of Paige's principles and methods." [Dkt. 213 at 31.] Plaintiff responds that these

allegations are untrue and unsupported. [Dkt. 233 at 17.]

Defendant notes (and Plaintiff in its response does not contest) that Paige did not attempt

to ascertain "the potential rate of error of IPP's software." [Dkt. 213 at 31.] Also, Plaintiff

concedes that Paige's methodology has not generated widespread support in the scientific

community or widespread publication in peer-reviewed journals. [Dkt. 233 at 17.]

*Daubert*, however, emphasized that courts must be flexible in assessing experts'

methodologies, 509 U.S. at 595, and here, the Court finds the factors discussed above largely

inapposite to Paige's methods. As Plaintiff notes, Paige's method is a "straightforward technical

test of IPP's ability to effectively scan the BitTorrent file sharing network for specific files,"

rather than a "novel scientific experiment." [Dkt. 233 at 17.] The method is thus not a likely

candidate for peer-reviewed studies in scientific journals. Plaintiff also reiterates that it offered to

assist Defendant set up a test using the same procedure that Paige followed. [*Id.*] It thus rings

hollow when Defendant argues that Paige and IPP have tried to insulate their methods from

scrutiny. Moreover, Plaintiff's willingness to allow others to attempt the same test that Paige

employed indicates the test would likely withstand independent efforts to falsify or refute the

methodology. Finally, Defendant himself observes that Paige previously testified at length about IPP's software in the Malibu Media Bellwether trial. [Dkt. 213 at 19.] This prior judicial acceptance of Paige's tests weighs in favor of its admissibility. *See, e.g.*, *State Farm Fire & Cas. Co. v. Electrolux Home Products, Inc.*, No. 3:08-CV-436, 2013 WL 3013531, at *3 (N.D. Ind. June 17, 2013) (admitting expert testimony in part because expert's theories had been "been previously posited . . . in other federal courts and [had] been accepted by those courts as meeting the *Daubert* standard"). As such, the Court concludes that Plaintiff has met its burden of showing that Paige's methodology satisfies the requirements of *Daubert*.

## VII. Conclusion

For the reasons stated above, the Magistrate Judge recommends that the Court **GRANT IN PART** and **DENY IN PART** Defendant's Motion to Exclude the Testimony of Plaintiff's Expert Witnesses. [Dkt. 212.] Plaintiff's expert Patrick Paige should be allowed to testify or present evidence related to his examination as described in the March Report and his tests as described in the June Report. Paige, however, should not be allowed to present evidence about other tests or other examinations of Defendant's computers or devices short of amending his report with leave of the Court. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure. Finally, the Court **DENIES** Plaintiff's Motion for Leave to File Sur-Reply. [Dkt. 255.]

Date: 11/03/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Anthony Jay Saunders
ajsaunde@hotmail.com

Amy L. Cueller
LEMBERG LAW, LLC
acueller@lemberglaw.com

David Scott Klinestiver
LEWIS & KAPPES
dklinestiver@lewis-kappes.com

Matthew S. Tarkington
LEWIS & KAPPES, PC
mtarkington@lewis-kappes.com

Paul J. Nicoletti
NICOLETTI LAW, PLC
paul@nicoletti-associates.com

Gabriel J. Quearry
QUEARRY LAW, LLC
gq@quearrylaw.com