UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:12-cv-01117-WTL-MJD |
| | ) | |
| MICHAEL  HARRISON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO PRECLUDE
DELVAN NEVILLE FROM TESTIFYING**

This matter comes before the Court on Plaintiff's Motion to Preclude Delvan Neville from Testifying at Trial or on Summary Judgment. [Dkt. 236.]  For the reasons set forth below, the Magistrate Judge recommends that the Court **GRANT** Plaintiff's Motion.

## I.      Background

Malibu Media, LLC ("Plaintiff") filed suit against Michael Harrison ("Defendant") and others, alleging direct and contributory copyright infringement. [Dkt. 59 at 1.] Plaintiff alleges that Defendant downloaded a BitTorrent client on his computer and accessed torrent websites to upload and download Plaintiff's copyrighted files, including those related to Plaintiff's X-Art website. [*Id.* at 4-5.]

On July 16, 2014, Defendant Harrison submitted his Rule 26 "disclosure of witnesses he may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." [Dkt. 236-1 at 1.] He included Jason and Edwin Bosaw "as "Rule 26(a)(2)(B) Witnesses" and attached a written report prepared and signed by the Bosaws. [*See id*.] He also included Delvan Neville as a "Rule 26(a)(2)(C) Witness[]" and provided one paragraph stating that Neville may:

1

> provide general testimony regarding matters relating to the operation and
> functionality of the BitTorrent protocol; data collection methods and results
> relating to infringements using the BitTorrent protocol; and, commentary on
> network communications and other files in connection with the collection of
> evidence purporting to show communications and transfers of files necessary to
> accomplish the infringements of the copyrighted works using the BitTorrent
> protocol.

[*Id.* at 1-2.] Defendant provided no report to accompany the disclosure about Neville. [*See id.*]

Two months later, on September 19, Plaintiff filed the current motion to exclude Neville's

testimony. [Dkt. 236.] The Court referred to motion to the Magistrate judge to issue proposed

findings and recommendations. [Dkt. 263.]

## II.    Discussion

A party must disclose to the other parties the identity of any expert witness it may use to

present evidence at trial. Fed. R. Civ. P. 26(a)(1). Rule 26 divides expert witnesses into two

types: those who are "retained or specially employed to provide expert testimony in the case,"

Fed. R. Civ. P. 26(a)(2)(B), and all other expert witnesses. Fed. R. Civ. P. 26(a)(2)(C). When

disclosing the identities of the former—those who are specially retained or employed—a party

must provide "a written report—prepared and signed by the witness" that contains:

> (i) a complete statement of all opinions the witness will express and the basis and
> reasons for them; (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them; (iv) the
> witness's qualifications, including a list of all publications authored in the
> previous 10 years; (v) a list of all other cases in which, during the previous 4
> years, the witness testified as an expert at trial or by deposition; and (vi) a
> statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). In contrast, when disclosing the identities of other expert

witnesses—those *not* specially retained or employed to give testimony—a party need

only disclose: "i) the subject matter on which the witness is expected to present evidence

under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

The parties in this case dispute whether Delvan Neville is a 26(a)(2)(B) expert witness—i.e., one specially retained to give testimony—or a 26(a)(2)(C) expert witness—i.e., one not so specially retained. Plaintiff contends Neville is a 26(a)(2)(B) witness because he "was not involved with the facts of the case prior to the lawsuit being initiated," [Dkt. 236 at 1], and would "not be testifying to any personal knowledge of the facts derived from his involvement in the case." [*Id.* at 3.] Instead, Plaintiff alleges that Neville has been "recruited" to provide expert testimony, such that 26(a)(2)(B) applies. [*Id.*; *see also* Dkt. 252 at 1.] Defendant responds that Neville is a 26(a)(2)(C) witness, and asserts that 1) Neville would be testifying on the basis of his personal knowledge, and 2) nothing in the record suggests he was "sought for any purpose other than to testify as an expert based on his personal knowledge and observations." [Dkt. 249-1 at 5.]

"[T]here is little case law discussing how a court distinguishes an expert who falls under 26(a)(2)(B) from an expert who falls under 26(a)(2)(C)." *Beane v. Util. Trailer Mfg. Co.*, No. 2:10 CV 781, 2013 WL 1344763, at *2 (W.D. La. Feb. 25, 2013). The First Circuit, however, has analyzed the issue, and has stated that "to give the phrase 'retained or specially employed' any real meaning, a court must acknowledge the difference between a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011). Thus, as an example, a "treating physician" is a 26(a)(2)(C) witness because he is a "percipient witness" who has firsthand knowledge of the events giving rise to the litigation; on the other hand, a physician recruited for the purpose of

giving testimony—rather than treatment—is a 26(a)(2)(B) witness because he has no such

firsthand involvement in the events giving rise to the ligation. *Id.* Put differently, the treating

physician is a 26(a)(2)(C) witness because his opinion arises "from his ground-level involvement

in the events giving rise to the ligation," and not because of his "enlistment" as an expert. *Id.*

