# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT INDIANA

MALIBU MEDIA, LLC,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Plaintiff,　　　　　　　　　　　) Civil Case No. 1:12-cv-01117-WTL-MJD
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
MICHAEL HARRISON,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Defendants.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

### PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANT'S WITNESSES FROM TESTIFYING AT THE EVIDENTIARY HEARING

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned, hereby moves for the entry of an order precluding Jason Bosaw, Delvan Neville, Eric Goldsmith, Rhonda Arnold, and John Harlan from testifying at the upcoming December 18, 2014 evidentiary hearing, and states:

### I.　　INTRODUCTION

The only issue to be addressed at the upcoming evidentiary hearing is whether or not Defendant should be sanctioned for destroying relevant material evidence that he had a duty to preserve. Accordingly, the circumstances surrounding the destruction of the drive, the contents of the hard drive that was destroyed, and the notice to Defendant informing him of this lawsuit are the only issues to be explored. Although Defendant's motion requesting an evidentiary hearing represented that "at least three (3) witnesses are able to offer testimony based on personal knowledge of the facts that would be admissible evidence regarding Harrison's use of his gaming computer, and the totality of the circumstances surrounding his disposal of the non-recoverable gaming computer hard drive[,]" Plaintiff has deposed *all* of the witnesses Defendant intends to call and *none* are able to testify about the "the circumstances surrounding

1

[Defendant's] disposal" of his hard drive. CM/ECF 245. Each of Defendant's witnesses testified that: (a) they did not examine the hard drive prior to its destruction; (b) they have no personal knowledge as to whether or not the hard drive crashed; (c) they have no personal knowledge as to whether or not Plaintiff's movies were actually on the hard drive or if other relevant evidence was on the drive; and (d) whether or not Defendant destroyed the drive. Accordingly, allowing them to testify would permit the introduction of irrelevant evidence, speculative evidence, and evidence whose probative value is _substantially_ outweighed by the danger of confusing the issues, wasting time, and needlessly presenting cumulative evidence. Accordingly, Defendant's witnesses should be precluded from testifying at the December 18, 2014 evidentiary hearing.

## II. FACTUAL BACKGROUND

1. Plaintiff commenced this copyright infringement action against Michael Harrison ("Defendant") on August 16, 2012, alleging that Defendant had used one or more hard drives to download a BitTorrent client and illegally upload and download Plaintiff's copyrighted works, including those related to Plaintiff's X-Art website. CM/ECF 1, 38, 54, 59, 165.

2. Comcast, Defendant's internet service provider, notified Defendant of this lawsuit in October 2012, advising that: (1) Plaintiff had filed a federal lawsuit for copyright infringement; (2) Defendant had been identified as one of the alleged infringers; and (3) Defendant should consult an attorney. CM/ECF 237 Ex. A at 15:20–25, 16:1–6; Ex. F.

3. After receiving this notice (which Defendant has apparently since misplaced or destroyed), Defendant changed his WiFi password, discussed the case with his girlfriend, and visited blogs about Plaintiff's copyright infringement suits. CM/ECF 237 Ex. A at 61:14–18, 21, 24; 30:13–14.

2

4.  He then took it upon himself to destroy the most crucial piece of evidence in this case—a number of devices, including, in particular, a hard drive from his gaming computer—by not merely deleting files, but by actually destroying his hard drive ensuring that no one would ever be able to determine its contents or possibly locate evidence of copyright infringement. More specifically, Defendant utilized the services of GGI, an electronics recycling company and his former employer, to melt his hard drive down to its core elements. CM/ECF 237 at 15:8–19; 16:7–23; 81:3–5. No records were made of Defendant's destruction of the hard drive because he just "dropped off [the evidence] as a former employee". CM/ECF 237 at 18:12–25.

5.  Defendant did not disclose the destroyed hard drive in his discovery responses despite an express instruction requiring him to do so. CM/ECF 237 at Ex. B–C.

6.  On September 22, 2014, upon discovering the foregoing facts, Plaintiff filed a motion for sanctions against Defendant for his intentional destruction of material evidence crucial to this case. CM/ECF 237.

7.  On October 5, 2014, Defendant filed a motion requesting that the Court hold an evidentiary hearing before ruling on Plaintiff's motion for sanctions. CM/ECF 245. Defendant's motion does not dispute that Defendant intentionally destroyed his hard drive, yet the hearing was requested to address what Defendant framed as the three main issues to be decided: "(i) [w]hether Harrison's gaming hard drive contained relevant evidence[;] (ii) [w]hether Harrison's reason for disposing of the hard drive was in bad faith for the purpose of hiding adverse information[; and] (iii) [w]hether Harrison knew, or should have known that litigation was imminent." *See* CM/ECF 245, at p. 2.

8.  On November 21, 2014, Defendant filed his witness list for the evidentiary hearing, identifying the following witnesses: (1) Jason Bosaw; (2) Delvin Neville; (3) Eric

3

Goldsmith; (4) Rhonda Arnold; (5) John Harlan; and (6) Michael Harrison. As set forth below, only one of these witnesses (*i.e.*, Defendant himself) has the requisite foundation and knowledge to provide admissible testimony or offer information relevant to the issues. Accordingly, the remaining five witnesses should be precluded from offering testimony.

### III.     LEGAL STANDARD

The Federal Rules of Evidence apply to all "civil cases and proceedings" including those before "United States . . . magistrate judges." *See* Fed. R. Civ. P. 1101(a), (b). Federal district courts have the power to exclude testimony pursuant to their inherent authority to manage trials. *See Luce v. U.S.*, 469 U.S. 38, 41 n.3 (1984); *Fitzpatrick v. City of Fort Wayne*, 259 F.R.D. 357, 361 (N.D. In. 2009). A motion *in limine* should be granted and testimony excluded when it is inadmissible or irrelevant for any of the issues or if its probative value "is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the [fact finder], undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see, e.g.*, *U.S. v. Cinergy Corp.*, 2008 WL 4368853, *1 (S.D. Ind. 2008) (excluding proposed testimony that was "irrelevant and would not be helpful to [resolving] the remaining issues"). Courts should also exclude evidence if the witness does not have "personal knowledge of the matter." Fed. R. Evid. 602. And, "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402.[1]

Additionally, the testimony of a party's expert witness (*i.e.*, one retained or specially employed to provide expert testimony) should be excluded in the event of noncompliance with Federal Rule of Civil Procedure 26, which requires that the expert witness file a written report.

---

[1] "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401

*See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) … the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial…."); *Meyers v. Nat'l R.R. Passenger Corp. (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010) ("The consequences of non-compliance with Rule 26(a)(2)(B) is exclusion of an expert's testimony….").

### IV. DEFENDANT'S WITNESSES SHOULD BE PRECLUDED FROM TESTIFYING

#### A. Jason Bosaw, Defendant's Expert, Did Not Examine the Destroyed Drive, Has No Knowledge About its Contents, Does Not Know if it Crashed, and Has No Information Regarding its Destruction

According to Defendant's witness and exhibit list, Defendant proposes calling Jason Bosaw ("Bosaw") to testify about three narrow issues: (1) "the computer forensic examination and report of Plaintiff's expert witness"; (2) "Bosaw's findings from his own examination of Defendant's [other and not destroyed] hard drives"; and (3) "his findings regarding his comparison of Plaintiff's original movies to the purported copies of the movies provided to Plaintiff by IPP International U.G." CM/ECF 277. Although these issues and testimony are certainly relevant for trial (since they may affect the ultimate merits of Plaintiff's copyright infringement action), they are *wholly* irrelevant for purposes of the evidentiary hearing on Plaintiff's motion for sanctions.

Plaintiff's expert report was based upon his examination of the *replacement* hard drive purchased *after* the Defendant discarded the hard drive that was used during the timeframe of infringing activity. Thus, Bosaw's conclusions derived from his review of Plaintiff's expert report have no bearing on the issues for the evidentiary hearing, which is focused on the hard drive that was destroyed and consequently never examined by Plaintiff's expert. Similarly, Bosaw's own subsequent examination of the replacement hard drive is of no consequence nor is

5

his determination with regard to the comparison of the movie files at issue. Because Bosaw's knowledge regarding this case is limited to issues regarding computer forensic examinations of Plaintiff's evidence and of Defendant's *other* hard drives (*i.e.*, hard drives that Defendant did not intentionally destroy), Bosaw should be excluded from providing testimony at the evidentiary hearing.

Any testimony that Bosaw may give is irrelevant to the issues at hand because Mr. Bosaw has "no idea about [the subject] hard drive." Bosaw Depo. at p. 41:21. When asked if he had knowledge as to whether or not Defendant's gaming computer hard drive crashed in early 2013, Mr. Bosaw answered, "I don't know for sure." *Id.* at p. 36:14-17. When asked whether or not he knew what "data or files were contained on the hard drive that crashed," and if Malibu Media's movies were on the hard drive that supposedly crashed he answered: "I haven't seen that drive[,]" and "I don't know anything about that drive." *Id.* at 41:5-9, 54:9-15. When asked if he knew anything about "any of the circumstances surrounding [the hard drive's] destruction," he responded, "[o]nly what I read in the court dockets[,]" and that he had no personal knowledge. *Id.* at 54:16-24. Any testimony Bosaw may offer regarding the work he has done in this case to date has no probative value for the hearing on December 18 and will only confuse the issues and waste time. Accordingly, the testimony should be precluded from the evidentiary hearing. *See* Fed. R. Evid. 403.

### B. Delvan Neville Should be Precluded Because He Failed to Provide an Expert Witness Report and Has No Information Relevant to the Spoliation Issue

The second witness Defendant identifies is Delvan Neville ("Neville"), who "may testify about his findings from his analysis and review of Plaintiff's PCAP files, .tar files, .torrent files, technical reports, and MySQL files for each of the six works at issue." CM/ECF 277, at p. 2. Neville's testimony should be excluded on relevancy grounds since none of the foregoing shines

6

any light on the spoliation issue. The testimony Neville may offer is relevant only to the issues that will be determined at trial and the evidence that Plaintiff will present there. As such, Defendant's inclusion of Neville on his witness and exhibit list for the evidentiary hearing is nothing more than an attempt at an end run around the Court's order precluding him from testifying at trial or on summary judgment. *See* CM/ECF 272, 286.

Even if Neville's potential testimony was relevant (which is clearly not the case), Neville's testimony should otherwise be excluded since he failed to provide a written expert witness report, as required by the federal rules. *See, e.g.*, Fed. R. Civ. P. 37(c)(1); *Meyers*, 619 F.3d at 734. To be sure, Your Honor has already issued a well-reasoned report recommending that, for this same reason, Neville be precluded from testifying at trial or on summary judgment. CM/ECF 272. The exact same rationale for Your Honor's Report and Recommendation applies in this instance. There is no reason to rule any differently for next week's evidentiary hearing.

### C. Eric Goldsmith, Defendant's Former Employer, Has No Knowledge as to Any Specific Instance in Which Defendant Disposed of a Hard Drive at GGI Recycling and Cannot Testify About the Contents of Defendant's Hard Drive

The third witness Defendant identifies is Eric Goldsmith ("Goldsmith"). Goldsmith, Defendant indicates, may testify about a number of issues, including: (a) his "ownership of Technology Reuse Group, LLC ('TRG') and GGI Recycling ('GGI')"; (b) "GGI's business practices and procedures;" (c) Defendant's employment at GGI and use of their facilities; (d) "Defendant's character for truthfulness"; (e) and the Indiana Recycling Coalition and "legislation of Indiana's first electronic waste rules and laws." CM/ECF 277, at p. 2. Topics (a), (b), (c), and (e) are plainly wholly irrelevant to determining whether or not Defendant should be sanctioned for intentionally destroying material evidence. More specifically, Goldsmiths's ownership interests in TRG and GGI and involvement in Indiana legislation have no bearing on the issues

and do not in any way speak to whether or not (i) Defendant's gaming hard drive was potentially relevant to this case; (ii) the surrounding circumstances suggest that Defendant's intentional destruction was done for the purpose of hiding adverse information; and (iii) Defendant reasonably should have known that litigation was imminent.  Similarly, even assuming that former employees regularly and periodically use GGI facilities to melt and destroy their hard drives, that fact would have no bearing on whether or not it was reasonable for Defendant to engage in similar conduct under the circumstances at issue here (*i.e.*, after being put on notice of a federal lawsuit alleging that one or more of Defendant's hard drives had been used to illegally download and upload copyrighted material).

As to testimony regarding Defendant's character for truthfulness, even assuming that Goldsmith has the requisite foundation to testify "about Defendant's character for truthfulness," which may or may not be the case,[2] such bolstering character testimony is only marginally relevant and is overly prejudicial.  To be sure, Defendant's "character for truthfulness" is only at issue insofar as the Court will be required to ascertain and decide whether or not Defendant's testimony and explanations for destroying evidence are credible.[3]  And, the Court is well equipped to make this credibility determination on its own, without recourse to character testimony.  Further, "[e]vidence of a person's character or character trait is not admissible to

---

[2] Defendant identifies Goldsmith as his former employer and Goldsmith's knowledge of Defendant is limited to the employment context; Goldsmith does not know Defendant on a personal level and must be precluded from baselessly bolstering Defendant's credibility, especially where, as here, Goldsmith has already indicated that he has no knowledge of this lawsuit or of Defendant's intentions and actions in connection herewith.  *See* Goldsmith Depo. at p.10:14-16 (" . . . I've not spoken to Michael Harrison in a few years.  I can't tell you when.  Long before - - sometime before I moved my business."); *id.* at 13:4-12 ("I don't even have Michael's phone number.  I don't even know if I have Michael's email address.  Michael has never been to my home . . . I don't even know where he lives.")

[3] To the extent Defendant believes his "character for truthfulness" is relevant to the bad faith analysis, he is mistaken.  Even if Defendant has a character for truthfulness, an honest reputation would in no way prevent the Court from inferring that, in this case, Defendant nevertheless destroyed evidence for the purpose of hiding adverse information.

prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). Thus, any testimony claiming that the Defendant was a trustworthy employee and therefore would not have purposefully destroyed evidence in bad faith would violate both Rule 404(a)(1) and Rule 602 (permitting testimony based only on personal knowledge and barring speculation).

With regard to the issues surrounding the hard drive that Defendant discarded, Goldsmith has no knowledge. At his deposition he testified that he has "never seen any of [Defendant's] personal hard drives [him]self." Goldsmith Depo. at 27:19-20. He therefore cannot say whether or not the drive contained adverse evidence or if it crashed. He also testified that he "was not there when [Defendant] brought it in, so I would have no recollection of it." *Id*., at 12:22-23; *see also* 15:8-11; 21:14-20 ("I never saw a hard drive . . [.])

### D. Rhonda Arnold, an "Acquaintance" and Former Coworker, Has No Testimony of Probative Value to the Spoliation Issue

Defendant intends to call Rhonda Arnold ("Arnold"), to testify about "the impact of gaming on computer hard drives and the computer specifications and preferences of gamers . . . that Defendant was an employee of GGI . . . that John Harlan was an employee of GGI; that it was common for employers and former employees, including Defendant to recycle and swap parts . . . [and] about Defendant's character for truthfulness[.]" CM/ECF 277, at p.2. Significantly, "the impact of gaming on computer hard drives and the computer specifications and preferences of gamers," is irrelevant. There is no proof in this case that heavy gaming caused Defendant's hard drive to crash, and regardless, the cause of the hard drive crashing has no bearing on whether or not had a duty to preserve the drive.

Defendant can point to no law that states that only hard drives that have not crashed are subject to the duty to preserve evidence. To the contrary, the Court in *Am. Family Mut. Ins., Co.*

9

*v. Roth*, 2009 WL 982788 (N.D. Ill. 2009) held that when a spoiling party had notice of litigation and that the evidence may be relevant, even if a hard drive crashes it cannot be discarded. "[E]ven if one were to accept [Defendant's] claims of bad luck, they do not account for their clearly willful failure to have retained the computers and/or hard drives as they were required to do . . . by virtue of the law's requirement that a party may not destroy relevant evidence once he or she knows or should have known that there was a duty to retain evidence." *Id.* at *6. Indeed, the Court went on to acknowledge that it takes "neither know-how nor resources to keep a crashed hard drive. No maintenance is required beyond physical retention, and no resources of any kind need be expended." *Id.* at *8. Further even if the hard drive crashed as Defendant claims, "this would account only for the replacement of the hard drive, not for its destruction." *Id.* Notably, even some of Defendant's own witnesses acknowledged that in these types of cases a computer hard drive is an important piece of evidence. *See* Harlan Depo. at p. 48:2-15 ("Yes, a hard drive would be an important piece of evidence."); Edwin Bosaw Depo. at p. 26:19-23 (the hard drive that was used in 2012 would have been an important piece of evidence in this lawsuit "if it had any evidence on it."); *id.* at 28:2-6 (if the Defendant had knowledge that he was being sued "[h]e should have hung onto it."); *id.* at 46:1-3 ("If a person had notice that they were under investigation and it concerned that particular hard drive, they'd better keep it."); Goldsmith Depo. at 21:7-10 (acknowledging that if he wanted to "cover [his] backside" taking a hard drive to be recycled would be one way to do it); Arnold Depo. at p 21:3-19 ("[i]f you dispose of your hard drive, you're going to get rid of everything . . . If you were trying to hide something, it would be necessary.")

Whether or not it was common for employees and former employees to use GGI's recycling facilities is also irrelevant, as are any prior instances in which the Defendant used

GGI's facilities himself to recycle electronics prior to this lawsuit. When Defendant disposed of his hard drive at GGI in early 2013, he had received a notice from his internet service provider informing him that he had been implicated in a federal lawsuit. Regardless of whether or not he had disposed of electronics at GGI in the past, *this* time he had a legal obligation to refrain from doing so. And, as described above, character testimony, to the extent Ms. Arnold is able to offer any, is not relevant to a bad faith analysis if one is even necessary.

Ms. Arnold testified that she never examined any of Defendant's computer's hard drives, had no knowledge as to whether or not he had ever used BitTorrent, and testified she was unfamiliar with his computer usage habits. *See* Arnold Depo. at 19:11-18. Ms. Arnold also testified that she had no knowledge of the circumstances surrounding Defendant's destruction of the hard drive. *Id.* at p. 9:6-8 ("I can't say that I saw the specific hard drive brought to us[.]"). Accordingly, with no relevant testimony to offer, she should be precluded from testifying to avoid wasting time and confusing the issues at the hearing.

### E. John Harlan, Defendant's Friend, Lacks Personal Knowledge of the Facts Relevant to the Spoliation Inquiry

Finally, Defendant intends to call John Harlan to testify about his purchase of the replacement hard drive for Defendant's gaming computer and "Defendant's habits regarding his uses of computer hard drives[.]" CM/ECF 277, at p. 3. The replacement hard drive is not at issue at the hearing. And, again, both the cause of the hard drive crashing and whether or not other of Defendant's drives have also crashed in the past is irrelevant as explained directly above. Mr. Harlan has "never inspected any of [Defendant's hard drives]." Harlan Depo. at p. 41:8-10. He does not know whether the hard drive actually crashed nor whether or not Defendant disposed of it. *Id.* at 45:7-9, 51:13-16, 27:1-2, 41:3-5, 47:1-5. He also does not know whether or not Plaintiff's copyrighted movies were on Defendant's hard drive or if

11

BitTorrent was on the hard drive. *Id.* at 59:22-25, 60:1 ("I do not know in either direction."); 62:1-3.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court grant the subject Motion and preclude Defendant's Witnesses from Testifying at the Evidentiary Hearing.

DATED: December 12, 2014.

                                        Respectfully submitted,

                                        NICOLETTI LAW, PLC

By:   /s/ *Paul J. Nicoletti*
       Paul J. Nicoletti, Esq. (P44419)
       33717 Woodward Avenue, #433
       Birmingham, MI 48009
       Tel: (248) 203-7800
       E-Fax: (248) 928-7051
       Email: pauljnicoletti@gmail.com
       *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

                                        By:   /s/ *Paul J. Nicoletti*