UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:12-cv-01117-WTL-MJD |
| | ) |
| MICHAEL HARRISON, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SANCTIONS**

This matter comes before the Court on Plaintiff's Motion for Sanctions Against Defendant for the Intentional Destruction of Material Evidence. [Dkt. 237.] For the reasons set forth below, the Court recommends that the motion be **DENIED**. Also before the Court is Plaintiff's Motion in Limine to Preclude Defendant's Witnesses from Testifying at the Evidentiary Hearing. [Dkt. 288.] The Court **DENIES AS MOOT** part of this motion and **DENIES** the remainder of this motion.

**I.     Background**

Malibu Media, LLC ("Plaintiff") is a California company that owns a registered copyright for the motion picture "Pretty Back Door Baby." [Dkt. 1 ¶¶ 6, 11-12.] On August 14, 2012, Plaintiff filed suit in this Court, alleging that various unidentified defendants had infringed its copyright by using the peer-to-peer file sharing protocol BitTorrent. [*Id.* ¶¶ 7, 14, 33-35.] Each Defendant initially was "known to Plaintiff only by an IP address," i.e., "a number that is assigned by an Internet Service Provider (an 'ISP') to devices, such as computers, that are connected to the Internet." [*Id.* ¶¶ 7-8.]

1

On August 27, 2012, Plaintiff issued a subpoena to one such ISP—Comcast Corporation ("Comcast")—ordering Comcast to "produce documents identifying the name, address, and telephone number" associated with the IP addresses that Plaintiff had identified as involved in infringement of its copyright. [*See* Dkt. 19.] Comcast's response identified Michael Harrison ("Harrison" or "Defendant") as one of the individuals associated with an infringing IP address. [*See* Dkt. 59 ¶ 4.] Plaintiff accordingly filed an amended complaint against Harrison and others, alleging direct and contributory copyright infringement. [*See* Dkt. 38.][1]

During discovery, Plaintiff served Interrogatories and Requests for Production on Harrison. [*See* Dkt. 237-2 & 237-3.] Plaintiff also deposed Harrison on August 7, 2014. [*See* Dkt. 237-1.]

Plaintiff's Interrogatory No. 4 asked Defendant to identify "each of the Computer Devices used in [Defendant's] home during the preceding two years." [Dkt. 237-2 ¶ 4.] Defendant responded that he had two devices: an Acer 5730 laptop and a custom-built gaming computer. [*Id.*] Interrogatory No. 5 asked Defendant to identify the wireless routers used in his home and to describe whether and how they were password protected. [237-2. ¶ 5.] Defendant responded that he used a Netgear wgr614 v9 router, and that he had "changed the password for it in October [2012]" when he received a letter from Comcast. [*Id.*]

At his deposition, Defendant testified about the letter. He said that the document notified him that Plaintiff had issued a subpoena to Comcast in connection with a lawsuit. [Harrison Dep. 15:21-23, Aug. 7, 2014.] Based on the letter, he "knew the lawsuit was pending," but "didn't know it was a lawsuit directly against [him] at the time." [Harrison Dep. 16:1-4.] He "thought it was just [Plaintiff] looking for information through Comcast." [Harrison Dep. 16:5-6.]

---

[1] Since this filing, Plaintiff has further amended its complaint to assert only the direct infringement claim against Harrison. [*See* Dkt. 165.]

2

Plaintiff's Request for Production No. 1 asked for a "complete copy of the hard drive for each of the Computer Devices in [Defendant's] house, apartment or dwelling." [Dkt. 237-4 ¶ 1.] Defendant responded that Plaintiff "was provided a complete copy of the hard drive for each of [his] computer devices on July 25, 2013." [237-4 ¶ 1.] At his deposition, Defendant testified about the drive that he had provided from his gaming computer. He stated that the hard drives in his computers "get used pretty hard and die pretty quickly," such that he "replaced hard drives a lot in all of [his] computers." [Harrison Dep. 17:9-11.] In January 2013, for instance, the hard drive in Defendant's gaming computer "had begun crashing," and "it needed to be replaced." [Harrison Dep. 15:12-14.] Thus, Defendant replaced the drive shortly thereafter. [Harrison Dep. 15:3-10.]

A replacement hard drive for the "crashing" drive was shipped to Defendant in January 2013, but its purchase was billed to a different individual—John Harlan. [Harrison Dep. 14:15-18; *see also* Dkt 237-7.] Harrison stated that Harlan "owed [him] a little bit of money" and that purchasing the hard drive "seemed an easy way for him" to pay Harrison back. [Harrison Dep. 14:19-22.] After receiving the new drive, Defendant said it "went into [his] gaming computer." [Harrison Dep. 14:24.]

Plaintiff asked what happened to the previous hard drive, and Defendant stated that he "got rid of it" by taking the drive to his former employer, GGI Recycling LLC. [Harrison Dep. 15:17-19.] He said he "was taking some other electronic scrap" to GGI to be recycled, and "just tossed [the previous hard drive] in the piles [GGI] had." [Harrison Dep. 16:10-11.] Defendant then explained that GGI "melt[s]" the electrical scrap it receives, and "sell[s] it to refineries and stuff like that." [Harrison Dep. 16:13-15.] It was thus his belief that "GGI recycled the hard drive." [Harrison Dep. 16:16-18.]

After Defendant's deposition, Plaintiff filed its current Motion for Sanctions Against Defendant for the Intentional Destruction of Material Evidence. [Dkt. 237.] Plaintiff contends that Defendant received notice of this lawsuit in October 2012 through the letter from Comcast, [*id.* at 2], and that the hard drive that Defendant replaced in early 2013 could have "contained evidence of Plaintiff's copyrighted works." [*Id.* at 8.] Thus, Plaintiff argues that Defendant's recycling of the hard drive violated Plaintiff's duty to preserve evidence relevant to this litigation. [*Id.* at 6.] Plaintiff also contends that Defendant tried to conceal his alleged wrongdoing: Plaintiff notes that its Requests for Production instructed Defendant to disclose the existence of and circumstances surrounding the destruction of any hard drives that Defendant had used but that Defendant no longer had in his possession. [*Id.* at 4; *see also* 237-3 at 5.] Defendant, however, allegedly did not reveal the existence of the hard drive he replaced in early 2013 until his August 2014 deposition, several months after he responded to Plaintiff's requests for production. [Dkt. 237 at 4-5.]

Based on these allegations, Plaintiff asks the Court to enter default judgment against Defendant, [*id.* at 7], or "at minimum," issue "an adverse inference instruction requiring the jury to infer that Plaintiff would have found its copyrighted movies on the destroyed drive." [*Id.* at 10.] The Court referred Plaintiff's motion to the Magistrate Judge for proposed findings and recommendations, [Dkt. 263], and the Court set an evidentiary hearing for December 18, 2014. [Dkt. 261.]

Before the hearing, Plaintiff filed its Motion in Limine to Preclude Defendant's Witnesses from Testifying at the Evidentiary Hearing. [Dkt. 288.] Plaintiff sought to exclude Jason Bosaw, Delvan Neville, Eric Goldsmith, Rhonda Arnold, and John Harlan from testifying

at the hearing. [*Id.* at 1.] The Court took that motion under advisement and conducted the hearing on December 18, 2014.

## II. Discussion

Plaintiff in this case seeks imposition of sanctions for spoliation of evidence resulting from the destruction of Defendant's hard drive. [Dkt. 237 at 1.] The Seventh Circuit notes that "courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008); *see also Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 429 (7th Cir. 2010) (observing that plaintiff "fail[ed] every element of the test for the spoliation inference" where evidence was destroyed "before [defendant] knew or should have known that litigation was imminent").

Furthermore, a showing of "bad faith" is "a prerequisite to imposing sanctions for the destruction of evidence." *Trask-Morton*, 534 F.3d at 681. "'[B]ad faith' means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998); *see also Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013), *reh'g denied* (May 1, 2013), *cert. denied*, 134 S. Ct. 900 (2014) (citation omitted) ("A party destroys a document in bad faith when it does so for the purpose of hiding adverse information."). Sanctions for spoliation therefore may not be imposed simply because evidence was destroyed; instead, such sanctions are appropriate only if the evidence was destroyed for the purpose of hiding adverse information. *See, e.g.*, *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002) (citation omitted) ("[T]he crucial element is not that evidence was destroyed but rather the reason for the destruction."). The movant bears the burden to make this showing. *Bracey*, 712 F.3d at 1019.

Based on this standard, Plaintiff must establish 1) that Defendant had a duty to preserve evidence because he knew or should have known that litigation was imminent; and 2) that while under this duty, Defendant destroyed evidence for the purpose of hiding adverse information.

**A. Duty to Preserve Evidence**

"A party has a duty to preserve evidence when it knows, or should have known, that litigation was imminent." *Trask–Morton*, 534 F.3d at 681. "At the latest, this duty attaches when the plaintiff informs the defendant of his potential claim." *Chandler v. Buncich*, No. 2:12 CV 175, 2012 WL 4343314, at *1 (N.D. Ind. Sept. 24, 2012). The duty may arise "even prior to the filing of a complaint as long as it is known that litigation is likely to commence." *MacNeil Auto. Products, Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 801 (N.D. Ill. 2010).

In this case, Defendant learned of the litigation through the letter he received from Comcast, his ISP. [Pl.'s Ex. P1; Evidentiary Hr'g Tr. 10:18-20, Dec. 18, 2014.] The letter was dated September 27, 2012, [Pl.'s Ex. P1], and Plaintiff introduced deposition testimony from Comcast's 30(b)(6) corporate representative confirming that Comcast sent the letter to Defendant on this date. [Padgett Dep. 22:2-10, Nov. 5, 2014.] Defendant testified that he received the letter in October 2012. [Hr'g Tr. 10:18-20, 29:16-18.]

The Comcast letter states:

> Malibu Media, LLC has filed a federal lawsuit in the United States District Court for the Southern District of Indiana. You have been identified in our records via your assigned Internet Protocol ("IP") address, which is unique to each internet user, in this lawsuit for allegedly infringing Malibu Media, LLC's copyrights on the Internet by uploading or downloading a movie without permission.

[Pl.'s Ex. P1.] The letter adds that "the court has ordered Comcast to supply your name, address and other information to Malibu Media, LLC," and that "Comcast will provide your name, address and other information as directed in the Order." [Pl.'s Ex. P1.] It

6

further advises the recipient to "consult an attorney immediately" if the recipient has any questions about the lawsuit. [Pl.'s Ex. P1.]

The Court finds that the contents and receipt of this letter were sufficient to establish Defendant's duty to preserve evidence. The letter specifically informs the recipient—Defendant Harrison—that "*[y]ou have been identified* . . . for allegedly infringing Malibu Media, LLC's copyrights," and advises that "*your name*, address and other information" will be supplied in connection with the lawsuit. [Pl.'s Ex. P1 (emphasis added).] The letter thus informs the recipient not only that litigation has already commenced, but that the recipient has been personally connected to that litigation and the alleged infringement. A person reading this letter thus reasonably "should have known" that "litigation was imminent." *Trask–Morton*, 534 F.3d at 681. Further, the description of the alleged illegal activity—"infringing Malibu Media, LLC's copyrights on the Internet by uploading or downloading a movie without permission"—indicates that, through the letter, "plaintiff inform[ed] the defendant of his potential claim." *Chandler*, 2012 WL 4343314, at *1. The duty to preserve evidence thus arose upon Defendant's receipt of the letter.

The Court must next consider the scope of Defendant's duty. Once the duty of preservation attaches, it imposes a "broad" obligation "encompassing any relevant evidence that the non-preserving party knew or reasonably could foresee would be relevant to the action." *Chandler*, 2012 WL 4343314, at *1; *see also MacNeil*, 715 F. Supp. 2d at 800 ("A party has a duty to preserve evidence over which it had control and reasonably knew or could reasonably foresee was material to a potential legal action.").

In this case, Defendant's computer storage devices fall within the scope of the duty of preservation. The letter informed Defendant that the lawsuit had been filed because a person associated with Defendant's IP address had been "allegedly infringing Malibu Media, LLC's copyrights on the Internet by uploading or downloading a movie without permission." [Pl.'s Ex. P1.] A person reading this claim "reasonably could foresee," *Chandler*, 2012 WL 4343314, at *1, that computer hardware capable of connecting to the Internet and storing potentially infringing copies of movies would be relevant to the claim. In addition, Plaintiff's expert witness, Patrick Paige, testified at the evidentiary hearing that Defendant's hard drive "absolutely" would have "been an important piece of evidence" to inspect, [Hr'g Tr. 85:17-19], and several of Defendant's own witnesses acknowledged at their depositions "that in these types of cases a computer hard drive is an important piece of evidence." [*See* Dkt. 288 at 10.] This testimony thus confirms that the destroyed hard drive fell within the scope of the duty of preservation.

For the reasons stated above, the Court concludes that, at the time of the destruction of the hard drive, Defendant was under a duty to preserve the hard drive. The Court next considers whether Defendant's actions were sufficiently culpable to impose a spoliation sanction.

### B. Bad Faith Destruction of Evidence

As noted above, sanctions for spoliation of evidence can be entered only if the culpable party destroyed evidence in bad faith. *Trask-Morton*, 534 F.3d at 681. Bad faith, in turn, "means destruction for the purpose of hiding adverse information." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). In this case, then, Plaintiff must show bad faith, and thus

must establish that Defendant destroyed his hard drive "for the purpose of hiding adverse information." *Norman-Nunnery*, 625 F.3d at 428.

At the hearing, Defendant testified at length about his use of computers, the circumstances of the hard drive's destruction, and his replacement of the hard drive. As explained below, the Court finds that the evidence presented does not establish that he destroyed the hard drive in February 2013 for the purpose of hiding adverse information.

As an initial matter, Defendant directly testified under oath that he did not do so. When asked whether he took his "old gaming hard drive to GGI because [he] was trying to hide information," he said "no." [Hr'g Tr. 59:2-5.] He explained that he built his gaming computer in 2007, [Hr'g Tr. 33:11-12], and that since that time, he had replaced the hard drive in the computer "somewhere between four and six times." [Hr'g Tr. 35:20.] Each time, he did so because "gaming is really hard on computer hardware," [Hr'g Tr. 35:23], such that hard drives used for gaming will frequently have "corruption issues and functionality issues, and eventually . . . will stop working entirely." [Hr'g Tr. 34:21-24.] He said that the hard drive in his gaming computer "crashed in January of 2013," and that the hard drive was "no longer usable." [Hr'g Tr. 49:6-16.]

Because the hard drive was no longer useable, Defendant sought a replacement. He testified that he had previously loaned his friend, John Harlan, approximately 400 dollars "for some car parts." [Hr'g Tr. 49: 20-24.] Harlan had repaid part of this loan, but still owed Defendant money. [Hr'g Tr. 49:25, 50:1.] Thus, Defendant asked Harlan to pay back the rest of the loan by buying a replacement hard drive for him. [Hr'g Tr. 50:17-24.] Harlan did so on January 26, 2013, [Def.'s Ex. A], and Defendant received the hard drive in February 2013. [Hr'g Tr. 53:24.] At that point, the old gaming hard drive was still non-functional, [Hr'g Tr. 54:5], so

9

Defendant took the hard drive to GGI to be recycled. [Hr'g Tr. 57:19-20.] He decided to dispose of the hard drive this way because he was a former GGI employee, and "it help[ed] [his] old employer's business to take electronic scrap there to be recycled." [Hr'g Tr. 58 at 2-4.] Defendant, in short, testified that he recycled the hard drive not to hide adverse information, but because it—like several of the previous hard drives in his gaming computer—had crashed and was no longer functional. Destroying the hard drive for such a reason does not establish bad faith. *See Norman-Nunnery*, 625 F.3d at 428. The Court finds Defendant's testimony in this regard to have been credible.

Of course, the lack of direct testimony from Defendant is not dispositive of the bad faith inquiry. "'Bad faith' is a question of fact like any other, so the trier of fact is entitled to draw any reasonable inference." *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998); *Davis v. Carmel Clay Sch.*, No. 1:11-CV-00771-SEB-DML, 2013 WL 5487340, at *6 (S.D. Ind. Sept. 30, 2013). Thus, the Court may infer bad faith from the circumstances of the destruction of evidence. *See Mathis*, 136 F.3d at 1155; *see also Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8*, No. 10-CV-1122, 2014 WL 201534, at *7 (C.D. Ill. Jan. 17, 2014) ("The way to determine whether evidence was destroyed in order to hide adverse information is . . . [to] infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation."). In this case, however, the circumstances do not warrant an inference that Defendant destroyed the hard drive for the purpose of hiding adverse information.

First, the timing of the destruction does not support such an inference. As noted earlier, Defendant received notice of this lawsuit at the beginning of October 2012. [Hr'g Tr. 10:18-20, 29:16-18; *see also* Pl.'s Ex. P1.] Defendant, however, did not destroy the hard drive until "late

February 2013." [Hr'g Tr. 57:14-15.] Thus, almost five months passed between the time that Defendant learned of the lawsuit and Defendant's destruction of the hard drive. Had Defendant truly wished to hide adverse information, the Court finds it unlikely that Defendant would have waited nearly five months to destroy such information. Instead, Defendant's continued use of the hard drive for the months after he learned of the litigation suggests that the hard drive contained no information to hide at all, or that Defendant did not intend to hide any such information.

The timing of Plaintiff's amendment and the service of its complaint also detract from an inference of bad faith. Plaintiff amended its complaint to add Harrison as a Defendant on November 9, 2012. [Dkt. 38.] Plaintiff, however, did not serve the amended complaint on Harrison until April 2013, [Hr'g Tr. 60:7-8; *see also* Dkt. 62 at 2 (requesting that Court grant Plaintiff "until April 19, 2013" to serve Defendant)], *after* Defendant had arranged to order the replacement hard drive, [*see* Pl.'s Ex. P1.], and *after* the recycling of Defendant's hard drive. [Hr'g Tr. 60:3-4.] Furthermore, Defendant testified that the service of the complaint was the first time that he became aware that he was personally being sued for copyright infringement. [Hr'g Tr. 60:12-14.] Thus, at the time of the destruction in February 2013, Defendant was not even certain he had been sued, making it much less likely that he destroyed the hard drive to hide information that could prove damaging in this litigation.[2]

Next, the circumstances of Defendant's purchase of the replacement hard drive are not as suspicious as Plaintiff contends. Plaintiff notes that Defendant had a third party purchase the new

---

[2] The Court notes that its previous order, [Dkt. 18], stated that "[w]ithin seven days of the identification through discovery or otherwise of any putative Defendant, Plaintiff shall file an Amended Complaint naming that Defendant and *shall undertake immediate efforts to effect service of process upon that Defendant*." [*Id.* ¶ 4.] Had Plaintiff complied with the Court's order and "immediately" undertaken efforts to serve its amended complaint on Harrison, Plaintiff's current motion for sanctions would rest on firmer ground: in such a case, Defendant's destruction of the hard drive would have occurred after service of the amended complaint, and it would be much easier for the Court to infer that Defendant's conduct was an attempt to hide information that could have been adverse to Defendant in the present litigation. As it is, however, Plaintiff did not serve Harrison for approximately five months after amending its complaint, and thus cannot benefit from such an inference.

hard drive for him and implies that Defendant did so to hide the existence of his original hard drive. [*See* Dkt. 254 at 2-3.] As noted above, however, Defendant explained the circumstances of the third party's purchase and gave a legitimate reason—repayment of the loan—for Harlan's purchase of the hard drive. Furthermore, Mr. Harlan testified that he did in fact purchase the hard drive because he owed Defendant money, and agreed that the original loan had been for parts for Harlan's car. [Hr'g Tr. at 98:15-19.] Harlan's testimony thus corroborates Defendant's explanation for Harlan's purchase of the drive, making it less likely that the purchase was part of a plan to hide adverse information.

Moreover, Plaintiff's First Request for Production of Documents asked Defendant to produce "[a]ll documents referring, relating to or comprising records associated with the purchase of a Computer Drive." [Dkt. 237-4 ¶ 3.] Defendant responded by attaching a copy of the receipt showing the purchase of the hard drive by John Harlan. [*See id.*; Dkt. 237 at 5.] The Court finds unlikely that Defendant would have produced the receipt *showing* the purchase of the hard drive had Defendant wished to *hide* the purchase of the replacement hard drive. Defendant's disclosure of this receipt thus further erodes the strength of any inference that Defendant was attempting to hide adverse information.

Next, Defendant also testified that he had two computers: the gaming computer and a separate Acer laptop. [*See* Hr'g Tr. 46-47.] He acquired the laptop "sometime in 2009 or 2010." [Hr'g Tr. 47:9.] After acquiring the laptop, he purposefully avoided doing anything on his gaming computer other than playing games and engaging in "light" Internet activity, such as accessing Facebook. [Hr'g Tr. 46:13-23.] He explained that doing "anything else" on "a computer tends to slow it down," leading him to avoid other activity—such as downloading movies—that would have impaired the performance of the gaming computer. [*See* Hr'g Tr.

12

46:17-25, 47:1-5.] In particular, Defendant stated that he had a BitTorrent client installed on his laptop but, after acquiring the laptop, never had a BitTorrent client installed on his gaming computer. [Hr'g Tr. 47:18-20.] He also stated that he originally acquired the recycled hard drive in "late 2011." [Hr'g Tr. 48:6-8.] Because he acquired this hard drive after acquiring the laptop, his testimony indicates that he never would have installed a BitTorrent client and never would have downloaded movies on the hard drive he ultimately recycled.

The Court finds such testimony credible: Plaintiff testified that using a computer for gaming purposes can be strenuous for the computer's hardware and that games are less desirable to play when the hardware struggles to properly run them. [Hr'g Tr. 41:17-23.] The Court thus finds it logical that, after acquiring his laptop in 2009 or 2010, Defendant would use only the laptop for BitTorrent use and downloading movies, thereby preserving his gaming computer to more effectively run Defendant's gaming software.

Because Defendant likely did not use the destroyed hard drive for downloading movies, the Court finds it unlikely that Defendant recycled the hard drive for the purpose of hiding adverse information. After all, if Defendant did not use the hard drive to download *any* movies, then the hard drive could not contain evidence of Plaintiff's *copyrighted* movies, and Defendant would not have destroyed the hard drive to hide such evidence.

In this respect, the case is similar to the situation the Seventh Circuit analyzed in *Bracey*. There, the plaintiff alleged that prison officials used excessive force against him during a jailhouse struggle. *Id.* at 1015-16. He filed an inmate complaint and "notified the prison that tapes of the incident probably exist[ed.]" *Id.* at 1015. The footage, however, was erased before a copy was made. *Id*.

During the course of the lawsuit, the plaintiff "sought sanctions for spoliation of the video recording." *Id.* at 1016. The Seventh Circuit, however, noted that the plaintiff "[made] no assertion that any prison official actually viewed the relevant video (or deliberately avoided watching the video for fear of what it contained)." *Id.* at 1019. Thus, without "having seen the video, no prison official could have known the tapes potentially contained adverse information and, without that knowledge," no prison official "could have destroyed the tapes for the purpose of hiding adverse information." *Id.*

So, too, in this case: Defendant credibly testified that he never used his gaming computer for downloading movies or otherwise using BitTorrent during the time the destroyed drive was connected to the gaming computer. He therefore could not "have known the [hard drive] potentially contained adverse information," *Bracey*, 712 F.3d at 1019, related to Plaintiff's claim that he used BitTorrent to infringe Plaintiff's movies. Without this knowledge of potentially adverse information, Defendant could not have destroyed the hard drive for the purpose of hiding that adverse information. *See id.*

For these reasons, then, the Court concludes that Defendant did not destroy the hard drive in bad faith. No direct testimony establishes that Defendant did so, and the circumstances of the destruction as outlined above do no warrant an inference that Defendant destroyed the hard drive for the purpose of hiding adverse information. As such, Plaintiff has not carried its burden to prove bad faith destruction of evidence, and Plaintiff's motion for sanctions is **DENIED**.

### C. Plaintiff's Alternative Argument

In support of its motion in limine and at the hearing, Plaintiff asserted that "bad faith" is not required for imposition of spoliation sanctions, and that "the Court can sanction Defendant if it finds that he acted with willfulness, fault, *or* bad faith." [Dkt. 290 at 2 (emphasis original).]

Plaintiff cites *Marrocco v. General Motors Corp.*, in which the Seventh Circuit acknowledged that "sanctions may be appropriate in any one of three instances—where the noncomplying party acted *either* with willfulness, bad faith *or* fault." 966 F.2d 220, 224 (7th Cir. 1992) (emphasis original). That case, however, involved sanctions for "violation of [a] protective order," *id.* at 222, and did not address intentional destruction of evidence. *See id.* at 222-24. Moreover, the Seventh Circuit in *Marrocco* derived the "willfulness, bad faith or fault" standard from *National Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639 (1976), in which the Supreme Court addressed the circumstances in which a court may sanction a party under Rule 37 for failure to "obey an order to provide or permit discovery." *Id.* at 639-40. This standard is thus inappropriate for this case, as Plaintiff has not invoked Rule 37 and has not identified any court order that Defendant allegedly disobeyed. [*See* Dkt. 237.]

Instead, Plaintiff's motion apparently relies not on violation of a court order, but on the Court's "inherent power to sanction parties for misconduct such as spoliation of evidence." *Naseer v. Trumm*, No. 11-CV-004-BBC, 2011 WL 1749322, at *5 (W.D. Wis. May 6, 2011) (citing *Schmude v. Sheahan*, 420 F.3d 645, 649–650 (7th Cir.2005)). As courts have previously noted, reliance on this power requires a showing of bad faith. *See, e.g.*, *F.T.C. v. Asia Pac. Telecom, Inc.*, 788 F. Supp. 2d 779, 790 (N.D. Ill. 2011) ("A court's inherent power to impose spoliation sanctions arises only if a party destroyed evidence in bad faith.").

This requirement is also consistent with Seventh Circuit precedent. Plaintiff argues that Defendant "committed spoliation," [Dkt. 237 at 6], and when the issue is spoliation, the Seventh Circuit is clear that only bad faith will suffice: "This court has noted that the spoliation doctrine applies if two conditions are met. A party must destroy evidence, and *its destruction must have been in bad faith.*" *United States v. Esposito*, 771 F.2d 283, 286 (7th Cir. 1985) (emphasis

15

added); *see also Norman-Nunnery*, 625 F.3d at 428 ("The crucial element in a spoliation claim is not the fact that the documents were destroyed but that they were destroyed *for the purpose of hiding adverse information*." (emphasis added)); *Trask-Morton*, 534 F.3d at 681 ("Morton has made no showing, however, that Motel 6's destruction of any of those materials was done in bad faith. Such a showing is a prerequisite to imposing sanctions for the destruction of evidence.").[3] Plaintiff's above-described failure to establish bad faith is thus fatal to its request for sanctions.

Moreover, even if Plaintiff's contention were correct, the Court finds that Plaintiff has not shown that Defendant acted with willfulness or fault. First, "willfulness" is similar to "bad faith," in that "wilfulness and bad faith are associated with conduct that is intentional or reckless." *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000). Thus, the Seventh Circuit has approved a finding of willfulness when a litigant repeatedly disobeys court orders, *see In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001), or repeatedly disregards a court's warnings about conduct during discovery. *See Holt v. Loyola Univ. of Chicago*, 497 F. App'x 662, 664 (7th Cir. 2012). In this case, Plaintiff has not identified any orders or warnings from this Court directing Defendant to preserve evidence or otherwise produce the hard drive from Defendant's gaming computer. [*See* Dkt. 237.] The Court thus finds that Plaintiff has not established the sort of repeated misconduct that might suffice to show "willfulness."

"Fault," meanwhile, "doesn't speak to the noncomplying party's disposition at all, but rather only describes the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation[4]." *Marrocco*, 966 F.2d at 224. Thus, the Seventh Circuit in

---

[3] The Seventh Circuit has also expressly acknowledged that "[s]ome circuits have adopted less stringent standards than we require for issuing" spoliation sanctions. *Bracey*, 712 F.3d at 1020. In the Sixth Circuit, for instance, a duty to preserve evidence combined with negligent destruction of that evidence can warrant sanctions, and bad faith is not required for sanctions in the Ninth Circuit. *See id.* Plaintiff, however, must meet the Seventh Circuit's more stringent standards, and thus must show bad faith. *See id.*

[4] Again, the Court notes that Plaintiff has not actually alleged a "violation" of any court order in this case, such that Plaintiff's reliance on *Marrocco* is misplaced.

16

*Marrocco* determined that the noncomplying party acted with "fault" when it "showed poor judgment" in the way it handled evidence and when its conduct showed a "flagrant disregard of [the party's] assumed duty, under the protective order,[5] to preserve and monitor the condition of evidence which could be pivotal in a lawsuit." *Id.*

Defendant in this case did not show a similar degree of fault. As described above, Defendant credibly explained that he never used the recycled hard drive for downloading movies and never had a BitTorrent client installed on the recycled drive. Without such evidence, the hard drive could hardly be "pivotal" to this lawsuit, such that destroying it did not show "poor judgment" of the sort exhibited by the culpable party in *Marrocco*. In addition, Plaintiff has not identified any court order or other explicit promise to preserve evidence that Defendant allegedly violated. [*See* Dkt. 237.] Without such an explicit undertaking to preserve evidence, Defendant's conduct is not a "flagrant" disregard of any duty, *Marrocco*, 966 F.2d at 224, such that, again, Defendant's conduct does not rise to the level of "fault."

### D. Relevance of Destruction at Trial

Because Defendant did not destroy evidence in a way that demonstrates "bad faith," "willfulness," or "fault," the Court will not sanction Defendant. The destruction of the hard drive, however, may yet be relevant at trial.

The core of Plaintiff's claim in this case is that "Defendant copied the constituent elements" of Plaintiff's copyrighted works by "using the BitTorrent protocol and a BitTorrent Client." [Dkt. 165 ¶ 4 (Fourth Am. Compl.).] Plaintiff's expert witness Patrick Paige examined

---

[5] The protective order in *Marrocco* provided that its purpose was "to ensure preservation and safekeeping of the motor vehicle which is the subject of this litigation," and required the parties to refrain from "destructive testing" of the vehicle. *Id.* at 221. Although the Court entered a protective order in the current litigation, that order relates only to the confidentiality of information, and imposes no duty to preserve evidence. [*See* Dkt 177.]

17

both the hard drive from Plaintiff's Acer laptop and the replacement hard drive that Defendant used in his gaming computer after recycling the previous hard drive. [Dkt. 213-4 ¶¶ 25-26 (Decl. of Patrick Paige).] Mr. Paige's examination of the replacement hard drive, however, "revealed no evidence of BitTorrent use." [*Id.* ¶ 25.] Such a finding could undermine Plaintiff's claim of copying via BitTorrent, and the fact-finder at trial should know that Paige's examination was *not* an examination of the hard drive that Defendant had in his possession during the alleged time of infringement. *See, e.g.*, *Taylor v. Union Pac. R.R. Co.*, No. CIV.09-123-GPM, 2010 WL 5474172, at *2 (S.D. Ill. Dec. 27, 2010) (admitting evidence concerning destruction of allegedly defective product where expert's later test was performed on a different copy of the product).

To prevail on its infringement claim, Plaintiff must also show, *inter alia*, that copying of the protected work did in fact occur. *See Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012). Plaintiff's expert in this case found various torrent files indicating that Defendant's Acer laptop had been used to produce copies of numerous audiovisual works, but these works did not include Malibu Media's copyrighted movies. [*See* Dkt. 213-6.] Also, as noted above, Plaintiff's expert found no evidence of BitTorrent use whatsoever on the replacement hard drive from Defendant's gaming computer. [*See id.*] Without knowing that the replacement hard drive *was* a replacement, and without knowing that it was *not* the hard drive in use during the time of the alleged infringement, the fact finder at trial might conclude that Paige's combined findings exonerate Defendant by establishing that no copying of Malibu Media's works occurred at all. This, however, could be an erroneous conclusion in light of the destruction of the hard drive that *was* in use at the time of the alleged infringement, such that Plaintiff should be allowed to present evidence explaining why the original hard drive was not available for its expert to examine. Hence, although the Court will not sanction Defendant for destroying the hard drive, the Court

18

also will not bar the introduction of evidence at trial concerning the circumstances of that destruction.

### E. Plaintiff's Motion in Limine

As noted above, Plaintiff filed a motion in limine to exclude Jason Bosaw, Delvan Neville, Eric Goldsmith, Rhonda Arnold, and John Harlan from testifying at the evidentiary hearing. [Dkt. 288 at 1.] Eric Goldsmith and Delvan Neville did not testify at the hearing, and the Court has not referred to the testimony of Rhonda Arnold or Jason Bosaw. The Court therefore **DENIES AS MOOT** the portion of Plaintiff's motion seeking to exclude these witnesses.

The Court also **DENIES** the portion of Plaintiff's motion seeking to exclude the testimony of John Harlan. Plaintiff asserts that Harlan "lacks personal knowledge of the facts relevant to the spoliation inquiry." [*Id.* at 11.] As described above, however, Harlan's testimony corroborated Defendant's explanation for Harlan's purchase of the hard drive, and thus reduced the likelihood that Defendant's purchase of the hard drive through Harlan was an attempt to hide information on the hard drive that was destroyed. Because the intent to hide adverse information is an element of the spoliation inquiry, *see Trask-Morton*, 534 F.3d at 681, Harlan's testimony is relevant to Plaintiff's spoliation allegations, and Plaintiff's argument for excluding Harlan's testimony is not sound.

### III. Conclusion

For the reasons stated above, the Court recommends that Plaintiff's Motion for Sanctions Against Defendant for the Intentional Destruction of Material Evidence, [Dkt. 237], be **DENIED**. Also, the Court **DENIES AS MOOT** part of Plaintiff's Motion in Limine to Preclude

Defendant's Witnesses from Testifying at the Evidentiary Hearing, [Dkt. 288], and **DENIES** the remainder of this motion.

Date: 12/24/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Anthony Jay Saunders
ajsaunde@hotmail.com

Amy L. Cueller
LEMBERG LAW, LLC
acueller@lemberglaw.com

David Scott Klinestiver
LEWIS & KAPPES
dklinestiver@lewis-kappes.com

Matthew S. Tarkington
LEWIS & KAPPES, PC
mtarkington@lewis-kappes.com

Jason H. Cooper
LIPSCOMB, EISENBERG & BAKER, PL
jcooper@lebfirm.com

Michael K. Lipscomb
LIPSCOMB, EISENBERG & BAKER, PL
klipscomb@lebfirm.com

Paul J. Nicoletti
NICOLETTI LAW, PLC
paul@nicoletti-associates.com

Gabriel J. Quearry
QUEARRY LAW, LLC
gq@quearrylaw.com