**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL HARRISON,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

---

**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION SUMMARY
JUDGMENT**

---

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56-1 of the

Southern District of Indiana Local Rules, Defendant Michael Harrison ("Defendant"), by

counsel, files herein his Brief in Response to Malibu Media, LLC's ("Plaintiff") Motion for

Summary Judgment.

**I.      STATEMENT OF MATERIAL FACTS IN DISPUTE**

     **A.      Plaintiff Is Not The Owner Of Valid Copyrights For The Six Movies at Issue.**

1.      Plaintiff has not produced certificates of registration issued by the Register of

Copyrights under the seal of the Copyright Office for the six movies at issue. *See* Exhibit A,

Sample Certificate of Registration.

2.      Plaintiff's applications for copyright registration for the six movies at issue state:

      (a)      Malibu Media is the copyright claimant.

      (b)      Malibu Media is the *author* of the entire motion picture.

      (c)      Malibu Media is the author of the entire motion picture as an *employer for
          hire* (i.e., each work is a "work made for hire"). *See* Composite Ex. D to
          CM/ECF 276-2.

3.      Plaintiff's applications for copyright registration for the six movies at issue state:

    (a)      *LA Love* was created in 2010 and published on March 22, 2010.

    (b)      *Veronica Wet Orgasm* was created in 2011 and published on October 5, 2011.

    (c)      *Pretty Back Door Baby* was created in 2012 and published on May 8, 2012.

    (d)      *Introducing Diana* was created in 2012 and published on May 11, 2012.

    (e)      *Romantic Memories* was created in 2012 and published on May 16, 2012.

    (f)      *Sneak n Peek* was created in 2012 and published on June 1, 2012. *See* Composite Ex. D to CM/ECF 276-2.

4.      In 2009-2010, Brigham Field and Colette Pelissier began starting a "business of running an adult entertainment website[.]" Colette Field Decl. ¶ 7.  *See* CM/ECF 244-1 Malibu Media, LLC Dep. 65:9-65-17, Aug. 25, 2014.

5.      In 2009-2010, Pelissier worked as a real estate agent. ECF 276-2, ¶ 9. Malibu Media Dep. 65:9-65:17.

6.      On February 8, 2011, Malibu Media, LLC filed Articles of Organization with the California Secretary of State's Office. *See* Exhibit B, Malibu Media, LLC Feb. 8, 2011 Articles of Organization, Cal. Form LLC-1 (on file with the Cal. Sec'y of State's Office); Malibu Media Dep. 13:2-13:12.

7.       From February 8, 2011 to January 1, 2012, Malibu Media did not do business in the state of California. *See* Exhibit C, Malibu Media, LLC 2012 Return of Limited Liability Company, Cal. Form 568 C1 2012; Return of Partnership Income, IRS Form 1065 2012.

8.      In 2011, Pelessier worked as a real estate agent, and co-owned a film production business with Brigham Field. *See* Exhibit D, Brigham Field and Colette Pelissier 2011 Joint

Federal Income Tax Return, Schedule C Form 1040 Profit or Loss From Business (Sole Proprietorship); ECF 276-2, ¶ 12.

9.      In 2011, Brigham Field and Colette Pelissier's film production business was not an "employer," did not pay any persons as employees, and did not provide any persons with employee benefits. *See* Exhibit D, Field and Pelissier 2011 Joint Federal Income Tax Return, Schedule C Form 1040; Malibu Media Dep. 21:3-21:21.

10.     On January 1, 2012 Malibu Media started doing business in the state of California. *See* Exhibit C, Malibu Media, LLC 2012 Return of Limited Liability Company, Cal. Form 568 C1 2012; Return of Partnership Income, IRS Form 1065 2012.

11.     In 2012, Malibu Media was not an "employer," did not pay any persons as employees, and did not provide any persons with employee benefits.  *See* Exhibit C, Malibu Media, LLC 2012 Return of Partnership Income, 2012 IRS Form 1065 Lns. 9, 18, 19; Malibu Media, LLC Dep. 17:6-17-9; 21:3-21:21; 42:23-43:9; 53:4-53-6.

12.     Malibu Media hires independent contractors. Malibu Media Dep. 17:6-17-9; 21:3-21:21; 42:23-43:9; 53:4-53-6.

13.     Brigham and Colette Field were involved in filming movies for the company. Malibu Media Dep. 91:17-92:3.

14.      Brittany Snook, Malibu Media's salaried Vice President, has overseen the scheduling of shoots, coordinated filming, edited content, and contributed to the post-production of various X-Art movies. Malibu Media Dep. 15:18-16:15.

15.     Malibu Media's workers are hired for short periods of time. Malibu Media Dep. 21:3-21:21.

16.     Malibu Media films it movies in different locations. Malibu Media Dep. 21:3-21:21.

17.     The availability of models and the length and location of filming causes Malibu Media to frequently hire different workers to film and produce X-Art movies. Malibu Media Dep. 21:3-21:21.

18.     Malibu Media asserts that the specific dates, location, and identities of all individuals involved in filming and post-production of the six movies at issue are irrelevant. Exhibit E, Pl. Resp. Def. Interrog. No. 19 ("[O]wnership of the copyrights at issue in this case is not in dispute, and therefore any information pertaining to the creation of the work is irrelevant."); *See* ECF 172 at 7, ¶ 45.

**B.     Plaintiff's 2011 Agreement With IPP Incentivized IPP To Provide Plaintiff With False Or Inaccurate IP Address Information.**

19.      In or around September 2011, Plaintiff entered into an oral agreement with IPP International U.G. ("IPP"), a German company purportedly "in the business of providing forensic investigation services to copyright owners." Exhibit F, Pl. 3rd Supp. Resp. Def. 1st Interrog. No. 5; *See* 276-3, ¶¶ 4, 7.

20.     Plaintiff's September 2011 oral agreement with IPP ("2011 Agreement") required Plaintiff to compensate IPP for its forensic investigation services on a per case basis in an amount equal to 10% (ten percent) of the total dollar proceeds that Plaintiff obtained from each action. Pl. 3rd Supp. Resp. Def. 1st Interrog. No. 5.

21.     The 2011 Agreement did not require Plaintiff to compensate IPP for its forensic investigation services for any case in which Plaintiff did not receive any dollar proceeds. Pl. 3rd Supp. Resp. Def. 1st Interrog. No. 5; Malibu Media Dep. 44:9-45:2.

22.     The 2011 Agreement was in effect at the time IPP allegedly monitored and recorded the BitTorrent activity of an IP address assigned to Defendant. Pl. 3rd Supp. Resp. Def. 1st Interrog. No. 5; CM/ECF 1; CM/ECF 12-2.

23.     The 2011 Agreement was in effect at the time IPP allegedly created documents and electronic files showing that an IP address assigned to Defendant uploaded pieces of the six movies at issue to IPP's computer servers. Pl. 3rd Supp. Resp. Def. 1st Interrog. No. 5; CM/ECF 1, 1-1; CM/ECF 12-2.

      **C.**      **The IPP Evidence Is Irrelevant, Lacks Authenticity, And, In Any Event, Does Not Show That A Computer Using An IP Address Assigned to Defendant Sent Or Uploaded Any Pieces Of The Six Movies At Issue To IPP.**

24.     Defendant's expert witnesses, Jason Bosaw and Edwin Bosaw, analyzed all discovery materials Plaintiff obtained from IPP ("IPP evidence"):

      (a)      June 6, 2012 and June 7, 2012 Packet capture ("PCAP") files for the six movies;

      (b)      Torrent, .tar, and .tor files ("related files") for the six movies; and,

      (c)      MySQL table instructions ("SQL table") for an IP address assigned to Defendant. Exhibit G, Bosaw & Associates, LLC Fed. R. Civ. P. 26(a)(2)(B) Expert Witness Report, ¶ 25, July 16, 2014 ("Bosaw Report"); *See also* CM/ECF 134-1 – CM/ECF 134-6, Lipscomb, Eisenberg, & Baker ("LEB") Technical Reports, Aug. 2013.

25.     The IPP evidence does not contain any metadata, properties, or audit trails. Bosaw Report, ¶ 27.

26.     The IPP evidence does not show how or when the IPP evidence was generated or identify who generated it.  Bosaw Rpt., ¶ 28.

27.     The metadata for the IPP evidence could have been removed to hide its true time and place of origin.  Bosaw Rpt., ¶ 27.

28.     The IPP evidence could have been created by any person at any time, and any person could have input, altered, or manipulated the data and information at any time. Bosaw Rpt., ¶ 29.

29.     The IPP evidence may originate from a company named Guardelay, not IPP. Bosaw Rpt., ¶ 28.

30.     The IPP evidence contains inconsistencies. Bosaw Rpt., ¶¶ 31-34, 36.

31.     IPP's PCAP evidence does not show that a computer using an IP address assigned to Defendant sent or uploaded *any* pieces of the six movies at issue to IPP. Bosaw Rpt., ¶ 35; Exhibit H, Bosaw & Associates, LLC Fed. R. Civ. P. 26(e)(2) 1st Supp. Expert Witness Report, ¶¶ 1-7, Oct. 12, 2014.

32.     IPP's SQL evidence only contains instructions for a table layout and data to populate the table.  Bosaw Rpt., ¶ 37; *See* Bosaw Rpt., ¶ 36; *See also* CM/ECF 134-1 – CM/ECF 134-6 (LEB's Technical Reports are simply documents containing the organized SQL data .).

33.     IPP's SQL evidence does not contain any data or information showing that a computer using an IP address assigned to Defendant sent or uploaded any pieces of the six movies at issue to IPP. Bosaw Rpt., ¶ 37.

**D.      Patrick Paige Tested AMPC's BitTorrent Detection Software And Paige Is Not Qualified to Testify As An Expert About The BitTorrent Protocol, Wireshark, Or Packet Captures.**

34.     Patrick Paige and a person named David Kleiman tested the BitTorrent monitoring and detection software of a company named APMC, LLC ("APMC").  *See* Exhibit I, Patrick Paige Resp. Def. Req. Prod. No. 5, Nov. 25, 2014; Exhibit J, Patrick Paige Dep. 30:5-30:18, Dec. 10, 2014.

35.     Patrick Paige ("Paige") has never received any education or training in the area of the BitTorrent protocol. Paige Dep. 36:21-36:25.

36.     Paige only knows of the BitTorrent protocol's basic functions and how to use a BitTorrent client to download or transmit files. Paige Dep. 36:25-37:7.

37.     Paige did not know how to test BitTorrent detection software for false positives and does not know if David Kleiman ("Kleiman") tested for false positives. Paige Dep. 39:14-42:21.

38.     Paige did not know if false positives would show up in the test results if Kleiman tested for false positives. Paige Dep. 42:15-42:21.

39.     Paige did not know whether testing for false positives would have shown that an innocent defendant can be falsely accused of copyright infringement. Paige Dep. 42:22-43:4.

40.     Paige admitted that he is "by no means an expert in Wireshark," the program Paige and Kleiman used to test APMC's detection software. Paige Dep. 44:10-44:19; *See* CM/ECF 293 Evidentiary Hr'g Tr. 87:8-87:23, Dec. 18, 2014; ECF 213-3, ¶ 31.

41.     Paige is not familiar with any BitTorrent protocol specifications and cannot explain or define BitTorrent protocol specifications. Paige Dep. 43:6-43:18, 53:5-59:13; Evid. Hr'g Tr. 89:12-90:7; *See* Exhibit K, "The BitTorrent Protocol Specification," Bram Cohen, Oct. 20, 2012, http://bittorrent.org/beps/bep_0003.html.

42.     Paige does not know if he entered the programming commands for the software program that captures PCAP files, and could not explain the meaning of the programming commands that were entered for the test. Paige Dep. 63:20-64:21; *See* Evid. Hr'g Tr. 88:16-89:11.

43.     PCAP files contain important data showing how much of a movie is transferred through the BitTorrent protocol. Evid. Hr'g Tr. 91:14-91:18.

44.     Paige admitted that he is not capable of performing an in-depth analysis of PCAP evidence.  Paige Dep. 44:10-44:19; Evid. Hr'g Tr. 87:17-87:23.

45.     Paige admitted that he does not know how many bytes or pieces of each movie file that he created were downloaded by APMC, or if AMPC downloaded every byte or piece of each movie file that he created. Paige Dep. 59:14-61:1, 83:17-84:22; Evid. Hr'g Tr. 87:17-23.

46.     Paige could not have determined that "IPP's PCAPs match my PCAPs" because Paige does not know how to analyze PCAPs, and APMC did not send all of the PCAPs it created from the test to Paige. Paige Resp. Def. Req. Prod. No. 5; Paige Dep. 44:10-44:19, 48:13-48:22; *See* Evid. Hr'g Tr. 84:21-85:3.

47.      Paige concluded that "IPP's software worked" in part because he encoded text into his video files and APMC sent Paige screen captures with Paige's codes on them. ECF 213-3, ¶¶ 27, 35, 38.

48.     Plaintiff did not encode or assign any unique identifiers to the six movies at issue "to know whether someone that downloaded that particular movie downloaded… the movie that [was] created." Exhibit L, Pl. Resp. Def. 2nd Req. Prod. No. 52; ECF 213-3, ¶ 27.

49.     Paige did not review any of the IPP evidence in this case, and Paige has no knowledge or opinions about the IPP evidence specific to this case.  Paige Dep. 61:3-62:7.

50.     Paige confirmed that data columns present in APMC's capture tables for Paige's movie files are missing from IPP's capture tables for Defendant's IP address. Paige Dep. 67:1:68:6.

51.     Paige could not explain the significance of the data columns missing from IPP's capture tables for Defendant's IP address. Paige Dep. 68:7-68:12.

52.     Paige has no evidence that any of Malibu Media's content could have been on any of the Defendant's computers. Paige Dep. 76:16-76:19 ("Q. Do you have any evidence that any of Malibu Media's content could have been on any of the Defendant's computers? A. No.").

**E.      Defendant Did Not Use His IP Address or Computers to Upload or Download the Six Movies at Issue on September 1, 2012, September 9, 2012, and September 30, 2012.**

53.     No individual with personal knowledge from Comcast Communications Holdings, Inc. ("Comcast") verified that Comcast's IP address server logs show the IP address 98.220.43.119 was assigned to Defendant by Comcast's servers on July 30, 2012 at 20:15 UTC. Comcast Dep. 7:17-8:19, 11:7-11:9; *Cf.* Comcast Dep. 26:21-27:3.

54.     No individual with personal knowledge from Comcast verified that Comcast's IP address servers produce an accurate result, or that the servers were in good working order on or about July 30, 2012. Comcast Dep. 7:17-8:19, 11:7-11:9.

55.     Comcast did not use its correlation procedures, *i.e.*, correlate a cable modem provisioned the IP address 98.22.43.119 within its billing system to a Comcast subscriber, for any date alleged on Exhibit A of Plaintiff's Fourth Amended Complaint. Comcast Dep. 34:15-35:20; CM/ECF 165-1; *See* Comcast Dep. 22:17-27:3, 32:2-32:21, 35:22-40:23.

56.     Comcast "cannot be certain if, in fact, [Defendant] was assigned any additional IP addresses or was assigned this IP address [98.22.43.119] for any additional dates and times" beyond August 5, 2012.  Comcast Dep. 32:22-35:20.

57.     Defendant's ACER laptop computer hard drive did not contain any of Plaintiff's movies and was never used to download or upload Plaintiff's movies using the BitTorrent

protocol. Paige Rpt., CM/ECF 213-5, CM/ECF 213-6, CM/ECF 213-7; Paige Dep. 76:16-76:19;

Bosaw Rpt., ¶¶ 6-23, 25-37; Bosaw Rpt. No. 2, ¶¶ 1-7.

58.     Defendant's February 2013 gaming computer replacement hard drive did not

contain any of Plaintiff's movies and was never used to download or upload Plaintiff's movies

using the BitTorrent protocol.  CM/ECF 213-5; CM/ECF 213-8; Exhibit M, Paige Sammy-PC

Recon Report – RecentDocs, Aug. 13, 2013; Paige Dep. 76:16-76:19; Bosaw Rpt., ¶¶ 6-23, 25-

37; Bosaw Rpt. No. 2, ¶¶ 1-7.

59.     Defendant's 2011-2013 gaming computer hard drive did not contain any of

Plaintiff's movies and was never used to download or upload Plaintiff's movies using the

BitTorrent protocol. Paige Dep. 76:16-76:19; CM/ECF 276-7, Michael Harrison Dep. 46:4-46-

20, 64:4-64:15, 77:22-77:24, 78:11-78:15, 94:1-95:1, Aug. 7, 2014; Evid. Hr'g Tr. 32:24-69:17;

Exhibit N, Spartan Staffing Resp. Def. Subp. Req. Prod. No. 1; Exhibit O, Defendant's Firefox

Web History, Paige Dep. Ex. 25, Dec. 10, 2014.

60.     IPP is "solely capable of identifying IP addresses" through its BitTorrent

detection software and has "no opinion as to whether any particular person is or is not an

infringer." Exhibit P, Malibu Media – IPP On-Line Copyright Infringement Services Agreement,

¶ 7.2, Jan. 1, 2014.

61.     The notice of copyright for each of the six movies at issue appears at either two

seconds or one second from the end of each movie.  Composite Exhibit Q, Notice of Copyright

Screen Shots.

62.     IPP identified the IP address assigned to Defendant in violation of the Indiana

Private Investigator Firm License Law, I.C. 25-30-1. *See* 276-14, ¶ 14

63.     IPP or Malibu Media is the initial seeder of the six movies at issue. *See* Malibu Media – IPP On-Line Copyright Infringement Services Agreement, ¶ 2.1; *See* Exhibit E, Pl. Resp. Def. Interrog. No. 20; *See* Exhibit R, Pl. Resp. Def. 3rd Req. Prod. No. 1; Pl. 3rd Supp. Resp. Def. 1st Interrog. No. 5.

## II.     SUMMARY JUDGMENT STANDARD

"The purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Traicoff v. Digital Media, Inc.,* 439 F.Supp.2d 872, 875 (S.D. Ind. 2006) (citing *Mastushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). *See KnowledgAZ, Inc. v. Jim Walters Resources, Inc.,* 617 F.Supp.2d 774, 782 (S.D. Ind. 2008).

"In determining whether summary judgment is appropriate, all evidence and all inferences that can be drawn from the evidence are viewed in a light most favorable to the nonmoving party." *Tolentino v. Friedman,* 46 F.3d 645, 649 (7th Cir. 1995) (citation omitted).

In addition, Rule 56 provides that upon the giving of notice and a reasonable time to respond, the Court may award summary judgment in favor of a nonmovant.  See Fed.R.Civ.P. 56(f)(1).  Where there is no genuine issue of material fact and a movant's claim is barred as a matter of law, summary judgment in favor of the nonmoving party under Rule 56(f)(1) is appropriate.  *Smith v. Lemmon*, 1:11-cv-00785-WTL-MJD, *3 (S.D. Ind. 2014).  Rule 56(f) "exists largely for the convenience of the court, to save it from proceeding with trials that it can readily see are unnecessary." *National Exchange Bank and Trust v. Petro-Chemical Systems, Inc.,* 11-C-134, *1 (E.D. Wis. 2013).

## III.    LEGAL STANDARD FOR COPYRIGHT INFRINGEMENT

To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Incredible Techs., Inc. v. Virtual Techs, Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005).

### A.    Ownership Of A Valid Copyright

#### 1.    Production Of A Certificate Of Registration

A certificate of registration issued from the U.S. Register of Copyrights under the seal of the Copyright Office constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C. § 410(a), (c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir. 1994); *JWC Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914-15 (7th Cir. 2007). "Under the Copyright Act, if the plaintiff has registered her copyright and can produce a certificate of that registration, then she has made a prima facie case of a valid copyright. The burden is then shifted to the defendant to prove that the plaintiff's copyright is in some way invalid." *J.R. Lazaro Builders, Inc. v. R.E. Ripberger Builders, Inc.,* 883 F.Supp. 336, 339 (S.D. Ind. 1995) (internal and external citations omitted).

#### 2.    Works Made For Hire

"Generally, ownership of a copyright vests initially with the author of the work." *J.R. Lazaro Builders,* 883 F.Supp. at 340; 17 U.S.C. § 201(a).  "[T]he author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid,* 490 U.S. 730, 737 (1989).  It is possible for a work to be created by more than one author in which case the

-12-

joint work is co-owned. *J.R. Lazaro,* 883 F.Supp. at 342; 17 U.S.C. § 101 (defining "joint work").

"A work is created when it is fixed in a copy[.]" 17 U.S.C. § 101.  "A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, or by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." 17 U.S.C. § 101. *See Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 909 (7th Cir. 2005).

"The Act carves out an important exception, however, for 'works made for hire.'" *CCNV,* 490 U.S. at 737. Section 101 of the Copyright Act defines a "work made for hire" as:

> (1) a work prepared by an employee within the scope of his or her employment; or (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. 17 U.S.C. § 101.

Thus, "[t]he creator of the property is the owner, unless he is an employee creating the property within the scope of his employment or the parties have agreed in a writing signed by both that the person who commissioned the creation of the property is the owner." *Schiller & Schiller, Inc. v. Nordisco Corp.,* 969 F.2d 410, 413 (7th Cir. 1992). ." *CCNV,* 490 U.S. at 737; 17 U.S.C. § 201(b). "For an item to be a commissioned work… the parties must agree in advance that that is what it will be." *Billy-Bob Teeth v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003) (citing *Schiller & Schmidt, Inc. v. Nordisco Corp.,* 969 F.2d 410 (7th Cir. 1992)).  "The writing must precede the creation of the property in order to serve its purpose of identifying the (noncreator) owner unequivocally." *Schiller & Schmidt,* 969 F.3d at 413.

In *Billy-Bob Teeth v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003), the Court ruled that Billy-Bob, Inc. could not "claim that the teeth are works made for hire. First of all, the

corporation did not exist when the teeth were authored … White authored the teeth in 1995. Billy-Bob was incorporated in May 1996." *Id.,* 329 F.3d at 591.  There could not have been an agreement made in advance between White, the author, and Billy-Bob, the non-existent corporation, that the teeth would be commissioned works.  *Id.*

"To determine whether a work is for hire under the Act, a court first should ascertain, using principles of general common law of agency, whether the work was prepared by an employee or an independent contractor." *CCNV,* 490 U.S. at 750-51. Factors relevant to this inquiry are:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party. *Id.* at 751-752 (citing Restatement § 220(2)).

No single factor is determinative. *Id.* at 752 (citations omitted).

## B.  Copying Of The Constituent Elements That Are Original

"To establish infringement, a plaintiff must show 'copying' of the copyrighted work by the defendant." *J.R. Lazaro,* 883 F.Supp. at 342; *JWC Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007).  "Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (event to the point of identity), if the defendant did not copy the accused work, there is no infringement." *Selle v. Gibbs,* 741 F.2d 896, 901 (7th Cir. 1984) (citing *Arnstein v. Edward B. Marks Music Corp.,* 82 F.2d 275 (2nd Cir. 1936)).

Direct evidence proves the essential element of copying. *Selle v. Gibbs,* 741 F.2d 896, 901 (7th Cir. 1984).  "The plaintiff may be able to introduce direct evidence of access when, for

example, the work was sent directly to the defendant (whether a musician or a publishing company) or a close associate of the defendant." *Id.*; *Peters v. West,* 692 F.3d 629, 633 (7th Cir. 2012) (identifying a defendant's "admission of copying" as direct evidence of copying). The cases note with regularity that direct evidence of copying is "often hard to come by." *JCW,* 482 F.3d at 915; *Selle,* 741 F.2d at 901 ("direct evidence of copying is rarely available"); *Peters v. West,* 692 F.3d at 633 (it "is typically the case" that "direct evidence … is not available"); *Atari, Inc. v. North Am. Philips Cons. Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir. 1982) ("direct evidence of copying often is unavailable").

Where direct evidence of copying is not available, copying may be proved by circumstantial evidence. *Selle,* 741 F.2d at 901; *Peters v. West,* 692 F.3d 629, 633 (7th Cir. 2012). "[T]he most important component of this sort of circumstantial evidence is proof of access." *Id.* Copying may be inferred circumstantially "by showing that the defendant had the opportunity to copy the original (often call 'access') and that the two works are 'substantially similar[.]'" *Peters,* 692 F.3d at 633. "We permit copying to be proven by evidence of access, actual copying, and improper appropriation." *Selle,* 741 F.2d at 901; *Incredible Techs., Inc. v. Virtual Techs, Inc.,* 400 F.3d 1007, 1011 (7th Cir. 2005)); *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries,* 272 F.3d 441, 450 (7th Cir. 2001); *Atari Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir. 1982); *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1169-70 (7th Cir. 1997).

### (i.)   Opportunity / Access

"Access is defined as the opportunity to copy." *J.R. Lazaro,* 338 F.Supp. at 342 (citing *Nimmer on Copyright* § 13.02[A], at 13-17 (1994). "[A] plaintiff must show that the defendant had an opportunity to copy her original work. This issue is independent of the question whether

an alleged infringer breached his duty not copy another's work." *Peters,* 692 F.3d at 635 (citing *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir. 19997)). Without direct evidence of access, "an inference of access may still be established by proof of similarity which is so striking that the possibilities of independent creation, coincidence, and prior common source are… precluded. *Selle,* at 901.

    **(ii.)  Substantial Similarity**

   "Once a plaintiff establishes that a defendant could have copied her work, she must separately prove – regardless of how good or restricted the opportunity was – that the allegedly infringing work is indeed a copy of her original." *Peters,* 692 F.3d at 635. "The test for substantial similarity may itself be expressed in two parts: whether the defendant copied from the plaintiff's work and whether the 'copying, if proven, went so far as to constitute an improper appropriation.'" *Incredible Techs,* 400 F.3d at 1011 (quoting *Atari, Inc. v. North American Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir.1982)).

   To determine whether copying, if proven, rose to the level of a legal infringement, courts apply the "ordinary observer" test. *Incredible Techs,* 400 F.3d at 1011. The ordinary observer test asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Id.* at 1011; *Atari,* 672 F.2d at 614.

   "To prove that certain similarities are 'striking,' plaintiff must show that they are the sort of similarities that cannot be accounted for by a theory of coincidence, independent creation, prior common source, or any theory other than that of copying." *Selle,* at 904. "Strinking similarity is an extremely technical issue—one with which, understandably, experts are best

equipped to deal." *Id.* "[S]triking similarity is just one piece of circumstantial evidence tending to show access and must not be considered in isolation; it must be considered together with other types of circumstantial evidence relating to access." *Selle,* at 901. The burden of proving striking similarity is on the plaintiff. *Selle,* at 905.

### (iii.)   Relationship Between Proof of Access and Evidence of Similarity

There are differences among the circuit courts about the relationship between proof of access and evidence of similarity. *Peters,* 692 F.3d at 633. "Some circuits follow an 'inverse ratio' rule, under which the strength of proof of similarity varies inversely with proof of access ( *i.e.*, strong proof of access allows for only weak proof of similarity and vice versa)." *Id.* (citing cases from the circuits following this rule). The Seventh Circuit has "occasionally endorsed something comes close to this inverse approach," though "it has not been so explicit." *Id.* (proceeding to discuss *Selle,* 741 F.2d at 903 n.4 and *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1170 (7th Cir. 1997) (noting in both cases that "evidence that two works are very similar can suggest that the alleged infringer had access to the original.")). The Seventh Circuit has "never endorsed the other side of the inverse relation: the idea that a 'high degree of access' justifies a 'lower standard of proof' for similarity." 692 F.3d at 635.

To summarize, it is clear in this Circuit that when direct evidence of copying is not available: (1) "[t]he plaintiff must always present sufficient evidence to support a reasonable possibility of access because the jury cannot draw an inference of access based upon speculation and conjecture alone[;]" and, (2) even if sufficient circumstantial evidence of access exists, the plaintiff must separately prove, with equally sufficient evidence, that the original and the copied work are so similar as to rise to the level of an improper appropriation, *i.e.*, to support an

inference of copying. *Selle,* at 741 F.2d at 901*Incredible Techs,* 400 F.3d at 1101; *JWC,* 482 F.3d at 916.

C.  **Copyright Protection**

Copyright protection "begins at the moment of creation of 'original works of authorship fixed in any tangible medium of expression' including 'motion pictures and other audiovisual works.'" 17 U.S.C. 102(a)(6); *JWC Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007.

"[C]opyright holders have five exclusive and fundamental rights: reproduction, adaptation, publication, performance, and display." 17 U.S.C. § 106; *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 909 (7th Cir. 2005).  "A copyright is violated or infringed when, without, permission, someone other than the copyright holder exercises one of these fundamental rights." *Toney v. L'Oreal USA, Inc.,* 400 F.3d 905, 909-10 (7th Cir. 2005).

 "[T]hat a work is copyrighted says very little about the scope of its protection." *Atari,* 672 F.2d at 616-17. Copyright law does not protect ideas or facts; it protects the original expression of an idea.  *Feist,* 499 U.S. at 348-49; *JWC,* 482 F.3d at 917 ("It is not the idea of a farting, crude man that is protected, but this particular embodiment of that concept."); *J.R. Lazaro,* 883 F.Supp. 343 ("[I]n order for there to be infringement, the substantial similarity must be of the protectable expression and not the idea itself.").

IV.  **ARGUMENT**

A.  **Plaintiff Has Not Made A Prima Facie Case Of Valid Copyrights For The Six Movies At Issue And Defendant Has Shown Issues Of Fact As To Whether Plaintiff Owns Valid Copyrights For The Six Movies At Issue.**

Defendant attacks the validity of Plaintiff's copyrights for the six movies at issue. ECF 172 at 7, ¶ 45. Plaintiff alleges that it registered its copyrights for the six movies. ECF 165 at 7, ¶

-18-

45.  However, Plaintiff has not produced certificates of registration for the six movies. *Supra,* ¶ 1. Plaintiff has only produced computer printouts from the U.S. Copyright Office's (the "Office") public website search engine. *Supra,* ¶ 2; *See* http://cocatalog.loc.gov.  Plaintiff's computer printouts from the Office's Public Catalog are not issued under the seal of the Copyright Office by the Register of Copyrights and do not satisfy the requirements of the Copyright Act.[1] 17 U.S.C. § 410.

The Southern District of Indiana (and the Copyright Act) expressly requires *production* of the registration certificate to make a prima facie case of validity. *J.R. Lazaro,* 883 F.Supp. at 339.  If a plaintiff *cannot* produce a certificate of registration, then the burden does not shift "to the defendant to prove that the plaintiff's copyright is in some way invalid." *Id.* (citations omitted).  Plaintiff has failed to make a prima facie case of valid copyrights for the six movies at issue, and Defendant does not have a burden to prove that Plaintiff's copyrights are in some way invalid. 17 U.S.C. § 410(a), (c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.,* 18 F.3d 502, 507 (7th Cir. 1994); *JWC Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914-15 (7th Cir. 2007); *J.R. Lazaro,* 883 F.Supp. at 339.

Plaintiff's Motion for Summary Judgment states, "It is undisputed that Malibu Media is the registered owner of the copyrights set forth on Exhibit B to the Fourth Amended Complain

---

[1] The Office's Public Catalog does not provide all of the information contained in a certificate of registration. *See* Sample Certificate of Copyright Registration (available at http://www.copyright.gov/docs/certificate_sample-1-21-05.pdf).  Information contained in a certificate of registration, but not in the Public Catalog includes copyright transfers for the work; preexisting material and material added to the work; previous registrations and years of previous registrations; the name of the authorized agent for the claimant certifying the truthfulness of the facts and information contained in the application; the name of the author or authors certifying the application's truthfulness; other copyright claimants to the work; the owner of the exclusive rights to enforce the copyright; the certification date; the date the Office received the application; the date the Office received the deposit; the name of the examiner of the application; and whether there was any correspondence regarding the facts and information in the application. *Id.*

[CM/ECF 165-2]. Plaintiff thus meets the first prong to establish liability for copyright infringement." Citation. Plaintiff has failed to support the factual assertion that it owns valid copyrights for the six movies by citing to certificates of registration in the record. Further, Colette Field's affidavit stating that "Malibu Media produces all of its own high-quality content" is insufficient to show there is no genuine dispute as to Plaintiff's ownership of valid copyrights in the six movies at issue.

Even if Plaintiff can produce certificates of registration, Defendant's "Statement of Material Facts in Dispute," *supra,* ¶¶ 1-18 create genuine issues of material fact regarding the validity of Plaintiff's copyrights.

First, Plaintiff's *LA Love* copyright is not valid because Malibu Media did not even exist when the work was authored. Because Malibu Media did not exist in 2010 when *LA Love* was created and published, Malibu Media cannot own the work as an employer for hire, and there could not have been an agreement made in advance involving a non-existent company. *See Billy-Bob Teeth,* 329 F.3d at 591. Plaintiff's *Veronica Wet Orgasm* may be invalid as well depending on the date it was "created" in 2011.

The *LA Love* copyright may be based on a false claim of copyright ownership. A plaintiff cannot "[dupe] the Copyright Office into issuing a certificate of registration based on a false claim of copyright ownership. To prevent plaintiffs from abusing the registration process in this way, the Copyright Act allows for the invalidation of registrations obtained by knowing misrepresentations of material facts." *DeliverMed Holdings, LLC v. Schaltenbrand,* 734 F.3d 616, 622 (7th Cir. 2013) (citing 17 U.S.C. § 411(b)(1)(A)-(B)).  "As stated in the statute, a registration will not support the pursuit of an infringement action if (1) the registrant included 'inaccurate information on the application for copyright registration with knowledge that it was

inaccurate;' and (2) 'the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.'" *Id.*; (citing also *Therasense, Inc. v Becton, Dickinson & Co.,* 649 F.3d 1276, 1295 (Fed.Cir.2011)).

Second, Defendant has established that genuine issues of material fact exist as to whether the copyrights are valid as "works for hire." Defendant's citations to Malibu Media's deposition and financial records suffice to show that there is a genuine issue of material fact as to whether the six movies were created by employees of Plaintiff within the scope of their employment or by independent contractors accompanied by an express written agreement that movie is a work for hire. The identity of the persons who created the movies, and the nature and extent of their involvement is completely unclear.  Nevertheless, the burden of proving this has not shifted to Defendant.

**B.**  **Defendant Has Shown Issues Of Fact As To Whether Defendant Copied The Six Movies At Issue Using The BitTorrent Protocol.**

Defendant's "Statement of Material Facts in Dispute," *supra,* ¶¶ 19-63, establish issues of fact as to whether Defendant had an opportunity to access Plaintiff's six movies, and whether any copying occurred rose to the level of an improper appropriation.

No evidence from Comcast connects Defendant to the hit dates listed on Exhibit A of the operative complaint. *Supra,* ¶¶ 55-56.  The Bosaws, Defendant's expert witnesses, are the only experts in this case who analyzed IPP's evidence. *See supra*, ¶ 24-33, 49.  Plaintiff never rebutted the Bosaw's expert witness report which concludes that there is no evidence contained in the PCAPs or SQL files that supports Plaintiff's copyright infringement claims. *See supra*, ¶ 24-33.  Patrick Paige did not examine IPP's evidence in this case and Paige has not submitted a written report containing any opinions on IPP's evidence in this case. *See supra*, ¶ 49. Paige testified that he has no evidence that Malibu Media content could have been on any of

Defendant's computers. *See supra*, ¶ 52. Plaintiff never disclosed an expert rebuttal witness or served an expert rebuttal report rebutting the Bosaws' opinions on the subject matter of IPP's evidence.

Instead, Plaintiff filed Tobais Fieser's ("Fieser") declaration with its Motion for Summary Judgment to support the fact that Defendant copied Plaintiff's six movies at issue. *See* ECF 276-3. Defendant objects to the Fieser declaration because it cannot be presented in a form that would be admissible evidence. Fed. R. Civ. P. 56(c)(2); S.D. Ind. L.R. 56-1(f)(1)(B).

### 1.   Defendant's Objections To The Fieser Declaration

Fieser's declaration testimony is based on scientific, technical, or other specialized knowledge within the scope of Rule 702 of the Federal Rules of Evidence. Fed.R.Evid. 702(c); *See* ECF 27-3. Plaintiff's own expert, who has extensive training and experience in the field of computer forensic examination, demonstrated through his deposition and evidentiary hearing testimony that the field of BitTorrent and Packet Capture Analysis is a highly specialized and complex field. *Supra,* ¶¶ 34-45. Plaintiff successfully excluded the expert testimony of Delvan Neville on the basis that Neville's testimony regarding the BitTorrent protocol and his own BitTorrent monitoring suite was expert testimony warranting a Rule 26(a)(2)(B) written report. CM/ECF 286. There is no doubt that Fieser's declaration testimony is inadmissible lay witness testimony. Fed.R.Evid. 702.

Fieser's declaration includes express testimony about the BitTorrent protocol; implementing and programming BitTorrent network monitoring software and BitTorrent traffic packet capture software; conclusions, characterizations, and determinations that a legal infringement took place and that data is "infringement data;" BitTorrent data analysis and packet analysis, etc. ECF 276-3, ¶¶ 8-23.

Plaintiff did not disclose Fieser as an expert witness under Fed. R. Civ. P. 26(a)(2) and Fieser did not submit a written expert report required by Fed. R. Civ. P. 26(a)(2)(B). Fieser's declaration cannot be presented in a form that would be admissible evidence because it violates Fed.R.Evid. 702 and Fed. R. Civ. P. 26(a)(2), (a)(2)(B), and requires automatic exclusion under Rule 37(c)(1) of the Federal Rules of Civil Procedure.

## 2.    Defendant's Objections To The "Full Hit Information"

The full hit information cannot be presented in a form that would be admissible evidence because its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury; and, it is prohibited character trait evidence under Fed.R.Evid. 404; *See* CM/ECF 276-8.  Furthermore, Plaintiff has not pointed to any evidence in the record showing that the third party works are owned by clients of IPP.  If they are not clients of IPP, then IPP is illegaly infringing the copyrights in the third party works.

## V.    CONCLUSION

The material facts at issue in cases involving copyright infringement are whether the plaintiff has proven ownership of a valid copyright, and copying of the constituent elements of the work that are original.

Plaintiff's Motion for Summary Judgment must be denied because disputed issues of material fact exist which preclude an award of summary judgment, and Plaintiff is not entitled to judgment in its favor as a matter of law.  In viewing the evidence most strongly in favor of Defendant, reasonable minds cannot come to but one conclusion being in favor of Plaintiff. Furthermore, Plaintiff has failed to meet its initial burden for summary judgment in that the evidence in fact shows that Plaintiff's allegations against Defendant are based solely upon surmise, conjecture, and conclusions from unsupported facts. Plaintiff has failed to go beyond its pleadings.

The evidence properly before this Court demonstrates that a reasonable jury could come to different conclusions as to whether Plaintiff owns valid copyrights for the six movies at issue, and whether Defendant did in fact copy the six movies. Plaintiff has failed to produce any evidence in support of its Motion to demonstrate that it owns valid copyrights for the six movies, that Defendant in fact had an opportunity to access the six movies, and that any upload that occurred rose to the level of an improper appropriation sufficient to constitute legal copyright infringement. Therefore, this Court should deny Plaintiff's Motion for Summary Judgment in favor of Defendant.

**WHEREFORE**, Defendant Michael Harrison respectfully requests that this Court enter an order denying Plaintiff's Motion for Summary Judgment, and for all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)
*Attorney for Defendant*
*Michael Harrison*

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2014, a copy of the foregoing document was served electronically on the persons and at the addresses listed below. I hereby certify that on December 28, 2014, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Paul Nicoletti, pauljnicoletti@gmail.com
Jason Cooper, JCooper@lebfirm.com
Keith Lipscomb, KLipscomb@lebfirm.com

*/s/ Gabriel J. Quearry*
Attorney for Defendant