IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **MALIBU MEDIA, LLC** : | Case No.: 1:12-cv-01117-WTL-MJD |
| Plaintiff, : | |
| v. : | |
| **MICHAEL HARRISON,** : | |
| Defendant. : | |

**DEFENDANT'S SURREPLY TO PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [CM/ECF 304]**

Pursuant to Rule 56 the Federal Rules of Civil Procedure and Local Rule 56-1(d) of the Southern District of Indiana, Michael Harrison ("Defendant"), by counsel, hereby submits his surreply brief to Malibu Media, LLC's ("Plaintiff") Reply in Further Support of Its Motion for Summary Judgment ("Reply") [CM/ECF 303]. This Court should deny Plaintiff's Motion for Summary Judgment for the additional reasons explained below.

### I.  SURREPLY LEGAL STANDARD

"A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response." S.D. Ind. L.R. 56-1(d). "The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections." Id.

Plaintiff's reply cites the following new materials: (a) Lipscomb, Eisenberg & Baker, P.L.'s June 6, 2012 Technical Report, [CM/ECF 304-1]; (b) blog article from Federal Evidence Review, [CM/ECF 304-2]; (c) page 8 from a hearing transcript in the case of *Malibu Media, LLC v. John Doe,* Nos. MJG-14-223, RWT-13-512, RWT-14-257, PWG-14-263 (N.D. MD July 30,

2014), [CM/ECF 304-3]; (d) emails between Defense counsel and Plaintiff's counsel, [CM/ECF 304-4]; (e) Michael Patzer's trial testimony from the case of *Malibu Media, LLC v. John Does 1, 13, and Brian White,* No. 1:12-cv-02078, Trial Tr. 53:1-85:25 (E.D. PA June 10, 2013), [CM/ECF 304-5]; (f) Deposition of Jason Bosaw, [CM/ECF 304-6]; (g) Declaration of Emilie Kennedy, [CM/ECF 304-7]; (h) Work Made For Hire Agreement, [CM/ECF 304-8].

I.     ARGUMENT

    A.     **Lipscomb, Eisenberg & Baker, P.L.'s June 6, 2012 Technical Report**

Plaintiff cites to Lipscomb, Eisenberg & Baker, P.L.'s June 6, 2012 Technical Report for the movie *Romantic Memories* ("LEB technical report") to counter Defendant's assertions that: (1) Plaintiff's electronic evidence fails to show that Defendant copied any of the movies at issue; and (2) Plaintiff's electronic evidence is not what Plaintiff purports it to be. ECF 304 at 2-4; *See* Bosaw & Associates, LLC Expert Report, ECF 296-7, ¶¶ 25-37.

Plaintiff has not submitted, by way of supporting exhibit on motion or as evidence at hearing, a single PCAP computer file purportedly showing Defendant's BitTorrent transactions with IPP.  CM/ECF 1 – CM/ECF 307.  The record in this case is completely devoid of the PCAP computer files that Plaintiff claims "anyone can read," and "100% conclusively establish" and "prov[e] that the infringement occurred[.]" ECF 303 at 1, 3-4.  The record is equally devoid of any expert (or lay) witness testimony on Plaintiff's behalf stating an opinion about what the PCAPs specific to this case actually show. *See* Declaration of Tobais Feiser, ECF 276-3, ¶¶ 1-28; *See* Declaration of Michael Patzer, ECF 276-14, ¶¶ 1-19; *Cf.* ECF 296-7, ¶¶ 25-37.

Tobais Feiser ("Feiser") never says that he, or any other employee of IPP, analyzed or reviewed the PCAP files for this case. ECF 276-3, ¶¶ 1-28.  Feiser never explains or describes the contents of the PCAPs for this case. *Id.*  Feiser does not mention PCAP files at all. *Id.*  Feiser

never says that he, or any other employee of IPP, created the LEB technical reports or that the technical reports are an accurate reflection of what is contained in the PCAPs. *Id.* Feiser never identifies the recipient IP address contained in the PCAPs, SQL file, or technical reports for this case. *Id.* Feiser never identifies the recipient IP address as an IP address used by or belonging to IPP or Excipio. *Id.* Feiser does not mention Excipio at all. *Id.* Feiser never defines his use of the term "piece" in connection with the BitTorrent protocol. *Id.*, ¶¶ 15, 17. Feiser never states the exact number of pieces of each movie file IPP received from the IP address that was assigned to Defendant on July 30, 2012. *Id.*, ¶¶ 15, 17. Feiser never states that IPP received a complete and usable file from the IP address that was assigned to Defendant on July 30, 2012. *Id.*, ¶¶ 17-18.

Michael Patzer ("Patzer") never says that he analyzed or reviewed the PCAP files for this case. ECF 276-14, ¶¶ 1-19. Patzer never explains or describes the contents of the PCAP files for this case. *Id.* Patzer never says that he created the LEB technical reports or that the technical reports are an accurate reflection of what is contained in the PCAPs. *Id.* Patzer does not mention technical reports at all. *Id.* Patzer never identifies the recipient IP address contained in the PCAPs, SQL file, or technical reports for this case. *Id.* Patzer never identifies the recipient IP address as an IP address used by or belonging to IPP or Excipio. *Id.*

Plaintiff has never asserted the fact that the LEB technical reports "accurately describe the contents of the PCAPs," and Plaintiff's reply brief expressly acknowledges that the technical reports do not accurately describe the contents of the PCAPs. ECF 304 at 2 ("The technical report merely expresses part of the PCAP computer file in document form."). Plaintiff's statement that "Defendant has not challenged the fact that [the technical reports] accurately describe the contents of the PCAPs" is incorrect.

Defendant's expert notes that the SQL file produced by Plaintiff only shows computer instructions for a table layout and 246 data records to populate the table. ECF 296-7, ¶¶ 36-37; *See* ECF 304 at 2 (where Plaintiff claims there are 247 transactions). "The Technical Reports are merely the data table that results when commanded from the electronic file that Plaintiff produced labeled as IPP's SQL log files." Def. Surreply Exhibit A, ¶ 14(b), Dec. Jason Bosaw, Jan. 26, 2015. To be clear:

> The Technical Reports are not representative of what is contained in the PCAPs and the technical reports do NOT accurately describe the contents of the PCAPs — i.e., the statements to this effect in Plaintiff's Reply Brief are incorrect — because the six PCAPs only show a small number of various protocol transfers that occurred for brief periods on June 6, 2012 and June 7, 2012. It should be clear that the only dates that are contained in the PCAPs are June 6 and June 7, 2012 and no other dates appear in the PCAPs that Plaintiff produced in this case. The Technical Report submitted with Plaintiff's Reply Brief reports dates and transfers that are found nowhere in the PCAPs, and, thus, Plaintiff has provided no PCAPs corresponding to those transfers. Ex. A, ¶ 14(c)-(d).

Patzer states that Excipio's data collection system has a component containing "a proprietary program for checking the MySQL log files against the contents of the PCAPs." ECF 276-14, ¶ 5. Patzer does not verify that the SQL file "checks against" the PCAPs in this case, and Patzer's declaration does not state that he extracted the PCAPs or the SQL file. *Id.*; *See* ECF 304 at 4, 4 at n. 4; *See* ECF 276-3, ¶ 12 (where Feiser states that *he* personally extracted the resulting data emanating from the investigation). Further, Patzer never states that PCAP files cannot be altered; he says that information *on a WORM drive* cannot be edited. 276-14, ¶ 11.

Plaintiff asserts that it "has a PCAP… for each of the 247 infringing transactions committed by Defendant's IP address in this case." ECF 304 at 2 (citing Dec. Michael Patzer, ECF 276-14, ¶ 11, where Patzer states, "There is no possibility that the information on the WORM drives can be edited."). However, Plaintiff has only produced six PCAP files containing only transfers that occurred on June 6, 2012 and June 7, 2012, and there is no PCAP evidence for

any other date at any other time. *See supra*, at 4; Ex. A, ¶ 14(c)-(d). Plaintiff's LEB technical report actually confirms this: page 7 of the technical report purports to show a BitTorrent handshake, which does not involve a transfer of any pieces, on June 6, 2012, and the pages 3 and 4 of the technical report contain a data table showing nine (9) dates additional to June 6, 2012. ECF 304-1 at 3-4, 7; *See* ECF 296-11 at 4-5 (explaining a BitTorrent handshake).

The LEB technical report does not mention Plaintiff's expert witness, Patrick Paige ("Paige"), and no affiant has attested that Paige ever had custody of any of IPP's electronic information or LEB's technical reports. *See* ECF 304 at 4. Patzer never states that he sent data to Paige. *See Id.* Paige has never stated that he received any data from Patzer related to this case. *See Id.* Paige testified that he has never reviewed or analyze the SQL file, PCAPs, or technical reports for this case. ECF 276-10, 61:15-62:7. Moreover, Paige's Rule 26(a)(2)(B) written report contains no statements or opinions about what is contained in the SQL file PCAPs, SQL table instructions, or technical reports for this case. *See* CM/ECF 213-3 – CM/ECF 213-8.

No affiant has attested to the genuineness of the LEB technical report and Defendant has shown that the technical report fails to satisfy "Rule 901's threshold requirement for admissibility." *See Lorraine v. Markel Ins. Co.,* 241 F.R.D. 534, 553 (D. Md. 2007).

  **B.**  **The Federal Evidence Review Blog Article**

Plaintiff's Exhibit B is a blog article titled "Hash Value Tool (Or 'Digital Fingerprint') Increasingly Noted in Cases Involving Electronic" from the Federal Evidence Review journal's website. CM/ECF 304-2. The blog article is irrelevant and is inadmissible hearsay.

The blog article discusses the role hash values have had in state and federal court cases and does not provide evidentiary support to Plaintiff's assertion that "each PCAP clearly shows what was transmitted[.]" ECF 304 at 3. The content of the blog article does not make it more

probable than not that the PCAPs show a packet of data being transferred by the IP address assigned to Defendant on July 30, 2012. *Id.*; *See* Fed. R. Evid. 401.

The blog article is inadmissible hearsay because it is a statement made by a declarant not testifying at the current trial or hearing. *See* Fed. R. Evid. 801(c). While the author of the blog article is not identified in the exhibit, there is no indication that Plaintiff has identified this person as a witness who will testify at trial. *See* Plaintiff's Final Witness and Exhibit List, CM/ECF 198. Plaintiff offers the article to prove the truth of the matter asserted; i.e., that hash values are "accepted by Courts and computer professionals and more reliable than DNA fingerprint evidence." Fed. R. Evid. 801(c); ECF 304 at 3, n. 2.

### C. The Maryland Hearing Transcript

Plaintiff's Exhibit C is excerpted hearing materials from an oral argument that took place in a Malibu Media case in the Northern District of Maryland. *Malibu Media, LLC v. John Doe,* Nos. MJG-14-223, RWT-13-512, RWT-14-257, PWG-14-263 (N.D. MD July 30, 2014), CM/ECF 304-3. The excerpt from the hearing transcript is irrelevant, prejudicial, hearsay, and cannot be presented in any form that would be admissible evidence at trial.

The hearing transcript excerpt consists of statements made by M. Keith Lipscomb, an attorney appearing for Plaintiff in this case, and United States District Judges Marvin J. Garbis and Roger W. Titus. To state the obvious, the Honorable District Judges will not be testifying at trial in this matter and their statements are being offered to prove it is true that IPP's technology is the same as the FBI's technology used in child pornography cases, and that IPP's technology is, therefore, beyond reproach. ECF 304 at 6; Fed. R. Evid. 801(c). Mr. Lipscomb's statements are also hearsay as he is not a witness who will testify at trial in this matter.

The Maryland hearing transcript is unfairly prejudicial to Defendant and does not accurately reflect the evidence in this case; namely, that IPP's technology fails to establish the crucial element that Plaintiff must show to prove copyright infringement: copying. *See Selle v. Gibbs,* 741 F.2d 896, 901 (7th Cir. 1984) ([I]f the defendant did not copy the accused work, there is no infringement."). It is certain that the hearing transcript would mislead the jury on the crucial element of copying. *See* Fed. R. Evid. 403.

### D.     Emails Exchanged Between Defense Counsel and Plaintiff's Counsel

Plaintiff argues that Defendant's cancellation of Patzer and Feiser's depositions scheduled for December 12, 2014 shows "Defendant's exceedingly bad faith." ECF 304 at 19. In response, Defendant directs the Court to page 5 of Plaintiff's Reply Exhibit D. ECF 304-4 at 5. Defense counsel's December 8, 2014 email to Plaintiff's counsel clearly shows that Plaintiff continually refused to provide a valid phone number for IPP International U.G., and refused to provide personal contact information for Patzer and Feiser; that IPP International U.G. would not respond to Defense counsel's numerous emails attempting to reach Feiser; that Excipio's CEO, Norbert Tuderbch, refused to provide a personal telephone number or email address for Michael Patzer; and, that Plaintiff refused to provide Defendant with any written confirmation that Patzer and Feiser agreed to allow Plaintiff's counsel to accept service or had consented to the depositions. *Id.* Plaintiff's representations that it "made every reasonable effort to accommodate Defendant and facilitate conducting the depositions are untrue. *See* ECF 304 at 19. Plaintiff, IPP, and Excipio shielded Patzer and Feiser from being contacted by Defendant.

Defendant also decided to cancel the depositions out of concerns that the depositions as scheduled would have violated the Hague Convention.

### E.     Michael Patzer's Testimony at Bench Trial in the Case of *Malibu Media, LLC v. John Does 1, 13, and Brian White.*

Plaintiff's Exhibit E is an excerpt consisting of Michael Patzer's trial testimony in the case of *Malibu Media, LLC v. John Does 1, 13, and Brian White,* No. 1:12-cv-02078, Trial Tr. 53:1-85:25 (E.D. PA June 10, 2013), CM/ECF 304-5.  Patzer's testimony in that case is wholly irrelevant to this case.  The specific movies, defendants, defendants' BitTorrent activities, and proceedings in that case have nothing to do with this case.  Thus, Patzer's trial testimony in that case reveals nothing about what his testimony will be in this case.

Patzer's declaration does not state the exact number of pieces of each movie that IPP received, or whether IPP received complete and fully usable copies of each movie at issue.  *See* CM/ECF 276-14.  In fact, Patzer's declaration reveals nothing about his expected testimony about the PCAPs, SQL file, or technical reports for this case.  *Id.*

  F. **Jason Bosaw's Deposition Testimony**

Plaintiff's Exhibit F, Jason Bosaw's deposition testimony, fails to address Bosaw's challenges to the genuineness and authenticity of the "IPP evidence." *See* ECF 304-6.  As a matter of fact, Plaintiff's failure to provide attesting affidavits regarding the authenticity of the evidence and citation to Bosaw's deposition testimony further solidifies Defendant's argument in this regard.  *See* ECF 296-7, ¶ 28 ("Our review of the .tar files and their contents suggests that the files may originate from a company named Guardelay.").

  G. **The Declaration of Emilie Kennedy**

Plaintiff's Exhibit G, the Declaration Emilie Kennedy, states:

> I often use a template to register Malibu Media's copyrights.  This template contains information from a prior registration.  This template is saved in my law firm's Electronic Copyright Office registry. When registering the movie entitled LA Love, I erroneously failed to remove the date of publication and creation from the previously imputed work and submitted the application with the incorrect information. ECF 304-7, ¶¶ 7-8.

According to Kennedy's declaration, then, two Malibu Media applications for registration should exist containing the exact same date of publication and year of creation. A search of the United States Copyright Office's public catalog reveals that there is no other Malibu Media movie with a "2010-03-22" publication date and 2010 year of creation date. The Kennedy declaration has no support in the Copyright Office's public catalog and is highly suspicious.

### H.     The Work Made For Hire Agreement

Plaintiff's Exhibit H, Work Made For Hire Agreements between Malibu Media, LLC and Brigham Field and Malibu Media, LLC and Colette Pelissier Field, do not contain dates for the agreements.

In order for a work to be considered a "commissioned" work made for hire under Section 101(b) of the Copyright Act, the parties must expressly agree in a written instrument *in advance* that that is what the work will be. *See Billy Bob Teeth v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir. 2003). Without dates of execution, the two work for hire agreements do not establish that Plaintiff has satisfied the requirements of the Section 101(b) of the Copyright Act in order for the movies at issue to qualify as works made for hire. Genuine issues of fact exist regarding Plaintiff's ownership of valid copyrights.

### III.    CONCLUSION

For all of the foregoing reasons, this Court should deny Plaintiff's Motion for Summary Judgment because reasonable jurors could find that Plaintiff does not own valid copyrights in the six movies at issue, and that Defendant did not copy Plaintiff's movies.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC

        386 Meridian Parke Lane, Suite A
        Greenwood, Indiana 46142
        (317) 285-9896 (telephone)
        (317) 534-3069 (facsimile)
        *Attorney for Defendant*
        *Michael Harrison*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on January 26, 2015, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        */s/ Gabriel J. Quearry*
        Gabriel J. Quearry