## ON-LINE COPYRIGHT INFRINGEMENT LOGGING SERVICES AGREEMENT

This On-Line Copyright Infringement Logging Services Agreement (the "Agreement") is by and between IPP International UG, a legal entity organized and existing under the laws of Germany, ("IPP") and Malibu Media, LLC, a limited liability company organized and existing under the laws of California ("Malibu").

### RECITALS

A. Malibu is in the business of authoring and producing movies (collectively, "the Works").

B. Malibu registers the copyright for each of its Works with the United States Copyright Office.

C. Malibu's business depends upon its ability commercialize the value of the Works by selling them to subscribers of its website.

D. Without Malibu's permission free copies of its Works are widely distributed and downloaded over the internet by people using the BitTorrent Protocol.

E. The access to free copies of the Works is the most significant competitive threat to Malibu's business.

F. IPP is in the business of tracking and recording infringing computer transactions that occur via the BitTorrent protocol for copyright owners.

G. Malibu desires to retain IPP's services pursuant to the terms of this Agreement and IPP desires to provide its services to Malibu pursuant to the terms of this Agreement.

NOW THEREFORE, for good and valuable consideration, the adequacy of which is hereby acknowledged, the parties enter into the following Agreement.

### AGREEMENT

**1. OBLIGATIONS OF IPP**

1.1  IPP shall use its reasonable efforts to identify those computer files being distributed via the BitTorrent protocol that contain a copy of one or more of Malibu's Works.

1.2  Obtain pieces of the computer files being transmitted via BitTorrent that likely contain copies of Malibu's Works.

1.3  Use a BitTorrent Client to reassemble the collected pieces into a viewable movie file.

1.4  Visually compare the movie files which are suspected copies of the Works obtained from the internet via the BitTorrent Protocol to the original Works as authored by Malibu. Designate as "Verified Files" those movie files that are copies of original Works.

1

Confidential - Attorneys Eyes Only MM - Michael Harrison   - 000039

1.5 Allow infringers to establish a direct TCP/IP connections and BitTorrent connections with computer server and permit the infringer to send the computer server a piece or pieces of Verified Files.

1.6 Create a computer log file the infringing transactions.

1.7 Use a forensically sound Packet Analyser to record as PCAP files the computer transaction between the infringer and its servers.

1.8 Save each PCAP file and log file evidencing an infringing transaction onto a WORM ("Write Once Read Many") tape drive to ensure that the computer data cannot be subsequently edited or modified.

1.9 Cause each WORM tape drive to be time-stamped with an official German government issued time stamp no less than once every twenty-four hours.

1.10 Store the tape drives in a secure computer storage locker.

1.11 Report to Malibu the quantum of infringement and the IP Addresses of the infringers of Verified Files.

## 2. MALIBU'S OBLIGATIONS

2.1 Malibu shall provide IPP with a password to its website for purposes of obtaining original versions of the Works.

## 3. REMUNERATION FOR SERVICES

3.1 Co-operate with IPP in all matters relating to the services and appoint a relationship manager who shall have the authority to contractually bind Malibu on matters relating to the services;

3.2 Provide, in a timely manner, such in-put material and other information as IPP may reasonably require, and ensure that it is accurate in all material respects;

3.3 Obtain and maintain all necessary licences and consents and comply with all relevant legislation in relation to the services.

3.4 If IPP's performance of its obligations under this agreement is prevented or delayed by any act or omission of Malibu, its agents, subcontractors, consultants or employees, IPP shall not be liable for any costs, charges or losses sustained or incurred by Malibu that arise directly or indirectly from such prevention or delay.

3.5 Malibu shall be liability to pay to IPP, on demand, all reasonable costs, charges or losses sustained or incurred by IPP (including any direct, indirect or consequential losses, loss of profit and loss of reputation, loss or damage to property and those arising from injury to or death of any person and loss of opportunity to deploy resources elsewhere) that arise directly or indirectly from Malibu's fraud, negligence, failure to perform or delay in the performance of any of its obligations under this agreement, subject to IPP confirming such costs, charges and losses to Malibu in writing.

Confidential - Attorneys Eyes Only MM - Michael Harrison    - 000040

3.6    Malibu shall pay IPP ▒▒▒▒ per month for its services. Malibu agrees that IPP may review and increase its monthly retainer, provided that such charges cannot be increased more than once in any 3 month period. IPP shall give Malibu written notice of any such increase 14 days before the proposed date of that increase. If such increase is not acceptable to Malibu, it may, within 7 days of such notice being received or deemed to have been received, terminate the agreement by giving 2 months written notice to IPP.

3.7    Malibu shall pay each invoice submitted by IPP, in full and in cleared funds, within 14 days of receipt to a bank account nominated by the IPP.

3.8    Without prejudice to any other right or remedy that it may have, if Malibu fails to pay IPP on the due date:

3.8.1    Malibu shall pay interest on the overdue amount at the rate of 10% per annum above the Bank of England base rate from time to time. Such interest shall accrue on a daily basis from the due date until actual payment of the overdue amount, whether before or after judgment. Malibu shall pay interest together with the overdue amount.

3.8.2    IPP may suspend all services until payment has been made in full.

3.8.3    All amounts due under this agreement shall be paid in full without any set-off, counterclaim, deduction or withholding (other than any deduction or withholding of tax as required by law).

3.9    If any of IPP's employees are obligated to appear at a legal proceeding then Malibu shall reimburse IPP for any out-of-pocket travel costs.

3.10    In addition to Malibu's obligation to pay the monthly fee for its services, Malibu shall pay ▒▒▒▒ per hour for the time expended for extracting and copying PCAPs for use by Malibu in a legal proceeding.

## 4. CONFIDENTIALITY

4.1    Malibu undertakes that it shall not (at any time during the agreement, and for a period of five years after termination of this agreement) disclose to any person technical or commercial know-how, specifications, inventions, processes or initiatives which are of a confidential nature and have been disclosed to Malibu, its employees, agents, consultants or subcontractors (or of any member of the group of companies to which Malibu belongs) and any other confidential information concerning IPPs business or its products which Malibu may obtain.

4.2    Malibu may disclose IPPs confidential information:

4.2.1    To its employees, officers, representatives or advisers who need to know such information for the purposes of carrying out the party's obligation under this agreement. Each party shall ensure that its employees, offices, representatives or advisers to whom it discloses the other party's confidential information comply with these clauses; and

4.2.2    As may be required by law, a court of competent jurisdiction or any governmental or regulatory authority. Where possible such confidential information shall be filed under seal.

Confidential - Attorneys Eyes Only MM - Michael Harrison - 0▒0041

4.3     Malibu shall not use IPP's confidential information for any purpose other than agreed.

4.4     All materials, equipment and tools, drawings, specifications and data supplied by IPP to Malibu (including pre-existing materials) shall, at all times, be and remain (as between IPP and Malibu) the exclusive property of IPP, but shall be held by Malibu in safe custody at its own risk and maintained and kept appropriately by Malibu, and shall not be disposed of or used other than in accordance with IPP's authorization.

## 5. LIMITATION OF LIABILITY

5.1     Nothing in this agreement limits or excludes IPP's liability for:

   5.1.1   Death or personal injury caused by its negligence;

   5.1.2   fraud or fraudulent misrepresentation; or

   5.1.3   any other liability which cannot be limited or excluded by applicable law.

5.2     Subject to Clause 4.1, IPP shall not be liable to Malibu or its connected parties, whether in contract, tort (including negligence for breach of statutory duty, or otherwise arising under or in connection with this agreement for:

   5.2.1   Loss of profits;

   5.2.2   loss of revenue or business;

   5.2.3   loss of agreements or contracts;

   5.2.4   loss of anticipated savings;

   5.2.5   loss of or damage to goodwill;

   5.2.6   loss of use or corruption of software, data or information;

   5.2.7   any indirect or consequential loss.

5.3     Subject to the above clauses, IPP's total liability to Malibu and its connected companies, whether in contract, tort (including negligence, for breach of statutory duty, or otherwise, arising under or in connection with this agreement shall be limited to:

   5.3.1   $1,500 per claim; and

   5.3.2   in respect of all claims (connected or unconnected) in any consecutive 12 (twelve) month period, the equivalent of the total charges paid by Malibu in that period.

## 6. DURATION AND TERMINATION

6.1     Either party shall be entitled to terminate this Agreement without cause upon one month's written notice to the other.

6.2     On termination or expiry of this agreement, Malibu shall immediately pay to IPP all of Malibu's outstanding unpaid invoices and interest and, in respect of Services

4

Confidential - Attorneys Eyes Only MM - Michael Harrison   - 000042

supplied but for which no invoice has been submitted, IPP may submit an invoice, which shall be payable immediately on receipt.

## 7. MISCELLANEOUS

7.1 Each party acknowledges that the nature of their relationship is that of a vendor and vendee. Nothing in this Agreement shall make either party the partner or agent of the other party. Each party acknowledges that neither party has the right nor ability to supervise or control the other.

7.2 IPP does not make any representation or warranty about the outcome of any particular legal matter and it expresses no opinion as to whether any particular person is or is not an infringer. IPP is solely capable of identifying IP Addresses that are used during the commission of an infringing transaction.

7.3 This Agreement, together with the documents referred to in it, constitutes the entire agreement and understanding of the parties and supersedes any previous agreement between them relating to the subject matter of this Agreement.

7.4 Each party acknowledges that in entering into this Agreement it does not rely on any representation or warranty except as expressly set out in this Agreement, but nothing in this Agreement is intended to limit or exclude any liability for fraudulent misrepresentation.

7.5 No putative amendments to this Agreement shall be valid unless agreed to in a writing by both of the parties.

7.6 If any part of this Agreement is held illegal or unenforceable by a court of competent jurisdiction, that part shall be deemed not to form part of this Agreement and the enforceability of the remainder of this Agreement shall not be affected.

7.7 If a party fails to exercise, or delays in exercising, a right under this Agreement, it shall not be deemed to have waived that right unless said waiver is set forth in a writing signed by the waiving party.

7.8 Each party shall, both during and after the term of this Agreement, do everything reasonably necessary to give effect to the provisions of this Agreement.

7.9 California law shall govern this Agreement. Each party submits the jurisdiction of the Courts in Los Angeles, California for the sole purpose of adjudicating any dispute arises out of this Agreement. Each party waives the necessity of hand delivery of service of process, the protections afforded by all service of process laws, including the Hague Convention, and hereby agrees to accept service by regular mail so long as a copy of the pleadings are also emailed to the recipient.

7.10 This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which together shall constitute one and the same instrument. In the event that any signature is delivered by facsimile transmission or by e-mail delivery of a ".pdf" format data file, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) with the

Confidential - Attorneys Eyes Only MM - Michael Harrison - 000043

Confidential - Attorneys Eyes Only MM - Michael Harrison - 000044

same force and effect as if such facsimile or ".pdf" signature page were an original thereof. NOW THEREFORE, the parties set forth their hands below.

| MALIBU MEDIA, LLC | IPP INTERNATIONAL U.G. |
|---|---|
| By: _____ | By: 1/7/2014 _____ |

6