**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | : | Case No.: 1:12-cv-01117-WTL-MJD |
| Plaintiff, | : | |
| v. | : | |
| **MICHAEL HARRISON,** | : | |
| Defendant. | : | |

**DEFENDANT'S FIRST MOTION *IN LIMINE* TO EXCLUDE THE LEGAL OPINIONS AND LEGAL CONCLUSIONS OF PLAINTIFF'S WITNESSES AND EXHIBITS**

Pursuant to the Court's Case Management Order, [Dkt. 175 at 2-3, Part IV(A.), ¶ 6.], Michael Harrison ("Defendant"), by counsel, files herein his First Motion *In Limine* To Exclude The Legal Opinions And Legal Conclusions Of Plaintiff's Witnesses And Exhibits and respectfully moves this Court for the entry of an order prohibiting Plaintiff from using or introducing at trial:

(1) Testimony and exhibits referring to Defendant as "the infringer," to any computer device owned by Defendant or an unidentified person as the "infringer's computer device," and to any Internet Protocol address ("IP address") assigned to an Internet subscriber as the "infringing IP address;" and all other similar uses that would mislead the jury or unfairly prejudice Defendant;

(2) Testimony and exhibits that refer to any data record purporting to show communications or transfers between two or more computer devices or IP addresses as "recorded infringements," "infringing activities," and all other similar uses that would mislead the jury or unfairly prejudice Defendant; and,

(3) Testimony and exhibits that refer to the six pornographic movies at issue in this case individually or collectively as the "infringed work" or "infringed works," and all other similar uses that would mislead the jury or unfairly prejudice Defendant.

1

This Court should grant Defendant's First Motion *In Limine* and the relief requested herein for the reasons that follow.

## I.     FACTS

Throughout this litigation, Plaintiff has used a tactic that this Court must now put to an end. As the Court is well aware, in Plaintiff's motions, declarations, and other documents filed with the Court, Plaintiff has consistently referred to the Defendant as "the infringer," [*E.g.* Dkt. 304-1 at 3 ("The infringer used the BitTorrent technology… to copy and/or distribute the files(s) listed below."); *Id.* at 5 ("We've monitored the affected network connection from the infringer to us gapless") (emphasis added)], to Defendant's computer devices as "the infringing computers," [*E.g.* Dkt. 276 at 2 ¶ 3 ("IPP, International UG, Plaintiff's investigator, established a TCP/IP connection with a computer (the 'Infringer's Computer'))" (emphasis added)], and to an IP address that may have been assigned or leased to the Defendant as "the infringing IP address" [*E.g.* Comcast Corporation Dep. at 52:10-17, Nov. 5, 2014 ("Q. It has the infringer's IP address, and that's the same IP address we're talking about from Mr. Harrison. Correct?") (emphasis added)].

Plaintiff has also used declarations and exhibits calling the information and data records that Excipio GmbH and IPP International UG purportedly gathered from transactions with other IP addresses as "infringement records," [*See* Dkt. 303 at 16, Part C ("Excipio's infringement records") (emphasis mine)], "infringements," [*See* Dkt. 304-1 at 1 ("Technical Report: Analysis and facts about the infringement of 98.220.43.119 in June 6, 2012"); *Id.* at 6 ("But it comes down to an infringement when the sender is sending a piece to us") (emphasis added)], or "infringing transaction(s)," [*See* Dkt. 312-1 at 1 ¶ 9 ("Each PCAP clearly shows… the time of the infringing transaction.") (emphasis added)].

Likewise, Plaintiff has filed declarations and documents that identify the six pornographic movies at issue in this case with phrases such as the "infringed works," [*See* Dkt. 276 at 10 ¶ 65 ("Malibu Media did not deliver the <u>infringed works</u> to Defendant") (emphasis added)], the "movies infringed," [*See* Dkt. 312-1 at 1 ¶ 8 ("Although Excipio has all 246 PCAPs, only 1 PCAP per <u>movie infringed</u> was produced in this case, 6 total") (emphasis added)].

## II.   LEGAL STANDARDS

The Court "has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT&T Technologies, Inc.,* 831 F.Supp. 1398, 1400 (N.D. Ill. 1993) (citations omitted). "But there is also great value in resolving as many disputes in advance of trial as possible." *Pivot Point International, Inc. v. Charlene Products, Inc.,* 932 F.Supp. 220, 222 (N.D. Ill. 1996).

"Knowledge may enable the parties to avoid the costs of bringing witnesses to the courtroom and will enable them to concentrate their energies (and organizational skills) on the subjects that will actually be resolved at trial." *Id.*  "Knowledge of what lies in store also may promote settlement by closing the gap between the parties' estimates of the likely outcome." *Id.* "A district court should extend a hospitable reception to motions *in limine* and grant those that demonstrate that evidence ought not properly be used for the purpose its proponent advances to justify its introduction." *Id.*

"Under Rule 701 of the Federal Rules of Evidence a witness, not testifying as an expert, is limited in testimony in form of opinions and inferences to those opinions which are 'helpful to a clear understanding of his testimony or the determination of a fact in issue." *United States v. Baskes,* 649 F.2d 471, 478 (7th Cir. 1981); *See* Fed. R. Evid. 701(b).  Further, when asking a witness "whether the conduct in issue was 'unlawful' or 'willful' … terms that demand an

understanding of the nature and scope of the… law, the trial court may properly conclude that any response would not be helpful to the trier of fact." *Baskes,* 649 F.2d at 478. "The witness… may feel that the legal standard is either higher or lower than it really is." *Id.*

Inquiry concerning a witnesses' personal knowledge of factual matters is permitted, but questions of a witness about the legal implications of factual matters are not. *See Id.* Witnesses may express opinions where "words have well-establish lay meanings and do not demand a conclusion as to the legal implications of conduct." *Id.,* at 478 n. 5.

"Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal issues on which the judge will instruct the jury." *United States v. Sinclair,* 74 F.3d 753, 777 n. 1 (7th Cir. 1996) (citing *Bammerlin v. Navistar Int'l Transp. Co.,* 30 F.3d 898, 900 (7th Cir. 1994); *Harbor Ins. Co. v. Cont'l Bank Co.,* 922 F.2d 357, 366 (7th Cir. 1991); *See Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92, 99 (1st Cir. 1997) ("It is black-letter law that '[i]t is not for witnesses to instruct the jury as to applicable principles of law, but for the judge. At least seven circuit courts have held that the Federal Rules of Evidence prohibit such testimony") (citations omitted); *See Panter v. Marshall Field & Co.,* 646 F2d 271, 301 n. 6 (7th Cir. 1981). "[A]llowing a witness to testify as to a legal conclusion may cause the jury to accord too much weight to that testimony, and may infer that the jury should look to that witness for legal guidance." *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 610 (7th Cir. 2006) (citations omitted).

"As a general rule, accordingly, an expert may not offer legal opinions." *Jiminez v. City of Chicago,* 732 F.3d 710, 721 (7th Cir. 2013); *See* Fed. R. Evid. 702(a). "There are some exceptions to this general rule, including some issues of legal malpractice and patent law." *Jiminez,* 732 F.3d at 721 n. 7; *Cf. Allison v. Ticor Title Ins. Co.,* 979 F.2d 1187, 1196 (7th Cir.

1992) (finding no prejudicial error in admission of unitholder's bankruptcy counsel's opinion that "a unitholder would have to 'sign off' on the Purchase Agreement before the unitholder's interest could be transferred" because the "testimony was not necessarily a legal conclusion which should be excluded because the issue was a determination of what transpired during the course of the drafting of the Purchase Agreement").

"While an expert witness may not testify to a legal conclusion, he may testify to an ultimate issue of fact." *In re Conagra Foods, Inc.,* 302 F.R.D. 537, 557 (C.D. Cal. 2014). "An expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Mukhtar v. California State University,* 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). "'Courts have held that expert witnesses' use of judicially defined terms,' 'terms that derived their definitions from judicial interpretations,' and 'legally specialized terms' … constitutes an expression of opinion as to the ultimate legal conclusion." *In re Conagra Foods,* 302 F.R.D. at 558 (citations omitted).   In other words, Federal Rule of Evidence 704 is not an exception or means to evade the general rule, and "does not provide that witnesses' opinions as to the legal implications of conduct are admissible." *Baskes,* 649 F.2d at 479 (citing *United States v. Scavo,* 593 F.2d 837, 844 (8th Cir. 1979)); *See* Fed. R. Evid. 704.

Courts permit experts to "offer an opinion relevant to applying a legal standard" in the limited context of "describing sound professional standards and identifying departures from them." *Id.* (citing *West v. Waymire,* 114 F.3d 646, 652 (7th Cir. 1997); *Abdullahi v. City of Madison,* 423 F.3d 763, 772 (7th Cir. 2005)); *Id.* at 721-22 (discussing the reasonable practices of police officers and the professional judgment of physicians when making treatment decisions); *Id.* at n. 7 (citing legal malpractice cases under Indiana and Illinois law where "expert testimony is normally required to show [the] standard of care," and patent cases where courts have

"discretion to adopt, take guidance from, ignore, or reject expert legal opinions regarding patent construction," or in cases where the expert's testimony concerns "a technical provision peculiar to industry").

"To establish copyright infringement, a plaintiff must prove two elements: '1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original.'" *Susan Wakeen Doll Co. v. Ashton-Drake Galleries,* 272 F.3d 441, 450 (7th Cir. 2001) (citing *Feist Publ'ns, Inc. v. Rural Rel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed. 2d 358 (1991). "Proof of copying is crucial to any claim of copyright infringement because no matter how similar the two works may be (even to the point of identity), if the defendant did not copy the accused work, there is no infringement." *Selle v. Gibbs,* 741 F.2d 896, 901 (7th Cir. 1984) (citing *Arnstein v. Edward B. Marks Music Corp.,* 82 f.2d 275 (2d Cir. 1936)).

### III.   APPLICATION

In copyright infringement cases, the word "infringement" is a judicially defined term having a specialized legal meaning. *See Feist Publ'ns, Inc.,* 499 U.S. 361. Copyright infringement must be *established*, and the judge must instruct the jury on the application of principles of copyright law to the facts introduced into evidence at trial. *See Id.*

"Copying" and its sub-elements of proof such as "access," "substantial similarity," and "improper appropriation" are judicially defined terms having specialized legal meanings, as well. *See Selle,* 741 F.2d at 901; *Susan Wakeen Doll Co. Inc.,* 272 F.3d at 450; *Peters v. West,* 692 F.3d 629, 633 (7th Cir. 2012); *Incredible Techs, Inc. v. Virtual Techs, Inc.,* 400 F.3d 1007, 450 (7th Cir. 2005); *Atari Inc. v. N. Am. Philips Consumer Elecs. Corp.,* 672 F.2d 607, 614 (7th Cir. 1982); *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1169-70 (7th Cir. 1997); *J.R. Lazaro*

*Builders, Inc. v. R.E. Ripberger Builders, Inc.,* 883 F.Supp. 336, 342 (S.D. Ind. 1995) ("Access is defined as the opportunity to copy.").

There are no professional standards, professional judgments, or reasonable practices at issue in this case, and testimony regarding departures from professional standards, judgments, and practices in this case would be wholly irrelevant. *See discussion infra* at p. 5-6; *See* Fed. R. Evid. 403. This is not a case of involving the limited contexts where an opinion relevant to applying a legal standard is applicable and no such expert or expert's written report has been disclosed. *See* Fed. R. Civ. P. 26(a)(2), (a)(2)(B)-(C). Nor is this a legal malpractice or patent case exception to the general rule that an expert may not offer legal opinions. *See Jiminez,* 732 F.3d at 721.

Any question posed by Plaintiff's attorneys using the various forms of the term "infringement" is a question that demands an answer based on the witnesses' understanding of the nature and scope of the law, and Plaintiff has not disclosed any witness *qualified* to give such an answer or a written report timely disclosing the opinions of a qualified witness in this regard. *Baskes,* 649 F.2d at 478. Thus, any answer by any witness, or any question, making foul use of the term "infringement," "would not be helpful to the trier of fact." *Id.*

The word "infringement" has no lay meanings, much less established lay meanings or "well-established lay meanings." *See Id.* at 478 n. 5. To reiterate, its meaning in the context of copyright (and trademark and patent) law is highly specialized and judicially defined. If Malibu Media continues suing Internet subscribers at its current rate, the word "infringement" may some day enter the parlance of layfolk and assume an established lay meaning. *Id.*

Plaintiff's varying uses of the judicially defined and specialized legal term "infringement," whether as verb, adjective, or noun, etc., via witness opinions and documentary

exhibits are, therefore, expressions of opinions as to an ultimate legal conclusion on which the judge will instruct the jury. The Court cannot allow Plaintiff to name the Defendant or describe his conduct according to a judicially defined term signifying the ultimately fatal legal outcome to Defendant. The Court cannot allow the jury to infer that it can look to Plaintiff's witnesses and exhibits for legal guidance. *Harbor Ins. Co.,* 922 F.2d at 366. Doing so would "impermissibly tilt the balance of power between the parties toward" the Plaintiff. The Court cannot allow Plaintiff to issue what would amount to a trial-long jury instruction, *as the trial progresses*, in the form of opinions and exhibits expressing an opinion on the ultimate issue of law. 302 F.R.D. at 448.

Allowing Plaintiff to heap legal opinions and ultimate conclusions of law on Defendant at trial as Plaintiff has throughout this litigation would be an unfair administration of the proceeding; render the trial procedures for determining truth ineffective; work a devolvement of the promotion of the development of evidence law; fail to aid in ascertaining the truth and securing a just determination; cause the jury to be extremely mislead and confused; and, would severely and unfairly prejudice Defendant. *See* Fed. R. Evid. 102, 403.

### IV. CONCLUSION

Defendant's name is Mr. Harrison; people own and use computer devices; IP addresses are assigned or leased to Internet subscribers; Excipio's and IPP's data records purporting to show communications or transactions between two or more computers or IP addresses are "Excipio's and IPP's data records for communications or transactions between two or more computers or IP addresses;" and, the validity and status of Plaintiff's ownership of copyrights for the six movies at issue are yet to be determined. Plaintiff's use of any other terms to signify

otherwise: namely, any form of the specialized and judicially defined term "infringement" "is clearly inadmissible on all potential grounds." *Hawthorne Partners.,* 831 F.Supp. at 1400.

**WHEREFORE**, Defendant, by counsel, respectfully moves this Court for the entry of an order prohibiting Plaintiff's use or introduction of the following at trial:

(1) Testimony and exhibits referring to Defendant as "the infringer," to any computer device owned by Defendant or an unidentified person as the "infringer's computer device," and to any IP address assigned to an Internet subscriber as the "infringing IP address;" and all other similar uses that would mislead the jury or unfairly prejudice Defendant;

(2) Testimony and exhibits that refer to any data record purporting to show communications or transfers between two or more computer devices or IP addresses as "recorded infringements," "infringing activities," and all other similar uses that would mislead the jury or unfairly prejudice Defendant;

(3) Testimony and exhibits that refer to the six pornographic movies at issue in this case individually or collectively as the "infringed work" or "infringed works," and all other similar uses that would mislead the jury or unfairly prejudice Defendant; and,

(4) For all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry, #30412-32
gq@quearrylaw.com
QUEARRY LAW, LLC
386 Meridian Parke Lane, Suite A
Greenwood, Indiana 46142
(317) 285-9896 (telephone)
(317) 534-3069 (facsimile)
*Attorney for Defendant*
*Michael Harrison*

### CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties by operation of the Court's electronic filing system.

*/s/ Gabriel J. Quearry*
Gabriel J. Quearry