UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MALIBU MEDIA, LLC,           ) | |
| ) | |
|     Plaintiff,           ) | |
| ) | |
|       vs.           ) | CAUSE NO.  1:12-cv-1117-WTL-MJD |
| ) | |
| MICHAEL HARRISON,           ) | |
| ) | |
|     Defendant.           ) | |

## ENTRY ON VARIOUS MOTIONS

Before the Court are several filings: the Plaintiff's Motion for Summary Judgment (Dkt. No. 276); the Plaintiff's Motion for Leave to File Surreply to the Defendant's Surreply (Dkt. No. 312); and the Plaintiff's Objection to Magistrate Judge Dinsmore's Report and Recommendation on the Plaintiff's Motion for Sanctions (Dkt. No. 303). The Court resolves them as set forth below.

## BACKGROUND

Plaintiff Malibu Media, LLC, is a California-based adult-film company. Malibu Media has copyrighted the content it sells on its subscription-based website, X-Art.com. It alleges in this suit that Defendant Michael Harrison infringed six of its copyrights using BitTorrent, "one of the most common peer-to-peer file sharing protocols[.]" Fourth Am. Compl. ¶ 13, Dkt. No. 165. BitTorrent is popular because "rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)." *Id*. ¶ 14. Malibu Media alleges that Harrison "installed a BitTorrent Client onto his computer" and then "went to a torrent site to upload and

download [Malibu Media's] copyrighted Work," specifically, six adult films (or portions thereof). *Id.* ¶¶ 15, 27.

After realizing that its copyrights were being infringed, Malibu Media contracted with IPP, International UG ("IPP"), a German company that provides forensic investigation services, to identify the IP addresses of those using BitTorrent to copy its movies. IPP "used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology[,] enabling the scanning of peer-to-peer networks for the presence of infringing transactions." *Id.* ¶ 36. It then "extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the hash values[.]" *Id.* ¶ 37. IPP's investigation revealed that six times the IP address 98.220.43.119 "transmit[ted] a full copy, or a portion thereof, of a digital media file" that was copyrighted. *Id.* ¶ 39. Comcast Cable Communications, LLP, later identified Harrison as the subscriber assigned to IP address 98.220.43.119.

After the lawsuit was filed, in January 2013, Harrison's hard drive on his custom-built gaming computer crashed. He took the hard drive to GGI Recycling, LLC, an electronics recycling company, to have it melted. He then replaced the gaming computer's hard drive with what has been called the "Sammy" hard drive. In addition to his gaming computer, at the time the alleged infringement occurred, Harrison also had an Acer laptop. During discovery, the Acer laptop and the Sammy hard drive were examined by forensic experts; however, experts were unable to examine the gaming computer's old hard drive because it was melted. The Acer laptop revealed extensive BitTorrent use; however, it did not contain any of Malibu Media's movies or files. The "Sammy" hard drive did not reveal any evidence of BitTorrent use.

Malibu Media's Fourth Amended Complaint (Dkt. No. 165) asserts one claim against Harrison for direct copyright infringement in violation of 17 U.S.C. § 106 and 501. It alleges that Harrison used the BitTorrent file sharing protocol to unlawfully download and distribute the six movies.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

Malibu Media moves for summary judgment on its claim for copyright infringement, arguing that "[t]his case is replete with evidence—all pointing to [Harrison]." Pl.'s Br. at 12, Dkt. No. 276. In order to prove copyright infringement, Malibu Media must submit evidence of: "'(1) ownership of a valid copyright[;] and (2) copying of constituent elements of the work that are original.'" *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir.

3

2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)). "An individual 'copies' another's work for purposes of copyright law if he plays it publicly or distributes copies without the copyright owner's authorization." *Janky*, 576 F.3d at 361 (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975)).

The Court finds that Malibu Media has produced enough evidence from which a reasonable jury could find in its favor. First, it has produced "printouts from the United States Copyright Office's online public catalog demonstrating that each of the works at issue has been registered and was assigned a registration number by the Copyright Office." Pl.'s Reply at 11, Dkt. No. 304; *see also* Dkt. No. 276-2 at 16-21. Moreover, Colette Pelissier Field, Co-Managing Member of Malibu Media, has submitted a declaration stating that "Veronica Wet Orgasm, Introducing Diana, Pretty Back Door Baby, LA Love, Romantic Memories, and Sneak N Peek" are all copyrighted and that "Malibu Media is the registered owner" of such copyrights. Dkt. No. 276-2 at 7. While Harrison correctly notes that Malibu Media "has not produced certificates of registration for the six movies," Def.'s Resp. at 19, Dkt. No. 296, the Court finds that from the evidence Malibu Media has presented, a reasonable jury could find that valid registrations exist for the six movies. *See, e.g.*, *Johnson v. Cypress Hill*, 619 F. Supp. 2d 537, 543 (N.D. Ill. 2008) ("By this submission [a summary of the registration obtained from the United States Copyright Office's website], coupled with [a plaintiff's] testimony regarding the 2003 registration, we find that [the plaintiffs] have presented enough evidence from which a reasonable jury could find that a valid registration exists.").[1]

---

[1] Malibu Media intends to order a copy of each certificate of registration from the United States Copyright Office to produce at trial. *See* Pl.'s Reply at 12, n. 11.

4

Malibu Media has also produced evidence from which a reasonable jury could conclude that Harrison copied the six movies at issue using BitTorrent. IPP identified IP address 98.220.43.119 as transmitting Malibu Media's copyrighted movies, and Comcast identified Harrison as the owner of that IP address. At the time the alleged infringement occurred, only Harrison and a friend—who did not have BitTorrent capabilities on his own computer—had access to his password-protected, encrypted internet, *see* Pl.'s Br. ¶¶ 10-14; moreover, Harrison has no evidence suggesting that his Internet was hacked by an outsider. *See id*. ¶ 15. And, finally, Harrison is an admitted "gratuitous" BitTorrent user, *see id*. ¶16-20. Indeed, multiple BitTorrent files were on Harrison's Acer laptop. *See id.* ¶¶ 21-22.[2]

While many of Harrison's arguments in opposition to Malibu Media's motion for summary judgment are wholly unconvincing and essentially based on pure speculation, he does create a genuine issue of material fact—that can only be resolved by a jury—as to whether he copied the six movies at issue using BitTorrent. Harrison explicitly *denies* that he copied the movies at issue using his IP address or his computers. *See* Def.'s Resp. at 9 ("Defendant did not use his IP address or computers to upload or download the six movies at issue on September 1, 2012, September 9, 2012, and September 30, 2012."). He asserts the following:

57. Defendant's ACER laptop computer hard drive did not contain any of Plaintiff's movies and was never used to download or upload Plaintiff's movies using the BitTorrent protocol.

58. Defendant's February 2013 gaming computer replacement hard drive [the "Sammy" hard drive] did not contain any of Plaintiff's movies and was never used to download or upload Plaintiff's movies using the BitTorrent protocol.

59. Defendant's 2011-2013 gaming computer hard drive did not contain any of Plaintiff's movies and was never used to download or upload Plaintiff's movies using the BitTorrent protocol.

---

[2] The Court agrees with Malibu Media that this "additional evidence" is admissible pursuant to Federal Rule of Evidence 404(b)(2).

Def.'s Resp. ¶¶ 57-59 (citations omitted).  The Court finds that a reasonable jury, if it believes Harrison's testimony, could conclude that he did not copy the six movies at issue in this case.  Of course, a jury could disbelieve Harrison; indeed, Malibu Media argues that "Defendant's denial is quite simply incredible and cannot possibly be believed." Pl.'s Reply at 11; *see also id.* at 10 (noting that Harrison "has a clear motive to lie").  But, this is not for the Court to decide.  As the Seventh Circuit has noted, the Court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).  A jury will have to decide if Harrison's denial is credible.  Accordingly, Malibu Media's motion for summary judgment (Dkt. No. 276) must be **DENIED**.[3]

**Due to a conflict with the Court's calendar, the June 22, 2015, final pretrial conference and July 20, 2015, trial dates are hereby VACATED and RESCHEDULED as follows.  The final pretrial conference will be held on Monday, August 3, 2015, at 12:00 p.m.  The trial will be held beginning Monday, August 31, 2015, at 8:00 a.m.  Both will be conducted in Room 202 of the Birch Bayh Federal Building and United States Courthouse, located at 46 East Ohio Street, Indianapolis, Indiana.**

---

[3] Because Malibu Media's motion for summary judgment was ultimately unsuccessful, the Court **GRANTS** its Motion for Leave to File a Surreply to Harrison's Surreply (Dkt. No. 312).  The Court denies the request by Harrison to file, as he terms it, a sur-sur-surreply. *See* Dkt. No. 314 at 1.  The Court has denied Malibu Media's motion for summary judgment and additional briefing from Harrison regarding the now-denied motion for summary judgment is unnecessary.

**PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE DINSMORE'S REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court designated United States Magistrate Judge Mark Dinsmore to issue a report and recommendation regarding the appropriate disposition of Malibu Media's Motion for Sanctions Against Defendant for the Intentional Destruction of Material Evidence (Dkt. No. 237). Magistrate Judge Dinsmore entered his Report and Recommendation on December 24, 2014, recommending that Malibu Media's motion be denied. *See* Dkt. No. 294. Now before the Court is Malibu Media's Objection to Magistrate Judge Dinsmore's Report and Recommendation filed pursuant to Federal Rule of Civil Procedure 72 (Dkt. No. 303). Having considered Malibu Media's objection and conducted the de novo review required by Rule 72(b)(3), the Court now rules as follows.

In addition to the background noted above, the Court adopts and incorporates the following background from Magistrate Judge Dinsmore's Report and Recommendation:

> Plaintiff's Interrogatory No. 4 asked Defendant to identify "each of the Computer Devices used in [Defendant's] home during the preceding two years." Defendant responded that he had two devices: an Acer 5730 laptop and a custom-built gaming computer.
>
> . . .
>
> At his deposition, Defendant testified about the letter [he received from Comcast]. He said that the document notified him that Plaintiff had issued a subpoena to Comcast in connection with a lawsuit. Based on the letter, he "knew the lawsuit was pending," but "didn't know it was a lawsuit directly against [him] at the time." He "thought it was just [Plaintiff] looking for information through Comcast."
>
> Plaintiff's Request for Production No. 1 asked for a "complete copy of the hard drive for each of the Computer Devices in [Defendant's] house, apartment or dwelling." Defendant responded that Plaintiff "was provided a complete copy of the hard drive for each of [his] computer devices on July 25, 2013." At his deposition, Defendant testified about the drive that he had provided from his gaming computer. He stated that the hard drives in his computers "get used pretty hard and die pretty quickly," such that he "replaced hard drives a lot in all of [his] computers." In January 2013, for instance, the hard drive in Defendant's gaming

7

> computer "had begun crashing," and "it needed to be replaced." Thus, Defendant replaced the drive shortly thereafter.
>
> A replacement hard drive for the "crashing" drive was shipped to Defendant in January 2013, but its purchase was billed to a different individual—John Harlan. Harrison stated that Harlan "owed [him] a little bit of money" and that purchasing the hard drive "seemed an easy way for him" to pay Harrison back. After receiving the new drive, Defendant said it "went into [his] gaming computer."
>
> Plaintiff asked what happened to the previous hard drive, and Defendant stated that he "got rid of it" by taking the drive to his former employer, GGI Recycling LLC. He said he "was taking some other electronic scrap" to GGI to be recycled, and "just tossed [the previous hard drive] in the piles [GGI] had." Defendant then explained that GGI "melt[s]" the electrical scrap it receives, and "sell[s] it to refineries and stuff like that." It was thus his belief that "GGI recycled the hard drive."
>
> After Defendant's deposition, Plaintiff filed its current Motion for Sanctions Against Defendant for the Intentional Destruction of Material Evidence. Plaintiff contends that Defendant received notice of this lawsuit in October 2012 through the letter from Comcast, and that the hard drive that Defendant replaced in early 2013 could have "contained evidence of Plaintiff's copyrighted works." Thus, Plaintiff argues that Defendant's recycling of the hard drive violated Plaintiff's duty to preserve evidence relevant to this litigation. Plaintiff also contends that Defendant tried to conceal his alleged wrongdoing: Plaintiff notes that its Requests for Production instructed Defendant to disclose the existence of and circumstances surrounding the destruction of any hard drives that Defendant had used but that Defendant no longer had in his possession. Defendant, however, allegedly did not reveal the existence of the hard drive he replaced in early 2013 until his August 2014 deposition, several months after he responded to Plaintiff's requests for production.
>
> Based on these allegations, Plaintiff asks the Court to enter default judgment against Defendant, or "at minimum," issue "an adverse inference instruction requiring the jury to infer that Plaintiff would have found its copyrighted movies on the destroyed drive."

Dkt. No. 294 at 2-4 (internal citations omitted). Magistrate Judge Dinsmore held an evidentiary hearing on December 18, 2014. After the hearing, he issued his Report and Recommendation. He concluded that "at the time of the destruction of the hard drive, [Harrison] was under a duty to preserve the hard drive[,]" but concluded that Harrison "did not destroy the hard drive in bad faith." Dkt. No. 294 at 8, 14. Alternatively, Magistrate Judge Dinsmore concluded that Harrison

8

did not act "with willfulness or fault." *Id*. at 16.  Accordingly, he recommended that the Malibu Media's motion for sanctions be denied. *Id*. at 19.

As Magistrate Judge Dinsmore noted, assessing whether spoliation occurred requires a two-part inquiry.  First, the Seventh Circuit has noted that "courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008).  Second, a showing of "bad faith" is "a prerequisite to imposing sanctions for the destruction of evidence." *Id*. at 681. "A party destroys a document in bad faith when it does so for the purpose of hiding adverse information." *Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013).  Malibu Media's objection to the R&R only implicates the second prong of the above analysis, whether Harrison acted in bad faith.

In finding that Harrison did not destroy his gaming computer's hard drive in bad faith, Magistrate Judge Dinsmore noted that he found Harrison's testimony to be credible.  Harrison testified that his gaming computer's hard drive crashed in early 2013, and he recycled it because it was no longer usable.  His friend, as repayment for a debt, purchased a replacement hard drive for Harrison's gaming computer.  Moreover, Harrison testified that once he purchased his Acer laptop, he never used BitTorrent on his gaming computer.  Magistrate Judge Dinsmore also found that the circumstances of the destruction did not lend any support to the inference that the gaming computer's hard drive was destroyed in bad faith.  For instance, he noted that Harrison received notice of the lawsuit in October 2012, but did not destroy the hard drive until February 2013; Magistrate Judge Dinsmore noted that "[h]ad [Harrison] truly wished to hid adverse information, the Court finds it unlikely that [Harrison] would have waited nearly five months to destroy such information." Dkt. No. 294 at 11.

9

Malibu Media objects to Magistrate Judge Dinsmore's conclusions, arguing that "bad faith should be inferred from the undisputed evidence." Dkt. No. 303 at 2. In this vein, it makes arguments very similar to that in its motion for summary judgment: the evidence shows Harrison's internet was used to infringe on Malibu Media's copyrights; Harrison was the only person with access to his internet; Harrison admits to being a "gratuitous" BitTorrent user; and Harrison's testimony is illogical and false.

The Court agrees with Magistrate Judge Dinsmore that default judgment was not warranted in this case. That said, Magistrate Judge Dinsmore found an adverse inference not to be warranted because he found Harrison's testimony to be credible. While the Court does not necessarily disagree with Magistrate Judge Dinsmore—in that it is certainly possible a jury would find Harrison's testimony to be credible—ultimately, the Court believes this is an issue best left for a *jury* to decide. Malibu Media has presented sufficient evidence to the contrary, and in light of the fact that Malibu Media's motion for summary judgment was denied on the same grounds, the Court believes leaving the issue of spoliation to the jury to be the best approach. Accordingly, at trial the Court will instruct the jury that if it finds that Harrison destroyed the gaming computer's hard drive in bad faith, it can assume that the evidence on the gaming computer's hard drive would have been unfavorable to Harrison. *See, e.g.*, Federal Civil Jury Instruction of the Seventh Circuit, No. 1.20 Spoliation/Destruction of Evidence.

Malibu Media also argues that Magistrate Judge Dinsmore erred in finding that bad faith was required to impose sanctions for spoliation of evidence. In support, it cites *Oleksy v. Gen. Elec. Co.*, No. 06 C 1245, 2011 WL 3471016 (N.D. Ill. Aug. 8, 2011), which noted that "[a]lthough bad faith is required for a harsh sanction such as dismissal or an adverse inference, courts in this District have not interpreted Seventh Circuit precedent as requiring a showing of

10

bad faith in all circumstances before imposing any form of discovery sanction." *Id*. at *3; *see also Northington v. H & M Int'l*, No. 08-CV-6297, 2011 WL 663055, at *13 (N.D. Ill. Jan. 12, 2011) ("Depending on the sanction imposed, 'fault'—as opposed to bad faith—may form a sufficient basis for sanctions. 'Fault' does not speak to the noncomplying party's disposition, but describes only the reasonableness of the conduct—or lack thereof—that eventually resulted in the violation. Fault may be evidenced by negligent actions or a flagrant disregard of the duty to preserve potentially relevant evidence.") (internal citations and quotation marks omitted). Based on this, Malibu Media now argues that "an order precluding [Harrison] from testifying at trial about the contents of the destroyed hard drive (especially with regard to whether or not Malibu's copyrighted movies were on that drive) would be an appropriate lesser sanction in light of the fact that [Harrison's] spoliation barred Plaintiff from determining that information for itself." Dkt. No. 303 at 14.

To begin, the Court notes that this was not an argument raised with Magistrate Judge Dinsmore. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("Our cases, however, indicate that arguments not made before a magistrate judge are normally waived [and] there are good reasons for the rule that district courts should not consider arguments not raised initially before the magistrate judge, even though their review in cases governed by 28 U.S.C. § 636(b)(1) is *de novo*.") (internal citations and quotation marks omitted). Malibu Media's motion for sanctions for spoliation requested that the Court "enter[] a default judgment finding [Harrison] liable for the infringement" or "issue an adverse inference instruction requiring the jury to infer that Plaintiff would have found its copyrighted movies on the destroyed hard drive." Dkt. No. 237 at 1-2. In light of this, Magistrate Judge Dinsmore did not err in finding that bad faith was required; either remedy requested by Malibu Media required a finding of bad faith, as

11

noted by the above cases. Nevertheless, the "lesser sanction" now requested by Malibu Media, in the Court's opinion, is essentially a request for an adverse inference. As the Court noted above, it will be for a jury to decide if this is appropriate.

Accordingly, Malibu Media's objection (Dkt. No. 303) is **SUSTAINED IN PART**. Magistrate Judge Dinsmore's Report and Recommendation (Dkt. No. 294) is **ADOPTED IN PART**. No default judgment will issue in favor of Malibu Media; however, at trial the Court will instruct the jury that if it finds that Harrison destroyed the gaming computer's hard drive in bad faith, it can assume that evidence on the gaming computer's hard drive would have been unfavorable to Harrison.

## CONCLUSION

For clarity's sake, the Court has resolved the pending motions as follows:

- Malibu Media's Motion for Summary Judgment (Dkt. No. 276) is **DENIED**.

- Malibu Media's Motion for Leave to File a Surreply to Harrison's Surreply (Dkt. No. 312) is **GRANTED**.

- Malibu Media's Objection (Dkt. No. 303) is **SUSTAINED IN PART**. Magistrate Judge Dinsmore's Report and Recommendation (Dkt. No. 294) is **ADOPTED IN PART**.

- **The final pretrial conference will be held on Monday, August 3, 2015, at 12:00 p.m. The trial will be held beginning Monday, August 31, 2015, at 8:00 a.m.**

SO ORDERED: 6/8/15

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification