**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT INDIANA**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. <u>1:12-cv-01117-WTL-MJD</u> |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL HARRISON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MOTION FOR SANCTIONS FOR**
**DEFENDANT'S PROVEN PERJURY**

Plaintiff, Malibu Media, LLC ("Plaintiff"), hereby moves for the entry of an order sanctioning Defendant, Michael Harrison ("Defendant"), for repeatedly perjuring himself throughout the course of this litigation and files this memorandum in support.

## I.   INTRODUCTION

As explained in the factual background section below, Plaintiff can prove with 100% certainty that Defendant committed material perjury by falsely testifying: (a) Defendant did not use BitTorrent on his self-described gaming computer; (b) Defendant produced all relevant hard drives; and (c) Defendant did not use BitTorrent to download and distribute adult content. As Defendant intended, this Court relied on his perjurious testimony in its orders denying Plaintiff's first Motion for Sanctions and Plaintiff's Motion for Summary Judgment. Defendant has, from the beginning of this case, been engaged in a scheme to defraud Plaintiff and the Court. It has cost Plaintiff and the American public an enormous amount of money, time, and energy to prove Defendant has been engaging in a fraud. Plaintiff has been substantially prejudiced by his actions. Defendant's conduct evinces the highest degree of immorality and disdain for the judicial system

1

and Plaintiff.   The facts proving his perjury and attempted fraud are beyond dispute and terminating sanctions should be entered.

## II.   FACTS:

### A.  Summary of Defendant's Fraudulent and Perjurious Testimony

Defendant proffered the material perjurious testimony set forth in this section in his paper discovery, deposition, and at the hearing on Plaintiff's prior motion for sanctions.   Defendant's perjurious testimony was relied on by this Court in denying Plaintiff's prior Motion for Sanctions and Plaintiff's Motion for Summary Judgment.   As explained after this section, the perjurious testimony summarized herein is with 100% certainty false.   Moreover, the falsity of this testimony can be independently verified by any computer forensics expert.   Indeed, the proof of its falsity comes directly from Defendant's own Acer laptop computer and is beyond dispute.

Plaintiff's first request for production of documents sought "[a] complete copy of the hard drive for each of the Computer Devices in your house, apartment or dwelling."   *See* Exhibit A, Plaintiff's First Set of Requests For Production ("RFP"), No. 1.   The instructions to Plaintiff's RFPs read:

> If you at any time had possession, custody or control of a document called for under this request and if such document has been lost, destroyed, purged or is not presently in your possession custody or control, you shall describe the document, the date of its loss, destruction, purge or separation from possession, custody, or control and the circumstances surrounding its loss, destruction, purge or separation from possession custody or control.

*Id.*  Defendant perjuriously responded: "Plaintiff was provided a complete copy of the hard drive for each of my computer devices on July 25, 2013."   *Id.*  Plaintiff's ninth request for production of documents sought "[a] complete copy of any external hard drives in [Defendant's] possession, custody or control."   *Id.* at No. 9.   Defendant perjuriously stated "no such external hard drives are in my possession, custody, or control."   *Id.*   At his deposition, Defendant testified that he had no

external hard drives or network attached storage devices ("NASDs").  *See* Exhibit B, Deposition of

Michael Harrison ("Harrison Depo."), at p. 52:8-15.  In open Court, during the evidentiary hearing,

Defendant perjuriously testified:

> Q:  Mr. Harrison, have you truthfully disclosed the existence of *every computer hard drive and electronic storage device owned by you to the plaintiff* relevant to this case?
>
> A:  Yes.
>
> Q:  Have you produced every computer hard drive and electronic storage device owned by you to the plaintiff relevant to this case?
>
> A:  Yes.
> ***
> Q:  And, Mr. Harrison, do you - - you do realize that you are under oath, correct?
>
> A:  Yes.

Evidentiary Hearing Transcript, CM/ECF 293, at pp. 61:13-20; 62:11-13.

The Honorable Judge Dinsmore also relied, as Defendant fraudulently intended, on

Defendant's perjurious testimony that Defendant "purposefully avoided doing anything on his

gaming computer other than playing games and engaging in 'light' Internet activity, such as

accessing Facebook."  CM/ECF 294, at p. 12.  Judge Dinsmore also relied on Defendants'

pejurious explanation that "doing 'anything else' on 'a computer tends to slow it down,' leading

him [Defendant] to avoid other activity—such as downloading movies—that would have impaired

the performance of the gaming computer."  *Id.*  Finally, "[h]is testimony indicates that he never

would have installed a BitTorrent client and never would have downloaded movies on the hard

drive he ultimately recycled.  The Court finds such testimony credible[.]"  *Id.* at p. 13.  This

perjurious testimony was dispositive.  "Because Defendant likely did not use the destroyed hard

drive for downloading movies, the Court finds it unlikely that Defendant recycled the hard drive

for the purpose of hiding adverse information.  After all, if Defendant did not use the hard drive to

download *any* movies, then the hard drive could not contain evidence of Plaintiff's *copyrighted* movies, and Defendant would not have destroyed the hard drive to hide such evidence." *Id.* (emphasis in original).  Successful in Defendant's fraud on the Court, Plaintiff's motion for sanctions based solely on spoliation was denied.

### B. With 100% Certitude, Defendant Committed Perjury About the Number of Drives He Owned and Withheld Evidence

In connection with Plaintiff's motion *in limine* to bar Defendant from testifying about the contents of his desktop computer pursuant to Fed. R. Evid. 1002 (the "Best Evidence Rule"), Patrick Paige further reviewed the hard drives Defendant produced.  The version of Internet Evidence Finder Mr. Paige used at the time of his original examination was unable to parse out certain data such as shellbags and "jump list dest. list entries".  Using an updated version of the software, Mr. Paige located six (6) network storage locations (a/k/a drives) that were not identified or produced.  *See* Exhibit C, Declaration of Patrick Paige ("Paige Decl."), at ¶ 3.  Neither Defendant's Acer laptop nor the putative replacement "gaming" computer Defendant produced contain these drives.  *Id.* at ¶ 4.  Defendant used his Acer laptop to access and retrieve BitTorrent files stored on these drives via a Local Area Network ("LAN").  *Id.* at ¶ 6.



ACER And Unidentified Drives Are Connected By A Local Area Network

BitTorrent Files Go From Unidentified Drives To ACER

| UNIDENTIFIED STORAGE DRIVES WITH BITTORRENT FILES | |
| --- | --- |
| **Name** | **Mapped Drive Letter** |
| SAMMY F:\ | F |
| \\ENTERTAINMENT\Tv D Drive | V |
| \\STORAGESERVER0\install | W |
| \\192.168.1.5\Drop Torrents Here | X |
| \\STORAGESERVER0\MassDrive1 | Y |
| \\STORAGESERVER0\MassDrive0 | Z |

The Court should not fail to appreciate that the names of the unidentified drives by themselves indicate the storage of massive amounts of information and BitTorrent use.  For example, "\\ENTERTAINMENT\Tv     D     Drive",     "\Drop     Torrents     Here,"     and "\\STORAGESERVER0\MassDrive1".

These concealed drives are either on:  (1) the hard drive to Defendant's desktop computer that Defendant *allegedly* destroyed; (2) one or more computers that were wrongly withheld; (3) one or more network attached storage devices ("NASD") that were wrongly withheld; or (4) some combination of these three.  *Id.* at ¶ 7.  Since these drives were not identified or produced, certainty regarding the foregoing is not possible.  *Id.* at ¶ 8.  Significantly, however, as demonstrated by the "Last Accessed" dates below, these drives were in Defendant's possession and being used to store BitTorrent files during the relevant time period and at least one drive was used *after* Defendant's *alleged* destruction of his desktop computer.  *Id.* at ¶ 9.  The after alleged destruction evidence proves suppression.

### C. Defendant Committed Perjury By Testifying He Did Not Use BitTorrent on His Desktop Computer (a/k/a "Gaming" Computer)

As explained in Plaintiff's summary judgment papers, Plaintiff's investigator recorded Defendant using BitTorrent to obtain 113 copies of *third party* works during the Period of Recorded Infringement.  However, Patrick Paige only found evidence of 19 of those file names on Defendant's devices.  *Id.* at ¶ 12.  Of relevance here, three matches to "Shameless.US.S02" were found     stored     on     an     "F:\"     drive     labeled     "Sammy":     (1)     "SAMMY F:\Shameless.US.S02.E04.HDTV.XviD-FQM.[VTV].A.Beautiful.Mess.avi";     (2)     "SAMMY F:\Shameless.US.S02.E10.HDTV.x264-ASAP.[VTV].A.Great.Cause.mp4";  and  (3)  "SAMMY F:\Shameless.US.S02.E11.HDTV.x264-SYS.[VTV].Just.Like.the.Pilgrims.Intended.mp4".  *Id.* at ¶ 20.  The above files have last access dates of 8/10/2012 and 8/16/2012.  *Id.* at ¶ 21.  Additionally,

Mr. Paige found "SAMMY F:\Sherlock Holmes A Game of Shadows (2011) DVDRip XviD-MAXSPEED www.torentz.3xforum.ro.avi". *Id.* at ¶ 22.  That file was last accessed on 06/19/2012 07:55:44 AM.  *Id.* at ¶ 23.  All of these files are torrent files.

"Sammy" is the name Defendant gave to his desktop "gaming" computer.  Harrison Depo. at p. 71:21-22.  Defendant claims to have destroyed the hard drive for his self-described gaming computer during this litigation; the current hard drive in his self-described gaming computer was not installed until January 2013.  Evidentiary Hearing Transcript, CM/ECF 293, at p. 19:12-16. Since the current hard drive was not installed until 2013, the above files *must* have been located on the previous Sammy hard drive of Defendant's "gaming" computer.  Defendant thus clearly used his "Sammy" gaming computer for BitTorrent.  As for being allegedly destroyed, Defendant's entire story is suspect.  Since Defendant *did* use BitTorrent on his gaming computer he may well be just suppressing the original hard drive.  His testimony that it crashed is uncorroborated and no one saw him destroy it.  CM/ECF 293, at p. 26:1-9.  Regardless, Defendant's testimony at the evidentiary hearing that he would not have downloaded movies on his desktop computer because it was used strictly for gaming is demonstrably perjurious.  Further, if some of the other drives V, W, X, Y, and Z were partitioned drives on the allegedly recycled Sammy hard drive, and not stand alone drives that were withheld and not disclosed, Defendant's testimony is further undermined by the contents of those drives.  As explained below, the destroyed or suppressed drives are *full* of content downloaded via BitTorrent.

### D.  Defendant Committed Perjury by Falsely Testifying He Never Used BitTorrent to Download Adult Movies

At his deposition, Defendant testified that he has never downloaded adult movies via BitTorrent because "[t]hat's about the best way to get a virus."  Harrison Depo., p. 46:17-20. Defendant's testimony is false.  Defendant's Acer laptop reached out across his LAN to access the

undisclosed "Y" drive to obtain "Y:\To Sort\Backroom.Casting.Couch.SITERIP"; and "Y:\To Sort\zhouwenjin97073@www.sexinsex.net@50 Guy Cream Pie 8". Paige Decl., at ¶ 24. Casting Couch was pulled on 04/04/2012 06:23:25 PM and 50 Guy Cream Pie 8 was pulled on 07/23/2012 07:13:44 AM. *Id.* at ¶ 25. Both are BitTorrent files containing adult content. *Id.* at ¶ 26. Significantly, 7/23/2012 is during the period of recorded infringement.

### E. Defendant Committed Perjury by Falsely Testifying He Never Used BitTorrent to Download the Movie "In Time"

At the evidentiary hearing, Defendant was asked by his counsel if he "ever downloaded the movie 'In Time.'" CM/ECF 293, at p. 69:16-17. Defendant answered "no". *Id.* "In Time" is the name of a movie owned by a third party. Excipio logged Defendant's IP address pirating this film. The exact file name that Excipio detected was "In Time (2011) DVDRip XviD-MAXSPEED". Paige Decl. at ¶ 27. Defendant was also sent not one, but two copyright infringement notices from his internet service provider, Comcast, for the movie "In Time" notifying him that the copyright holder of the subject work detected his IP address infringing the film. CM/ECF 276-5, at p. 4. Mr. Paige's search of the files accessed by Defendant's Acer laptop turned up fifty (50) results matching "In Time (2011) DVDRip XviD-MAXSPEED". Paige Decl., at ¶ 28. There is no question that Defendant downloaded the movie "In Time" and subsequently lied about it under oath before your Honor.

### F. Defendant's Undisclosed Drives Contain Numerous BitTorrent Files[1]

The unidentified and unproduced drives described above contain hundreds if not thousands of files downloaded via BitTorrent relating to movies, TV shows, music, adult content, and other things. *Id.* at ¶ 5. What follows is an extremely small sample of various movies, music, adult

---

[1] Each of these examples comes from the highlighted sections of Exhibit 4 to the Paige Decl. at pp. 3, 24, 32.

content, and television shows contained on the missing drives.  A complete list of all files and

folders accessed using Defendant's Acer is attached to the Paige Decl. as Exhibits 3-6.

| Name: | Last Accessed: | Time Significance: |
|---|---|---|
| \\ENTERTAINMENT\Entertainment PC Downloads\Louis.C.K.Hilarious.2010.HDTV.XviD-FQM [NO-RAR] - [ www.torrentday.com | 03/23/2013 05:28:46 PM | After Defendant allegedly recycled the drive |
| \\entertainment\Entertainment PC Downloads\Step.Brothers[2008][Unrated.Edition]DvDrip-ColinWithaT.avi | 01/06/2013 02:56:01 AM | Right when Defendant claims the drive was failing |
| \ENTERTAINMENT\Tv D Drive\Clerks [The First Cut].1994.BRRip.XviD.AC3[5.1]-VLiS.avi | 07/30/2012 09:29:27 AM | During period of record infringement |
| \\ENTERTAINMENT\Tv D Drive\Shameless.US.S01E02.Frank.the.Plank.HDTV.XviD.BoRiS.avi | 07/31/2012 08:33:05 AM | During period of recorded infringement |
| \\ENTERTAINMENT\Tv D Drive\Shameless.US.S01E03.Aunt.Ginger.HDTV.XviD.BoRiS.avi | 07/31/2012 11:05:01 AM | During period of recorded infringement |
| Y:\To Sort\Funny People (2009) DVDRip XviD-MAXSPEED\Funny People (2009) DVDRip XviD-MAXSPEED www.torentz.3xforum.ro.avi | 07/05/2012 02:20:39 PM | During period of recorded infringement |
| Z:\Futurama.S07E01.HDTV.x264-ASAP.mp4 | 07/01/2012 03:41:32 PM | During period of recorded infringement |
| Z:\Futurama.S07E02.HDTV.x264-ASAP.mp4 | 07/01/2012 07:07:14 AM | During period of recorded infringement |
| Z:\Movies\Apollo 13 (1995).avi | 07/07/2012 09:28:32 AM | During period of recorded infringement |

### G. The Dates and Times Prove That at Least One Device Was Suppressed or Defendant Lied About Destroying the Hard Drive for His Self-Described Gaming Computer

At least one drive or device was suppressed, as opposed to destroyed, by Defendant.

Indeed, the Acer laptop last accessed the file "Louis.C.K.Hilarious.2010.HDTV.XviD-FQM [NO-

RAR] - [ www.torrentday.com ]" (the "Louis C.K. File") on 03/23/2013 at 05:28:46 PM.  Paige

Decl.    at    ¶    29.    The    Louis    C.K.    File    was    located    in    the    network    location

"\\ENTERTAINMENT\Entertainment PC Downloads\".  *Id.* at ¶ 30.  Significantly, March 23, 2013 is *after* Defendant allegedly recycled the hard drive to his self-described "gaming" computer in early January, 2013.  *Id.* at ¶ 31.  Therefore, since "\\ENTERTAINMENT\Entertainment PC Downloads\" is not a location on either of the drives that were produced, and because it was last accessed after Defendant allegedly recycled the desktop computer's prior hard drive, there <u>must</u> be a separate device or drive containing that location and file or Defendant <u>must</u> have lied about recycling his desktop computer's hard drive.  *Id.* at ¶ 32.  Those are the only two logical possibilities, and Defendant committed perjury either way.

### H. Defendant's Theory Of The Case Must Now Necessarily be Based on a Logical Absurdity

During the "Period of Recorded Infringement" (from 6/3/12 to 9/30/12), Excipio recorded someone using IP Address 98.220.43.119 enter into 246 infringing transactions of Plaintiff's works.  *See* CM/ECF 276-1 at Ex. G.  During each infringing transaction, a person using Defendant's IP Address sent Excipio a piece of data that correlates to a copy of one of Plaintiff's six copyrighted works at issue here.  *See id.* at Ex. B, ¶ 15.

Comcast assigned IP Address 98.220.43.119 to Defendant ("Defendant's IP Address") during the Period of Recorded Infringement.  *See Id.* at Ex. D, Comcast Depo 26: 11-19 (Comcast is "certain" the IP Address was assigned to Defendant on 7/30/12); *see also* the four Copyright Infringement Alert Notices sent to Defendant by third parties.[2]  These notices establish Defendant was assigned the subject IP address on 5/29/12, 7/3/12, 7/20/12, and 8/3/12.

During the Period of Recorded Infringement, Defendant lived alone in an apartment; further, his internet service was password protected and encrypted.  *Id.* at Ex. F, Harrison Depo. at

---

[2] The copyright infringement notices are currently designated as confidential by Comcast.  If necessary, Plaintiff will seek leave of court to have them undesignated so that they can be introduced into evidence. Alternatively, should the Court request, Plaintiff will file them under seal.

29: 17-21; 27: 2-11; 30:15-18 and 37:18-20.  Over three months, the infringement of Plaintiff's works occurred on twenty-four (24) different days at *all* hours of the day and night.  *See id.* at Ex. G.  The BitTorrent distribution of third party works, discussed herein occurred even more frequently, virtually every day.  *See id.* at Ex. H.  Defendant testified only he and his friend, John Harlan, had access to Defendant's Internet.  *Id.* at Ex. F, p. 27:12; 28: 1-15.  When asked if Harlan ever used BitTorrent at Defendant's apartment, *Defendant* said "No.  He wouldn't have had a device that would have been capable of downloading torrents."  *Id.* at 28:7-8.  Harlan also testified he never used BitTorrent at Defendant's apartment.  *See* Deposition of John Harlan ("Harlan Depo."), Exhibit D, at p. 24:2-4. And, Harlan could not possibly be the infringer because he only visited Defendant "[o]n average, less than once a month."  *Id.* at p. 41:19-21.

Defendant perpetrated a fraud on the Court.  To explain, assuming: (1) the infringement occurred, and (2) by someone using Defendant's internet service (which are both undisputed facts), Defendant's previous denial of the infringement necessarily relied on the following syllogism.  *First* premise: Q. "[a]t the time of the alleged infringement in this case, you had only two computer devices that you used, is that correct?" A. "Yes."  CM/ECF 293, at p. 9: 11-13.  *Second* premise: Defendant only used his desktop computer for gaming purposes and never used it for BitTorrent.  *See* above at Facts Section "A".  *Third* premise: Malibu's works are not on Defendant's laptop.  Order Denying Motion for Sanctions, CM/ECF 294, at p. 18.  *Defendant's Implicit Conclusion*: The infringement must have been committed by a WiFi hacker.

Additional facts also supported the necessity of a WiFi hacker if Defendant's previous reconciliation of the evidence was to make sense.  Specifically, *all* BitTorrent activity associated with Defendant's IP Address, including the infringement of third party works, *was occurring on virtually a daily basis* and miraculously stopped on October 1, 2012 – the day Defendant received

notice of this suit from Comcast.[3]  Significantly, when asked "Q. Did you ever talk to any of your neighbors in the apartment about whether or not they had committed the copyright infringement, Defendant testified "No . . .".[4]  Harrison Depo., at p. 60:9-16; 21-23.  Defendant necessarily must explain the cessation of BitTorrent activity by saying he changed his password thereby implying there was a WiFi hacker.  And, indeed, as intended, the Honorable Judge Dinsmore relied on this testimony by stating Defendant said he "changed his password [for his router] in October 2012 when he received a letter from Comcast."  CM/ECF 294 at p. 2.

Regarding a WiFi hacker, when asked "Do you have any evidence beyond speculation that suggests your Internet was hacked, Defendant testified "[a]nything I would say would be speculation . . . ."  CM/ECF 267 at Ex. F at 77: 15-18.  Additionally, when asked "did anyone use your WiFi without your permission," Defendant answered "[i]f they did, I don't know about it." *Id*. at 77: 19-21.

## I. There Was No WiFi Hacker; Instead, Plaintiff's Works Were With the Destroyed or Suppressed Drives Which Were Used For BitTorrent

Patrick Paige only found 19 of the 113 third-party works that Excipio detected Defendant infringing.[5]  Paige Decl., at ¶ 12.  The discovery of 19 of the works evinces Excipio's detection method works; however, it begs the question: where are the other 94 works?  According to what *must* be Defendant's argument, the undiscovered third party works are on a neighbor WiFi hacker's computer along with Malibu's works.

---

[3] The caveat to this statement is that Excipio recorded Defendant illegally downloading Windows XP in February of 2013 and "Salad Fingers" in March 2013.  *See* CM/ECF 276-9.  The previous voluminous daily BitTorrent activity did however totally stop for the four months between October 1, 2012 and February 2013.  CM/ECF 276-9.
[4] Indeed, Defendant did nothing to investigate: Q. "Have you taken any other action whatsoever to determine who the infringer might have been?  A. "No."  *Id.*
[5] *See* Exhibit 5 to the Paige Decl. listing the works Plaintiff's expert found on Defendant's laptop computer.

Damningly for Defendant, his argument and testimony are provably false by comparing the 113 files Excipio recorded as being downloaded via BitTorrent with what was – and what was not found – via his Acer laptop computer.  To wit:

- "Futurama[6]" season 7 episodes 1, 2, 6, 7, 9-13 were pulled over a LAN via Defendant's Acer laptop from an undisclosed drive.  Excipio recorded Defendant using BitTorrent to obtain season 7, episodes 1-13.  Season 7 episodes 3, 4, 5, and 8 – unlike all the other episodes of season 7 – were *not* detected as having been pulled over Defendant's LAN to Defendant's Acer.  *Id.* at ¶ 15.

- "South Park" season 15 episodes 7 and 8 and season 16 episode 3 were pulled over a LAN via Defendant's Acer laptop from an undisclosed drive.  Excipio recorded Defendant using BitTorrent to obtain season 15 episodes 1-14 and season 16 episodes 1-7.  Season 15 episodes 1-6 and 9-14 and season 16 episodes 1-2 and 4-7 were *not* detected as having been pulled over Defendant's LAN to Defendant's Acer.  *Id.* at ¶ 16.

- "Adventure Time with Finn and Jake[7]" seasons 1, 2, and 3 were pulled over a LAN via Defendant's Acer laptop from an undisclosed drive.  Excipio recorded Defendant using BitTorrent to obtain Adventure Time Season 4.  However, season 4 was *not* detected as having been pulled over Defendant's LAN to Defendant's Acer.  *Id.* at ¶ 17.

- "Metalocalypse[8]" seasons 1 and 2 were pulled over a LAN via Defendant's Acer laptop from an undisclosed drive.  Excipio recorded Defendant using BitTorrent to obtain Metalocalypse Season 4, episode 6.  However, Season 4, episode 6 was *not* detected as having been pulled over Defendant's LAN to Defendant's Acer.  *Id.* at ¶ 18.

---

[6] Futurama is an animated television series about a cryogenically frozen boy who wakes up in the future.
[7] Adventure Time with Finn and Jake is an animated series about a boy and magical dog.
[8] Metalocalypse is an animated series about metal bands.

- "The Gamers," a movie, was pulled over a LAN via Defendant's Acer laptop from an undisclosed drive. Excipio recorded Defendant using BitTorrent to obtain its sequel "Gamers 2 Dorkness Rising." Gamers 2 Dorkness Rising was _not_ detected as having been pulled over Defendant's LAN to Defendant's Acer. *Id.* at ¶ 19.

Defendant's theory of the case must now necessarily be: (a) yes, I admit to *not* producing and identifying material hard drives and perjuring myself about it; (b) yes, I admit to perjuring myself about not using BitTorrent on the desktop computer I intentionally destroyed during the pendency of this litigation; (c) yes, I admit to perjuring myself about not using BitTorrent for adult content and the movie "In Time"; (d) yes, I admit to being a "gratuitous" (his word) BitTorrent user; (e) yes, I know Excipio recorded my IP Address distributing Plaintiff's copyrighted works; (f) yes, I know Excipio recorded my IP Address distributing third party works; (g) yes, I lived alone during the period of recorded infringement; (h) yes, I admit there is *no* one of whom I am aware who used my internet outside my house for BitTorrent or any other purpose; (i) yes, I admit that I am the *only* person of whom I am aware that used BitTorrent via my Internet; (j) yes, I admit there is *no* one who visited my home who *could* have committed the infringement; (k) yes, I admit my internet was password protected and encrypted; (l) yes, I admit Comcast sent me four Copyright Infringement Alert notices; (m) yes, I admit after learning of this dispute I did not ask my neighbors if they used my internet; (n) yes, I admit that I did nothing to investigate the infringement; but, Defendant would have to now perjuriously swear, I promise the infringement must have been committed by my BitTorrent loving, Wifi hacking, mental twin who not only must have downloaded Plaintiff's movies via BitTorrent but also the *exact* episodes and seasons of (1) Futurama, (2) South Park, (3) Adventure Time with Finn and Jake, (4) Metalocalypse and (5)

Gamers -- that I love because I promise, he must now claim, they were not on the drives I intentionally destroyed, suppressed, and lied under oath about.

This is absurd.  Enough is enough.  Defendant is a perjuror and fraudster.  As Friedrich Nietzsche said, "I'm not only upset that you lied to me, I'm upset that from now on I can't believe you."  And, that is what happens, when people lie, you cannot trust them.  "Fool me once, shame on you.  Fool me twice, shame on me."  At the first sanctions hearing, Defendant successfully committed a fraud on the Court.  This Court should be filled with righteous outrage.  The fraud and perjury is 100% provably and independently verifiably true.  Justice demands Defendant be—at the very least—defaulted.  Defendant's fraud has caused Plaintiff to spend hundreds of thousands of dollars.  He has cost this Court and United States tax payers scores or more thousands in professional salaries.  Defendant's perjury and fraud amount to grand larceny.

## III.  ARGUMENT

Throughout the three year pendency of this litigation, Defendant has obstructed justice by engaging in repeated conduct that "interfered with and obstructed the 'judicial process'—a process which '***clearly includes a party's right to full, complete and truthful discovery.***'"  *Dotson v. Bravo*, 202 F.R.D. 559, 573 (N.D. Ill. 2001) *aff'd*, 321 F.3d 663 (7th Cir. 2003) (bold and italics in original).  Plaintiff's failure to locate its movies on Defendant's computers and Plaintiff's delayed ability to reconcile its own evidence with Defendant's assertions are now explained by Defendant's ongoing perjury and his failure to disclose at least six (6) hard drives or network storage devices which contain extensive evidence of BitTorrent use and any one of which could contain Plaintiff's copyrighted works.

**A. Defendant Obstructed Justice By Engaging In Egregious Bad Faith Litigation Misconduct, Including Repeated Commissions Of Perjury As Well As The Withholding Of Material Evidence**

Defendant deliberately and repeatedly withheld evidence and committed perjury.  In the federal criminal context and when considering litigation sanctions in civil cases, perjury is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *27 (S.D. Ind. May 18, 2015) *report and recommendation adopted,* No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015) (citing *Montaño v. City of Chicago*, 535 F. 3d 558, 564 (7th Cir. 2008)).  To obtain its requested terminating sanction, Plaintiff bears the burden of proving by clear and convincing evidence Defendant's perjury, as defined by the above-described elements.  In other words, Plaintiff must show that Defendant intentionally provided materially false testimony regarding the existence and his use of his original desktop computer hard drive and the six undisclosed network storage drives.  However and significantly, in order for Defendant to ever be permitted to testify, directly or indirectly, about the contents of any of those drives, Defendant—not Plaintiff—bears the burden of proving by clear and convincing evidence that he did not destroy or intentionally suppress these drives in bad faith.  *See* Plaintiff's Motion *in Limine* based on the Best Evidence Rule and the decisional authority governing the proponent of secondary evidence's burden of proof when fraud is alleged.

The first element of perjury requires that a false statement be made "under oath or affirmation" and given "at trial [a hearing] or in an affidavit or deposition." *Tashiro*, 2015 WL 2371597, at *27 (citing *Zeigler Coal Co. v. Dir. Office of Workers' Comp. Programs*, 326 F.3d 894, 901 n.7 (7th Cir. 2003).  Intentionally providing false answers in paper discovery also

satisfies the "false testimony" element of perjury. *Id.*; *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 211 (N.D. Ill. 2010) (answers to interrogatories are "nothing short of testimony"); *Dotson*, 202 F.R.D. at 567 ("knowingly incomplete and misleading answers to written interrogatories constitutes perjury, as well as, fraud"). As set forth in the fact section above, Plaintiff has now established, with 100% independently verifiable certainty, that Defendant repeatedly offered material perjured testimony. In his discovery papers, in his deposition testimony, and in front of Judge Dinsmore at the previous sanctions hearing, Defendant falsely swore that he had produced and accounted for every single one of his drives and electronic storage devices, that he never used his self-described gaming computer to download movies off BitTorrent, and that he did not use BitTorrent to download adult movies.

Next, Defendant's repeated and ongoing perjury was, and continues to be, material. "A false statement is material if it has 'a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed. The statement need not actually affect the decision." *Alexander v. Caraustar Indus., Inc.*, 930 F. Supp.2d 947, 957 (N.D. Ill. 2013) (citing *U.S. v. Grigsby*, 692 F.3d 778, 785 (7th Cir. 2012)). Here, Defendant's false statements—regarding (1) the nature of his use of the desktop hard drive that he destroyed in the course of litigation and (2) the number of drives Defendant owned and used to engage in illegal downloading—obviously could have the natural tendency to influence a fact-finder's determinations. In fact, these false statements *did* influence the fact-finder's determinations. The Honorable Judge Dinsmore declined to issue sanctions in reliance on Defendant's false testimony, including Defendant's testimony that that drive was only used for "playing games" and was never used to download movies via BitTorrent. *See* CM/ECF 294 at p. 12–13.

Since Defendant's suppression and perjury regarding the number of drives in his possession and the nature of his BitTorrent use with respect to his allegedly destroyed hard drive were "false" and "material," the only remaining issue is whether Defendant's suppression and perjury was "intentional."  Since a perjurer's intent is typically difficult to document with direct evidence, intent is typically inferred from the circumstances based on logic.  *See Montaño*, 535 F. 3d at 564.  Here, it just cannot logically be disputed that Defendant's repeated material false testimony was offered with perjurious intent rather than as the result of confusion, mistake, or faulty memory.  It is laughable to even suggest that for the past three years Defendant simply forgot about the existence of six (6) other drives that he used for his illegal downloading, nor can it be credibly argued that Defendant would have forgotten that the desktop hard drive that he allegedly destroyed was used to download and store BitTorrent files.  Nor is it credible that Defendant would not remember he had a LAN and accessed files over it via his Acer laptop.  Plainly, the circumstances of this case and basic rationality compel the conclusion that Defendant intentionally perjured himself when he repeatedly told Plaintiff and this Court that the only drive he ever used to engage in BitTorrent activity was that belonging to his laptop computer and that the hard drive for his desktop computer—which he claims to have destroyed during this litigation—was only used to play games.

## B. A Terminating Sanction In The Form Of The Entry Of A Default Judgment Is Appropriate And, Indeed, Necessary

Defendant's perjury "strikes at the heart of the integrity of the judicial system, undermines the function and province of the law[,] threatens the integrity of judgments, [and it] poisons the life blood of the administration of justice."  *Alexander*, 930 F. Supp.2d at 958.  "Because of its serious and pernicious consequences," perjury often warrants "the drastic sanction of dismissal" in order to "remedy prejudice to the opposing party, reprimand the offender, and deter future parties from

trampling upon the integrity of the court." *Id.*; *Tashiro*, 2015 WL 2371597, at *35 (citing *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 797 (7th Cir. 2009)). In choosing between default and a lesser sanction, "a court should consider (1) prejudice to the opposing party; (2) prejudice to the judicial system; and (3) deterrence and punishment." *Tashiro*, 2015 WL 2371597, at *35 (*citing Dotson*, 202 F.R.D. at 575).

In this case, the prejudice to Plaintiff is clear. Since Defendant lied about using his self-described gaming computer for BitTorrent, Plaintiff's copyrighted content could easily have been on the drive he destroyed. Plaintiff's copyrighted content could also be on Defendant's drive entitled "Drop Torrents Here," or his drive entitled "Entertainment\TV Drive," or on any of the six (6) drives that Defendant failed to disclose and each of which he affirmatively denied the existence. Defendant's spoliation, suppression, and perjury about the existence of his drives naturally impaired Plaintiff's ability to prove its copyright claim. Indeed, Plaintiff can now argue with more force its copyrighted movies are on one of the drives that Defendant destroyed or suppressed. Consequently, "the loss [and withholding] of such obviously material evidence supports imposition of a correspondingly harsh sanction, such that default judgment is appropriate." *Tashiro*, 2015 WL 2371597, at *36. And, Plaintiff has suffered extensive prejudice in bringing the instant motion and pursuing evidence that Defendant should not have perjured himself about and should have long ago disclosed. It cannot be contested that ferretting out Defendant's perjury has wasted a lot of Plaintiff's and this Court's time, money, and energy. *Accord id*.

Even worse, however, is the harm that Defendant has caused to the judicial system as a whole. As the Supreme Court has observed, "[f]alse testimony in a formal proceeding is intolerable," and a court "must neither reward nor condone such a 'flagrant affront' to the truth-

seeking function of adversary proceedings." *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 323 (1994) (citation omitted); *see also Quela v. Payco-Gen. Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, *7 (N.D. Ill. May 18, 2000) ("Lying cannot be condoned in any formal proceeding. Our legal system is dependent on the willingness of the litigants to allow an honest and true airing of the real facts."). Here, however, Defendant perjured himself over and over again—in his discovery papers, in his deposition testimony, and in front of the Court at a previous hearing. Such an affront to the judicial process is intolerable.

Further, a sanction short of default would not appropriately address the goals of deterrence and punishment. A monetary sanction, for example, would help redress the prejudice Plaintiff has suffered and would help punish Defendant, but it would not adequately protect the judiciary. Such a sanction would send a message that the Court is willing to accept perjury so long as a monetary sanction is entered. This Court has made adamantly clear that this is something it will not do. *Accord Tashiro*, 2015 WL 2371597 at *37 (refusing to allow perjury in exchange for the perjurer's writing of a check, explaining that "toleration of perjury is unseemly; false testimony in a formal proceeding is intolerable, and truthful discovery is too important to the entire civil justice system to allow Defendants to continue to debase the truth-finding processes of this Court with their continued presence before this tribunal."). And an adverse inference would similarly not adequately protect the judiciary, but would merely redress the prejudice that Plaintiff has suffered by requiring the jury to infer that Plaintiff's copyrighted works would have been found either on the hard drive that Defendant claims he destroyed during the course of litigation or on one of the drives that Defendant concealed. Either of these lesser sanctions would allow the case to continue to trial and would thus permit Defendant to press his case to the Court. In light of Defendant's misconduct, he should not be allowed to do so: "litigants who use the judicial process have certain

obligations and responsibilities, among them upholding the integrity of the judicial process in general." *Tashiro*, 2015 WL 2371597 at *37 (citing *Dotson*, 202 F.R.D. at 574). "Where, as here, a party instead makes a mockery of the judicial process, that party forfeits continued access to that process." *Id.*; *see also REP MCR Realty LLC v. Lynch*, 363 F. Supp.2d 984, 1012 (N.D. Ill. 2005) ("Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.").

Allowing this case to go to trial would also be a complete waste of judicial resources because Defendant should be prohibited from testifying about the contents of his destroyed and withheld drives pursuant to Federal Rules of Evidence 1002 and 1004(a), and the jury would thus be instructed to find that Plaintiff's works were on one of these drives. Even if Defendant were somehow allowed to testify on these issues, he would necessarily have to either invoke his Fifth Amendment right or otherwise continue to perpetuate his fraud with more perjury. While default may be a "draconian" sanction, courts in the Seventh Circuit—including this Court—frequently find that default is appropriate in cases like this one where a party has exhibited extensive patterns or repeated incidents of misconduct. *See, e.g.*, *Greviskes v. Universities Research Ass'n, Inc.*, 417 F.3d 752, 759 (7th Cir. 2005) (upholding dismissal where plaintiff compounded initial fraud by attempting "to hide such behavior behind a cloak of further fraud and deceit"); *Alexander*, 930 F. Supp.2d at 961 (dismissing case after revelation of "pervasive" perjury); *REP MCR Realty*, 363 F. Supp.2d at 1010–11 (dismissal appropriate where party "destroyed significant documents and committed perjury"); *Dotson*, 202 F.R.D. at 575 (dismissing case when party provided "misleading answers on a continual basis" and "also committed perjury"); *Brady v. U.S.*, 877 F. Supp. 444, 452–53 (C.D. Ill. 1994) (dismissing case where party offered incomplete interrogatory answers and repeatedly perjured himself); *see generally Tashiro*, No. 1:13-cv-00205-WTL-MJD, CM/ECF 242,

*adopted by* CM/ECF 246 (enter a sanction of default in a factually analogous case where defendants perjured themselves, deleted evidence from a hard drive, and lied about the existence of another hard drive).

Here, just like in *Tashiro*, Defendant has engaged in a pattern of misconduct involving perjury and a total disregard for his discovery obligations. Defendant spoiled and withheld material evidence (*i.e.*, drives that Defendant used to download and store BitTorrent files during the pertinent time period), he lied about the nature of the evidence he claims to have destroyed, and he lied about the existence and nature of the evidence that he concealed. Just as in the cases cited above, Defendant's extensive pattern of misconduct necessitates the harshest of sanctions. To issue any lesser sanction would only threaten the truth-seeking function of the litigation because it would enable Defendant to continue to attempt to perpetuate his fraud.[9]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests entry of a terminating sanction in the form of a default judgment against Defendant.

Dated:  July 20, 2015.

Respectfully submitted,

**LIPSCOMB EISENBERG & BAKER, PL**

By: /s/ *M. Keith Lipscomb*
M. Keith Lipscomb (429554)
klipscomb@lebfirm.com
Jason H. Cooper (98476)
jcooper@lebfirm.com
LIPSCOMB EISENBERG & BAKER, PL
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228

---

[9] Notwithstanding the foregoing, if for any reason the Court disagrees, Plaintiff respectfully requests any appropriate lesser sanction.

Facsimile:  (786) 431-2229

And,

NICOLETTI LAW, PLC

By:      /s/ Paul J. Nicoletti
Paul J. Nicoletti, Esq. (P44419)
33717 Woodward Avenue, #433
Birmingham, MI 48009
Tel:  (248) 203-7800
E-Fax: (248) 928-7051
Email:  pauljnicoletti@gmail.com
Attorney for Plaintiff

### CERTIFICATE OF GOOD FAITH CONFERENCE

Undersigned sent opposing counsel a lengthy email explaining the basis of this motion early today.  In that email, undersigned requested that Defendant consent to the Court granting the relief requested through this Motion.  As of the time this Motion was filed, Defendant did not advise undersign whether he would consent to the Court granting this Motion.

By: /s/ M. Keith Lipscomb

### CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2015 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and that service was perfected on all counsel of record and interested parties through this system.

By:      /s/ M. Keith Lipcsomb

22