Numerous district courts have accepted this analysis of the distinction between

Rule 26(a)(2)(B) and Rule 26(a)(2)(C) expert witnesses. *See, e.g.*, *Beane*, 2013 WL

1344763, at *3 (collecting cases); *see also Brainstorm Interactive, Inc. v. Sch. Specialty,*

*Inc.*, No. 14-CV-50-WMC, 2014 WL 5817327, at *3 (W.D. Wis. Nov. 10, 2014) (citing

*Downey*, 633 F.3d at 7) ("[T]he application of Rule 26(a)(2)(B) depends on the expert's

relationship to the issues in the lawsuit and whether his or her relationship developed

prior to the commencement of the lawsuit."); *Call v. City of Riverside*, No. 3:13-CV-133,

2014 WL 2048194, at *10 (S.D. Ohio May 19, 2014) (quoting *Beane*, 2013 WL 1344763

at * 3) ("This Court agrees with the statement that 'the distinction between a 26(a)(2)(B)

expert and a 26(a)(2)(C) expert is that 26(a)(2)(C) experts' conclusions and opinions arise

from firsthand knowledge of activities they were personally involved in before the

commencement of the lawsuit.'"). This Court likewise finds the First Circuit's analysis

persuasive and will accordingly consider whether Neville's opinion arises "from his

ground-level involvement in the events giving rise to the ligation." *Downey*, 633 F.3d at

6. As described below, the Court finds that it does not, such that Neville is properly

categorized as a 26(a)(2)(B) witness.

First, Defendant's contention that Neville will testify based on his personal

knowledge, [Dkt. 249-1 at 4], is irrelevant. *Any* expert witness—"specially retained or

employed" or not—may testify based on personal knowledge. *See* Fed. R. Evid. 703 ("An

expert may base an opinion on facts or data in the case that the expert has . . . personally observed."). A treating physician, for instance, testifies on the basis of personal knowledge, but so does the "specially retained" physician who examines a patient only after litigation has commenced. Thus, to say that Neville will be testifying on the basis of personal knowledge says nothing about whether he is a 26(a)(2)(B) witness or a 26(a)(2)(C) witness.

Next, Defendant's contention that there is no evidence that Neville is a specially retained witness, [Dkt. 249-1 at 2], is inaccurate. Defendant notes in particular that Neville will testify about "soaks" of "mass-doe lawsuit related hashes" that he conducted "for the Electronic Frontier Foundation ("EFF") as part of a seminar the EFF held for federal judges on BitTorrent Swarms." [Dkt. 249-1 at 3.] The seminar occurred in October 2013, [Dkt. 252 at 3], well after the August 8, 2012 commencement of this lawsuit. [*See* Dkt. 1.] It thus seems unlikely that the subject of Neville's testimony— soaks performed for a seminar over one year *after* the lawsuit commenced—were part of the events that engendered this ligation. Consequently, Neville's testimony is not based on "ground-level involvement in the events giving rise to the ligation." *Downey*, 633 F.3d at 6.

Additionally, Plaintiff notes that it is unlikely that Neville could have been involved in the infringement that gave rise to this lawsuit. [Dkt. 252 at 4.] "The infringement occurred from Defendant's internet in his private residence in Indiana. It was detected by Plaintiff's investigators when they established a direct TCP/IP connection with a computer using Defendant's IP address and received infringing distributions directly from Defendant." [*Id*.] Neville was not involved in these events; nor

is there any evidence to suggest that Neville had any involvement in the events that prompted this litigation. He therefore cannot be a Rule 26(a)(2)(C) witness and must instead be a Rule 26(a)(2)(B) witness.

The question is then whether Defendant's expert disclosure satisfies the requirements of Rule 26(a)(2)(B). It plainly does not: Defendant disclosed one paragraph describing several broad topics about which "Neville may provide general testimony." [Dkt. 236-1 at 1-2.] This disclosure does not provide a "complete statement of all opinions" Neville will express, "the facts or data" that Neville considered in forming those opinions, Neville's qualifications, or any of the other requirements of Fed. R. Civ. P. 26(a)(2)(B). Further, Defendant does not argue that he satisfied Rule 26(a)(2)(B). Instead, he notes that the 2010 Amendments to Rule 26 indicate that disclosure under Rule 26(a)(2)(C) is considerably less extensive than the reports required under Rule 26(a)(2)(B). [Dkt. 249-1 at 4.] This point, however, is irrelevant: it is Rule 26(a)(2)(B) that applies to Neville, and Rule 26(a)(2)(B) that Defendant did not satisfy.

The only remaining issue is the appropriate consequence for Defendant's failure to comply with Rule 26(a)(2)(B). If a party fails to disclose information or a witness under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Total exclusion of an expert's testimony is an extreme sanction," *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 840 F. Supp. 2d 1072, 1081 (N.D. Ill. 2012), but this sanction "is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th

Cir. 1998); *see also Finwall v. City of Chicago*, 239 F.R.D. 504, 506 (N.D. Ill. 2006) (noting that "the party to be sanctioned bears burden of showing that its violation of Rule 26(a) was either justified or harmless"). The district court has broad discretion in deciding whether an error is harmless or justified, but should consider factors such as "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Defendant in this case bears the burden to show that his failure to comply with Rule 26(a)(2)(B) was justified or harmless. He suggests that the failure was harmless because "Malibu knew what the substance of Neville's expert testimony" would be based on a "motion filed with this Court five (5) days" before Harrison served his Rule 26(a)(2) disclosures. [Dkt. 249-1 at 3.] Defendant refers to a different motion in limine that Plaintiff filed to exclude Delvan Neville's testimony in separate case currently before this court. [*See id.*] This argument is not persuasive: The fact that Plaintiff knew the subjects of Neville's testimony in a separate case says little about its knowledge of Neville's testimony in this case. In fact, Plaintiff notes that it learned of the EFF seminar and Neville's associated "soaks" for the first time only when Defendant described this testimony in his response to Plaintiff's current motion. [Dkt. 252 at 3.] This underscores the paucity of information that has been disclosed about Neville's testimony in this case, and hardly supports an inference that the lack of disclosure was "harmless."

Moreover, the purpose of the Rule 26(a)(2)(B) disclosure is to ensure that "opposing counsel is not forced to depose an expert in order to avoid ambush at trial." *Salgado*, 150 F.3d at 742 n.6. The report "must be sufficiently complete so as to shorten or decrease the need for

expert depositions and thus to conserve resources." Defendant's current disclosures do not comport with these goals. Plaintiff has already been surprised by the revelation about the ELF seminar and Neville's soaks, [Dkt. 252 at 3], and allowing Neville to testify would only necessitate a lengthy deposition or risk additional surprise at trial.

Compounding this problem is the fact that such a deposition is not feasible. Dispositive motions are due on November 21, 2014 and all discovery closes on December 12, 2014. [Dkt. 271 at 1.] Thus, even if the Court ordered Defendant to disclose additional information about Neville, Plaintiff would have no time to analyze the information, depose Neville, or otherwise use that information in preparing for any dispositive motions. Moreover, the December 12, 2014 deadline resulted from previous extensions of time to conduct discovery. [Dkts. 232 & 271.] Allowing additional time for discovery to accommodate belated disclosures from Defendant would further disrupt the Court's schedule and exacerbate the delays that this now 27-month old case has already encountered.

Finally, the Court observes that Defendant had the opportunity to cure its inadequate disclosures earlier in this case. Plaintiff filed the current motion to exclude Neville's testimony nearly two months ago. [*See* Dkt. 236.] Defendant could have acknowledged at that time that his expert disclosure was insufficient and could have provided the information required by Rule 26(a)(2)(B). That would have reduced the prejudice to Plaintiff and might have saved Neville's testimony from exclusion. As it is, however, Defendant chose to oppose the motion—even with the deadline for discovery nearing—such that it is now too late for belated disclosure to cure Defendant's noncompliance with Rule 26(a)(2)(B).

Based on the above, the failure to provide a proper expert report pursuant to Rule 26(a)(2)(B) was neither justified nor harmless. The Magistrate Judge therefore recommends that,

in accordance with Fed. R. Civ. P. 37(c)(1), Mr. Neville should be precluded from supplying evidence at trial or on motion in this matter.

### III.    Conclusion

For the reasons stated above, the Magistrate Judge recommends that the Court **GRANT** Plaintiff's Motion to Preclude Delvan Neville from Testifying at Trial or on Summary Judgment. [Dkt. 236.]  Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  11/19/2014

Distribution:

Anthony Jay Saunders
ajsaunde@hotmail.com

Amy L. Cueller
LEMBERG LAW, LLC
acueller@lemberglaw.com

David Scott Klinestiver
LEWIS & KAPPES
dklinestiver@lewis-kappes.com

Matthew S. Tarkington
LEWIS & KAPPES, PC
mtarkington@lewis-kappes.com

Paul J. Nicoletti
NICOLETTI LAW, PLC
paul@nicoletti-associates.com

Gabriel J. Quearry
QUEARRY LAW, LLC
gq@quearrylaw.com

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana